# EXHIBIT B

**HALEY GUILIANO LLP**
JOSHUA V. VAN HOVEN (CSB No. 262815)
E-Mail: joshua.vanhoven@hglaw.com
GREGORY J. LUNDELL (CSB No. 234941)
E-Mail: greg.lundell@hglaw.com
111 N Market Street, Suite 900
San Jose, California 95113
Telephone: 669.213.1050
Facsimile: 669.500.7375

RICHARD T. MCCAULLEY (*pro hac vice*)
E-Mail: richard.mccaulley@hglaw.com
116 W. Hubbard, Unit 20
Chicago, IL 60654
Telephone: 312.330.8105

*Attorneys for Plaintiff and Counter-Defendant,*
SURGICAL INSTRUMENT SERVICE COMPANY, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

1

**Deleted Cells**

SURGICIAL INSTRUMENT SERVICE COMPANY, INC.,

*Plaintiff*(s),

vs.

/*Counter-*Defendant(s),

v.

INTUITIVE SURGICAL, INC.,

*Defendant/Counterclaimant.*

1.

Case Number: C xx xxxx No. 3:21-cv-03496-VC

(MODEL) Honorable Vince Chhabria

**[PROPOSED] STIPULATED ESI ORDER** RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION

Complaint Filed:   May 10, 2021

**STIPULATED ORDER RE: DISCOVERY OF HARD-COPY DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

**1.  PURPOSE**

This Stipulation and Order ("Stipulated ESI Order") will govern discovery of electronically stored information ("ESI") Electronically Stored Information and Hard-Copy Documents (collectively, "Document" or "Documents", defined in Section 4) in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. This Stipulated ESI Order will govern the preservation

2

and production of potentially relevant Documents, hardware, data and tangible things within the Parties' possession, custody and/or control. This Stipulated ESI Order shall apply to all discovery of Documents in this case, unless the Parties agree in advance and in writing or if the Agreement is modified by the Court.

2.    This Stipulated ESI Order does not (a) alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules of the Northern District of California, except as specified herein; (b) address, limit, determine or affect the relevance, discoverability or admissibility as evidence of any Document or ESI, regardless of whether the Document or ESI is to be preserved, is preserved or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules or Local Rules. By stipulating to the terms of this Stipulated ESI Order, no party waives any objection to producing any particular Document or category of Documents on any grounds whatsoever.

This Stipulated ESI Order does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary in the course of this action. Any disputes arising out of the production of Documents subject to this Stipulated ESI Order shall be resolved according to Federal Rules of Civil Procedure, Local Rule 26, and the Court's Standing Orders.

**2.  COOPERATION**

The ~~parties~~Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3.** ~~3.~~ **LIAISON**

The ~~parties~~Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format,

collection, search methodologies, and production of ESI in this matter. The ~~parties~~Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4.**  ~~4.~~  **DEFINITIONS**

A.      "**Custodian**" shall mean any individual of a Producing Party that may have possession, custody or control of potentially relevant information, Documents, or ESI.

B.      "**Document**" or "**Documents**" shall have the same definition as set forth in Federal Rule of Civil Procedure 34, and when used herein, refer to both Electronically Stored Information and Hard-Copy Documents.

C.      "**Electronically Stored Information**" or "**ESI**," means any Document or Documents stored or transmitted in electronic form.

D.      "**Hard-Copy Document**" means any Document existing in paper form at the inception of this litigation.

E.      "**Include**" and "**including**" shall be construed to mean "include, but not be limited to" and "including, but not limited to".

F.      "**Metadata**" means and refers to information about information or data about data, and includes without limitation: (i) information embedded in or associated with a Native File that is not ordinarily viewable or printable from the application that generated, edited or modified such Native File and that describes the characteristics, origins, usage and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

G.      "**Media**" means an object or device, including a disc, tape, computer or other device on which data is or was stored.

4

H.    "**Native File**" means and refers to the format of ESI in which it was generated and/or received as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

I.    "**Parties**" means or refers to the named plaintiffs and defendant in the above-captioned matter, as well as any later added plaintiffs and defendants.

