SONYA D. WINNER (SBN 200348)
Email: swinner@cov.com
CORTLIN H. LANNIN (SBN 266488)
Email: clannin@cov.com
ISAAC D. CHAPUT (SBN 326923)
Email: ichaput@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, CA 95032
Tel: (408) 477-9690

*Attorneys for Defendant/Counterclaimant Intuitive Surgical, Inc.*

[Additional counsel listed on the signature page]

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

SURGICAL INSTRUMENT SERVICE COMPANY, INC.,

Plaintiff/
Counterclaim-Defendant,

vs.

INTUITIVE SURGICAL, INC.,

Defendant/
Counterclaimant.

Case No. 3:21-cv-03496-VC

**MOTION OF INTUITIVE SURGICAL, INC. TO EXCLUDE TESTIMONY OF RICHARD BERO**

Hearing Date: June 8, 2023
Hearing Time: 1:00 PM
Hearing Place: Courtroom 4

Judge: Hon. Vince Chhabria

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

III. ARGUMENT ..... 5

A. Bero's Opinions Are Not Based Upon Reliable Data. ..... 6

B. Bero's Estimates Are Insufficiently Grounded In The Record. ..... 12

C. Bero's Lanham Act Damage Estimate Should Be Excluded. ..... 14

IV. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*,
361 F. Supp. 2d 958 (D. Minn. 2005) ....15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2017 WL 10434367 (N.D. Cal. Jan. 23, 2017) ....12

*Clear-View Techs., Inc. v. Rasnick*,
2015 WL 3509384 (N.D. Cal. June 3, 2015) ....8

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ....6, 12, 14

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ....6

*Grasshopper House, LLC v. Clean & Sober Media, LLC*,
2021 WL 3702243 (9th Cir. Aug. 20, 2021) ....14

*Herman Schwabe, Inc. v. United Shoe Mach. Corp.*,
297 F.2d 906 (2d Cir. 1962) ....6

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
340 F. Supp. 3d 934, 995 (N.D. Cal. 2018) ....5

*ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*,
249 F. Supp. 2d 622 (E.D. Pa. 2003) ....9

*Ill. Tool Works, Inc. v. Rust-Oleum Corp.*,
955 F.3d 512 (5th Cir. 2020) ....15

*In re Imperial Credit Indus.*,
252 F. Supp. 2d at 1012–13 & n.5 ....8

*In re Imperial Credit Indus., Inc. Sec. Litig.*,
252 F. Supp. 2d 1005 (C.D. Cal. 2003) ....6

*Kurin, Inc. v. Magnolia Med. Techs., Inc.*,
473 F. Supp. 3d 1117, 1144–46 (S.D. Cal. 2020) ....15

*In re Live Concert Antitrust Litig.*,
863 F. Supp. 2d 966 (C.D. Cal. 2012) ....12

*In re Live Concert Antitrust Litig.*,
863 F. Supp. 2d at 973–76 ....13, 14

*Magnetar Techs. Corp. v. Intamin, Ltd.*,
801 F.3d 1150 (9th Cir. 2015) ....8

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) ....................12

*Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*,
100 F.3d 1353 (7th Cir. 1996) ....................14

*Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*,
2019 WL 13045054 (C.D. Cal. Feb. 28, 2019)....................8, 9, 10

*Unwired Planet, LLC v. Apple Inc.*,
2017 WL 589195 (N.D. Cal. Feb. 14, 2017) (Chhabria, J.) ....................6

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
395 F.3d 416 (7th Cir. 2005) (Easterbrook, J.)....................8

**Other Authorities**

Fed R. Civ. P. 26....................5

Fed R. Civ. P. 37(c)(1)....................5

Fed. R. Evid. 702 ....................5, 6

Fed. R. Evid. 703 ....................6

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 8, 2023, at 1:00 PM, or as soon thereafter as available, in the courtroom of the Honorable Vince G. Chhabria, located at 450 Golden Gate Avenue, Courtroom 4, 17th Floor, San Francisco, CA 94102, Defendant/Counterclaimant Intuitive Surgical, Inc. will and hereby does move for an order excluding the opinions of Richard Bero, proffered as an expert witness for Surgical Instrument Services Company, Inc. ("SIS").

