```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3
 4   SURGICAL INSTRUMENT SERVICE       )
     COMPANY, INC.,                    )
 5                                     )
            Plaintiff,                 )
 6                                     )
            vs.                        ) Case No.
 7                                     ) 3:21-CV-03496-VC
     INTUITIVE SURGICAL, INC.,         )
 8                                     )
            Defendant.                 )
 9   _____    )
10
11
12      VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED
13             DEPOSITION OF GREG POSDAL
14     30(B)(6), SURGICAL INSTRUMENT SERVICE COMPANY
15
16              Tuesday, November 1, 2022
17       Remotely Testifying from Phoenix, Arizona
18
19
20
21
22
23   Stenographically Reported By:
24   Hanna Kim, CLR, CSR No. 13083
25   Job No. 5541334-A
```

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3
 4   SURGICAL INSTRUMENT SERVICE      )
     COMPANY, INC.,                   )
 5                                    )
             Plaintiff,               )
 6                                    )
             vs.                      ) Case No.
 7                                    ) 3:21-CV-03496-VC
     INTUITIVE SURGICAL, INC.,        )
 8                                    )
             Defendant.               )
 9   _____)
10
11
12          Virtual videoconference video-recorded
13   deposition of GREG POSDAL, in the capacity of a
14   30(B)(6) witness of Surgical Instrument Service
15   Company, Remotely Testifying from Phoenix, Arizona,
16   on Tuesday, November 1, 2022, beginning at
17   9:01 a.m., PDT, and concluding at 10:52 a.m.,
18   pursuant to the stipulations of counsel thereof,
19   before Hanna Kim, CLR, Certified Shorthand Reporter,
20   No. 13083.
21
22
23
24
25
```

```
 1      REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:
 2
 3   For Plaintiff and the Witness:
 4          HALEY GUILIANO
 5          BY:  RICHARD T. McCAULLEY, ESQ.
 6          111 North Market Street, Suite 900
 7          San Jose, California 95113
 8          669.213.1071
 9          richard.mccaulley@hglaw.com
10
11   For Hospital Plaintiffs and the Proposed Class:
12          BONI, ZACK & SNYDER LLC
13          BY:  JOSHUA D. SNYDER, ESQ.
14          15 St. Asaphs Road
15          Bala Cynwyd, Pennsylvania 19004
16          610.822.0203
17          jsnyder@bonizack.com
18
19
20
21
22
23
24
25
```

```
 1              REMOTE APPEARANCES OF COUNSEL:
 2
 3   For Defendant Intuitive Surgical:
 4           COVINGTON & BURLING LLP
 5           BY:  ISAAC D. CHAPUT, ESQ.
 6           BY:  AUSTIN MARTIN, ESQ.
 7           Salesforce Tower
 8           415 Mission Street, Suite 5400
 9           San Francisco, California 94105-2533
10           415.591.7020
11           ichaput@cov.com
12           amartin@cov.com
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1  sterile processing, there's another set of eyes on
 2  it to make sure that it appears to be safe for work.
 3  At that time, they're pulled out.
 4          With the Intuitive instruments, there's a
 5  forced inspection at ten.  And we were willing to           09:48:01
 6  abide by that same inspection process.
 7     Q.   Do you believe there would have been a
 8  regulatory issue with adding 19 lives to an
 9  instrument as opposed to just adding ten?
10          MR. SNYDER:  Objection to form.                     09:48:24
11          THE WITNESS:  No.
12  BY MR. CHAPUT:
13     Q.   Why not?
14     A.   Well, Intuitive's own 510(k) submission
15  called this item substantially equivalent to               09:48:40
16  predicate devices, and those are the devices that
17  we've repaired for decades.
18     Q.   Why does that mean that there's no
19  regulatory issue with adding 19 lives to an
20  instrument as opposed to the ten that it's initially       09:49:01
21  set for?
22     A.   There are --
23          MR. SNYDER:  Objection to form.
24          THE WITNESS:  There are no regulations for
25  that.  The FDA stayed out of repair.  They don't --        09:49:09
```

Page 44

```
 1    we've had -- it has not been a necessity to deal
 2    with any regulatory issues with re- -- regarding the
 3    repair of surgical instrumentation.
 4    BY MR. CHAPUT:
 5        Q.   So I -- I think implicit in what you just      09:49:25
 6    said is that SIS has determined that its reset
 7    process is a repair; is that correct?
 8             MR. McCAULLEY:  Objection to form.
 9             THE WITNESS:  The -- the reset process
10    is -- we've used repair as kind of an umbrella term.   09:49:39
11    That could be resetting the chip, could be repairing
12    an instrument.  So I don't -- I don't know if that
13    answers your question specifically.  But simply
14    evaluating the instrument and resetting the chip
15    wouldn't technically be a repair.  No repair was      09:50:03
16    done.  The chip was reset.  So it would depend on
17    the condition and what services were performed.
18    BY MR. CHAPUT:
19        Q.   Okay.  I'm just -- I'm just trying to
20    reconcile these questions because initially you said  09:50:27
21    there's -- there's no problem because the FDA has
22    stayed out of repair, but you also just said that if
23    there's a chip reset without anything else done,
24    that that doesn't count as repair.  So I -- I'm --
25    what I'm trying to understand is, how did SIS come    09:50:44
```

Page 45