SONYA D. WINNER (SBN 200348)
Email: swinner@cov.com
CORTLIN H. LANNIN (SBN 266488)
Email: clannin@cov.com
ISAAC D. CHAPUT (SBN 326923)
Email: ichaput@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, CA 95032
Tel: (408) 477-9690

*Attorneys for Defendant/Counterclaimant
Intuitive Surgical Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC.,<br><br>　　　　　　　Plaintiff/<br>　　　　Counterclaim-Defendant<br><br>vs.<br><br>INTUITIVE SURGICAL, INC.,<br><br>　　　　　　　Defendant/<br>　　　　Counterclaim-Plaintiff | Case No.: 3:21-cv-03496-VC<br><br>**INTUITIVE SURGICAL INC.'S MOTION TO EXCLUDE TESTIMONY OF DR. RUSSELL LAMB**<br><br>Hearing Date: June 8, 2023<br>Hearing Time: 1:00 PM PST<br>Hearing Place: Courtroom 4<br><br>Judge: The Honorable Vince Chhabria |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 3

III. ARGUMENT ................................................................................................................... 4

    A. Dr. Lamb Has Not Reliably Applied The SSNIP Test. .......................................... 4

    B. Dr. Lamb Has Not Reliably Assessed Whether Intuitive's Prices And Margins Are Indicative Of Monopoly Power. ....................................................... 7

    C. Dr. Lamb Should Not Be Permitted to Offer Opinions About Product Safety That He Is Not Qualified to Offer. ................................................................. 10

IV. CONCLUSION .............................................................................................................. 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aggrenox Antitrust Litig.*,
  199 F. Supp. 3d 662, 667 (D. Conn. 2016) ............................................................................... 9

*Allen v. Dairy Mktg. Servs., LLC*,
  2013 WL 6909953 (D. Vt. Dec. 31, 2013) ................................................................................ 5

*D.F. ex rel. Amador v. Sikorsky Aircraft Corp.*,
  2017 WL 4922814 (S.D. Cal. Oct. 30, 2017) .......................................................................... 10

*Avila v. Willits Env't Remediation Tr.*,
  633 F.3d 828 (9th Cir. 2011) ................................................................................................... 10

*Carpenter Tech. Corp. v. Allegheny Techs. Inc.*,
  2011 WL 4528303 (E.D. Pa. Sept. 30, 2011) ............................................................................ 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) .........................................................................................................*passim*

*Fed. Trade Comm'n v. Penn State Hershey Med. Ctr.*,
  838 F.3d 327 (3d Cir. 2016) ...................................................................................................... 5

*Gayton v. McCoy*,
  593 F.3d 610 (7th Cir. 2010) ................................................................................................... 10

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) .................................................................................................................. 4

*Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*,
  386 F.3d 485 (2d Cir. 2004) ...................................................................................................... 8

*Kaiser Found. v. Abbott Lab'ys*,
  2009 WL 3877513 (C.D. Cal. Oct. 8, 2009) ......................................................................... 7, 8

*Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
  588 F.3d 908 (6th Cir. 2009) ................................................................................................. 4, 5

*Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*,
  838 F.3d 421 (3d Cir. 2016) ...................................................................................................... 8

*In re Opana ER Antitrust Litig.*,
  2021 WL 2291067 (N.D. Ill. June 4, 2021) ............................................................................... 9

*Rebotix Repair, LLC v. Intuitive Surgical, Inc.*,
  2022 WL 3225366 (M.D. Fla. Aug. 10, 2022) ...................................................................... 6, 9

*In re Remeron Direct Purchaser Antitrust Litig.*,
    367 F. Supp. 2d 675 (D.N.J. 2005) .................................................................................... 7

*Teradata Corp. v. SAP SE*,
    570 F. Supp. 3d 810, 838 (N.D. Cal. 2021) ....................................................................... 4

*United States v. Eastman Kodak Co.*,
    63 F.3d 95 (2d Cir. 1995) ................................................................................................... 7

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*,
    254 F.3d 706 (8th Cir. 2001) ............................................................................................ 10

**Other Authorities**

Federal Rules of Evidence Rule 702 ............................................................................................ 1, 4

Rule 702(d) ..................................................................................................................................... 5

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 8, 2023, at 1:00 PM, or as soon thereafter as available, in the courtroom of the Honorable Vince G. Chhabria, located at 450 Golden Gate Avenue, Courtroom 4, 17th Floor, San Francisco, CA 94102, Defendant/Counterclaim-Plaintiff Intuitive Surgical, Inc. will and hereby does move for an order excluding certain opinions of Dr. Russell Lamb, proffered as an expert witness for Surgical Instrument Services Company, Inc. ("SIS").

