SONYA D. WINNER (SBN 200348)
Email: swinner@cov.com
CORTLIN H. LANNIN (SBN 266488)
Email: clannin@cov.com
ISAAC D. CHAPUT (SBN 326923)
Email: ichaput@cov.com
COVINGTON & BURLING LLP
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533

ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, CA 95032
Tel: (408) 477-9690

*Counsel for Intuitive Surgical, Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION | Case Nos. 3:21-CV-03825-VC; 3:21-cv-03496-VC<br><br>**DECLARATION OF DR. JAIME WONG IN SUPPORT OF INTUITIVE SURGICAL'S ADMINISTRATIVE MOTIONS TO SEAL MATERIALS FROM ITS SUMMARY JUDGMENT BRIEFS**<br><br>Judge:  Hon. Vince Chhabria |
| THIS DOCUMENT RELATES TO:<br>  ALL ACTIONS | |
| SURGICAL INSTRUMENT SERVICE COMPANY, INC.,<br>                Plaintiff/Counter-Defendant,<br>    vs.<br>INTUITIVE SURGICAL, INC.,<br>                Defendant/Counter-Plaintiff. | |

I, DR. JAIME WONG, declare as follows:

1.      My name is Dr. Jaime Wong. I am a Senior Vice President and Senior Medical Officer at Intuitive Surgical, Inc. ("Intuitive"). I have reviewed the material that Intuitive seeks to maintain under seal and that I understand was submitted in connection with its Summary Judgment Briefs in *In re: da Vinci Surgical Robot Antitrust Litigation* ("*In re da Vinci*"), N.D. Cal., No. 3:21-cv-03825-VC, and *Surgical Instrument Service Company, Inc.* ("*SIS*"), N.D. Cal., No. 3:21-cv-03496-VC. I submit this declaration in support of sealing those materials. I am over eighteen years of age and am fully competent to make this declaration. The facts stated in this declaration are true and correct and are based upon my personal knowledge unless otherwise stated.

2.      Intuitive designs and manufactures the da Vinci surgical systems, including da Vinci EndoWrist instruments. The design and manufacture of these systems were the culmination of many years of Intuitive's research and development efforts. Intuitive invested thousands of hours devising test protocols, running tests, and otherwise developing both the EndoWrist instruments and the da Vinci Standard, S, Si, SP, X, and Xi da Vinci surgical systems.

3.      Intuitive goes to great lengths to protect its engineering, research and development, testing, and technical information from competitors, potential competitors, and bad actors who could seek to misuse that information for improper purposes. Intuitive requires every employee to sign a confidentiality agreement. Proprietary information is disseminated internally only on a need-to-know basis. Employees are required to use passwords to access Intuitive files and other information security measures. Engineering areas are secured with key-cards, which are given only to authorized employees.

4.      Intuitive has expended significant resources in developing certain cybersecurity protocols and protections for the da Vinci systems, information about which appears in the materials I have reviewed and that I understand will be filed in the documents reflected at the end of this paragraph. These cybersecurity measures protect critical information, including information regarding EndoWrist movement control, instrument identification, activation of instrument electrocautery functions, da Vinci

1

DECLARATION OF DR. JAIME WONG IN SUPPORT OF                     CASE NO. 3:21-CV-03825-VC
INTUITIVE'S ADMINISTRATIVE MOTIONS TO SEAL                      CASE NO. 3:21-CV-03496-VC

movement control, and the da Vinci's camera feeds.  The public release of this information could enable bad actors to compromise those security measures and put patients at risk.

| Case | Document | Excerpt |
|---|---|---|
| SIS | Cahoy Declaration Ex. 85 (Expert Report of Paul D. Martin, Ph.D.) | Page 19, redacted portions of ¶ 53<br><br>Page 25, redacted portions of ¶ 67 |
| SIS | Cahoy Declaration Ex. 90 (Intuitive-00506505 excerpts) | Pages Intuitive-00506539–42, redacted portions<br><br>Pages Intuitive-00506593–94, redacted portions |

5. Intuitive has expended significant resources in research and development for core technology changes, information about which appears in the materials I have reviewed and that I understand have been filed in the documents reflected at the end of this paragraph.  These documents discuss Intuitive's exploration of core technology changes.  Core technology changes involve multi-year investment cycles, and for competitive reasons, Intuitive does not publicly reveal details about them.  If information about these projects were made public, Intuitive's competitors would gain insight into Intuitive's future business strategies and product design and could thereby adjust their own business strategies in response.  That would harm Intuitive's competitive standing and result in potential loss of Intuitive's significant investments in research and design.

