# Cahoy Dec. Ex. 74

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

```
 1                 UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                       SAN FRANCISCO DIVISION

 4

 5    IN RE: DA VINCI SURGICAL ROBOT  ) Lead Case No.

 6    ANTITRUST LITIGATION            ) 3:21-cv-03825-VC

 7    _____ )

 8    THIS DOCUMENT RELATES TO:       ) Case No.

 9    ALL CASES                       ) 3:21-cv-03496-VC

10    _____ )

11    SURGICAL INSTRUMENT SERVICE     ) **HIGHLY CONFIDENTIAL**

12    COMPANY, INC.,                  ) **ATTORNEYS' EYES ONLY**

13              Plaintiff,            )

14    vs.                             )

15    INTUITIVE SURGICAL, INC.,       )

16              Defendant.            )

17    _____ )

18

19         RULE 30(b)(6) VIDEOTAPED DEPOSITION OF INTUITIVE

20           SURGICAL, INC., TESTIMONY OF MARSHALL MOHR

21                    TAKEN NOVEMBER 7, 2022

22

23    REPORTED REMOTELY BY:

24    ANDREA L. CHECK, CSR No. 748, RPR, CRR

25    Notary Public
```

Page 61

1  Q. Okay. Was the decision to discontinue the Si
2  within the responsibilities of the pricing council?
3  A. Not solely, no. I think that's a decision
4  that would involve the executive group of the company,
5  including Gary.
6  Q. Okay. And you were involved in the decision
7  to discontinue the Si; is that correct?
8  A. Yes.
9  Q. And also with respect to the S robots, were
10 you involved with the decision to discontinue that
11 generation?
12 A. I don't recall. I'm not sure that I was.
13 Q. Okay. Focusing, then, on the Si, are you
14 aware of any studies showing surgeon dissatisfaction
15 with the Si that contributed to the decision to
16 discontinue that generation of robot?
17 MS. CAHOY: Objection to form.
18 THE WITNESS: Over the product's life there
19 are -- there's always differing views as to how the
20 product could be better, you know, could be -- or how
21 good it is. And so is there -- are there specific
22 papers or feedback from customers about the
23 dissatisfaction with some element of the Si? I'm sure
24 there are. Did they contribute to our decision to
25 discontinue the Si? That's not -- it's not clear.

1             Because, clearly, customers wanted a more
2    capable system, and that more capable system was the Xi.
3    And when we look at the utilization of Xi, it can be
4    used more broadly on a broader set of procedures in a
5    more effective way and, therefore, that did contribute
6    to our decision to discontinue the Si.  So if you want
7    to characterize that as the customers wanted something
8    more capable and that contributed to it, yes, that's
9    true.
10            Q.  (BY MR. SNYDER)  Are you aware of any
11   systematic effort by Intuitive Surgical to measure
12   surgeon satisfaction or dissatisfaction with the Si
13   robot?
14            MS. CAHOY:  Objection to form.
15            THE WITNESS:  We regularly solicit feedback
16   from surgeons.  They are the users of the system.  They
17   are in the best position to tell us how -- about their
18   experience.  We have engineering groups and sales groups
19   that go out and meet with surgeons to solicit their
20   views.  So, yes, that's a regular activity of the
21   company.
22            Q.  (BY MR. SNYDER)  Were there any reports or
23   analyses prepared by Intuitive Surgical measuring
24   surgeon satisfaction or dissatisfaction with the Si that
25   were reviewed in connection with the decision to

Page 70

REPORTER'S CERTIFICATE

I, ANDREA L. CHECK, CSR No. 748, Certified Shorthand Reporter, certify;

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony and all objections made were recorded stenographically by me and transcribed by me or under my direction;

That the foregoing is a true and correct record of all testimony given, to the best of my ability;

I further certify that I am not a relative or employee of any attorney or party, nor am I financially interested in the action.

IN WITNESS WHEREOF, I set my hand and seal this 17th day of November, 2022.

*Andrea Check*

ANDREA L. CHECK, CSR No. 748, RPR, CRR

Notary Public

P.O. Box 2636

Boise, Idaho 83701-2636

My Commission expires July 20, 2028.