SONYA D. WINNER (SBN 200348)
Email: swinner@cov.com
CORTLIN H. LANNIN (SBN 266488)
Email: clannin@cov.com
ISAAC D. CHAPUT (SBN 326923)
Email: ichaput@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, California 95032
Telephone: (408) 477-9690

*Attorneys for Defendant Intuitive Surgical, Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC.,<br><br>Plaintiff/Counterclaim-Defendant<br><br>vs.<br><br>INTUITIVE SURGICAL, INC.,<br><br>Defendant/Counterclaimant. | Lead Case No.: 3:21-cv-03496-AMO-LB<br><br>**REPLY IN SUPPORT OF MOTION OF INTUITIVE SURGICAL, INC. TO EXCLUDE TESTIMONY OF KURT HUMPHREY**<br><br>Hearing To Be Renoticed<br>Hearing Place: Courtroom 10<br><br>Judge: The Honorable Araceli Martínez-Olguín |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT .......................................................................................................................2

 A. Humphrey Cannot Offer Inadmissible Opinions on Motive and Intent, and His Recitation of Documents He Relied Upon in Forming Those Opinions Is Not Independently Admissible. ........................................................................................2

 B. Humphrey's Lack of Software Expertise Precludes Him from Offering Opinions on Software Encryption and Programming..............................................................5

 C. SIS Identifies No Reliable Basis or Methodology for Humphrey's Opinions That It Would Have Been Possible To Re-Set the X/Xi Use Counter Years Ago........................8

III. CONCLUSION..................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Daiwa, Ltd. v. Apparent, Inc.*,
  2015 WL 5304111 (N.D. Cal. Sept. 9, 2015) .................................................................8, 9, 10

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  613 F. Supp. 3d 1308 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) ................................2, 3, 5

*Dep't of Toxic Substances Control v. Technichem, Inc.*,
  2016 WL 1029463 (N.D. Cal. Mar. 15, 2016) .................................................................4

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) .................................................................8

*Montera v. Premier Nutrition Corp.*,
  2022 WL 1225031 (N.D. Cal. Apr. 26, 2022) .................................................................7

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) .................................................................2, 3

*Rodriguez v. GEICO Gen. Ins. Co.*,
  2021 WL 1056264 (M.D. Fla. Feb. 4, 2021) .................................................................5

*Rogers v. Raymark Indus., Inc.*,
  922 F.2d 1426 (9th Cir. 1991) .................................................................7

*Siqueiros v. Gen. Motors LLC*,
  2022 WL 74182 (N.D. Cal. Jan. 7, 2022) .................................................................4, 5

*Zetz v. Bos. Sci. Corp.*,
  2022 WL 17418450 (E.D. Cal. Dec. 5, 2022) .................................................................4

**Other Authorities**

Fed. R. Evid. 702 .................................................................4

I.        **INTRODUCTION**

SIS's proffered reverse engineering expert, Kurt Humphrey, offers two sets of opinions in this matter: (1) his opinions about Intuitive's "reason" and "primary concern" when selecting the encryption methodology for the use counter chip used in X/Xi EndoWrists; and (2) his opinion that, although the X/Xi encryption "requires substantially more computing resources to reverse engineer than the encryption of Si EndoWrists," it nonetheless would have been possible to break through that encryption to hack the use counters of X/Xi instruments years ago. Cahoy Dec. Ex. 9 (Dkt. No. 118.10) ¶¶ 14–16. None of these opinions is admissible.

SIS's Opposition (Dkt. No. 145) ("Opp.") does not dispute the legal proposition that expert testimony on intent, motive, or state of mind is inadmissible. The only remaining question on the first topic, therefore, is whether Humphrey's opinions fall into that forbidden territory. His report makes clear that they do. Speculation on Intuitive's "reason," "primary concern," and "motivation(s)" are littered throughout Humphrey's report. These are not proper subjects of expert testimony and should be excluded. And as SIS has identified no other opinions Humphrey offers on this general subject, his discussion of selective excerpts from a handful of documents, which he presented in support of his improper motive opinions, is not admissible standing alone.

As to the second topic, Humphrey lacks qualifications and a reliable methodology to offer opinions on the feasibility and possible timeline for breaking the X/Xi encryption. Humphrey admitted at his deposition that his "expertise tends to be more in the hardware, not the software side of things" and that he would rely on others for software-related aspects of reverse engineering. ██████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████ he "would have used one of [his] software experts," there is no evidence in the record that he "used" any other software expert in this case. Cahoy Dec. Ex. 10 (Dkt. No. 118.11) (Humphrey Dep.) at 123:16–124:15. Instead, he independently offers his views on the feasibility of breaking the X/Xi encryption and the timeline within which that would have been possible. He lacks the requisite experience to offer those opinions, and he identifies no reliable methodology employed in forming them.

