```
1              UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA
3
4   SURGICAL INSTRUMENT SERVICE      )
    COMPANY, INC.,                   )
5                                    )
            Plaintiff,               )
6                                    )
            vs.                      ) Case No.
7                                    ) 3:21-CV-03496-VC
    INTUITIVE SURGICAL, INC.,        )
8                                    )
            Defendant.               )
9   _____  )
10
11
12      VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED
13              DEPOSITION OF GREG POSDAL
14    30(B)(6), SURGICAL INSTRUMENT SERVICE COMPANY
15
16             Tuesday, November 1, 2022
17      Remotely Testifying from Phoenix, Arizona
18
19
20
21
22
23  Stenographically Reported By:
24  Hanna Kim, CLR, CSR No. 13083
25  Job No. 5541334-A
```

Page 1

```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA


SURGICAL INSTRUMENT SERVICE      )
COMPANY, INC.,                   )
                                 )
        Plaintiff,               )
                                 )
        vs.                      ) Case No.
                                 ) 3:21-CV-03496-VC
INTUITIVE SURGICAL, INC.,        )
                                 )
        Defendant.               )
_____)


        Virtual videoconference video-recorded
deposition of GREG POSDAL, in the capacity of a
30(B)(6) witness of Surgical Instrument Service
Company, Remotely Testifying from Phoenix, Arizona,
on Tuesday, November 1, 2022, beginning at
9:01 a.m., PDT, and concluding at 10:52 a.m.,
pursuant to the stipulations of counsel thereof,
before Hanna Kim, CLR, Certified Shorthand Reporter,
No. 13083.
```

```
 1      REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:
 2
 3    For Plaintiff and the Witness:
 4           HALEY GUILIANO
 5           BY:  RICHARD T. McCAULLEY, ESQ.
 6           111 North Market Street, Suite 900
 7           San Jose, California 95113
 8           669.213.1071
 9           richard.mccaulley@hglaw.com
10
11    For Hospital Plaintiffs and the Proposed Class:
12           BONI, ZACK & SNYDER LLC
13           BY:  JOSHUA D. SNYDER, ESQ.
14           15 St. Asaphs Road
15           Bala Cynwyd, Pennsylvania 19004
16           610.822.0203
17           jsnyder@bonizack.com
18
19
20
21
22
23
24
25
```

1              REMOTE APPEARANCES OF COUNSEL:
2
3    For Defendant Intuitive Surgical:
4              COVINGTON & BURLING LLP
5              BY:  ISAAC D. CHAPUT, ESQ.
6              BY:  AUSTIN MARTIN, ESQ.
7              Salesforce Tower
8              415 Mission Street, Suite 5400
9              San Francisco, California 94105-2533
10             415.591.7020
11             ichaput@cov.com
12             amartin@cov.com
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1   sterile processing, there's another set of eyes on
 2   it to make sure that it appears to be safe for work.
 3   At that time, they're pulled out.
 4           With the Intuitive instruments, there's a
 5   forced inspection at ten.  And we were willing to      09:48:01
 6   abide by that same inspection process.
 7      Q.   Do you believe there would have been a
 8   regulatory issue with adding 19 lives to an
 9   instrument as opposed to just adding ten?
10           MR. SNYDER:  Objection to form.               09:48:24
11           THE WITNESS:  No.
12   BY MR. CHAPUT:
13      Q.   Why not?
14      A.   Well, Intuitive's own 510(k) submission
15   called this item substantially equivalent to          09:48:40
16   predicate devices, and those are the devices that
17   we've repaired for decades.
18      Q.   Why does that mean that there's no
19   regulatory issue with adding 19 lives to an
20   instrument as opposed to the ten that it's initially  09:49:01
21   set for?
22      A.   There are --
23           MR. SNYDER:  Objection to form.
24           THE WITNESS:  There are no regulations for
25   that.  The FDA stayed out of repair.  They don't --   09:49:09
```

Page 44

```
 1   we've had -- it has not been a necessity to deal
 2   with any regulatory issues with re- -- regarding the
 3   repair of surgical instrumentation.
 4   BY MR. CHAPUT:
 5       Q.   So I -- I think implicit in what you just      09:49:25
 6   said is that SIS has determined that its reset
 7   process is a repair; is that correct?
 8            MR. McCAULLEY:  Objection to form.
 9            THE WITNESS:  The -- the reset process
10   is -- we've used repair as kind of an umbrella term.   09:49:39
11   That could be resetting the chip, could be repairing
12   an instrument.  So I don't -- I don't know if that
13   answers your question specifically.  But simply
14   evaluating the instrument and resetting the chip
15   wouldn't technically be a repair.  No repair was      09:50:03
16   done.  The chip was reset.  So it would depend on
17   the condition and what services were performed.
18   BY MR. CHAPUT:
19       Q.   Okay.  I'm just -- I'm just trying to
20   reconcile these questions because initially you said   09:50:27
21   there's -- there's no problem because the FDA has
22   stayed out of repair, but you also just said that if
23   there's a chip reset without anything else done,
24   that that doesn't count as repair.  So I -- I'm --
25   what I'm trying to understand is, how did SIS come    09:50:44
```

Page 45