Page 1

1                UNITED STATES DISTRICT COURT
2               NORTHERN DISTRICT OF CALIFORNIA
3
4    IN RE: DA VINCI SURGICAL ROBOT  ) Lead Case No.:
     ANTITRUST LITIGATION            ) 3:21-cv-03825-VC
5    _____ )
                                      )
6    THIS DOCUMENT RELATES TO:        )
     ALL ACTIONS                      )
7                                     )
     _____ )
8    SURGICAL INSTRUMENT SERVICE      ) Case No.
     COMPANY, INC.,                   ) 3:21-CV-03496-VC
9                                     )
            Plaintiff,                )
10                                    )
            vs.                       )
11                                    )
     INTUITIVE SURGICAL, INC.,        )
12                                    )
            Defendant.                )
13   _____ )
14
15       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
16             UNDER THE PROTECTIVE ORDER
17        VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED
18             DEPOSITION OF TED CLAIBORNE
19
20            Monday, November 21, 2022
21      Remotely Testifying from Blue Point, New York
22
23   Stenographically Reported By:
24   Hanna Kim, CLR, CSR No. 13083
25   Job No. 5587024

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 2

1                  UNITED STATES DISTRICT COURT
2                NORTHERN DISTRICT OF CALIFORNIA
3
4    IN RE: DA VINCI SURGICAL ROBOT  ) Lead Case No.:
     ANTITRUST LITIGATION            ) 3:21-cv-03825-VC
5    _____ )
                                     )
6    THIS DOCUMENT RELATES TO:       )
     ALL ACTIONS                     )
7                                    )
     _____ )
8    SURGICAL INSTRUMENT SERVICE     ) Case No.
     COMPANY, INC.,                  ) 3:21-CV-03496-VC
9                                    )
             Plaintiff,              )
10                                   )
             vs.                     )
11                                   )
     INTUITIVE SURGICAL, INC.,       )
12                                   )
             Defendant.              )
13   _____ )
14
15         HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
16   UNDER THE PROTECTIVE ORDER, virtual videoconference
17   video-recorded deposition of TED CLAIBORNE remotely
18   testifying from Blue Point, New York, on Monday,
19   November 21, 2022, beginning at 1:04 p.m., EST, and
20   concluding at 2:36 p.m., pursuant to the
21   stipulations of counsel thereof, before Hanna Kim,
22   CLR, Certified Shorthand Reporter, No. 13083.
23
24
25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:

 2

 3     For Class Plaintiffs:

 4            COHEN MILSTEIN SELLERS & TOLL PLLC

 5            BY:  ZACH GLUBIAK, ESQ.

 6            BY:  DANIEL MCCUAIG, ESQ.

 7            1100 New York Avenue, N.W.

 8            Fifth Floor

 9            Washington, D.C. 20005

10            202.408.4600

11            zglubiak@cohenmilstein.com

12

13     For Plaintiff Surgical Instrument Service Company,

14     Inc:

15            HALEY GUILIANO

16            BY:  JOSHUA VAN HOVEN, ESQ.

17            111 North Market Street, Suite 900

18            San Jose, California 95113

19            669.213.1071

20            joshua.vanhoven@hglaw.com

21

22

23

24

25
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 4

1          REMOTE APPEARANCES OF COUNSEL:   (CONT'D.)

2

3      For Defendant Intuitive Surgical:

4              COVINGTON & BURLING LLP

5              BY:  KATHRYN CAHOY, ESQ.

6              3000 El Camino Real

7              5 Palo Alto Square, 10th Floor

8              Palo Alto, California 94306-2112

9              kcahoy@cov.com

10

11

12     Also Present:

13              MICHAEL BARANKOVICH, Videographer

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 35

1      to Intuitive regarding that question; is that right?

2           A.   Yes.

3           Q.   The FDA's official advice was to "roll

4      back use lives until the clearance"; is that right?

5           A.   Yes.                                        02:00:15

6           Q.   What does it mean to "roll back use lives

7      until the clearance"?

8           A.   It means to set the number of use lives to

9      the number that was cleared in the prior 510(k).

10          Q.   What was the number of use lives that was   02:00:58

11     cleared in the prior 510(k)?

12          A.   I think it's different for different

13     instruments.  I'd have to consult the file.

14          Q.   Am I right that for each instrument, the

15     number of use lives cleared in the prior 510(k) was   02:01:40

16     lower than the number of lives in this current

17     510(k)?

18          A.   Yes.

19          Q.   You testified that the FDA's advice was

20     "to set the number of use lives to the number that    02:02:11

21     was cleared in the prior 510(k)."

22               Is that right?

23          A.   Yes.

24          Q.   Intuitive did not take that advice;

25     correct?                                              02:02:30

Page 36

1              MS. CAHOY:   Objection to form.

2       BY MR. GLUBIAK:

3              Q.    You can answer.

4              A.    Well, as part of the call, the risk

5       assessment on patient risk is made as well.  And so,     02:02:48

6       seeing that there is no increased risk to patients

7       and given that we -- the 510(k) was in FDA's hands

8       and under review, we felt that the patient risk

9       was -- was unchanged and FDA indicated that they

10      would use what's called an enforcement discretion      02:03:18

11      while the 510(k) was under review.

12             Q.    Intuitive did not set the number of use

13      lives to the number cleared in the prior 510(k);

14      correct?

15             A.    You mean after this e-mail and call?       02:03:40

16             Q.    Correct.

17             A.    That's right.

18             Q.    Was Intuitive in compliance with FDA

19      regulations while it marketed extended-use

20      EndoWrists during the FDA's review of its 510(k)       02:04:25

21      application?

