# SALES, LICENSE, AND SERVICE AGREEMENT

**Agreement No.: MA-811-2018 (406362)**

This Sales, License, and Service Agreement ("Agreement") is dated **December 7, 2018** (the "Effective Date") and is between **Intuitive Surgical, Inc.**, a Delaware corporation ("Intuitive"), located at 1266 Kifer Road, Sunnyvale, California 94086, and **Stanford Hospital and Clinic** located at 300 Pasteur Drive, Stanford, CA 94304 ("Customer").

**The parties agree as follows:**

1. **Introduction**

   Customer agrees to purchase the Hardware and license the Software and Documentation from Intuitive, and Intuitive agrees to respectively sell and license the same to Customer, as well as provide Service for the System all according to the terms and conditions of this Agreement.

2. **Definitions**

   2.1 **"Acceptance"** means Customer's acceptance of the System as specified in **Exhibit A**.

   2.2 **"Delivery Date"** means the estimated scheduled date for delivery of the System to Customer specified in **Exhibit A**.

   2.3 **"Instruments and Accessories"** means those instruments or accessories made or approved by Intuitive for use with the System.

   2.4 **"Proctoring"** means the assistance, coaching, or surgical training provided by a surgeon (the "Proctor") who is familiar with the System to another surgeon (the "Proctee") on how to perform a particular surgical procedure (or procedures) using the System.

   2.5 **"Services"** means the support and maintenance of the System described in Section 5 for the Service fees designated in **Exhibit A**.

   2.6 **"System"** means the items comprising the da Vinci® Surgical System specified in **Exhibit A** consisting of certain hardware components ("Hardware"), software program elements ("Software") and related manuals, labeling, instructions for use, notifications or other documentation ("Documentation"), that Customer may receive, purchase and license under this Agreement. If Customer purchases multiple Systems under this Agreement, all references to "System" or "System(s)" apply to each System sold and licensed. Each System purchased is a separate transaction to be delivered, accepted, and paid for separately.

   2.7 **"Taxes"** means any taxes, levies, or similar governmental charges, now in force or enacted in the future, and however designated, including related penalties and interest, imposed by any governmental authority on, or measured by, the activities described.

   2.8 **"Customer's Access Requirements"** means any reasonably applicable requirements designated by Customer that Intuitive personnel must meet to gain access to Customer's facility. Such requirements may include, but are not limited to, compliance with Customer's site policies and vendor credentialing requirements, such as vaccination, immunization, background investigation, training, hospital orientation, and liability insurance coverage.

   2.9 **"Reprocess" or "Reprocessing"** means Customer's process for cleaning, disinfection, and sterilization of Instruments and Accessories, including testing to validate cleaning, disinfection and sterilization process as may be required by applicable law and/or regulation.

3. **System Delivery, Use, Disposal**

   3.1 **Delivery and Installation.** Subject to credit approval of Customer by Intuitive, Intuitive will use commercially reasonable efforts to deliver the System on or before the Delivery Date. Each party will provide the other party with thirty (30) days notice, or if this Agreement is executed within thirty (30) days before the Delivery Date, a reasonable advance notice of any change in the Delivery Date. Customer will fully cooperate with Intuitive to permit Intuitive to install the System. Intuitive will use commercially reasonable efforts to install the System in an efficient and expeditious manner. Customer will also provide Intuitive with information, consultation, and advice reasonably necessary to permit installation.

   3.2 **Delivery Terms.** Intuitive will deliver the System to Customer's designated location noted as the "Ship-to" in **Exhibit A** using a carrier selected by Intuitive. Fees for shipping the System are specified in **Exhibit A**. Risk of loss or damage to the System passes to the Customer upon delivery of the System to Customer. Title to the System passes to the Customer upon Acceptance.

3.3 **On-Site Support**. At no charge to Customer, Intuitive will provide periodic on-site support to Customer's designated personnel on the proper operation and upkeep of the System in order for Customer to operate the System as further described in Section 3.4. To clarify, this support includes, but is not necessarily limited to, training on draping the System for use in surgery, proper attachment of Instruments and Accessories, cleaning of parts of the System, the Instruments and Accessories and discussing opportunities to improve cost efficiencies. The cleaning to be performed regularly by Customer is described in the Documentation.

3.4 **Use of System**. Customer will ensure the proper use of the System consistent with the Documentation, and Customer will ensure the proper management and supervision of the System. Customer will not, nor will Customer permit any third party to, modify, disassemble, reverse engineer, alter, or misuse the System or Instruments and Accessories. Prohibited actions include, but are not limited to: (1) adding or subtracting any Customer or third party equipment, hardware, firmware, or software to or from the System, or (2) reconfiguring any of the Intuitive equipment, Hardware, firmware, or Software as originally provided to Customer as part of the System without Intuitive's express written permission. Customer will ensure that the System is moved and operated only by trained personnel in accordance with the Documentation and Intuitive's instructions. If Customer fails to comply with the requirements of this Section 3.4, Intuitive may terminate this Agreement immediately upon written notice, and any warranties applicable to the System will become void.

3.5 **Reprocess and Disposal**. Customer is responsible for properly Reprocessing and/or disposing of all medical instruments, devices, and systems related to the operation and function of the System, including Instruments and Accessories, in accordance with the Documentation and the then current local environmental and safety laws and standards.

4. **Software License and Restrictions**

Software embedded within the System is provided under license and is not sold to Customer. Subject to the terms and conditions of this Agreement, Intuitive grants to Customer a non-exclusive, non-transferable, fully paid, restricted use license to use the Software solely as incorporated in the System in machine-executable object code form and solely in connection with the operation of the System as described in the Documentation. Customer must not use, copy, modify, or transfer the Software or any copy thereof, in whole or in part, except as expressly provided in this Agreement. In addition, Customer must not reverse engineer, decompile, disassemble, attempt to derive the source code for, or otherwise manipulate the Software, except that manipulation of the Software is permitted if, and then only to the extent that, the foregoing prohibition on manipulation is required to be modified by applicable law. In that case, Customer must first request from Intuitive the information to be sought from the Software, and Intuitive may, in its discretion, provide information to Customer under good faith restrictions and impose reasonable conditions on use of the Software. The structure and organization of the Software are valuable trade secrets of Intuitive and Customer will protect the Software as Intuitive's Proprietary Information (as defined in Section 13). Intuitive reserves all rights to the Software not expressly granted to Customer. Some components of the Software may be provided to Customer under a separate license, such as an open source license. In the event of a conflict between this Agreement and any such separate license, the separate license will prevail with respect to the component that is the subject of such separate license.

