# ATTACHMENT 11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC., | Case No. 5:21-cv-03496. |
| Plaintiff, | |
| vs. | |
| INTUITIVE SURGICAL, INC., | |
| Defendant. | |

# EXPERT REPORT

**Dr. Russell L. Lamb**
**President**
Monument Economics Group, LLC
1000 Wilson Boulevard
Suite 2650
Arlington, VA 22209

December 2, 2022

## TABLE OF CONTENTS

I. Introduction and Summary of Conclusions .................................................................. 1
   A. Expert Background and Qualifications ............................................................... 1
   B. Summary of Plaintiffs' Allegations .................................................................... 2
   C. Assignment ......................................................................................................... 4
   D. Materials Reviewed ............................................................................................ 5
   E. Summary of Conclusions .................................................................................... 5
II. Industry Background .................................................................................................... 6
   A. Methods of Surgery ............................................................................................ 6
   B. Introduction of Robotic Surgery ......................................................................... 8
   C. Intuitive's Da Vinci Surgical Robot ................................................................. 10
III. The Market for MIST Surgical Robots in the United States Constitutes a Relevant Antitrust Market .................................................................................................................. 17
   A. The Market for MIST Surgical Robots is a Relevant Antitrust Product Market 17
      i. Traditional Laparoscopic Surgeries are Not an Economic Substitute for Minimally Invasive Soft Tissue Surgeries Performed with MIST Surgical Robots, and Thus Do Not Discipline Pricing of MIST Surgical Robots ............ 20
        a. Intuitive Acknowledged that it Did Not View Traditional Laparoscopic Surgery as Competition for Surgeries performed with MIST Surgical Robots ............... 21
        b. MIST Surgical Robots such as Da Vinci Possess Different Features and Benefits to Surgeons and Patients Compared to Traditional Laparoscopic Surgeries ...... 22
        c. Non-Clinical Benefits of MIST Surgical Robots Compared to Traditional Laparoscopic Surgeries ................................................................................. 26
      ii. Non-MIST Surgical Robots are Not Economic Substitutes for MIST Surgical Robots and, Therefore, Cannot Be Substituted for MIST Surgical Robots in the Performance of Minimally Invasive Soft Tissue Surgeries .............................. 30
   B. The Relevant Antitrust Geographic Market with Regards to the Tying Market is the United States ............................................................................................... 31
IV. The EndoWrist Repair and Replacement Market in the United States Constitutes a Relevant Antitrust Market ................................................................................................. 33

  A. The EndoWrist Repair and Replacement Market is a Relevant Antitrust Product Market ................................................................................................................33

   i. Third-Party Repairs of EndoWrist Surgical Instruments are Part of the Same Relevant Antitrust Product Market as Replacement EndoWrist Surgical Instruments Sold by Intuitive ...............................................................................34

   ii. Intuitive Considered Selling Refurbished Endowrist Instruments to Make it More Difficult for Third-Party Repair Companies To Compete Effectively in the EndoWrist Repair and Replacement Market ........................................................37

   iii. Neither Traditional Laparoscopic Surgical Instruments, nor Surgical Instruments Used with Any Other Non-MIST Surgical Robots, are Compatible with Da Vinci Surgical Robots ................................................................................................39

  B. The Relevant Antitrust Geographic Market with Regards to the Tied Market is the United States ................................................................................................41

  C. The EndoWrist Repair and Replacement Market is Distinct from the Market for MIST Surgical Robots .......................................................................................42

V. Evidence Demonstrates that the Alleged Misconduct was Anticompetitive ............46

  A. Intuitive Posessed Monopoly Power in the Market for MIST Surgical Robots in the United States During the Relevant Period ..................................................48

   i. Intuitive Dominated the Market for MIST Surgical Robots in the United States During the Relevant Period ................................................................................49

   ii. There Were Significant Barriers to Entry Into the Market for MIST Surgical Robots in the United States During the Relevant Period ...................................53

   iii. Intuitive's Prices for da Vinci Robots Greatly Exceeded Marginal Costs..........60