J.    "**Producing Party**" means and refers to the Party upon whom a request for the production of Documents is served.

K.    "**Requesting Party**" means and refers to the Party that serves a request for the production of Documents.

**5.  PRESERVATION AND DOCUMENT RETENTION**

The ~~parties~~Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. ~~To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:~~ The Parties represent that they have taken reasonable and proportionate steps to suspend or modify regular or automatic policies or practices that would result in the loss of relevant Documents. The Parties shall have a continuing obligation to identify sources of relevant Documents and to take reasonable and proportionate steps to preserve them. If a Producing Party is aware of inaccessible data that is likely to contain unique, discoverable ESI that may be relevant to the claims or defenses in this litigation, it will identify the source from which it claims the data is not reasonably accessible and explain in writing the basis for its claim that the Documents contained therein are not reasonably accessible.

~~a) Only ESI created or received between _____ and _____ will be preserved;~~
~~b) The parties have exchanged a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably~~

necessary;

c) The parties have agreed/will agree on the number of custodians per party for whom ESI will be preserved;

d) These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced: [e.g., backup media of [named] system, systems no longer in use that cannot be accessed];

e) Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following: [e.g., backup media created before _____, digital voicemail, instant messaging, automatically saved versions of documents];

f) In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: _____

**6.** **5.** **SEARCH PROTOCOL FOR ELECTRONIC DOCUMENTS**

The ~~parties~~Parties agree that in responding to ~~an initial Fed. R. Civ. P. 34 request, or earlier if appropriate~~requests pursuant to the Federal Rules of Civil Procedure, they will meet and confer about methods to search ESI in order to identify ~~ESI that is subject to production in discovery~~ potentially responsive ESI. The Parties shall use reasonable best efforts to reach agreement regarding the methodology to be used, and ~~filter out~~which methodology shall, and shall not, be applied to each category of Documents requested and/or category of potentially responsive Documents. Documents or categories of Documents that are easily identifiable and segregable without need for electronic search methodology shall be collected without the use of such methodology unless otherwise agreed to by the Parties. The Parties will indicate which categories of Documents will be collected with and without the use of electronic search methodology.

Where a Party proposes to identify potentially responsive ESI through the use of search terms, the Parties agree to follow the process identified below and to meet and confer regarding any proposed deviation. The fact that a Document is captured by the application of agreed upon search terms does not necessarily mean that such Document is ~~not~~responsive to any propounded discovery request or

6

otherwise relevant to this litigation. A party may not withhold from production a potentially responsive Document that is known to the party merely because it has not been identified by an electronic search methodology. The discovery requests and the Federal Rules shall govern the scope of Documents to be produced, subject to any agreements reached during the Parties' conferral.

A.    **Identification of Responsive ESI**. The Parties agree that a Producing Party will undertake a reasonable inquiry to identify sources of ESI likely to contain material responsive to a Requesting Party's Document requests, and that the Producing Party and Requesting Party shall meet and confer in good faith regarding (a) the identification of non-custodial sources likely to contain responsive ESI, and (b) appropriate Custodians. Within a reasonable time after service of a request for the production of Documents to, each Producing Party shall disclose (a) the identity of Custodians, (b) custodial and non-custodial sources of ESI, and (c) Hard-Copy Documents the party proposes to search for responsive Documents. Prior to the production of ESI, the Parties shall meet and confer to discuss the number and identity of Custodians that are reasonable and proportional to the needs of the case, considering the factors set forth in Federal Rule of Civil Procedure 26(b)(1). The Parties retain the right, upon reviewing the initial production of Documents and conducting other investigation and discovery, to request that files from additional Custodians be searched, and to meet and confer regarding such request. The Parties will identify and describe the ESI storage systems or devices that may house data potentially relevant to a Document request, including both custodial and non-custodial sources of ESI. The Parties also will meet and confer regarding sources of potentially responsive ESI that a party contends is not reasonably accessible.