This Motion is based on this Notice of Motion and Memorandum of Points and Authorities, the accompanying Declaration of Ashley Bass and attached exhibits, any reply or other supplemental briefing and/or evidence submitted, and the oral argument of counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

SIS is a company in the medical equipment business that offers certain services to hospitals. One of the services SIS at one time offered to its customers was the modification of S/Si EndoWrists to override and reset the usage limits on the instruments. [redacted]

SIS has asserted Sherman Act and Lanham Act claims against Intuitive, claiming that SIS's business was harmed because "Intuitive has conditioned the sale and servicing of its da Vinci surgical robots on customers buying replacement EndoWrists from Intuitive instead of permitting customers to use repaired EndoWrists." *Id.* at 2.[1] [redacted]

---

1 [redacted]

[redacted]

***First***, although Bero is a CPA, his lost profits damages model includes as inputs unreliable "data" that no reasonable CPA would ever rely upon. [redacted]

[redacted]

---

[redacted].

***Third***, Bero's estimated Lanham Act damages should be excluded because those estimates suffer from the same flaws as Bero's lost profits analysis and are also contrary to the law.[2]

## II. FACTUAL BACKGROUND

[2] For the avoidance of doubt, Intuitive reserves the right to raise additional objections to Bero's testimony at a later date. This brief focuses on issues fit for resolution at this stage of the case.



4
MOTION OF INTUITIVE SURGICAL, INC. TO EXCLUDE
TESTIMONY OF RICHARD BERO

CASE NO.: 3:21-cv-03496-VC

<u>Lanham Act damages</u>. Bero separately estimates damages for SIS's Lanham Act claims. [redacted]

Intuitive submitted a rebuttal to Bero's damages report from Dr. Loren Smith. [redacted]

## III. ARGUMENT

Expert witness testimony must (1) come from a qualified expert; (2) be helpful to the factfinder; (3) be based on sufficient facts or data; (4) use reliable principles and methods; and (5) reliably apply those principles and methods to the facts of the case. Fed. R. Evid. 702. The court's "gatekeeping" role requires evaluating both the reliability of the expert's methods and the connection between his

[3] Intuitive reserves the right to move to strike this portion of Bero's second rebuttal report and/or to provide responsive opinions from its own experts at the time of trial. This information was available to SIS at the time of Bero's opening report, and there is no reason the information could not have been included in Bero's opening report. At a minimum Bero should not be permitted to provide new material from his rebuttal report during SIS's case-in-chief. "Rebuttal testimony cannot be used to advance new arguments or new evidence." *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018) (quotation omitted); *see also* Fed R. Civ. P. 26(a)(2)(B)(i), 37(c)(1).

conclusions and the facts on which those conclusions are based. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143–46 (1997).

The Court's gatekeeping role is particularly important when assessing expert damages estimates. As Judge Friendly explained in upholding the exclusion of an expert's testimony on lost profits, juries must be protected from experts presenting "an array of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it." *Herman Schwabe, Inc. v. United Shoe Mach. Corp.*, 297 F.2d 906, 912 (2d Cir. 1962). This fundamental principle holds true today. *See, e.g.*, *Unwired Planet, LLC v. Apple Inc.*, 2017 WL 589195, at *2 (N.D. Cal. Feb. 14, 2017) (Chhabria, J.) (rejecting expert model with unsupported assumptions, noting it "shroud[ed] . . . results in an air of legitimacy . . . rais[ing] the risk of juror confusion, making it all the more essential that the Court exercise its gatekeeping function until admission is adequately supported").

[redacted]

In short, Bero brings no specialized expertise to this case *apart from* his credentials as an accountant. As shown below, he has failed to apply that expertise in a reliable way to generate opinions that satisfy the *Daubert* standard.

**A. Bero's Opinions Are Not Based Upon Reliable Data.**

Rule 703 allows experts to rely on evidence if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject," even if such evidence is inadmissible. Fed. R. Evid. 703; *see also* Fed. R. Evid. 702. This is permissible in part because the expert's "validation [of the underlying evidence], expertly performed and subject to cross-examination, ought to suffice for judicial purposes." *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012 n.5 (C.D. Cal. 2003) (citing Fed. R. Evid. 703, Advisory Committee Note to 1972 Proposed

Rules), *aff'd sub nom. Mortensen v. Snavely*, 145 F. App'x 218 (9th Cir. 2005).  Here, Bero has not relied upon information that CPAs would typically rely upon in performing their duties.