This Motion is based on this Notice of Motion and Memorandum of Points and Authorities, the accompanying Declaration of Ashley Bass and attached exhibits, any reply or other supplemental briefing and/or evidence submitted, and the oral argument of counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Intuitive respectfully submits this motion pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude certain opinions of Dr. Russell Lamb, an economist proffered by SIS to opine on the relevant antitrust market, whether Intuitive possessed monopoly power in the relevant antitrust market, and whether Intuitive's conduct resulted in harm to competition.[1]

## I. INTRODUCTION

Dr. Lamb claims to undertake certain economic analyses in his expert report that are not reliable. He also opines on certain issues that are outside his area of expertise. These opinions should be excluded, as described further below.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

---

[1] For the avoidance of doubt, Intuitive reserves the right to raise additional objections to Dr. Lamb's testimony at a later date. This brief focuses on issues fit for resolution at this stage of the case.

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████ But he should not be permitted to bolster those opinions with a bootstrapped theory about the potential results of an economic test he never actually performed.

█████████████████████████████████████
██████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████ This is especially the case given that Intuitive operates in a technology market requiring continual investment in research and development.

*Third*, Dr. Lamb has offered certain opinions in his expert report that are outside his expertise as an economist, which he should not be permitted to proffer. For example, ████████
████████████████████████████████████████

———————————————

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
██████████████████████████████

2

[redacted]

## II. FACTUAL BACKGROUND

Dr. Lamb is an economic consultant. *Id.* ¶ 1. SIS offers Dr. Lamb to opine on various economic issues associated with SIS's antitrust claims. *Id.* ¶ 7. This motion addresses only certain specific opinions offered in his reports.

[redacted]

[REDACTED]

### III. ARGUMENT

Expert witness testimony must (1) come from a qualified expert; (2) be helpful to the factfinder; (3) be based on sufficient facts or data; (4) use reliable principles and methods; and (5) reliably apply those principles and methods to the facts of the case. Fed. R. Evid. 702. The court's "gatekeeping" role requires evaluating both the reliability of the expert's methods and the connection between their conclusions and the facts on which those conclusions are based. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The party proffering expert testimony has the burden of showing the testimony is admissible by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

[REDACTED]

When an expert offers an opinion on market definition, courts routinely exclude expert opinions that do not reliably apply the SSNIP test. *See, e.g.*, *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 918 (6th Cir. 2009) (expert's "own version" of SSNIP test not reliable because "it has not been tested; has not been subjected to peer review and publication; there are no standards controlling it; and there is no showing that it enjoys general acceptance within the scientific community"); *Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 838 (N.D. Cal. 2021) (excluding economist testimony because the expert's "quantitative analysis, which he uses to corroborate his

qualitative analysis, is flawed because contrary to his claims, [the expert] does not apply a 'hypothetical monopolist' test ('HMT') as contemplated in the Department of Justice and the Federal Trade Commission's ('FTC') Horizontal Merger Guidelines"); *Allen v. Dairy Mktg. Servs., LLC*, 2013 WL 6909953, at *7, 9 (D. Vt. Dec. 31, 2013) (excluding purported SSNIP opinion for failure to perform a critical loss analysis); *cf. Fed. Trade Comm'n v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 342, 344–45 (3d Cir. 2016) (reversing district court for misapplying SSNIP test).  Here, Dr. Lamb has not even attempted to undertake the calculations the SSNIP test requires, let alone applied the methodology in a reliable way.

In *In re Live Concert Antitrust Litigation*, the court confronted a similar issue.  863 F. Supp. 2d 966 (C.D. Cal. 2012).  There, the proffered expert economist chose to apply the SSNIP test, describing the test in his report with citations to the Horizontal Merger Guidelines.  *Id.* at 986–87.  The court "assume[d] that the SSNIP methodology may, under appropriate circumstances, provide an acceptable framework with which to define a relevant product market for purposes of antitrust analysis," but upon review of the expert's report, it was "apparent" that the expert did not reliably apply the methodology to the facts of the case.  *Id.* at 987.  The expert had begun his analysis with his assumed relevant product market and "looked for corroborating evidence without meaningfully testing this assumption."  *Id.* at 988.  The court emphasized that it was "focus[ed] . . . exclusively on [the expert's] methodology, not his results," and found that his "failure to analyze, in a meaningful way, the possibility of a narrower or broader product market renders his purported application of the SSNIP methodology unreliable under Rule 702(d)."  *Id.* at 988–89.