| Case | Document | Excerpt |
|---|---|---|
| SIS | Cahoy Declaration Ex. 85 (Expert Report of Paul D. Martin, Ph.D.) | Page 9, redacted portions of ¶ 24<br><br>Page 11, redacted portions of ¶ 31<br><br>Redacted portions of pages 26–29<br><br>Page 31, redacted portions of ¶ 79 |
| SIS | Cahoy Declaration Ex. 89 (Expert | Page 3, redacted portions of ¶ 14 |

| | Rebuttal Report of Kurt Humphrey) | |

6. Intuitive has expended significant resources in developing certain proprietary products and processes, information about which appears in the materials I have reviewed and that I understand have been filed in the documents reflected at the end of this paragraph. Disclosure of this confidential information would result in unfair harm to Intuitive's business and harm Intuitive's competitive standing because Intuitive has made substantial investments in developing and manufacturing these procedures, protocols, and products, and making this information publicly available would enable competitors to use the information without making similar investments. The materials used in and processes and specifications used to manufacture Intuitive's EndoWrist instruments, Intuitive's internal testing and analysis of products, and the protocols, processes, and thresholds that have been developed and cleared for that testing, represent valuable information. Disclosure of this information could cause Intuitive competitive harm by allowing its competitors to short-cut and unfairly take advantage of information based on Intuitive's research and development to improve their products without making commensurate investments in their own research.

| Case | Document | Excerpt |
|---|---|---|
| *In re Da Vinci* | Cahoy Declaration Ex. 3 (Howe 1/18/23 Larkin Rpt) | Page 28, Figure 6<br><br>Page 36, Figure 9<br><br>Page 37, Figure 10<br><br>Page 84, Figure 20<br><br>Page 88, Figure 21<br><br>Page 89, redacted portions of ¶ 174 |
| *SIS* | Cahoy Declaration Ex. 75 (Howe 1/18/23 *SIS* Rpt) | Page 29, Figure 6<br><br>Page 37, Figure 9<br><br>Page 38, Figure 10 |

7. Certain sensitive and non-public financial information appears in the materials I have reviewed and that I understand have been filed in the documents reflected at the end of this paragraph. These documents contain confidential Intuitive financial information that Intuitive does not publicly report. Disclosure of this confidential information would result in unfair harm to Intuitive's business and harm Intuitive's competitive standing because it would give other parties insight into Intuitive's business and product performance and investments and use that competitive intelligence to further their own pricing or investment strategies without investing similar resources.

| Case | Document | Excerpt |
|---|---|---|
| *SIS* | Cahoy Declaration Ex. 81 (Bero Report, Dec. 2, 2022) | Schedule 6.0, page 1 of 2: Data A for columns 2014-2022 and for column "2020-2021 decline"; Data D for columns 2023-2025; Data F for columns 2014-2022.<br><br>Schedule 8.0, page 1 of 1: Data A for all columns; Data B for all columns.<br><br>Schedule 8.1, page 1 of 7: Data A for Units and all columns.<br><br>Schedule 8.1, page 2 of 7: Data A for Units, Total units, and all columns.<br><br>Schedule 8.1, page 5 of 7: Data C for Net Sales dollars and all columns.<br><br>Schedule 8.1, page 6 of 7: Data C for Net Sales dollars, Total net sales dollars, and all columns.<br><br>Schedule 8.2, page 1 of 7: Data A for Units and all columns.<br><br>Schedule 8.2, page 2 of 7: Data A for Units, Total units, and all columns.<br><br>Schedule 8.2, page 5 of 7: Data B for Net Sales dollars and all columns.<br><br>Schedule 8.2, page 6 of 7: Data B for Net Sales dollars, Total net sales dollars, and all columns.<br><br>Schedule 9.0, page 1 of 2: Data A for all columns; Data D for all columns.<br><br>Schedule 9.1, page 1 of 1: Data A labels and for all columns; Data B labels and for all columns.<br><br>Schedule 11.0, page 1 of 1: Data A, B, and C for all columns in the tables labeled "Units" and "Costs." |

|  | Schedule 11.1, page 1 of 5: Data A for Units and all columns. |
|---|---|
|  | Schedule 11.1, page 2 of 5: Data A for Units, Total units, and all columns. |
|  | Schedule 11.1, page 3 of 5: Data C for Costs and all columns. |
|  | Schedule 11.1, page 4 of 5: Data C for Costs, Total costs, and all columns. |
|  | Schedule 11.2, page 1 of 5: Data A for Units and all columns. |
|  | Schedule 11.2, page 2 of 5: Data A for Units, Total units, and all columns. |
|  | Schedule 11.2, page 3 of 5: Data C for Costs and all columns. |
|  | Schedule 11.2, page 4 of 5: Data C for Costs, Total costs, and all columns. |
|  | Schedule 13.0, page 1 of 1: Data A, B, and C for all columns in the tables labeled "Units" and "Net sales dollars." |
|  | Schedule 13.1, page 1 of 4: Data A for Units and all columns; Data B (Total units) for all columns. |
|  | Schedule 13.1, page 2 of 4: Data A for Net sales dollars and all columns; Data B (Total net sales dollars) for all columns. |
|  | Schedule 13.1, page 3 of 4: Data B for ASP and all columns, but not Data B for Total ASP. |
|  | Schedule 13.2, page 1 of 4: Data A for Units and all columns; Data B (Total units) for all columns. |
|  | Schedule 13.2, page 2 of 4: Data A for Net sales dollars and all columns; Data B (Total net sales dollars) for all columns. |
|  | Schedule 13.2, page 3 of 4: Data B for ASP and all columns, but not Data B for Total ASP. |
|  | Schedule 16.0, page 1 of 1: Data B for columns 2020-2022; Data C for columns 2020-2022. |

I declare under the laws of the United States that the foregoing is true and correct. Executed April 12, 2023.

Jaime Wong, M.D.