## II.     ARGUMENT

### A.     Humphrey Cannot Offer Inadmissible Opinions on Motive and Intent, and His Recitation of Documents He Relied Upon in Forming Those Opinions Is Not Independently Admissible.

SIS does not dispute the long line of case law prohibiting expert witnesses from offering opinions on motive, intent, and reasoning. This testimony "intrudes on the province of the jury, who is capable of evaluating the same evidence and drawing conclusions without [the expert's] proffered testimony." *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021); *see also* Mot. (Dkt. No. 118) at 6–7. Because SIS does not dispute the law on this point, the only question is whether Humphrey's opinions tread into this improper territory. SIS's denials notwithstanding, they unquestionably do.

SIS's opposition brief reinforces what was clear from the face of Humphrey's report – that he seeks to offer opinions on these prohibited topics. As SIS explains in its opposition, Mr. Humphrey's opinion is that "'[p]reventing third parties from accessing the use counter was Intuitive's *primary concern* when it selected the encryption . . . .'" Opp. at 5 (quoting Cahoy Dec. Ex. 9 ¶ 16 (emphasis added)). SIS makes a puzzling assertion in a footnote that by "primary concern," Humphrey meant something more like "main objective" or "key factor." Opp. at 5 n.3. Whether he calls it a "primary concern," "main objective," or "key factor," an expert cannot testify as to the ultimate reason a company chose to implement a design change. That amounts to testimony on motive or state of mind and invades the province of the jury. *See Aya Healthcare Servs., Inc.*, 613 F. Supp. 3d at 1321–22; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony…'[t]he question of intent is a classic jury question and not one for the experts.'").

Contrary to SIS's assertion that this issue applies to only four paragraphs of Humphrey's report, *see* Opp. at 6, the problem permeates this entire section of the report. The summary of opinion quoted above corresponds to Section VI of his report, titled "Intuitive's *Reason for* Employing the More Robust Encryption and Security Features Was to Prevent Modification of the Use Counter." Cahoy Dec. Ex. 9

at 15 (emphasis added).[1]  The introductory sentence to the section reads, "[i]t is reasonable to explore Intuitive's *possible motivation(s)* in replacing the DS2505 EPROM with the Atmel CryptoRF EEPROM chip."  *Id.* ¶ 37 (emphasis added).  The rest of the section goes on to do just that.  Humphrey opines on Intuitive's supposed motives throughout the entire section, speculating, for example, on what he thinks was or was not a "a key factor or motivation in redesigning the X/Xi," the "most likely motive" for the change, and the company's purported motives, as discerned from his interpretation of a handful of individual employee emails.  *Id.* ¶¶ 42, 44, 47–55, 59.  This section encompasses twelve pages – more than a third – of Humphrey's expert report, and concludes with the statement, "[i]n sum …Intuitive's *driving concern* with encryption has been to prevent extension of the number of instrument lives."  *Id.* at ¶ 59 (emphasis added).

      The law is clear that this is not a proper subject of expert testimony, and the opinions articulated in Paragraph 16 and Section VI of Humphrey's opening report and Paragraphs 14 and 22 of his rebuttal report should be barred on that ground alone.  *See Aya Healthcare Servs., Inc.*, 613 F. Supp. 3d at 1320–21; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 547.

      Plaintiffs' effort to preserve Humphrey's right to testify about the documents he cites in support of his inadmissible opinions has no greater merit.  To the extent Section VI does anything other than offer inappropriate opinions on motive and intent, it simply catalogs a handful of emails that Humphrey claims support those opinions.  *See* Cahoy Dec. Ex. 9 § VI; *see also* Opp. at 5.  The documents he cites may or may not themselves be admissible independently – that is a question for another day.  But because the ultimate opinions on motive and state of mind for which Humphrey relies on the documents are not admissible, he has no legitimate basis to testify about them.[2]

---

[1] Section VI is one of two sections of Humphrey's report that set out his opinions and the bases for them.  Sections I-III of the report address preliminary material, such as his qualifications and prior testimony, and Section IV has three short paragraphs summarizing his opinions.  Section V addresses the encryption issue discussed below.  Section VI then sets out his opinion about the "reason" Intuitive selected the encryption method used for the X/Xi use counters.  Neither in Section VI nor elsewhere in the report does Humphrey identify any opinions to which the material in Section VI relates *other* than his opinion about Intuitive's "reason" and "primary concern."