22             MS. CAHOY:   Objection to form.

23      BY MR. GLUBIAK:

24             Q.    You can answer.

25             A.    Intuitive followed the regulations on when   02:04:35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 37

1    to submit a 510(k) and their internal procedures to

2    make that decision to not file a 510(k) for

3    extended-use lives; and so, Intuitive believed it

4    had followed the regulation, and that this was a

5    disagreement between FDA and Intuitive on this          02:05:16

6    topic.

7              MR. GLUBIAK:  I think I'd like to take a

8    quick break.  If we could have about five minutes

9    off the record.  Is that okay, Kate and --

10             MS. CAHOY:  Yes.                               02:05:58

11             THE VIDEOGRAPHER:  The time is 2:05.

12   Going off the video record.

13             (Short recess taken.)

14             THE VIDEOGRAPHER:  The time is now 2:20.

15   Back on the video record.                               02:20:47

16   BY MR. GLUBIAK:

17       Q.   Mr. Claiborne, earlier you testified that

18   sometimes during business meetings, you take notes

19   in notebooks.

20             Do you remember that?                         02:20:58

21       A.   Yes.

22       Q.   I believe you mentioned that one of the

23   meetings during which you might have taken notes was

24   the meeting you had with the 510(k) application team

25   following your call with the FDA on December 23rd,      02:21:18

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 38

1      2021; is that right?

2          A.   Yes.

3          Q.   Mr. Claiborne, did you provide those

4      notebooks to counsel as part of this case?

5          A.   No.                                         02:21:41

6          Q.   Mr. Claiborne, am I right that in 2020,

7      Intuitive increased the number of uses on certain Xi

8      instruments?

9          A.   I don't know exactly when that happens.  I

10     think it was before I joined the company.            02:22:16

11         Q.   But sometime before you joined the

12     company, Intuitive increased the number of lives on

13     certain Xi instruments; correct?

14         A.   Correct.

15         Q.   Intuitive submitted a 510(k) application    02:22:36

16     regarding the extension of lives for those

17     instruments in December of 2021; correct?

18         A.   Correct.

19         Q.   When Intuitive first increased the number

20     of lives on those instruments, Intuitive used a      02:23:00

21     non-filing justification for that extension;

22     correct?

23         A.   Yes.

24         Q.   During the time between those non-filing

25     justifications and the 510(k) application for those  02:23:22

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 39

1    EndoWrist instruments, was Intuitive in compliance

2    with relevant FDA regulations?

3              MS. CAHOY:  Objection to form.

4    BY MR. GLUBIAK:

5         Q.   You can answer.                          02:23:38

6         A.   Intuitive followed their internal

7    procedures and the -- when to submit 510(k) guidance

8    and came to the conclusion that a letter to file was

9    sufficient for that change.  Ad so yes, they were

10   following FDA regulation.                          02:24:07

11        Q.   Following the filing of that 510(k)

12   application in December 2021, Intuitive continued to

13   market extended-use EndoWrists; correct?

14        A.   Yes.

15        Q.   In the time period between the submission  02:24:32

16   of that 510(k) application and the FDA's decision to

17   grant 510(k) clearance for extended-use EndoWrists,

18   was Intuitive in compliance with relevant

19   regulations?

20             MS. CAHOY:  Objection to form.           02:24:58

21   BY MR. GLUBIAK:

22        Q.   You can answer.

23        A.   Intuitive's interpretation of when to

24   submit guidance had -- had not changed.  They had

25   gotten feedback from FDA.  The FDA disagreed with    02:25:26

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 40

1    that decision and thought that there should be a

2    510(k) for that change.  And so, it was Intuitive's

3    belief that they were still in compliance.

4         Q.   To -- it was Intuitive's belief that

5    Intuitive was still in compliance even before it        02:26:14

6    received the 510(k) clearance; correct?

7              MS. CAHOY:  Objection to form.

8              THE WITNESS:  I'm trying to think about

9    how to formulate an answer [verbatim].

10             THE COURT REPORTER:  I'm sorry.  I can't     02:26:53

11   hear you.

12             THE WITNESS:  Can you repeat the question.

13   BY MR. GLUBIAK:

14        Q.   Sure.

15             You just testified that during the period    02:26:57

16   between the submission of the 510(k) application for

17   extended-use EndoWrists and the FDA's decision to

18   grant that application or to approve that

19   application, it was Intuitive's belief that

20   Intuitive was still in compliance with relevant        02:27:16

21   regulations; is that right?

22        A.   Correct.  There was a difference of

23   opinion between Intuitive and FDA on that letter to

24   file or a so-called NFJ decision.

25        Q.   That difference in opinion did not mean       02:27:46

Page 41

1       that Intuitive was out of compliance with relevant

2       regulations.   Do I have that right?

3               MS. CAHOY:   Objection to form.

4               THE WITNESS:   No.   My understanding is it

5       meant that there was a compliance risk because of          02:28:07

6       the difference of opinion.   And that's why we wanted

7       to call FDA and talk about it.

8       BY MR. GLUBIAK:

9           Q.   Following this call, it was your

10      understanding that the FDA would exercise its               02:28:25

11      enforcement discretion not to take any enforcement

12      action against Intuitive; is that right?

13          A.   Yes, that was our understanding.

14          Q.   Mr. Claiborne, I don't believe I have any

15      other questions for you today.   So I want to thank        02:28:50

16      you for your time.

17              I don't know if my colleague, Mr. Van

18      Hoven has a few questions but, you know, pending

19      whether or not you get questioned by your own

20      attorney, those are all the questions I have for           02:29:03

21      now.

22              Thank you.

23                      EXAMINATION

24      BY VAN HOVEN:

25          Q.   Yeah.   Hello, Mr. Claiborne.   I -- I do         02:29:07