5. **Services**

5.1 **Services Included**. If Customer is current in payment to Intuitive of the Service fees specified in **Exhibit A**, Intuitive, directly or through one of its designated service providers, will provide Services to Customer as listed below. Intuitive will use parts sourced by Intuitive, which may, at Intuitive's discretion, include reconditioned parts, ("Equivalent to New" or "ETN"). ETN parts are components, assemblies, or partial products which have had prior usage, but have been inspected, reworked, and tested as required so that their function, performance, and appearance will be essentially equivalent to that of new parts. Regardless of whether parts are new or ETN, Intuitive's appropriate warranties under Section 10.1(A) apply. Customer may contact Intuitive to upgrade its Service Plan to **dv Premium Care Plan**. A $15,000/year uplift fee to annual Service fees set forth in Exhibit A will be charged; a detailed Service plan description will be provided to Customer for its acceptance and signature.

Intuitive will provide Services under the ***dv Complete Care Plan***, with benefits and limitations as follows:

(A) Adjust parts on the System from time to time;
(B) Replace defective or malfunctioning System parts (excludes Instruments and Accessories; and any items contained in the Instrument Starter Kit, Camera Starter Kit, and Training Instrument Starter Kit set forth in Exhibit A);
(C) Repair System operational malfunctions;
(D) Replace and install Software, Hardware, and mechanical equipment for safety and reliability;
(E) Provide twenty four (24) hours per day, seven (7) days per week (24 x 7) telephone support by qualified service personnel;
(F) Provide and install Software upgrades for feature enhancements. Software upgrades and Service with respect to additional equipment not included on **Exhibit A** may be subject to separate terms to be agreed upon by the parties;
(G) Provide preferred pricing and next day service repairs or replacement due to accidental damage on endoscopes and camera heads;
(H) Respond to Customer's request for Services described in Section 5.1(B)-(C) by phone, e-mail, or an on premise visit, during normal business hours (excluding Intuitive holidays) promptly as is reasonable after Intuitive's receipt of Customer's request, but not later than twenty-four (24) hours after Intuitive's receipt. Normal business hours are

|     |     |     |
| --- | --- | --- |
|     |     | Monday through Friday, 8:00 a.m.- 5:00 p.m. Customer's local time. Billable rates are applicable for service outside of normal business hours, and for reasons defined below in Section 5.2 (Limitations of Service). |
|     | (I) | Perform System preventative maintenance inspections as necessary to maintain factory specifications. |
|     | (J) | Provide on-site visits for support of advanced training of Customer's personnel on sterile Reprocessing process. |
|     | (K) | When the system is connected to OnSite®, remotely monitor system to diagnose potential issues and proactively dispatch a Field Service Engineer to make repairs when needed. |
|     | (L) | Provide access to the da Vinci Surgery Customer Portal. |

5.2 **Limitations on Services**.

  (A) **General**. Intuitive does not have an obligation to provide Services (1) on any System where installation, repair, or adjustments have been made by an individual other than an Intuitive technician or an individual approved by Intuitive or (2) which are either necessary or desired as a direct or indirect result, in whole or in part, of unauthorized repair, modification, disassembly, alteration, addition to, subtraction from, reconfiguration, or misuse of the System, or negligence or recklessness on the part of Customer.

  (B) **Cleaning**. Regular daily cleaning of the System as described in the Documentation is not included in the Services.

  (C) **Additional Equipment**. Intuitive's Services obligations do not include the provision to Customer of any hardware developed by Intuitive that is not contained in the initial System purchased by Customer, and which Intuitive offers as a separate product or for an additional fee.

  (D) **Time and Materials**. If the System needs repair or maintenance services due to any of the circumstances described in Section 5.2(A)-(B) above, Intuitive may, at its sole election, provide repair services at Customer's expense and at Intuitive's then current time and material rates. Intuitive is not obligated to provide Services on any System for which any applicable warranty has been voided, or for which the performance of Services is otherwise excused by the terms of this Agreement.

  (E) **Unauthorized Instruments and Accessories**. The System is designed for use only with the Instruments and Accessories. If Customer uses the System with any surgical instrument or accessory not made or approved by Intuitive, Intuitive may discontinue Services, and any warranties applicable to any Services provided prior to any discontinuance will be void.

5.3 **Customer's Obligations.**

  (A) **Notice, Access, and Cooperation**. Customer will notify Intuitive or Intuitive's designated service provider of any requests for Services. Customer will fully cooperate with and assist Intuitive in the provision of Services.

  (B) **Clinical Liaison**. Customer will designate one of its employees, agents, or representatives as a "Clinical Liaison." The Clinical Liaison will be the point of contact with Intuitive for installation, Services, use of the System, and other related issues. Nothing in this Section 5.3 authorizes Customer or the Clinical Liaison to perform Services or to perform any act otherwise prohibited by this Agreement.

6. **Training**

Intuitive offers training to surgical personnel on the use and operation of the System. At Customer's request, at mutually agreed times and at mutually agreed locations, Intuitive will provide training in the use of the System to Customer's surgical personnel in accordance with the terms specified in **Exhibit A**.

7. **Proctoring**

At Customer's request, and upon Customer's issuance of a purchase order, Intuitive will arrange for Proctoring at Customer's location in accordance with the terms specified in **Exhibit A**. Each Proctor is an independent contractor, is not an agent or employee of Intuitive, and is not authorized to act on behalf of, or legally bind, Intuitive. Intuitive is not responsible for Proctoring services provided by Proctors. The decision to utilize a Proctor is solely that of the Customer. Customer is responsible for ensuring that each Proctor meets Customer's credentialing requirements.

8. **Instruments and Accessories**

Instruments and Accessories will be made available to Customer from Intuitive pursuant to separate orders placed by Customer to Intuitive from time to time in accordance with the terms and conditions contained in the then current Instrument and Accessory Catalog. Instruments and Accessories are subject to a limited license to use those Instruments and Accessories with, and prepare those Instruments and Accessories for use with, the System. Customer is responsible for Reprocessing Instruments in accordance with the Documentation. Any other use is prohibited, whether before or after the Instrument or Accessory's license expiration, including repair,

Highly Confidential-AEO        Intuitive-01807646

refurbishment, or reconditioning not approved by Intuitive, and cleaning or sterilization inconsistent with the Documentation. This license expires once an Instrument or Accessory is used up to its maximum number of uses, as is specified in the Documentation accompanying the Instrument or Accessory. Customer may purchase Instruments and Accessories for the purpose of Customer's Reprocessing requirements. The cost of Instruments and Accessories used in Customer's Reprocessing, including Instrument and Accessories used or involved in destructive testing, will be the responsibility of the Customer. Customer may contact Intuitive's Customer Support Department if, during the Reprocessing, Customer experiences results unacceptable under applicable law and/or regulation. Intuitive will provide commercially reasonable assistance in such investigations and remediation efforts but shall not be obligated to conduct or pay for such studies or provide materials at no cost or reduced cost as a condition of purchase or continued use.

9. **Pricing and Payment Terms**

    9.1 **System.**

    (A) **Price.** Customer will pay to Intuitive the price specified in **Exhibit A** for the System acquired under this Agreement according to the payment terms in Section 9.1(B). The issuance of a purchase order by Customer is for the convenience of the Customer solely; therefore, whether or not Customer issues a purchase order does not affect Customer's commitment to acquire and pay for the System under this Agreement.