  B. Intuitive Used Its Monopoly Power in the Market for MIST Surgical Robots to Maintain its Monopoly the Market for EndoWrist Surgical Instruments in the United States During the Relevant Period .......................................................64

   i. Intuitive's Restrictive Sales, License, and Service Agreement Allowed Intuitive to Maintain Monopoly Power in the EndoWrist Repair and Replacement Market 65

    a. Intuitive Dominated the EndoWrist Repair and Replacement Market in the United States During the Relevant Period ...............................................67

      b. Intuitive's Conduct Prevented Rivals, Including SIS, from Competing Effectively in the EndoWrist Repair and Replacement Market in the United States During the Relevant Period ...................................................................... 68

      c. Intuitive's Exercise of Monopoly Power in the EndoWrist Repair and Replacement Market During the Relevant Period .............................................. 75

  C. Evidence Demonstrates that Intuitive's Alleged Misconduct Caused Harm to Competition in the EndoWrist Repair and Replacement Market ....................... 76

    i. Intuitive's Patient Safety Claims ........................................................................ 76

    ii. Intuitive Used its Alleged Misconduct in the EndoWrist Repair and Replacement Market to Continue to Charge Supra-Competitive Prices for the Replacement of EndoWrist Instruments, Causing Harm to Competition ........... 79

VI. Conclusions ................................................................................................................ 92

legal/contractual grounds" are largely irrelevant.[129] Furthermore, Deutsche Bank estimated that, once repairs of EndoWrist instruments used with model X/Xi da Vinci robots become available, "Intuitive's top line exposure will increase dramatically – rendering a majority (~58%) of segment sales 'at risk' of competitive pressures."[130]

56. Evidence I have reviewed demonstrates that Intuitive itself acknowledged that third-party repairs of EndoWrist surgical instruments (such as those performed by SIS) were a competitive threat to its sales of replacement EndoWrist surgical instruments. At deposition, Katie Scoville, Director of New Product Verification, Packaging, and Product Labeling at Intuitive, testified that the threat of "third-party EndoWrist refurbishers" would "be a factor in our sales numbers for certain third parties."[131]

57. In a September 2016 internal analysis, Intuitive acknowledged the competitive threat from one such third-party repair company (Rebotix): "Despite the strong technology protections that ISI uses to limit the life of its instruments, there are companies that will attempt to hack that technology and extend instrument life beyond ISI's specs. There is already one company in Florida (Rebotix) that claims to be able to extend instrument life and is currently attempting to qualify for a CE mark for the life-extended instruments."[132] In an internal analysis of options for pursuing a "Remanufactured Instruments" program, Intuitive notes as one of the "Pros" of one option that "Rebotix has potential to impact Si sales, an immediate threat."[133] In an August 2019 analysis of third-party repairs of EndoWrist surgical instruments, Intuitive identified a number of third-party repairers as a competitive threat to their business, and also summarized "rebuttals" to Intuitive's value proposition pertaining to one specific third-party repairer (Rebotix), as well as various responses to those rebuttals.[134]

---

[129] DeSantis Deposition Exhibit 11 at Intuitive-00566057-066. See, also, Intuitive-00552993-53014 at 52997-52998.
[130] DeSantis Deposition Exhibit 11 at Intuitive-00566072. See, also, Intuitive-00552993-53014 at 53006.
[131] Deposition of Katie Scoville, May 26, 2021 (hereafter "Scoville Deposition") at 76:19-25. Ms. Scoville also testified that Intuitive "likely discussed revenue implications of third-party refurbishment." See Scoville Deposition at 76:1-18.
[132] Intuitive-00102938-989 at 952.
[133] Intuitive-00139149-150 at 150.
[134] Intuitive-00194074-089.

35