B.    **Search Terms**. Within a reasonable time after service of a request for the production of Documents, each Producing Party that intends to apply search terms will propose a search protocol to the Requesting Party setting forth: (a) the

universe of ESI to which search terms would be applied, and (b) the search terms that a party proposes to apply to that universe of ESI. The Parties agree to meet and confer (a) regarding the search methodology and search terms described herein, and (b) to raise any disputes regarding the search protocol for resolution by the Court before collecting and producing ESI under the proposed search protocol. Except for documents produced in the format that they were originally produced in connection with other litigations or government investigations as specified in Section 7, irrespective of any search methodology utilized, the Producing Party, at its election, may review ESI for responsiveness, privilege and confidentiality prior to producing documents to the Requesting Party.

C.   **Technologies**. Prior to use, the Parties should meet and confer to disclose and discuss any proposed use of any electronic search methodologies (other than search terms) to reduce the number of Documents to be reviewed or produced, or to identify responsive documents (e.g., technology-assisted review or other similar technologies). Use of these technologies to reduce the reviewable collection or production, other than as described within this Document, requires the consent of the Receiving Party.

D.   **Quality Standards**. Once the parties have agreed to search terms or other electronic search methodology subject to ~~discovery~~the processes outlined above, the Parties shall meet and confer to attempt to develop a mutually agreed, statistically sound methodology to determine the recall rate and other measures of the effectiveness of the methodology in identifying responsive documents. The parties shall meet and confer regarding whether further modification to search terms is necessary to improve recall or, in the case of technology assisted review, whether further training of the TAR tool or other steps to improve recall are necessary.

E.   ~~6.~~   **Continuing Obligations**. The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate, including

8

agreeing to modify any of the dates and time frame set forth in this protocol. This protocol does not address or resolve any other objection to the scope of the Parties' respective discovery requests, and it does not prevent any party from undertaking searches of its own ESI for its own purposes at any time.

**7.  PRODUCTION FORMATS**

~~The parties~~Except as otherwise provided herein, the Parties agree to produce ~~documents in ☐ PDF, ☐TIFF, ☐native and/or ☐paper or a combination thereof (check all that apply)] file~~Documents in the formats~~.~~ set forth in Appendix A to this Stipulated ESI Order. If particular ~~documents~~Documents warrant a different format, the ~~parties~~Parties will cooperate to arrange for the mutually acceptable production of such ~~documents~~Documents. The ~~parties~~Parties agree not to degrade the searchability of ~~documents~~Documents as part of the ~~document production process~~Document preservation, collection, review, and production process. To the extent any Party agrees to produce Documents in this litigation that originally were produced or processed as part of a response to a government investigation or discovery request in *Restore Robotics LLC v. Intuitive Surgical, Inc.*, No. 5:19-cv-55-TKW-MJF (N.D. Fla.) or *Rebotix Repair LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-02274-VMC-TGW (M.D. Fla.), such Documents may be produced in a manner and form consistent with how the Documents were originally produced or processed. Each Party reserves the right to request information to remedy any material omission under the production requirements of this Stipulated ESI Order (e.g., missing metadata), and the Parties shall meet and confer in good faith to attempt to resolve such requests. If the Parties are unable to resolve such requests, the Parties may submit the matter to the Court.

~~**7.  PHASING**~~

~~When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI and the initial production will be from the following~~

sources and custodians: _____.
Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**8.** **8.** **DOCUMENTS PROTECTED FROM DISCOVERY**

A. a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding Document (including both Hard-Copy Documents and ESI) shall be governed by the protective order entered into in this case.

b) The parties have agreed upon a "quick peek" process pursuant to Fed. R. Civ. P. 26(b)(5) and reserve rights to assert privilege as follows _____.

c) Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

B. 9. As specified in Section III.3 of Magistrate Judge Beeler's Standing Order, if a party proposes to withhold material as privileged it must produce a privilege log that is sufficiently detailed for the opposing party to assess whether the assertion of privilege is justified. The Parties agree that privilege logs must be produced no later than thirty (30) days after the party's disclosures or discovery responses are made. Privilege logs must contain the following: (a) the title and description of the Document, the number of pages, and the Bates-number range; (b) the subject matter or general nature of the Document (without disclosing privileged information); (c) the identity and position of its author; (d) the date it was communicated (or prepared, if that is the more relevant date); (e) the identity and position of all addressees and recipients of the communication; (f) the specific basis for the assertion that the Document is privileged or protected (including a

10

brief summary of any supporting facts); (g) the names of In-house attorney designated with an asterisk; (h) the names of outside counsel attorney names designated with a double asterisk; and (i) the names of third-parties designated with a triple asterisk. Further, the Parties shall produce:

- All privilege logs arising from the matters *Restore Robotics LLC v. Intuitive Surgical, Inc.* (No. 5:19-cv-55-TKW-MJF) and *Rebotix Repair LLC v. Intuitive Surgical, Inc.* in conjunction with the production of Documents previously produced in the *Restore* and *Rebotix* matters.