The accounting profession has a number of standards governing what data accountants can rely on and how they should proceed when relying on information provided by others.  First and foremost, accountants relying on the work of others "should use professional judgment" to ensure compliance with rules preventing "knowing misrepresentations."  American Institute of Certified Public Accountants (AICPA) Code of Professional Conduct (2014) § 2.130.010, (hereinafter "AICPA Code").[4]  "Factors to consider in determining whether reliance on others is reasonable include reputation, expertise, objectivity, resources available to the individual or organization, and whether the other individual is subject to applicable professional and ethical standards."  *Id.*  These ethical rules apply to lost profits estimates prepared for litigation as well, according to one of the textbooks Bero cites.  AICPA Calculating Lost Profits, Practice Aid 06-4 at 5 (2006) (hereinafter "AICPA Lost Profits").[5]

There are also principles specific to the estimation of lost profits.  Accountants performing a lost profits analysis may reasonably rely on financial statements prepared by other accountants, with increasing levels of confidence depending on the level of assurance provided by the accountant who prepared them.  Audited and reviewed financial statements can be used with "assurance," while "compiled financial statements" (those where the CPA involved does not express an opinion on their accuracy) are the least reliable and should be used "with caution," though "[t]hey generally are better than financial statements which have had no association with a CPA."  Tyler J. Bowles & W. Cris Lewis, *A Note on the Credibility of Financial Data Used in Lost-Profit Appraisals*, Litig. Econ. Dig., Spring 1996, at 51 (Bass Dec. Ex. 10); *see also* AICPA, AR Section 80, *Compilation of Financial*

---

[4] Available at https://us.aicpa.org/content/dam/aicpa/research/standards/codeofconduct/downloadabledocuments/2014december15contentasof2014june23codeofconduct.pdf.

[5] Available at https://egrove.olemiss.edu/cgi/viewcontent.cgi?article=1026&context=aicpa_guides.

*Statements* (2016) at 2521.[6] [REDACTED] Finally, reliability concerns are particularly acute when calculating lost profits for newly established businesses (like SIS's EndoWrist business), because "less data are likely to be available," meaning the accountant may "need to make more assumptions." AICPA Lost Profits, at 51. But "[a]s in other areas, the practitioner needs to ensure that there is an adequate basis for the assumptions made." *Id.*

Applying Rules 702 and 703 in light of these accounting principles, courts regularly exclude the opinions of accountants who rely on unreliable evidence to form their opinions. *See, e.g.*, *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3509384, at *5 (N.D. Cal. June 3, 2015) (preventing an accountant expert from relying on the opinion of a technical expert because CPAs would not "normally rely" on such information); *In re Imperial Credit Indus.*, 252 F. Supp. 2d at 1012–13 & n.5 (excluding accounting expert's opinion that relied on excerpts "from an opinion given in adversarial litigation" that lacked "independent indicia of reliability" and was "not of a type reasonably relied upon by accountants in forming audit opinions").

In the same vein, courts regularly question damages estimates that simply "assume[]" a plaintiff's business projections are accurate, without any "independent assessment of [their] validity." *Magnetar Techs. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1159 (9th Cir. 2015) (criticizing expert damages estimate that "only compared [plaintiff's] actual results versus their business plan, which showed that they did not achieve their business plan," and "did not delve into the merits of the projected results" (quotation and alteration omitted)); *Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*, 2019 WL 13045054, at *4 (C.D. Cal. Feb. 28, 2019) (rejecting expert damages calculation that "relied solely" on an "unverified estimate" from plaintiff); *cf. Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir. 2005) (Easterbrook, J.) (affirming district court's exclusion of corporate plaintiff's sales projections, used to show damages from breach of contract). Underlying these lines of cases is

[6] Available at https://us.aicpa.org/content/dam/aicpa/research/standards/compilationreview/downloadabledocuments/ar-00080.pdf.

skepticism of relying on projections by self-interested parties. *See, e.g.*, *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp. 2d 622, 695–96 (E.D. Pa. 2003) (noting that plaintiff's president "had even more of an incentive than an independent expert making a projection, to inflate his own predictions of [product] sales and the ease with which [the products] could be produced and marketed").

In constructing his estimates of SIS's lost profits, Bero relies on "data" that no CPA would ever use. Bero largely based his assumptions on oral information provided to him by SIS and SIS's other experts. No documentary evidence was provided to Bero to support the information he received, and he has taken no steps to confirm the independent reliability of the information. The most problematic assumptions he makes include the following.

[redacted]

[redacted]

[7] Intuitive is simultaneously moving to exclude the opinions of Sargent on this and the next topic on which Bero also relies exclusively on her unsupported guesses.