[redacted]



In the *Rebotix* case, Intuitive moved to strike Dr. Lamb's market definition opinions, including based on his improper application of the SSNIP test. The court denied the motion, finding that he merely used the SSNIP analytical framework from which to build his opinions based on *other* evidence. *Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, 2022 WL 3225366, at *5–6 (M.D. Fla. Aug. 10, 2022). Intuitive's request here is not inconsistent with that decision. Intuitive is not asking this Court to strike

Dr. Lamb's market definition opinions on *Daubert* grounds. Intuitive is requesting only a holding that



If Dr. Lamb's analysis of prices and margins were accepted, no company that is required to invest heavily in R&D on an ongoing basis could escape an accusation that it wields monopoly power in charging prices that permit it to do so. The law does not support such an approach.

Courts readily recognize that "[c]ertain deviations between marginal cost and price, such as those resulting from high fixed costs, are not evidence of market power." *United States v. Eastman Kodak Co.*, 63 F.3d 95, 109 (2d Cir. 1995); *see also Kaiser Found. v. Abbott Lab'ys*, 2009 WL 3877513, at *9 (C.D. Cal. Oct. 8, 2009) (recognizing that price difference between a brand drug and generic equivalent reflects the substantial investments by the brand manufacturer, not "supra-competitive pricing"); *In re Remeron Direct Purchaser Antitrust Litig.*, 367 F. Supp. 2d 675, 681 n.10 (D.N.J. 2005) (rejecting plaintiff's economic expert's analysis because "without evidence that sheds

light on material factors such as [defendant]'s price relative to its total costs (marginal *and* fixed) and whether output was restricted, monopoly power cannot be found as a matter of law"); 2B Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶¶ 504(b), 516(g) (4th ed. 2014 & Supp. 2021) ("No matter how accurately measured, of course, a substantial excess of price over marginal cost does not necessarily bring excess returns on investment.  A firm generates excess profit only if price exceeds its average total cost, including its cost of capital.") (hereinafter "Areeda").

This principle was acknowledged in *Kaiser Foundation v. Abbott Laboratories*, 2009 WL 3877513 (C.D. Cal. Oct. 8, 2009).  In that case, which involved an alleged relevant product market limited only to the defendant's drug and its corresponding generic (excluding comparable therapeutic substitutes), it was suggested that the defendant's alleged supracompetitive pricing was evidence of monopoly power.  But, finding that "the pricing difference between a brand name drug . . . and its generic equivalent does not reflect supra-competitive pricing, but the fact that companies that produce generics do not incur the substantial research and development expenses incurred by companies that develop and produce brand name drugs," the court granted summary judgment for failure to show monopoly power.  *Id.* at *9.

Consistent with *Kaiser*, courts routinely reject analyses of market power like Dr. Lamb's that do not appropriately consider the full scope of a defendant's costs.  *See, e.g.*, *Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 434, 435 (3d Cir. 2016) (rejecting expert reports "devoid of any substantiated quantitative analysis showing that Defendants maintained high price-cost margins or that Defendants markedly restricted output" and holding that a claim that a defendant set supracompetitive prices requires "an analysis of the defendant's costs"); *Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485, 500 (2d Cir. 2004) ("[A]bsent from plaintiffs' [expert report] is any analysis of [defendant's] costs.  Hence, we do not know whether the allegedly elevated prices led to an abnormally high price-cost margin."); *Carpenter Tech. Corp. v. Allegheny Techs. Inc.*, 2011 WL 4528303, at *12 (E.D. Pa. Sept. 30, 2011) ("[plaintiff] has offered no evidence that [defendant] has

8

achieved an abnormally high price-cost margin . . . . [N]either can [plaintiff] turn to any analysis from its expert: when questioned whether he had calculated the competitive price level in the [relevant market], [the expert] stated that he had not.").[5]

[REDACTED]

In *Rebotix*, Intuitive moved to exclude Dr. Lamb's opinion on monopoly power, including because he improperly failed to consider Intuitive's total costs in asserting that its margins demonstrated monopoly power. *See Rebotix*, 2022 WL 3225366, at *7. The *Rebotix* court acknowledged that federal district courts have reached differing conclusions on whether fixed costs should be taken into account in such an assessment. *Id.* The court did not attempt to resolve the issue, however, because Dr. Lamb had in that case attempted to explain in his *Rebotix* deposition why he thought Intuitive's profit margins were high even taking costs like investments into account. *Id.* at *8.