[2] SIS does not claim that Humphrey has a basis to testify as a percipient witness to any of these documents, and he clearly does not.

SIS responds by contending that Humphrey can regurgitate the contents of the documents to explain his view of their "significance." Opp. at 6. That is precisely what the court barred in *Siqueiros*. While "[a]n expert may review the record evidence to extract factual bases from which to apply reliable methodologies in deriving an opinion," he cannot "restate or summarize record evidence and then state a conclusion without applying a methodology that is reliable and which evinces his/her expertise." *Siqueiros v. Gen. Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022). Rule 702 authorizes an expert to be called to testify about expert opinions; it does not envision an expert acting as nothing more than a mouthpiece for counsel to discuss documents that they believe support their arguments about the opponent's state of mind. *See Zetz v. Bos. Sci. Corp.*, 2022 WL 17418450, at *7 (E.D. Cal. Dec. 5, 2022); *Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016).

SIS finally contends that Mr. Humphrey's testimony on this topic should be allowed because he examines the "encryption design choice from a strictly engineering design perspective." Opp. at 5. But, again, the opinions he offers are not about engineering; they are about corporate intent, and the mere fact that the person offering the opinion is an engineer does not turn them into engineering opinions. Moreover, SIS's opposition and Humphrey's own testimony belie the notion that he was applying some sort of rigorous engineering design analysis, as opposed to *post hoc* characterization of a handful of documents supplied to him by counsel as potentially bearing on competitive intent. SIS does not dispute that a number of the documents he analyzed post-dated the X/Xi chip design process by many years, yet Humphrey identified no reliable engineering principle that would support considering these documents to determine a company's design rationale. Opp. at 5 n.2, 6; Cahoy Dec. Ex. 9 ¶¶ 41–42, 52, 55. Moreover, Humphrey admitted during his deposition that his experience with engineering design confirms that both "memory parameters" and "consistency on detection of electrical contacts" are factors in engineering design choices. Cahoy Supp. Dec. Ex. 13 at 97:5–98:24. But he gave no thought to those factors to offer an opinion about engineering design, even though the record demonstrates that these were in fact among the considerations that *did* drive Intuitive's encryption choices. *See* Cahoy Dec. Ex. 10 at 113:25–116:8 (discussing reference in one of Humphrey's cited documents for larger

memory requirement in X/Xi chip); Cahoy Dec. Ex. 3 (Dkt. No. 118.4) at 27:20–28:8 (Intuitive engineer testifying that the reason for switching to an RFID chip was "to ensure we had good consistency" and "a more reliable communication"). Humphrey's report also ignored documented patient safety justifications for the X/Xi encryption: Intuitive explained in a cybersecurity assessment submitted to the FDA that encryption mitigated against the risk of injection of false data leading to "incorrect motion control" and "critical" patient safety risks. Cahoy Dec. Ex. 4 (Dkt. No. 118.5) ¶ 52.

Expert testimony "cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Aya Healthcare Servs.*, 613 F. Supp. 3d at 1322. Humphrey's report makes clear that he is not applying any specialized knowledge on this issue, much less a reliable methodology. His opinions on the purported significance of a handful of documents supplied by counsel are nothing more than the arguments about the evidence masquerading as an expert report. He does what the Court, jury, or any factfinder can do – read excerpts from the documents and decide what if anything they mean for the ultimate issues. Courts reserve this function for the factfinder. *See Siqueiros*, 2022 WL 74182, at *9 (rejecting expert testimony where "the jury is in as good a position as the expert to draw conclusions from the evidence, and is capable of drawing its own inferences").

**B.  Humphrey's Lack of Software Expertise Precludes Him from Offering Opinions on Software Encryption and Programming.**

SIS's opposition confirms what Intuitive argued in its opening brief: He lacks expertise in software and thus cannot opine independently on the feasibility of breaking software encryption and re-programming the use counter.