    (B) **Payment Terms.** Upon Acceptance, Intuitive will deliver an invoice to Customer for amounts due under this Agreement for the System. Customer agrees and acknowledges payment for the System shall not be excused by any contingencies including, but not limited to, Customer's internal practices, policies, or any state approvals. Customer will pay the invoiced amount not later than thirty (30) days after the date of invoice. Interest will accrue from the date on which payment is due, at an annual rate of twelve percent (12%) or the maximum rate permitted by applicable law, whichever is lower. In order to have invoices processed for payment, Customer will provide a purchase order number to Intuitive. Intuitive will use commercially reasonable efforts to ensure all invoices will include the purchase order number and will be submitted to: Stanford Health Care, Accounts Payable Department – Mail Code 5540, 300 Pasteur Drive, Stanford, CA 94305-5540 or SHCvendor@stanfordhealthcare.org.

    (C) **Security Interest.** Intuitive will retain a security interest in the System until payment of the full System purchase price has been received by Intuitive. Customer will perform all acts Intuitive reasonably determines are necessary or appropriate to perfect and maintain the security interest. If Customer defaults in its payments for the System, Intuitive has the right, without liability to Customer, to reclaim the System.

    9.2 **Services.**

    (A) **Price.** Customer will pay for the Services at the price specified in **Exhibit A**. The issuance of a purchase order by Customer is for the convenience of the Customer solely; therefore, whether or not Customer issues a purchase order does not affect Customer's commitment to pay for Services under this Agreement during the Initial Term (as defined in Section 14).

    (B) **Payment Terms.** Intuitive will deliver to Customer an invoice for the annual Services fee thirty (30) days prior to the first anniversary of Acceptance and each subsequent anniversary of Acceptance throughout the Initial Term of the Agreement. Customer will pay the invoice for Services not later than thirty (30) days after the date of invoice. In the event Customer requires a purchase order to be referenced on a Service invoice to facilitate payment, Customer will provide Intuitive with a purchase order number sixty (60) days prior to each anniversary of Acceptance. Interest will accrue from the date on which payment is due, at an annual rate of twelve percent (12%) or the maximum rate permitted by applicable law, whichever is lower. After the Initial Term of the Agreement, and subject to mutual written agreement, annual Services may be renewed at Intuitive's then current list price. Intuitive will use commercially reasonable efforts to ensure all invoices will include the purchase order number and will be submitted to: Stanford Health Care, Accounts Payable Department – Mail Code 5540, 300 Pasteur Drive, Stanford, CA 94305-5540 or SHCvendor@stanfordhealthcare.org.

    9.3 **Funding Entity.**

    A funding entity ("Funding Entity") may provide the funding for Customer to purchase the System defined herein, provided however, Customer remains responsible for payment in full according to the terms of this Agreement if Funding Entity fails to pay. A Funding Entity will have no rights or obligations whatsoever under this Agreement, except as specified in this Agreement. Customer acknowledges and agrees that once Acceptance has occurred and title of the System has passed to the Customer, if Customer subsequently enters into an arrangement with a Funding Entity, then Customer will enter into an agreement (such as a sale and lease-back agreement) directly with the Funding Entity that does not involve Intuitive. Intuitive will not reverse the sale of the System to Customer in order to sell it to another entity, including but not limited to a Funding Entity.

    9.4 **Taxes.**

    Customer will pay any Taxes in addition to the prices invoiced. Customer will pay, or reimburse Intuitive for the payment of all Taxes, including related penalties and interest, except Taxes for which Customer has provided a certificate of exemption

acceptable to both Intuitive and the appropriate taxing authority prior to delivery of the System. Customer will also pay, or reimburse Intuitive for, all Taxes, related penalties, or interest resulting from Customer's use of a Funding Entity.

**10. Warranty and Disclaimer**

    10.1  **System Warranty.**

        (A)  Intuitive warrants to Customer that:

            (1)  the System as delivered will be free and clear of all liens and encumbrances (except as otherwise specified in this Agreement), and

            (2)  for the period specified in **Exhibit A,** will be free from defects in material and workmanship and will conform in all material respects to the Documentation when used in accordance with the Documentation and Intuitive's instructions.

        (B)  Intuitive's obligations under this Section 10.1 are limited to the repair (as further described in Section 5.1(B)-(C)) or, at Intuitive's option, replacement of all or part of the System.

        (C)  This warranty is void with respect to any claims:

            (1)  due to any installation, repair, adjustment, modification, disassembly, alteration, reconfiguration, addition to, subtraction from, or misuse of the System by Customer or any third party without the express written permission of Intuitive; or

            (2)  to the extent Customer has not operated, repaired, or maintained the System in accordance with the Documentation or any reasonable handling, maintenance, or operating instructions supplied by Intuitive; or

            (3)  to the extent Customer has used the System with surgical instruments or accessories that are not Instruments or Accessories; or

            (4)  to the extent Customer or Customer's employee, agent, or contractor has subjected the System to unusual physical or electric stress, misuse, abuse, negligence, or accident.

        (D)  The foregoing expresses Customer's sole and exclusive remedy, and Intuitive's sole and exclusive liability, for any breach of warranty with respect to the System by Intuitive.

    10.2  **Services Warranty.** Intuitive warrants that the Services will be performed consistent with generally accepted industry standards. If Intuitive breaches this warranty, Customer's sole and exclusive remedy will be to require Intuitive to re-perform the Services.

    10.3  **No Other Warranties.** **INTUITIVE MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, IN CONNECTION WITH THE SYSTEM OR SERVICES PROVIDED HEREUNDER AND THIS TRANSACTION, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, AND NON-INFRINGEMENT. SOME JURISDICTIONS DO NOT ALLOW THE LIMITATION OR EXCLUSION OF IMPLIED WARRANTIES; THEREFORE, THE ABOVE LIMITATION WILL APPLY ONLY TO THE EXTENT PERMITTED BY APPLICABLE LAW.**

**11. Indemnification**

    11.1  **Intuitive's Indemnification Obligations.**

        (A)  **Intellectual Property Indemnification.** Intuitive will indemnify Customer against all liabilities, expenses, or damages in connection with any third party claim that the System infringes any third party patent, trade secret, or copyright. If Customer is enjoined from the use of the System due to any such third party claim, Intuitive will promptly, at its option and expense, either (1) substitute the System or any part thereof with non-infringing material that will perform substantially in accordance with the Documentation; or (2) obtain the right of Customer to continue to use the System; or (3) remove the System and refund to Customer the purchase price of the System less reasonable depreciation.

        (B)  **Indemnification Limitations.** Intuitive has no obligation under this Section 11.1 to the extent any claim of infringement is based upon or arises out of: (1) any modification to the System if the modification was not made directly by Intuitive or through its designated service provider; or (2) the use or combination of the System with any hardware, software, products, data or other materials not specified, provided or approved by Intuitive.