- The Privilege logs on a rolling basis and supplemented within thirty 30 days after significant productions, and shall be completed no later than thirty 30 days after the deadline for completing Document production.

C.      A single Document containing multiple email messages (i.e., in an email chain) may only be withheld if all e-mails in the chain are covered by a privilege or immunity. If only a portion of the e-mail chain is privileged or immune, the e-mail chain shall be produced in redacted form. The Producing Party shall log an entry for each protected email in the chain, or alternatively, the Producing Party shall log a single entry for the entire chain and produce the email thread with all content but the header information (to, from, cc, bcc, date, time, subject line) redacted and identify the bates number for the redacted email in the log.

D.      In the case of a family of Documents, only the member or members that are privileged may be withheld. All other members of the family must be produced. Where Producing Party withholds a privileged family member, they will produce a Bates numbered TIFF slip sheet in place of the Document, but will not be required to produce metadata for that attachment except as specifically provided

11

for herein (including in Appendix A). The TIFF slip sheet for each withheld attachment will state "Family Member Withheld as Privileged." Each member of a family of Documents (i.e., each member of a set of Documents in a parent-child relationship to each other) that is withheld or redacted on the grounds of privilege or immunity shall be logged as a separate entry but appearing consecutively with each family member in the log. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

E.     This stipulated agreement set forth in this section does not constitute a concession by any party that any Documents are subject to protection by the attorney-client privilege, the work product doctrine or any other potentially applicable privilege or doctrine. This agreement also is not intended to waive or limit in any way either party's right to contest any privilege claims that may be asserted with respect to any of the Documents produced except to the extent stated in the agreement.

F.     The Parties need not log: (1) communications with counsel exclusively concerning these actions or the related actions, *Surgical Instrument Service Company, Inc. v. Intuitive Surgical, Inc.*, No. 3:21-cv-03496 (N.D. Cal.); *Restore Robotics LLC v. Intuitive Surgical, Inc.*, No. 5:19-cv-55-TKW-MJF (N.D. Fla.); and *Rebotix Repair LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-02274-VMC-TGW (M.D. Fla.) (collectively, the "Actions"), (2) work product created by counsel in connection with the Actions, or (3) internal communications between the Parties' counsel concerning the Actions.

G.     To the extent a Requesting Party requests production of Documents or ESI that were previously collected and processed or produced by the Producing Party in another litigation or government investigation, and the Producing Party agrees to produce the prior production in its entirety, the Producing Party may

12

produce a privilege log in the same form which accompanied the original production. If the Producing Party produces part of a prior production, the accompanying privilege log will be modified as appropriate, and any modified log will comply with this Protocol. Each Party reserves the right to request additional information regarding the basis for withholding or redacting specific Documents, and the Parties shall meet and confer in good faith to attempt to resolve such requests. If the Parties are unable to resolve such requests, the Parties may submit the matter to the Court.

**9. MODIFICATION**

This Stipulated ESI Order may be modified by a ~~Stipulated Order~~stipulated order of the ~~parties~~Parties or by the Court for good cause shown.

**10. MISCELLANEOUS PROVISIONS**

A.     **English Language**.  To the extent any Document exists in more than one language, the Document shall be produced in English, if available. If no English version of the Document is available, the Producing Party does not have an obligation to produce an English translation of that Document.