[redacted]

As the preceding paragraphs demonstrate, Bero does not rely on anything close to what a reasonable accountant would in forming his opinion. He does not rely on accountant-prepared financial statements (even "compiled" ones, which accountants still view cautiously). [redacted]

[redacted]

[redacted] "Where an expert bases her opinion on – or simply repeats – the unreliable opinion of another expert, a district court may properly exclude the first expert's testimony." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 10434367, at *2 (N.D. Cal. Jan. 23, 2017) (citations omitted).

Multiple inputs into Bero's damages model are simply unsupported assumptions. If any one of Bero's assumptions lacks a reliable basis, Bero's entire model falls. This requires exclusion of Bero's lost profits damages.

**B. Bero's Estimates Are Insufficiently Grounded In The Record.**

Bero's opinion also fails to account for important aspects of the record that render his damages estimates unreliable. To be admissible, an expert's opinion must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (quoting *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985)). Accordingly, expert damage estimates not grounded in the real world are "so incomplete as to be inadmissible as irrelevant." *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 973–74 (C.D. Cal. 2012) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 806–07 (9th Cir. 1988) (affirming exclusion of two expert damages estimates

that "ha[d] scant basis in the record . . . rest[ing] on unsupported assumptions and unsound extrapolation"). Bero's damages estimates fail to account for the following facts in the record:

[redacted]

[redacted]

[redacted]

---

8 [redacted]

[redacted]

Taken individually, any of these issues would be sufficient to render Bero's damages estimates inadmissible. Taken collectively, inadmissibility is clear. *See, e.g.*, *Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1368 (7th Cir. 1996) (granting a new trial because "[e]ach one of the[] steps in the [expert's] estimation of [plaintiff's] lost profits involve[d] a substantial leap of faith . . . and taken collectively, which they must be to arrive at this sizable award, they render the award unreasonably speculative, excessive and unsupported by the evidence").

**C. Bero's Lanham Act Damage Estimate Should Be Excluded.**

Bero's estimated damages for SIS's Lanham Act claim should also be excluded. Those damages are estimated almost exactly the same way as his antitrust damages. [redacted]

These damages estimates do not satisfy the *Daubert* standard. [redacted] Thus, apart from the per-unit profit figures, all of the flaws discussed in the prior two sections render this opinion inadmissible as well.

[redacted] Under the Lanham Act, "[d]isgorgement is limited to 'the financial benefit [defendant] received because of the advertising.'" *Grasshopper House, LLC v. Clean & Sober Media, LLC*, 2021

WL 3702243, at *2 (9th Cir. Aug. 20, 2021); *see also Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 514 (5th Cir. 2020) ("Disgorgement of profits is appropriate only if . . . defendant's profits are attributable to the Lanham Act violation."). Accordingly, courts reject as insufficient to establish damages expert damage estimates that fail to attribute a link between claimed damages and the alleged Lanham Act violation. *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F. Supp. 3d 1117, 1144–46 (S.D. Cal. 2020); *3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 973 (D. Minn. 2005). The Court should do the same here.

## IV. CONCLUSION

For the reasons set forth above, the Court should exclude all of Bero's damage estimates.

DATED: March 23, 2023

COVINGTON & BURLING LLP

By: */s/ Kathryn E. Cahoy*
Kathryn E. Cahoy

*Attorney for Intuitive Surgical, Inc.*

*Additional Counsel for Intuitive Surgical, Inc.*

ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, CA 95032
Tel: (408) 477-9690

KAREN HOFFMAN LENT (*Pro Hac Vice*)
Email: karen.lent@skadden.com
MICHAEL H. MENITOVE (*Pro Hac Vice*)
Email: michael.menitove@skadden.com
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2040

KATHRYN E. CAHOY (SBN 298777)
Email: kcahoy@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

SONYA WINNER (SBN 200348)
Email: swinner@cov.com
CORTLIN H. LANNIN (SBN 266488)
Email: clannin@cov.com
ISAAC D. CHAPUT (SBN 326923)
Email: ichaput@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400

San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

ANDREW LAZEROW (*Pro Hac Vice*)
Email: alazerow@cov.com
ASHLEY E. BASS (*Pro Hac Vice*)
Email: abass@cov.com
JOHN KENDRICK (*Pro Hac Vice*)
Email: jkendrick@cov.com
COVINGTON & BURLING LLP
One City Center 850 Tenth Street NW
Washington DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291