[REDACTED]

---

[5] *But cf. In re Aggrenox Antitrust Litig.*, 199 F. Supp. 3d 662, 667 (D. Conn. 2016); *In re Opana ER Antitrust Litig.*, 2021 WL 2291067, at *9 (N.D. Ill. June 4, 2021).

[6] Indeed, concluding that a high-fixed cost company has market power based on its margins "would be highly misleading for antitrust purposes." Areeda ¶ 504b. Accordingly, margin measures that do not account for fixed costs "can seldom be used explicitly in antitrust cases." Areeda ¶ 504.

[REDACTED]

██ ███████████████████████

Courts routinely exclude testimony from an expert whose opinion falls outside his or her relevant discipline. *See, e.g., Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011); *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715–16 (8th Cir. 2001) (finding reversible error where the district court admitted the testimony of an expert who, while qualified to testify on one topic, "sorely lacked the education, employment, or other practical personal experiences to testify as an expert" on topics outside his expertise); *see also Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("[W]e must look at each of the conclusions [the expert] draws individually to see if he has the adequate education, skill, and training to reach them.").

Dr. Lamb is an economist and should not be permitted to offer opinions beyond his expertise. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[8] ████████████████████████████████████████████████████████████████████████████████[9] This is exactly the kind of "beyond-the-field-of-expertise" testimony that courts routinely preclude. *See D.F. ex rel. Amador v. Sikorsky Aircraft Corp.*, 2017 WL 4922814, at *14–15 (S.D. Cal. Oct. 30, 2017) (collecting cases and distinguishing between an expert's lack of general expertise and particularized expertise).

---

[8] *See* Exhibits 1 and 5 to the Declaration of Andrew Lazerow, submitted in support of Intuitive's Motion To Exclude Testimony Of Philip J. Phillips (Phillips' Expert Reports).

[9] As shown in Intuitive's separate *Daubert* motion to exclude the testimony of Phillips, Phillips' opinion is not reliable and should be excluded on additional grounds.

IV.     **CONCLUSION**

For the reasons set forth above, the Court should not permit Dr. Lamb to offer the opinions that:

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████

DATED:  March 23, 2023                           By:  */s/ Kathryn E. Cahoy*
                                                       KATHRYN E. CAHOY

                                                 *Attorney for Intuitive Surgical, Inc.*

*Additional Counsel for Intuitive Surgical, Inc.*

| | |
|---|---|
| ALLEN RUBY (SBN 47109) | KATHRYN E. CAHOY (SBN 298777) |
| allen@allenruby.com | Email: kcahoy@cov.com |
| ALLEN RUBY, ATTORNEY AT LAW | COVINGTON & BURLING LLP |
| 15559 Union Ave. #138 | 3000 El Camino Real |
| Los Gatos, CA 95032 | 5 Palo Alto Square, 10th Floor |
| Tel: (408) 477-9690 | Palo Alto, CA 94306-2112 |
| | Telephone: + 1 (650) 632-4700 |
| KAREN HOFFMAN LENT (*Pro Hac Vice*) | Facsimile: + 1 (650) 632-4800 |
| Email: karen.lent@skadden.com | |
| MICHAEL H. MENITOVE (*Pro Hac Vice*) | SONYA WINNER (SBN 200348) |
| Email: michael.menitove@skadden.com | Email: swinner@cov.com |
| SKADDEN, ARPS, SLATE, | CORTLIN H. LANNIN (SBN 266488) |
| MEAGHER & FLOM LLP | Email: clannin@cov.com |
| One Manhattan West | ISAAC D. CHAPUT (SBN 326923) |
| New York, NY 10001 | Email: ichaput@cov.com |
| Telephone: (212) 735-3000 | COVINGTON & BURLING LLP |
| Facsimile: (212) 735-2040 | Salesforce Tower |
| | 415 Mission Street, Suite 5400 |
| | San Francisco, California 94105-2533 |
| | Telephone: + 1 (415) 591-6000 |
| | Facsimile: + 1 (415) 591-6091 |
| | |
| | ANDREW LAZEROW (*Pro Hac Vice*) |
| | Email: alazerow@cov.com |
| | ASHLEY E. BASS (*Pro Hac Vice*) |
| | Email: abass@cov.com |

JOHN KENDRICK (*Pro Hac Vice*)
Email: jkendrick@cov.com
COVINGTON & BURLING LLP
One City Center 850 Tenth Street NW
Washington DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291