As SIS admits, when asked whether he could have come up with a process to reverse engineer the X/Xi use counter himself, Humphrey testified, "Well it would have taken a team of us to do that. My expertise tends to be more in the hardware, not the software side of things, so I would have used one of my software experts probably to -- just as I think there are teams of people working for both Rebotix and Restore as well as even third-party labs, I think working to try and address this issue." Opp. at 10 (citing Cahoy Dec. Ex. 10 at 124:2–15). While some courts have allowed experts to rely on other experts if doing so would be consistent with reliable principles and methods in their field, *see Rodriguez v. GEICO Gen. Ins. Co.*, 2021 WL 1056264, at *5 (M.D. Fla. Feb. 4, 2021), Humphrey does not do that

here. ██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████ And he identified no other software expert he relied on either. His admitted lack of expertise on the "software side of things" precludes him from opining independently on software topics, including the feasibility of breaking the X/Xi encryption that is the focus of Paragraphs 14 and 15 and Section V of his report. *See* Cahoy Dec. Ex. 10 at 124:2–15; *see also id.* at 124:16–22. ("Q. Would the software components include encryption? A. Yes.").[3]

SIS spends much of its brief trying to explain why Humphrey's opinions in this case are not new and do not conflict with the opinions he offered in the *Rebotix* case. But Humphrey's reports speak for themselves. ████████████████████████████████████████
████████

▌ ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████

▌ ████████████████████████████████████████████
████████████████████████████████████

▌ ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

▌ ████████████████████████████████████████████
████████████████████████████████████████████
████████████████

---

[3] SIS mentions in a footnote that Intuitive "did not attack Kurt Humphrey's qualifications in the Rebotix case." Opp. at 9 n.7. In that case, ████████████████████████████████████
████████████████████████████████████████████



Here, he offers a dramatically different assessment:

- "The encryption on X and Xi EndoWrists requires substantially more computing resources to reverse engineer than the encryption of Si EndoWrists." *Id.* ¶ 14.

- "[A]s compared to the encryption used for the use counter of the Si EndoWrists, the Xi encryption requires substantially more time and resources to reverse engineer." *Id.*

- "These changes to the authentication and encryption methods used between the S/Si and X/Xi EndoWrists and systems substantially increase the amount of effort and computing power necessary to reverse engineer the X/Xi encryption, access and reset the use counter." *Id.* ¶ 30.

- "Intuitive substantially increased the difficulty of reverse engineering the EndoWrist use counter from the S/Si EndoWrists to the X/Xi EndoWrists." *Id.* ¶ 36.

- "Encryption of X and Xi EndoWrists Is Substantially More Difficult To Reverse Engineer Than Si…" *Id.*, § V (title).[4]

Humphrey offers these opinions without relying on anyone with software expertise for a proposed methodology to circumvent the encryption and re-program the use counter. Given his admitted lack of qualifications on those subjects, his opinions should be excluded. *See Montera v. Premier Nutrition Corp.*, 2022 WL 1225031, *2, *9 (N.D. Cal. Apr. 26, 2022) ("[A] person qualified to give an opinion on one subject is not necessarily qualified to opine on others.") (quoting *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991)).

---

[4] 

At his deposition, Humphrey walked away from this and other assumptions he and Mandel made, acknowledging that he is no longer confident they are true. *See* Mot. at 9–10.

### C. SIS Identifies No Reliable Basis or Methodology for Humphrey's Opinions That It Would Have Been Possible To Re-Set the X/Xi Use Counter Years Ago.

In addressing Intuitive's challenge to the reliability of Humphrey's multiple inconsistent opinions about when it would have been possible for someone to hack the X/Xi use counter, SIS devotes most of its energies to attempting to explain why the four different timeframes offered by Humphrey (two of them reported by SIS's damages expert, who attributed them to Humphrey) do not conflict with one another. *See* Opp. at 13–14. This response ignores the most fundamental problem of all, which is that *none* of the dates offered have any basis whatsoever. In both places in Humphrey's report where he opines on the timeframe for hacking the X/Xi, he makes the assertions without citing any support or identifying any methodology – let alone a reliable one – that he used to derive them. Indeed, he could have swapped out any other dates without changing any of the surrounding content of his report, because it contains no explanation of how he arrived at the timeframes he provides. *See* Cahoy Dec. Ex. 9 ¶¶ 15, 36.

SIS asserts that Humphrey "explains how he analyzed the evidence to support his conclusions regarding potential date ranges for achieving successful results reverse engineering the X/Xi EndoWrist encryption." Opp. at 15. Tellingly, this assertion also contains no citation whatsoever, and no such explanation can be found anywhere in Humphrey's report. *Id.*; Cahoy Dec. Ex. 9. As one court has explained, "it is impossible to say that [an expert's] testimony is reliable" where it is "unclear what methods or principles or data [the expert] is applying to the facts of the case." *Al-Daiwa, Ltd. v. Apparent, Inc.*, 2015 WL 5304111, at *1 (N.D. Cal. Sept. 9, 2015); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