Highly Confidential-AEO        Intuitive-01807648

  (C) **THE PROVISIONS OF THIS SECTION 11 STATE THE SOLE AND EXCLUSIVE OBLIGATIONS OF INTUITIVE FOR ANY PATENT, COPYRIGHT, TRADEMARK, TRADE SECRET OR OTHER INTELLECTUAL PROPERTY RIGHTS INFRINGEMENT.**

11.2 **By Intuitive.** To the extent allowable by law, Intuitive hereby assumes all liability for, and agrees to indemnify, defend and hold harmless Customer, its successors, permitted assigns, medical staff, agents and employees from and against, any and all liabilities, losses, damages, claims and expenses to the extent that they arise from third party claims, actions or demands including without limitation, claims arising in contract or tort (including negligence), strict liability or otherwise (collectively, "Claims") in any way relating to or arising from (a) Intuitive's breach of any of its representations or warranties or any other obligation hereunder, or (b) Intuitive's negligence or willful misconduct; provided that Intuitive's indemnification obligations under this Section 11.2 shall not apply to the extent that (i) such Claims arise from Customer's negligence or willful misconduct or breach of any of its obligations hereunder.

11.3 **By Customer.** To the extent allowable by law, Customer hereby assumes all liability for, and agrees to indemnify, defend and hold harmless Intuitive and its successors, permitted assigns, agents and employees from and against, any and all Claims by third parties to the extent that they arise from: (a) Customer's or its employees', medical staff's, agents', affiliates' or representatives' negligence or willful misconduct in the use, possession, or operation of the System, including without limitation, (i) use of the System by individuals who have not completed appropriate training or whose training was not conducted by Intuitive, (ii) use of the System with any surgical instrument or accessory that is not made or approved by Intuitive for use with the System, or (iii) the conduct of surgical procedures on cadavers used in training; or (b) Customer's breach of any of its representations or warranties or any other obligation hereunder, including without limitation Customer's failure to comply with the requirements of Section 3.4 (Use of System) and 3.5 (Reprocess and Disposal). Notwithstanding the foregoing, Customer's indemnification obligations under this Section 11.2 shall not apply to the extent that such claims arise from Intuitive's negligence or willful misconduct or breach of any of its obligations hereunder.

11.4 **Shared Indemnification.** If an injury is caused by the negligence of both Intuitive and Customer, the apportionment of any damages shall be shared between Intuitive and Customer based upon the comparative degree of each party's negligence and each party shall be responsible for its own defense and its own costs including but not limited to the cost of defense, attorneys' fees and witnesses' fees and expenses incident thereto.

11.5 **Claim Notification Requirement.** A party's indemnification obligations under this Section 11 will not apply unless the indemnified party promptly notifies the indemnifying party of the claim as soon as the indemnified party became aware of it. The indemnifying party will have the right to control the defense or settlement of any claim at its cost and with its choice of counsel provided, however, either party shall not, without the other party's prior written consent, settle any such claim or action in a manner that does not fully discharge the other party's liability or in a manner that creates additional obligations on or restricts the rights of the other party or involves a statement of admission of guilt or wrongdoing. The indemnified party will provide all reasonable cooperation to assist the indemnifying party in the defense or settlement of the claim.

12. **Limitation of Liability**

Except for a breach of the obligations in Sections 3.4 (Use of System), 4 (Software License and Restrictions), 8 (Instruments and Accessories), 9 (Pricing and Payment Terms), the indemnification obligations of Section 11, 13 (Proprietary Information), to the extent permitted by applicable law, each party's aggregate liability to the other for claims relating to this Agreement, whether for breach in contract or tort (including negligence), is limited to an amount equal to double the sum of amounts paid by Customer under this Agreement for the activity (such as procurement of the System, Service, or training) giving rise to the claim. Except for a breach of the obligations in Sections 3.4, 4, 8, or 13, neither party will be liable for any indirect, punitive, special, incidental, or consequential damages in connection with or arising out of this Agreement (including loss of business, revenue, profits, use, data, or other economic advantage), even if that party has been advised of the possibility of damages. Some jurisdictions do not allow the limitation of liability for incidental or consequential damages; therefore in those jurisdictions, the foregoing limitation of liability applies only to the extent permitted by law.

13. **Proprietary Information**

"Proprietary Information" includes, but is not limited to, all non-public information (i) of the disclosing party ("Disclosing Party") that relates to past, present, or future research, development, or business activities or the results of those activities and/or (ii) that the Disclosing Party has received from others and is obligated to treat as confidential and proprietary. In addition, Intuitive's Proprietary Information includes the terms and conditions of this Agreement and all information derivable from the System, but excluding information that can be learned simply through observation of the System and its operation. Proprietary Information does not include information previously known by the receiving party ("Receiving Party") as demonstrated by the Receiving Party's contemporaneous written records, or information publicly disclosed without breach of an obligation of confidentiality, either before or after the Receiving Party's receipt of the information. The Receiving Party will hold all Proprietary Information of the Disclosing Party in strict confidence and must not use for any purpose, or disclose to any third party, any Proprietary Information, except (1) as expressly authorized in this Agreement or in writing by the Disclosing Party, and (2) as required by law or by court order. Notwithstanding any provision of this Agreement, the Recipient shall be permitted to disclose the Disclosing Party's Proprietary Information solely to the extent that such disclosure is required by law or by order of any court or governmental authority, provided, however, that the Recipient shall first have given advance notice to the Disclosing Party, so as to permit the Disclosing Party as owner of the information an opportunity to review such information for confidentiality and privilege preservation and/or to attempt to obtain a protective order or

similar administrative or legal remedy requiring that the Proprietary Information so disclosed be used only for the purposes for which the order was issued or for such other legal requirement, and that the Recipient shall cooperate with the Disclosing Party in such efforts. The Receiving Party will use the same degree of care to protect the Proprietary Information as Receiving Party uses to protect its own information of like kind, but not less than all reasonable steps to maintain the confidentiality of the Proprietary Information.

14. **Term**

    14.1 **Initial Term**. The Initial Term is specified in **Exhibit A**.

    14.2 **Termination and Survival**. Either party may terminate this Agreement if the other party breaches a material term or condition of this Agreement and fails to cure the breach following thirty (30) days' written notice from the non-breaching party. Sections 3.4, 3.5, 4, 9.1, 9.3, 11, 12, 13, 14.2, 15, and any other provision which by its nature will survive, will remain in effect notwithstanding the expiration or termination of this Agreement.