B.     **Encryption**.  To maximize the security of information in transit, any production may be encrypted. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

C.     **Unsearchable Documents.**  The Parties will make reasonable efforts to ensure that text of ESI is extracted from the native versions of that ESI, and Hard-Copy Documents are OCR-ed, subject to paragraphs I(D) and (G) of Appendix A, all container files (such as PST or ZIP files) are successfully extracted, and all encrypted or password-protected Documents are successfully accessed and decrypted, in order to ensure effective search, review and production under the

requirements of this Stipulated ESI Order. The Producing Party also agrees to produce a record of any such files that are not successfully OCR-ed, extracted, or accessed. Each Party may request a written description of the efforts undertaken by the Producing Party to OCR, extract, decrypt or otherwise access the unsearchable files, and such requests will not be unreasonably denied.

     D.    **Protective Order or Confidentiality Agreement**.  The terms of any protective order entered by the Court or confidentiality agreement agreed to by the Parties are incorporated herein by reference and also govern all production pursuant to this Agreement.

     E.    **Further Conferral**.  If any party determines that any of the requirements in this Agreement imposes an undue burden or otherwise poses an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing, as appropriate, an alternative process or processes.

     F.    **Discovery Rules**.  Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine or any other applicable privilege or immunity

**IT IS SO STIPULATED**, through Counsel of Record.

Dated:          DRAFT
                    Counsel for Plaintiff

Dated:          DRAFT
                    Counsel for Defendant

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:

14

HON. VINCE CHHABRIA
UNITED     STATES     DISTRICT MAGISTRATE
JUDGE

**APPENDIX A: PRODUCTION DELIVERY REQUIREMENTS**

I.     Hard-Copy Document Production Specifications

A.     Responsive Documents that were either (i) originally generated as or converted into ESI but now only exist in physical hard-copy format, (ii) printed ESI that contains new alterations since printed (i.e., handwritten notes), or (iii) originally generated in hard-copy format shall be converted to single page, Group IV, 300 DPI TIFF format and produced following the same protocols set forth herein.

B.     The Parties will use reasonable best efforts to unitize Documents (i.e., distinct Documents should not be merged into a single record, and a single Document should not be split into multiple records).

C.     If an original Document contains color, the Producing Party should produce the Document in color and a high-quality setting upon reasonable request.

D.     Multi-page Optical Character Recognition ("OCR") text for each Document should also be provided and named with the Bates number of the first page of the Document to which it corresponds. The OCR software should be set to the highest quality setting. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. Documents that are redacted will be re-scanned using OCR software following redaction and only OCR text of the redacted Document will be produced.

E.     A text cross reference load file should also be included with the production delivery that lists the beginning bates number of the Document and the relative path to the text file for that Document on the production media.

F.     A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian, and Number of Pages. The delimiters for that file should be:

Field Separator, ASCII character 20: "¶"

16

Quote Character, ASCII character 254 "þ"

Multi-Entry Delimiter, ASCII character 174: "®"

II.    Production of ESI

A.    **Document Image Format**.  With the exception of databases discussed in "Structured data" and ESI discussed in "Native Files," or unless otherwise agreed to in writing by a Requesting Party, ESI shall be produced electronically as a single-page, Group IV, 300 DPI TIFF image. All TIFF images shall convey the same information and image as the original Document, including all versioning and formatting that is visible or can be made visible in any view of the Document in its native application. All images shall display tracked changes, comments, highlighter marks, hidden text, hidden rows and columns, and all other display elements, regardless of the display setting for this information as last saved by the Custodian, to the extent technically possible. Objects embedded in Documents shall, when possible, be extracted and produced as separate Documents. The Producing Party will make reasonable and good faith efforts to treat such extracted embedded Documents like attachments to the Document (with the exception of image logo files in emails which shall not be extracted or produced). Embedded Documents will be produced following the parent with a continuous Bates range. The Producing Party will instruct its vendor to disable any Auto Date function so that any ESI converted to TIFF retains the date and/or time shown in the Document as it was last saved by the Custodian or end user, not the date of collection or processing. If such ESI contains color, the Producing Party should produce the Document in color and a high-quality setting upon reasonable request. In addition, Hard-Copy Documents or ESI items that a Producing Party has converted to color for its own review must be produced in color. All images must be assigned a Bates number that shall always: (1) be unique across the entire Document production, (2) maintain a constant length

17

(zero/0-padded) across the entire production, (3) contain no embedded spaces or special characters other than underscores and/or hyphens, (4) be sequential across a family, and, in the case of ESI that may be produced as TIFFs, sequential within a given Document (5) be of a consistent font type and size.