SIS suggests (Opp. at 14) that Intuitive's discussion of Humphrey's deposition testimony on this subject was incomplete. Intuitive's opening brief explained that when he was asked the basis for his opinion that the work could have been performed "at any time in the last five years," Humphrey testified, "[j]ust that there is nothing that – no evidence I've seen that inherently shows this work couldn't have been started much earlier." Cahoy Dec. Ex. 10 at 94:3–24. SIS argues that this quote "is

only part of the answer." Opp. at 14. In fact, the rest of the cited answer simply says the same thing in different words: "The work that's been described in the previous page in the references from the Rebotix and Restore testimonies, there is nothing obvious that would have inhibited beginning that work and having completed it in the previous five years if the appropriate monetary resources and technical resources had been available." *Id.* In other words, Humphrey knew of nothing that would have prevented Restore and Rebotix from hacking the X/Xi use counter if they had the technical (and financial) ability to do it. This circular testimony further reinforces that Humphrey did not apply any methodology at all in arriving at his estimates, which were precisely the sort of *ipse dixit* reasoning the court excluded in *Al-Daiwa*. 2015 WL 5304111, at **1–2.

Moreover, SIS's attempts to reconcile the varying date estimates fall short. Two of the estimates appear in Humphrey's report: "at least as early as 2019" and "any time in the last five years." *See* Opp. at 13; Cahoy Dec. Ex. 9 ¶¶ 15, 36. SIS attempts to explain away the contradiction by stating that the former "references a possible time frame consistent with being compressed through the use of additional computing power and financial resources," whereas the latter is "Humphrey's assessment of when the reverse engineering of X/Xi EndoWrist use counter could have been performed had the appropriate funding and resources been available." Opp. at 13. This opaque explanation offers nothing to explain *why* those considerations led to either of the specific time frames he came up with or to account for the difference between them. As to the two other dates, SIS does not explain its damages expert's reliance on a mysterious phone call with Humphrey that Humphrey says never occurred. Cahoy Dec. Ex. 10 at 139:22–140:5; 142:12–15. If, as SIS now argues, Bero did not rely on Humphrey for his time estimates, *see* Opp. at 14, that raises its own issues given that over 95% of SIS's purported damages rely on those dates, which Bero claims came from Humphrey. *See* Bass Dec. Ex. 3 (Dkt. No. 126.4) ¶ 24 Table 1; Bass Dec. Ex. 1 (Dkt. No. 126.2) at 5 & n.19, 32 & n.248, 57 & n.418.

All four time periods that Humphrey has provided (or that Bero attributes to him) for when someone supposedly could have hacked the X/Xi use counter have one thing in common: they significantly pre-date the actual existence of any real-life process for doing so. *See* Mot. at 4, 10. SIS does not dispute that even today, no one has yet developed a commercially viable process for

remanufacturing X/Xi EndoWrists to hack their use counters. Humphrey has not himself tried to re-set those use counters, *see* Cahoy Dec. Ex. 10 at 123:21–124:15, and he does not have the expertise that would be required to do so, *see supra* Section II.B. Yet he contends, without any basis, that it would have been possible years ago. That opinion stems from no reliable principle or method and should be excluded. *See Al-Daiwa*, 2015 WL 5304111, at **1–2.

### III.   CONCLUSION

For the foregoing reasons and those in Intuitive's opening brief, Intuitive's motion to exclude the opinions of Kurt Humphrey should be granted.

DATED:  May 11, 2023

By: */s/ Kathryn E. Cahoy*
         KATHRYN E. CAHOY

*Attorney for Intuitive Surgical, Inc.*

*Additional Counsel for Intuitive Surgical, Inc.*

ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, California 95032
Telephone: (408) 477-9690

KAREN HOFFMAN LENT (*Pro Hac Vice*)
Email: karen.lent@skadden.com
MICHAEL H. MENITOVE (*Pro Hac Vice*)
Email: michael.menitove@skadden.com
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2040

KATHRYN E. CAHOY (SBN 298777)
Email: kcahoy@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

SONYA WINNER (SBN 200348)
Email: swinner@cov.com
CORTLIN H. LANNIN (SBN 266488)
Email: clannin@cov.com
ISAAC D. CHAPUT (SBN 326923)
Email: ichaput@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

ANDREW LAZEROW (*Pro Hac Vice*)
Email: alazerow@cov.com
ASHLEY E. BASS (*Pro Hac Vice*)
Email: abass@cov.com
JOHN KENDRICK (*Pro Hac Vice*)
Email: jkendrick@cov.com

COVINGTON & BURLING LLP
One City Center 850 Tenth Street NW
Washington DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291