15. **Miscellaneous**

    15.1 **Assignment**. This Agreement will be binding upon the permitted successors and assigns of the parties. Neither party may assign this Agreement without the prior written consent of the other party, except pursuant to a transfer of all or substantially all of a party's assets and business relating to the subject of this Agreement, whether by merger, re-organization, sale of assets, sale of stock, or otherwise. Customer may not assign or transfer the Software license granted to it under this Agreement to any third party without Intuitive's prior written consent. Any attempt by either party to assign this Agreement or any rights or duties hereunder contrary to the foregoing provision is void. Intuitive consents to Customer's assignment of this Agreement to a Funding Entity as part of Customer's financing arrangement with the Funding Entity. If Customer assigns this Agreement to a Funding Entity, Customer retains its right to all benefits under this Agreement, including without limitation all warranties, representations, and indemnification provided by Intuitive, and may independently enforce any obligation, warranty, or representation, including without limitation Intuitive's obligations under Section 5 (Services).

    15.2 **Costs.** Except as otherwise specifically provided herein, each party will bear its own costs and expenses incurred in connection with the performance of its obligations hereunder.

    15.3 **Debarment**. Intuitive warrants and represents that individuals of its organization involved in providing Services under this Agreement have not been convicted of any criminal offense relating to health care and are not debarred, excluded, or otherwise ineligible for participation in any federal or state health care program. If at any time before completion of this Agreement, Intuitive or any individual in its organization involved in providing Services under this Agreement is so convicted or is debarred, excluded or otherwise determined to be ineligible, Intuitive will notify Customer in writing, the individual will immediately cease providing Services under this Agreement, and Intuitive will replace the individual with a replacement employee reasonably suitable to Customer, and, if it is Intuitive, this breach will be considered a material breach by Intuitive.

    15.4 **Federal Audit**. Until the expiration of four (4) years after furnishing Services under this Agreement, Intuitive will make available upon written request of the Secretary of the Department of Health and Human Services (the "Secretary") or upon request of the U.S. Comptroller General, or any of their duly authorized representatives, this Agreement and the books, documents, and records of Intuitive that are necessary to certify the nature and extent of costs for which Customer may properly seek reimbursement. If Intuitive carries out any of the duties of this Agreement through a subcontract with a value or cost of ten thousand dollars ($10,000) or more over a twelve (12) month period, the subcontract will contain a clause to the effect that until the expiration of four (4) years after furnishing of services under the subcontract, the subcontracting party will make available, upon written request of the Secretary, or upon request of the U.S. Comptroller General or any of their duly authorized representatives, the subcontract, and the books, documents, and records of the organization that are necessary to verify the nature and extent of the costs. Intuitive will promptly notify Customer of any requests for information made under this provision.

    15.5 **Force Majeure**. Neither party will be liable for any loss, damage, detention, delay, or failure to perform in whole or in part resulting from causes beyond that party's control including, but not limited to, acts of terrorism, fire, flood, earthquake, war, riots, labor disputes, shortage of components, or any governmental law, order, regulation, or ordinance.

    15.6 **Insurance**. Intuitive has obtained, and will maintain throughout the term of the Agreement, (i) Commercial General Liability Insurance including coverage for contractual liability, product liability, personal injury and bodily injury in an amount not less than $1,000,000 per occurrence/$3,000,000 aggregate (or as may be aggregated by the excess liability policy on the General Liability policy); or (ii) a self-insurance program of equivalent protection. Intuitive will furnish the Customer with a certificate of insurance evidencing the coverage as outlined above, or comparable evidence of self-insurance, on Customer's request. Customer has been listed as an additional insured and may review and approve Intuitve's coverage prior to signing this Agreement. In the event Intuitive's coverage is cancelled or not renewed, Intuitive will obtain tail/prior acts coverage by means of self-insurance. Intuitive carries, and will continue to carry, Workers' Compensation Insurance as required by law.

    15.7 **Interpretation**. Headings used in this Agreement are provided for convenience only and do not in any way affect the meaning or interpretation hereof. The terms "sale", "purchase", "acquire", "procure" and variations of such terms, as used in this Agreement with respect to the System, do not imply that the Software and Documentation aspect of the System are sold

or purchased; the Software and Documentation are licensed under this Agreement and only the Hardware is sold. Neither party is the drafter of this Agreement. Accordingly, the language of this Agreement will not be construed for or against either Party.

15.8 **Notices.** Any notices given under this Agreement must be in writing and will be deemed given and received five (5) days after the date of mailing, one (1) day after dispatch by overnight courier service or electronic mail, or upon receipt if by hand delivery, or upon completion of confirmed transmission if by facsimile. Any notices under this Agreement must be sent to Intuitive or the Customer at the address shown in the preamble above, in both cases to the Contracts Dept/General Counsel's office. Each party may change its address for receipt of notices by giving the other party notice of the new address.

15.9 **Relationship of the Parties.** The parties' relationship is one of contract, and they are not, and will not be construed as partners, joint venturers, or agent and principal. Neither party is authorized to act for, or on behalf of, the other party.

15.10 **Names and Logos.** Intuitive agrees not to use any name or mark of Customer or of Stanford University or to quote the opinion of any of Customer's employees in any advertising or other publicity, including in client lists or on Intuitive's website, without obtaining the prior written consent of Customer.

15.11 **Intent of Parties.** Neither Intuitive nor Customer intend that any payments made under this Agreement be in return for the referral of ongoing business, if any, or in return for the purchasing, leasing, or ordering of any services other than the specific services described in this Agreement. All payments specified in this Agreement are consistent with what the parties reasonably believe to be a fair market value for the services provided.

15.12 **Compliance With Laws.** Both parties comply with all applicable federal, state, and local laws, regulations, including non-discrimination and equal employment opportunity provisions, and orders in performance of the Agreement.

15.13 **Title 22 - Hospital Services.** Customer shall retain professional and administrative responsibility for the operation of the program, service and/or product being purchased under the Agreement, as and to the extent required by Title 22, California Code of Regulations, Section 70713. Customer's retention of such responsibility is not intended and shall not be construed to diminish, limit, alter or otherwise modify in any way the right or obligations of Customer or Intuitive under the Agreement, including without limitation the obligations of Intuitive under the insurance and indemnification provisions in the Agreement.

15.14 **Governing Law.** This Agreement shall be construed in accordance with and governed by the laws of the State of California, without regard to conflict of law rules.

15.15 **Performance Evaluation Requirements.** Services that are related to the care and treatment of patients provided pursuant to contractual agreement will be evaluated on at least an annual basis by Customer based on the following criteria which include but are not limited to fulfillment of contractual obligations, customer service, quality of service, overall staff competency and compliance with accreditation standards and/or state/federal requirements.

15.16 **Equal Opportunity.** In connection with its performance under this Agreement, Intuitive will not:
(1) discriminate against any employee or applicant for employment because of race, religion, color, sex, age, national origin, or physical or mental handicap (unless such handicap is job related), and will take affirmative action to insure equal opportunity in all aspects of employment including, but not limited to, recruitment, promotion, demotion, transfer, layoff, termination, compensation, and selection for training, including apprenticeship: and (2) will send to each labor union or representative of workers with which it has a collective bargaining agreement, or other contract or understanding, a notice stating the terms of the commitment hereunder with respect to equal opportunity.