B.   **Compressed Files**.   Compressed and container file types (e.g., .ZIP, .RAR, etc.) shall be decompressed to ensure that a compressed file within a compressed file are decompressed into the lowest possible compression to ensure all files are searched and produced as separate records. Emails and their attachments shall be extracted separately and shall be produced with the family relationship intact via the AttachBegin and AttachEnd fields identified in Section J, below.

C.   Each production of ESI and Documents shall be accompanied by Concordance or comma delimited load files (.dat and .opt). The .dat file shall contain all fielded data for the production, including the beginning bates number for each record, the relative path to the text files for each record, and, for Native Files, the relative path to the Native File for each record. The .dat file shall also provide all metadata fields identified in Appendix A. The .opt files provide image cross reference files for all TIFF images (including native placeholders and placeholder docs for family members withheld for privilege or work-product protection) and shall identify Document breaks for an image.

D.   **Text Files**.   For each Document produced in TIFF format, a single text file containing text extracted from the original native Document shall be provided along with the load files, image files, and the metadata as described in Section J, below. The text file name shall be the same as the Bates number of the first page of the Document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the Document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances,

a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 format text format.

E.    **Native Files**.  The Parties acknowledge that production in TIFF format may be inadequate for certain types of ESI (e.g., spreadsheets). The Producing Party will produce in native format all audio and video files, spreadsheet-type files, including but not limited to Microsoft Excel and CSV, PowerPoint and other presentation files, Microsoft Access and other personal (non-enterprise) database files, and any other ESI that is not accurately represented in TIFF format shall be produced in Native Format. When producing the Native File, the Producing Party shall preserve the integrity of the electronic Document's contents, i.e., its original formatting and metadata, and shall expand or reveal all otherwise hidden text, rows, cells, or column. Native Files should be produced with source file path, load files, extracted text, and applicable metadata fields as set forth in Section J, below. Each electronic file produced in Native Format shall be assigned a unique Bates Number, and the database record for that file shall include a single-page TIFF image branded with this unique Bates Number in the lower right corner of the image as a Bates number with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page. For any electronic file produced in Native Format that contains Confidential Information, Highly Confidential Information, and Protected Health Information, as defined in a protective order, an appropriate designation may be branded in the lower left hand corner of the associated TIFF placeholder. To the extent that either party believes that Native Files should be produced for a specific Document or class of Documents not required to be produced in native format pursuant to this paragraph, the Parties should meet and confer in good faith. If Documents requested in native format require redactions, the Parties will produce TIFF images for those Documents (or JPG images if color is necessary), except that for Excel and spreadsheet files, the Parties will meet and

19

confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

F. **Document Unitization**. For files produced as TIFF or JPG images, each page of a Document shall be electronically saved as an image file. If a Document consists of more than one page, the unitization of the Document and any attachments shall be maintained as it existed in the original when creating the image files. The Producing Party shall produce a unitization file ("load file") for all produced Documents in accordance with the following formatting:

**OCR and Extracted Text Files (.TXT Files):**

- Single text file per Document containing all of the Document's pages
- Filenames should be of the form:
  <ProdBegin>.txt
  Where <ProdBegin> is the BATES number of the first page in the Document.
- Text must be encoded in UTF-8.

**Image Files:**

- Single page per image
- TIFF is Group IV compression, 300 dpi unless color or grayscale image is necessary, then provide .JPG files.
- Filenames should be of the form:
  "<ProdBegin>.<ext>," where <ProdBegin> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif).

**Index Files:**

- "Concordance Default" delimited text file utilizing the following characters:
  o The "comma" delimiter is "¶" (020)

- o   The "quote" delimiter is "þ" (254)
- o   The "new line" delimiter is "®" (174)
- First line must contain the column/field names (set forth in Paragraph 1(e) herein) Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8

The Parties agree to meet and confer in advance of any production of Documents, and in consultation with their respective vendors, to discuss all unitization file/load file specifications.