This contract is subject to the provisions of (i) Executive Order 11246, (41 CFR 60-1.4); (ii) section 503 of the Rehabilitation Act of 1973, (41 CFR 60-741.5(a); and (iii) section 4212 of the Vietnam Era Veterans Readjustment Act of 1974, (41 CFR 60-300.5(a). Customer and Intuitive shall abide by the requirements of 41 CFR 60-741.5(a) and 41 CFR 60-300.5(a). These regulations prohibit discrimination against qualified individuals on the basis of disability, and qualified protected veterans, and requires affirmative action by Customer and Intuitive to employ and advance in employment qualified individuals with disabilities and qualified protected veterans.

15.17 **Severability**. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, then that provision will not affect the validity of the remaining provisions of the Agreement, and the parties will substitute a valid provision for the invalid provision that most closely approximates the intent and economic effect of the invalid provision.

15.18 **Access to Customer's Facilities.** Intuitive agrees that any Intuitive personnel who routinely provide Services at Customer's facilities will use commercially reasonable efforts to comply with Customer's Access Requirements, provided that Customer provides Customer's Access Requirements in writing prior to execution of this Agreement. Customer's need for Service may be unplanned and urgent with patient safety at stake. Therefore, if Customer denies access to its facilities to any Intuitive personnel for performance of Services (Section 5) or warranty (Section 10) obligations in connection with a surgical procedure because such personnel have not met Customer's Access Requirements, Intuitive's Services and warranty obligations in this Agreement will be suspended during such denial of access, provided that Intuitive uses commercially reasonable efforts to find replacement Intuitive personnel who comply with Customer's Access Requirements. Customer will

Highly Confidential-AEO                                                                                    Intuitive-01807651

indemnify and hold harmless Intuitive from any losses, claims, liabilities or causes of action arising from such denial of access.

15.19  **Data Use.** Customer agrees that Intuitive and its affiliates within the Intuitive Surgical group of companies (collectively, "Intuitive") may collect data relating to the use of Intuitive products ("Data"). In some instances Data may be communicated via data gathering or transmission technology to Intuitive. In other instances, Intuitive may require Customer and Customer agrees to provide Data to Intuitive. Such Data may be used for a variety of purposes, including, but not limited to (1) providing support and preventative maintenance of Intuitive products, (2) improving Intuitive products or services, (3) ensuring compliance with applicable laws and regulations, and (4) providing a general resource for Intuitive's research and business development. Intuitive does not intend to collect protected health information (PHI) as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or analogous foreign patient privacy laws or regulations, as may be amended from time to time. In the event any Data communicated to Intuitive identifies an entity or individual, Intuitive will not share such Data with any third parties without the entity's or individual's consent, unless required by law or regulatory authorities.

15.20  **Waivers.** No waiver of any right by either party under this Agreement will be of any effect unless the waiver is in writing and signed by the waiving party. Any purported waiver not consistent with the foregoing is void.

15.21  **Counterparts.** This Agreement may be executed by facsimile or in multiple copies, each of which is an original, and all of which taken together will constitute one single agreement.

15.22  **Entire Agreement; Amendment.** This Agreement is the entire agreement between Intuitive and Customer and supersedes any prior agreements, understandings, promises, and representations made either orally or in writing by either party to the other party concerning the subject matter herein, pricing, and the applicable terms. Any terms or conditions in Customer's (or as applicable, Funding Entity's) purchase order that are different from, inconsistent with, or in addition to, the terms and conditions of this Agreement will be void and of no effect, unless otherwise mutually agreed to in writing by the parties. This Agreement may be amended only in writing, signed by both parties. Any purported oral modification intended to amend the terms and conditions of this Agreement is void.

**BOTH PARTIES HAVE READ, UNDERSTOOD, AND AGREED TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT AND EXECUTE THIS AGREEMENT AS OF THE EFFECTIVE DATE.**

**IF THIS AGREEMENT IS NOT SIGNED BY BOTH PARTIES AND RETURNED TO INTUITIVE ON OR BEFORE DECEMBER 15, 2018 THE TERMS WILL BE SUBJECT TO CHANGE.**

**ACCEPTED BY: Intuitive Surgical, Inc.**

Signature: *Marc Giuffrida (Dec 5, 2018)*
Email: marc.giuffrida@intusurg.com
Title: Director, Contract Administration
Company: Intuitive Surgical, Inc

**ACCEPTED BY: Stanford Hospital and Clinic**

By: *Hash Jamili* / *[signature]*
Name: Hash Jamili / Adam Alkhato
Title: Finance Manager / Director of Biomedical
E-mail: JHolbrook@stanfordhealthcare.org / aalkhato@stanfordheal
Date: 12/18/2018 | 3:17:07 PM CST / 12/7/2018 | 2:42:16 PI


JG

# EXHIBIT A
## Deliverables, Price and Delivery

1.  Intuitive will provide Customer with the following:

**da Vinci® Xi™ Dual Console System (Firefly™ Fluorescence Imaging Enabled)**

Two (2): da Vinci® Xi™ System Surgeon Consoles
One (1): da Vinci® Xi™ System Patient Cart
One (1) da Vinci® Xi™ System Vision Cart
    Warranty period: One (1) year from the Acceptance.

da Vinci® Xi™ System Documentation including:
    User's Manual For System
        Warranty period: n/a

    User's Manual for Instruments and Accessories
        Warranty period: n/a

    One (1) da Vinci® Xi™ Cleaning & Sterilization Kit
        Warranty period: 90 days from Acceptance
    Two (2) da Vinci® Xi™ Instrument Release Kit (IRK)
        Warranty period: 90 days from Acceptance

da Vinci® Xi™ System Software
    Warranty period: One (1) year from the Acceptance.

Instrument and Accessories including:
Accessory Starter Kit
    Two (2): Box of 6: 8 mm Bladeless Obturator
    One (1): 8 mm Blunt Obturator
    Four (4): Box of 10: 5 mm - 8 mm Universal Seal
    Four (4): 8 mm Cannula
    Three (3): Monopolar Energy Instrument Cord
    Three (3): Bipolar Energy Instrument Cord
    One (1): Box of 3: da Vinci® Xi™ Gage Pin
    Three (3): Instrument Introducer
    One (1): Box of 10: Tip Cover for Hot Shears™ (MCS)
    One (1): Pmed Cable, Covidien Force Traid ESU
        Warranty period: 90 days from Acceptance

Drapes
    Two (2): Pack of 20 da Vinci® Xi™ Arm Drape
    One (1): Pack of 20 da Vinci® Xi™ Column Drape
        Warranty period: 90 days from Acceptance