G.    **Duplicates**.  Removal of duplicate Documents will only be done on exact duplicate Documents based on MD5 or SHA-1 hash values at the family level (e.g., identical child Documents that have unique parents are not duplicates; an attachment to a Document is not a duplicate of the Document maintained separately as a standalone Document). Exact duplicate shall mean bit-for-bit identicality of the Document content. For exact duplicate Documents, the Producing Party will produce a single copy of the responsive Document ("Single Production Copy"), as well as the metadata, as described in Section J, below, for the Single Production Copy. The Producing Party shall populate a field of data that identifies each Custodian who had a copy of the produced Document in addition to a separate field of data identifying the Custodian whose Document is produced, as well as the File Path of de-duplicated Documents. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical. The Parties agree to meet and confer over any disputes regarding deduplication protocols prior to seeking judicial intervention.

H.    **Bates Numbering and Other Unique Identifiers**.  For files produced as TIFF or JPG images, each page of a produced Document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the TIFF or JPG image in such a manner that information from the source Document is not

21

obliterated, concealed, or interfered with.  Unless it would obscure, conceal or interfere with any information originally appearing on the Document, the Bates Number shall be burned on the lower right hand corner of the Document. There shall be no other legend or stamp placed on the Document image unless a Document qualifies for confidential treatment pursuant to the terms of a protective order entered by this Court in this litigation, or has been redacted in accordance with applicable law or Court order (including any protective order). In the case of Confidential Information, Highly Confidential Information, and Protected Health Information, as defined in the protective order [Dkt No. 78], or materials redacted in accordance with applicable law or Court order (including any protective order), a designation may be "burned" onto the Document's image at a location that does not obliterate or obscure any non-redacted information from the source Document. Unless it would obscure, conceal or interfere with any information originally appearing on the Document, any confidentiality designation will appear on the lower left hand side of each page of a Document. Any party producing ESI in a native data format only shall employ the method specified in Paragraph II.C of this Appendix for purposes of identification. However, if employing the method specified in Paragraph II.C for production of ESI in a native data format only is unduly burdensome or costly to the Producing Party, the Parties shall meet and confer over whether the Producing Party may employ a different method for purposes of identification, such as a storage device (i.e., CD, USB, hard drive) containing such files which shall be Bates numbered.

I.    **Production Media**.  Documents and ESI, together with, load files, images, native files, and metadata required by this Stipulated ESI Order, shall be produced via secure file transfer site or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"), provided that the parties shall agree to the most cost-effective and expeditious

manner of transfer to the Requesting Party. The Producing Party shall accompany all Document productions with a letter or email identifying the production date and the Bates number range of the materials contained on such Production Media item. Any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

J.    **Metadata**.  The Parties agree to produce the following list of metadata fields (to the extent available) to accompany each produced ESI file. The parties are not obligated to populate manually any of the fields in this paragraph if such fields cannot be extracted from a Document and its context in the source data, with the exception of the following: ProdBegin, ProdEnd, AttachBegin, AttachEnd, Custodian, Duplicate Custodians, Comments, Confidentiality, Privileged, Redacted, Full Text, Native Link, Record Type, Attach Bates, and Prod Volume. Unless otherwise specified, by producing metadata, the Producing Party affirms that such metadata came from its records, with the exception of vendor-entered source/Custodian and Document/production number fields. The following list identifies the metadata fields that will be produced (to the extent available):

- ProdBegin (beginning bates number of the first page of a Document)
- ProdEnd (ending bates number of the last page of the Document)
- AttachBegin (bates number associated with the first page of a parent Document)
- AttachEnd (bates number associated with the last page of the last attachment to a parent Document)
- Attach Count (number of attached files)

1301150.02-NYCSR01A - MSW

- Attach Bates (first Bates of each "child" attachment; can be more than one Bates number listed depending on the number of attachments. Should be populated in each record representing a "parent" Document.)
- Attach name (name of Document attached or embedded, delimited by semicolon for each attachment; populated for parent Documents only)
- Page Count (number of pages in a Document and/or number of printed pages after the Document was converted to TIFF)
- Email Subject (subject line for emails)
- Sent Date (for emails only)
- Sent Time (for emails only)
- Received Date (for emails only)
- Received Time (for emails only)
- Created Date (for E-docs only)
- Last Modified Date (for E-docs only)
- File Author (author data for E-docs)
- File Lasted Modified By (author of last edit for E-docs)
- Comments (comments that were extracted from the Document)
- File Type (the application type, such as Word, Excel, etc.)
- File Size
- File Path (The file path from the location from which the item was stored in the usual course of business. This field should be populated for e-mails, e-files, and mail folders.)
- Duplicate File Path (the File Path of any Documents that were not produced for a Custodian because they are MD5 or SHA-1 hash duplicates of the produced Document. File paths separated by semicolons.)