Vision Equipment:
    Two (2): da Vinci® Xi™ Endoscope with Camera, 8 mm 0 degree
    Two (2): da Vinci® Xi™ Endoscope with Camera, 8 mm 30 degree
    Four (4): da Vinci® Xi™ Endoscope Sterilization Tray
        Warranty period:  One (1) year from the Acceptance.
Training Instrument Starter Kit
    One (1): Large Needle Driver
    One (1): ProGrasp™ Forceps
    One (1): Maryland Bipolar Forceps
    One (1): Hot Shears™ (Monopolar Curved Scissors)
    One (1): Tip-Up Fenestrated Grasper
    One (1): Mega™ SutureCut™ Needle Driver
        Warranty period: 90 days from Acceptance

(all kits subject to change without notice)(rev 4/2015)

# EXHIBIT A (con't)

2. **Pricing.** All amounts are shown in US Dollars

| Description | Quantity | Delivery Date* | Price | Delivery Charge | Annual Service Fees |
|---|---|---|---|---|---|
| da Vinci® Xi™ Dual Console System | 1 | December 31, 2018 | ▬ | ▬ | Service plan selection (see Section 5):<br>☒ dv Complete Care Plan<br>☐ dv Premium Care Plan<br><br>First Year of Initial Term:<br>**Included in System purchase price**<br><br>Subsequent Years (2-5) of the Initial Term:<br>▬ per year |
| da Vinci® Xi™ Integrated Table Motion Upgrade** | 1 | See Below** | ▬ | Pre-Pay & Add | n/a |

Intuitive makes no representation with regard to Certificate of Need requirements for this purchase. It is Customer's responsibility to determine whether this purchase complies with Customer's State Certificate of Need law and what Certificate of Need filing, if any, needs to be made with regard to this purchase.

*The Delivery Date is an estimated "on or before" delivery date to Customer's designated location (see "Ship-to" below).

3. **Acceptance.** The System is deemed accepted by Customer upon delivery to Customer's designated location ("Acceptance").

4. **The "Ship-To" information for Customer is:**

> Stanford Hospital and Clinic
> 300 Pasteur Drive
> Stanford, CA 94304

5. **The "Bill-To" information for Customer is:**

> Stanford Health Care
> Accounts Payable Department – Mail Code 5540
> 300 Pasteur Drive
> Stanford, CA 94305-5540
>
> SHCvendor@stanfordhealthcare.org

6. **Taxes.** Customer represents that Customer is or is not exempt from sales and use tax by checking the appropriate box below. If no box is checked, Customer will be deemed to not be exempt from sales and use tax and appropriate sales and use tax will be charged to Customer. If exempt, Customer is requested to send or fax a copy of Customer's exemption certificate to: Attn: Tax Department, Intuitive Surgical, Inc, 1266 Kifer Road, Sunnyvale, CA 94086; fax number: 408-523-1390.

   ☐ Taxable
   ☐ Exempt: Charitable (501)(c)/nonprofit
   ☐ Exempt: Direct Pay Permit # _____
   ☐ Exempt: Other _____

7. **Term.** The initial term of this Agreement will commence as of the Effective Date and will continue until the fifth (5th) anniversary of Acceptance ("Initial Term") unless earlier terminated as provided in this Agreement. Thereafter, this Agreement may be renewed for successive one (1) year terms ("Renewal Term(s)") upon mutual written agreement of the parties.

8. **Training.** As of the Effective Date, the price for training (based on a porcine model) is three thousand dollars ($3,000.00) per surgeon or physician's assistant. The payment terms for training are net thirty (30) days from the date of Intuitive's invoice. This pricing will remain in effect during the first year of the Initial Term. Thereafter, training will be made available to Customer at Intuitive's then current list price for training.

9. **Proctoring.** As of the Effective Date, the rate for Proctor's services is three thousand dollars ($3,000.00) per day. The payment terms for Proctoring are net thirty (30) days from the date of Intuitive's invoice. This pricing will remain in effect during the first year of the Initial Term. Thereafter, Proctoring will be made available to Customer at Intuitive's then current list price for Proctoring.

10. **Warranty and Service Extension for da Vinci® System.** Notwithstanding the above, for the da Vinci® System purchased under this Agreement;

| Standard Warranty Term | Standard Service Fee Included in System Purchase Price | Extended Warranty | Extended Service Fee Included in System Purchase Price |
|---|---|---|---|
| Twelve (12) months from date of System Acceptance | Twelve (12) months from date of System Acceptance | Twelve (12) months from date of System Installation | Twelve (12) months from date of System Installation |

*The da Vinci® System purchased under this Agreement must be installed within twelve (12) months of Acceptance.

Highly Confidential-AEO                                          Intuitive-01807655

# Stanford SLSA 05Dec18

Adobe Sign Document History                                           12/05/2018

| | |
|---|---|
| Created: | 12/05/2018 |
| By: | Roy Garcia (roy.garcia@intusurg.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAiTR5JFJFaZmk-lunPf4h6Bm7v45lul4X |

# "Stanford SLSA 05Dec18" History

- **Document created by Roy Garcia (roy.garcia@intusurg.com)**
  12/05/2018 - 3:37:16 PM PST- IP address: 204.27.197.6

- **Document emailed to Jose Gonzalez (revenue@intusurg.com) for approval**
  12/05/2018 - 3:38:09 PM PST

- **Document viewed by Jose Gonzalez (revenue@intusurg.com)**
  12/05/2018 - 3:38:32 PM PST- IP address: 204.27.197.6

- **Document approved by Jose Gonzalez (revenue@intusurg.com)**
  Approval Date: 12/05/2018 - 4:21:23 PM PST - Time Source: server- IP address: 204.27.197.6

- **Document emailed to Marc Giuffrida (marc.giuffrida@intusurg.com) for signature**
  12/05/2018 - 4:21:23 PM PST

- **Document viewed by Marc Giuffrida (marc.giuffrida@intusurg.com)**
  12/05/2018 - 4:21:35 PM PST- IP address: 204.27.197.6

- **Document e-signed by Marc Giuffrida (marc.giuffrida@intusurg.com)**
  Signature Date: 12/05/2018 - 4:26:52 PM PST - Time Source: server- IP address: 204.27.197.6

- **Signed document emailed to Jose Gonzalez (revenue@intusurg.com), Marc Giuffrida (marc.giuffrida@intusurg.com) and Roy Garcia (roy.garcia@intusurg.com)**
  12/05/2018 - 4:26:52 PM PST

INTUITIVE SURGICAL | POWERED BY Adobe Sign



Intuitive Surgical, Inc.
1266 Kifer Road
Sunnyvale, CA 94086
800-876-1310

## Quote Details

| Quote ID | 110317.1 |
|---|---|
| Quote Date | 12/5/2018 |
| Valid Until | 12/31/2018 |
| Sales Rep | Becky Cokeley |
| Phone Number | 1(707) 637-6931 |
| Email | Becky.Cokeley@intusurg.com |

## Company Information

| Hospital Name | Stanford Hospital and Clinic |
|---|---|
| SF ID / IDN Affiliation | 10856/Stanford Hospital and Clinic |
| Address | 300 Pasteur Drive |
| City, State, Zip | Stanford, CA, 94304 |
| Contact Name | |
| Telephone | |