- Email From (FROM field in emails)
- Email To (TO field in emails)
- Email cc: (CC field in emails)
- Email bcc: (BCC field in emails)
- Record Type (email, email attachment, edoc, edoc attachment, calendar item or hard-copy)
- Custodian (formatted as "Last Name, First Name" for individuals)
- Duplicate Custodians (the name(s) of any Custodian(s) whose duplicate file was removed during production)
- Parent ID (for attachments and populated for children only)
- Confidentiality ("Confidential," "Highly Confidential" or "Protected Health Information," if a Document has been so designated under a protective order; otherwise, blank)
- Redacted ("Yes," for redacted Documents; otherwise, blank)
- Privileged ("Yes" for any bates numbered Document that is withheld as privileged pursuant to Paragraph 9.E; otherwise, blank)
- Hash Value
- Conversation Index (a unique alphanumeric identifier for an email chain populated by the email client for outgoing messages)
- Conversation ID (identifies the order of emails in a thread)
- Message Header
- Message ID (a unique identifier for a message)
- File Name (the original file name of an E-doc or attachment to an email)
- File extension (the file extension of a Document)
- Full Text (the full path to the OCR/extracted text file on producing media)

25

- Native Link (the full path to any natives on producing media)
- Source (the identity of the producing party)
- Importance Ranking (level of importance/sensitivity of messages or calendar items)
- Exception Reason (reflecting the source format of production Document as "Encrypted" or "PasswordProtected")
- Prod Volume (identifies the Production Media)

When a metadata field includes a date, the date shall be provided in the following format: mm/dd/yyyy. When a metadata field includes a time, the time shall be provided in the following format: hh:mm:ss AM/PM.

K.   **Production Directories**.   Productions shall have the following four directories: (1) IMAGES for the Document images (; (2) DATA for the .dat metadata load file and .opt image load files; (3) TEXT containing the extracted text/OCR files; and (4) NATIVES containing the original Native Files.

L.   **Time Zone Standardization**.   The Parties acknowledge that if the processing time zone for this case is not standardized across the entire collection, then the email metadata for Custodians in the different time zones will be different. As a result, two copies of the same email may fail to be de-duplicated, and the different time zones could create a convoluted chronology. As a result, to the extent reasonably practicable the Parties agree to produce their ESI standardized to Central Standard Time (CST).

M.   **Attachments**.   Email attachments and embedded files must be mapped to their parent by their Bates Number by including a BeginAttach field designating the beginning of each such attachment and EndAttach field designating the end of each such attachment. All non-privileged non-responsive members of a Document family—whether an email with attachments, or a Document containing other

embedded Documents, etc.—must be produced along with the entire family, if any member of the family is responsive. So, for example, non-privileged non-responsive attachments to a responsive parent email should all be produced together; similarly, a non-privileged non-responsive parent email must be produced if it contains a responsive attachment.

N.     **Structured Data.**   To the extent a response to discovery requires production of discoverable electronic information contained in an enterprise database (as opposed to Microsoft Access and similar personal database files), disclosure of information such as the database name, business purpose, database owner, and field list may be necessary to inform the Parties as to how to best produce relevant data. The Parties agree to meet and confer, with an understanding of which fields are relevant, to consider whether, in lieu of producing the database, the Parties can agree upon a set of queries to be made for discoverable information or upon the sets of data or fields to be included and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the Requesting Party or counsel. Upon review of the report(s), the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations and different report formats or to request specific data from identified fields.

O.     **DE-NIST.**   Common program and system files defined by the NIST library (http://www.nsrl.nist.gov/) shall not be produced.