Please submit orders electronically via GHX or fax to 408-523-2377

### Items

| Part Number | Qty | Item | Price | Subtotal |
|---|---|---|---|---|
| da Vinci Systems | | | | |
| | 1 | da Vinci Xi® Dual Console System<br>One (2): da Vinci Xi System Surgeon Console One (1): da Vinci Xi System Patient Cart One (1): da Vinci Xi System Vision Cart da Vinci Xi System Documentation da Vinci Xi System Software Training Instrument Starter Kit Accessory Starter Kit Drapes Vision Equipment (All Kits subject to change without notice) | ✗ | ✗ |
| da Vinci System Upgrades | | | | |
| | 1 | da Vinci® Xi® Integrated Table Motion Sold with System<br>Upgrade includes:<br>- Table Connection hardware module for patient cart<br>- Integrated Table Motion software Upgrade<br>Note: Integrated Table Motion requires connection to a Trumpf Medical TruSystem 7000dV operating table for feature use. The TruSystem 7000dV operating table is sold and serviced by Trumpf Medical. | ✗ | ✗ |
| Freight | | | | |
| | 1 | System Freight - West (AZ, CA, CO, ID, MT, NM, NV, OR, UT, WA, WY) | ✗ | ✗ |
| Total | | | | ✗ |

### Service

| Part Number | Qty | Item | Price | Discount | Subtotal |
|---|---|---|---|---|---|
| | 1 | Da Vinci Xi® dVComplete Care Service Plan (dual console)<br>Years 2-5, per year<br>Years 2-5, per year | ✗ | ✗ | ✗ |
| | 1 | Da Vinci® Year One System Service (Included in System Fee unless an amount is listed) | ✗ | ✗ | ✗ |

## Terms and Conditions

**1) System Terms and Conditions:**

1.1 A signed Sales, License, and Service Agreement ("SLSA") or equivalent is required prior to shipment of the System(s). All site modifications and preparation are the Customer's responsibility and are to be completed to the specification given by Intuitive Surgical prior to the installation date. Delivery is subject to credit approval. Payment terms are net 30 days from Intuitive Surgical's invoice date. Each System includes the patient side cart, vision cart, and surgeon console(s). System enhancements required to support new features may be purchased at Intuitive Surgical's then current list price. The price of the da Vinci® Surgical System includes the initial installation of the System at Customer's facility and a one (1) year warranty for manufacture defect. All taxes and shipping charges are the responsibility of the Customer and will be added to the invoice, as appropriate.

1.2 Intuitive makes no representation with regard to Certificate of Need requirements for this purchase. It is your (the Customer's) responsibility to determine whether this purchase complies with your State's Certificate of Need laws and what Certificate of Need filing, if any, needs to be made with regard to this purchase.

1.3 Customer acknowledges that the cleaning and sterilization equipment, not provided by Intuitive, is required to appropriately reprocess da Vinci instruments and endoscopes. Please refer to the Intuitive Surgical Reprocessing website: https://reprocessing.intuitivesurgical.com. Customer is responsible for ensuring that its' cleaning and sterilization program comply with all health and safety requirements.

**2) System Upgrade Terms and Conditions:**

2.1 A signed Purchase Order and/or an addendum to the existing Sales, License, and Service Agreement ("SLSA") is required prior to shipment of the System upgrade. All site modifications and preparation are the Customer's responsibility and are to be completed with the specification given by Intuitive Surgical prior to the installation date.

2.2 Payment terms are net 30 days from Intuitive Surgical's invoice date. The price includes: the System upgrade, the initial installation at Customer's facility and a one (1) year warranty for manufacture defect. All taxes and shipping charges are the responsibility of the Customer and will be added to the invoice, as appropriate. Delivery is subject to credit approval and inventory availability. Standard

customer designated carrier.

3) I&A Terms and Conditions:

3.1 To place an order, please fax Purchase Order to Intuitive Surgical Customer Service at 408-523-2377 or submit through the Global Health Exchange (GHX). Payment Terms Net 30 Days from invoice date. Delivery is subject to credit approval by Intuitive Surgical. Estimated 2-Day standard delivery. Standard shipping terms are FCA from Intuitive Surgical™ warehouse and are subject to inventory availability. Pricing is subject to applicable shipping costs and taxes. Pricing is subject to change without notice. A $9.95 handling charge will be applied for any shipments using a customer designated carrier.

4) Return Goods Policy :

4.1 All returns must be authorized through Intuitive Surgical Customer Service, please call 800-876-1310 to obtain a Return Material Authorization Number (RMA#). All items must be accompanied with valid RMA# for processing and are requested to be received within 14 days of issuance or the RMA could be subject to cancellation. Intuitive Surgical will prepay for the return of the defective instruments. Upon identification of a defective instrument, please call Intuitive Surgical Customer Service within 5 business days. Prior to returning to Intuitive Surgical, items must be cleaned and decontaminated in accordance with the then current local environmental and safety laws and standards. For all excess inventory returns, items are required to be in the original packaging with no markings, seals intact, and to have been purchased within the last 12 months. Package excess returned inventory in a separate shipping container to prevent damage to original product packaging.

5) Exchange Goods Policy :

5.1 Repairs to Endoscope, Camera Head and Skills Simulators may qualify for Intuitive Surgical advanced exchange program. Please contact Customer Service or send email to CustomerSupport-ServiceSupport@intusurg.com to obtain information on our current exchange program.

6) Credit Policy :

6.1 Intuitive Surgical will issue credit against original purchase order after full inspection is complete. Credit for defective returns: Intuitive Surgical will issue credit on products based on failure analysis performed and individual warranty terms. For instruments, credit will be issued for the remaining lives, plus one additional life to compensate for usage at the time the issue was identified. Evidence of negligence, misuse and mishandling will not qualify for credit. Credit for excess inventory returns: Excess Inventory returns will be valued at the invoice price. Original packaging must be unmarked, undamaged and seals intact to qualify for credit. Credit will be issued if the products were shipped less than 12 months prior to return request, the original package is intact and the product is within expiration date. Intuitive Surgical will retain all returned product.

7) Miscellaneous :

7.1 Warranty: Warranties are applied for manufacturing defects. Endoscope, Camera, Simulator, and System upgrades – 1 year warranty. Accessories – 90 day warranty. Instruments: see above for credit.

7.2 Any term or condition contained in your purchase order or similar forms which is different from, inconsistent with, or in addition to these terms shall be void and of no effect unless agreed to in writing and signed by your authorized representative and authorized representative of Intuitive Surgical.

The terms and conditions of this quote, including pricing, are confidential and proprietary information of Intuitive Surgical and shall not be disclosed to any third party without the consent of Intuitive Surgical.

For questions please contact Customer Service at 800-876-1310

Highly Confidential-AEO

Intuitive-01807658