ATTACHMENT 89

*** CONFIDENTIAL ATTORNEYS EYES ONLY ***

```
 1                 UNITED STATES DISTRICT COURT
 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN FRANCISCO DIVISION
 4
     SURGICAL INSTRUMENT SERVICE    )
 5   COMPANY, INC.,                 ) Case No.:
                                    ) 3:21-cv-03496-VC
 6            Plaintiff,            )
                                    ) Lead Case No.:
 7        vs.                       ) 3:21-cv-03825-VC
                                    )
 8   INTUITIVE SURGICAL, INC.,      ) Pages 1 to 65
                                    )
 9            Defendant            )
     _____ )
10   IN RE: DA VINCI SURGICAL ROBOT )
     ANTITRUST LITIGATION           )
11   _____ )
     THIS DOCUMENT RELATES TO:      )
12   ALL ACTIONS                    )
     _____ )
13
14           *** CONFIDENTIAL ATTORNEYS EYES ONLY ***
15                      DEPOSITION OF:
16                  KEITH ROBERT JOHNSON
17                 IN HIS PERSONAL CAPACITY
18                THURSDAY, OCTOBER 27, 2022
19                       1:27 p.m.
20
21   REPORTED BY:
22   Vickie Blair
23   CSR No. 8940, RPR-CRR
24   JOB NO. 5539883
25   PAGES 1 - 68
```

Page 1

*** CONFIDENTIAL ATTORNEYS EYES ONLY ***

```
 1    your answers about that timeline be roughly the same?    14:52:00

 2              MR. CHAPUT:  Object to the form.               14:52:06

 3              THE WITNESS:  Yes, I'm -- I'm -- I'm a          14:52:09

 4    sales guy, I'm looking for opportunities to sell.  This  14:52:11

 5    robotic program created an opportunity for SIS to        14:52:15

 6    substantially increase the revenue of our organization,  14:52:18

 7    a great opportunity, and that was what I -- I was -- I    14:52:20

 8    was pumped about the opportunity.                        14:52:24

 9    BY MR. SNYDER:                                           14:52:25

10        Q    Let's -- let's go -- let's go there next.       14:52:29

11    I just have a few questions.                             14:52:33

12              This morning I believe you used the word       14:52:35

13    "monumental" in connection with the level of interest    14:52:41

14    in EndoWrist repair.                                     14:52:43

15              Is that a word that you used in that           14:52:44

16    context, Mr. Johnson?                                    14:52:46

17        A    I believe I did, and I don't use that word      14:52:48

18    very often.                                              14:52:50

19        Q    And are -- are there -- are there key --        14:52:53

20    key moments or key events that you have in mind when     14:53:01

21    you refer to the monumental level of interest in         14:53:05

22    EndoWrist repair?                                        14:53:08

23              MR. CHAPUT:  Object to the form.               14:53:11

24              THE WITNESS:  Yeah, there's -- there's a       14:53:12

25    couple very distinct meetings that stick out in my      14:53:16
```

Page 50

*** CONFIDENTIAL ATTORNEYS EYES ONLY ***

```
 1    how large Vizient is?  I mean, you said they're the      14:56:11

 2    largest, but what does that mean?                        14:56:15

 3         A     Yeah, they represent, don't quote me          14:56:16

 4    specifically, but they represent somewhere between       14:56:19

 5    2,500 and 3,000 hospitals.                               14:56:22

 6         Q     And what -- what's Vizient's geographic       14:56:24

 7    scope?                                                   14:56:29

 8         A     National, every state in the union.           14:56:29

 9         Q     Another -- another name that I believe        14:56:36

10    came up earlier today was Johns Hopkins.                 14:56:37

11         Did you mention Johns Hopkins?                      14:56:41

12         A    Yes.                                           14:56:43

13         Q    What do you recall about -- did you meet       14:56:43

14    with Johns Hopkins at any point?                         14:56:45

15         A    Yes.                                           14:56:48

16         Q    What do you recall about that meeting?         14:56:48

17         A    I could describe the gentleman to you          14:56:56

18    because I remember specifically what he looked like, I   14:56:57

19    believe he was the director of sourcing or the VP of     14:57:00

20    supply chain, and forgive me for not remembering his     14:57:04

21    title specifically, that meeting was teed up by the      14:57:08

22    Vizient director that -- the client executor that        14:57:13

23    managed that relationship with Johns Hopkins, and they   14:57:17

24    told them that they had a vendor that had a cost          14:57:19

25    savings program around robotic surgery.                  14:57:21
```

Page 53

*** CONFIDENTIAL ATTORNEYS EYES ONLY ***

```
 1    Clinic.                                         14:58:33

 2              Did I get that right?                 14:58:37

 3      A     Yes, sir.                               14:58:38

 4      Q     And did you ever talk with or meet with 14:58:39

 5    the Mayo -- representatives of the Mayo Clinic? 14:58:41

 6      A     Yes.                                    14:58:44

 7      Q     And what -- was it an in-person meeting? 14:58:44

 8      A     They all took place over Zoom.          14:58:50

 9      Q     Okay.  This is during the -- during the 14:58:52

10    pandemic?                                       14:58:54

11      A     Yes, sir.                               14:58:54

12      Q     And what -- what do you recall about that 14:58:56

13    Zoom meeting with the Mayo Clinic?              14:58:58

14      A     The meetings have all gone the same, and I 14:59:07

15    say that with all honestly, they -- they have a vested 14:59:09

16    interest in finding ways to reduce costs on their 14:59:14

17    robotic surgery.  We explained to them the program, 14:59:17

18    they're excited about it.                       14:59:21

19              And I didn't finish my statement before 14:59:22

20    about Johns Hopkins.                            14:59:24

21              "Keith, this sounds great, let us do our 14:59:28

22    due diligence and we'll get back to you."  Every single 14:59:31

23    one of those groups have come back, either via email or 14:59:35

24    a phone call saying, "Keith, Intuitive does not allow 14:59:39

25    us, they will not allow us to do your program, our 14:59:44
```

Veritext Legal Solutions
866 299-5127

*** CONFIDENTIAL ATTORNEYS EYES ONLY ***

```
1    follow-up questions, Mr. Johnson, based on Mr. Snyder's    15:02:24

2    questioning.                                                15:02:27

3                                                                15:02:29

4                    FURTHER EXAMINATION                         15:02:29

5    BY MR. CHAPUT:                                              15:02:29

6        Q    Okay.  So, first, you were describing this        15:02:29

7    conversation you had with some folks at Johns Hopkins,     15:02:34

8    and I think you said that Vizient told them that SIS       15:02:37

9    had a cost savings program around robotic surgery; is      15:02:40

10   that right?                                                 15:02:46

11       A    Yes.                                               15:02:46

12       Q    Which program was that referring to?              15:02:46

13       A    The specific one with Johns Hopkins, I            15:02:56

14   believe.                                                    15:02:56

15            And a lot of those calls started out with         15:03:00

16   us asking that vendor, "Do you mind sharing what your      15:03:03

17   mix of robots is?  Do you have any SIS?  Do you have       15:03:10

18   any Xi's?"                                                  15:03:16

19            And then that would -- we would base our          15:03:17

20   conversation, excuse me, off of what robots they had,      15:03:18

21   and I think, if I remember specifically, Johns Hopkins     15:03:21

22   didn't have any Si robots at that time, so we were         15:03:24

23   talking them about the recovery and recycle program.       15:03:28

24       Q    When did that conversation with Johns             15:03:35

25   Hopkins occur?                                              15:03:37
```

Page 58

*** CONFIDENTIAL ATTORNEYS EYES ONLY ***

| | | |
|---|---|---|
| 1 | correctly, 300 or so SIS still in the United States, | 15:05:35 |
| 2 | and I think from what we know now, there's less than a | 15:05:41 |
| 3 | hundred still being used in the states today, so | 15:05:45 |
| 4 | there's not a lot of opportunity for Si conversation. | 15:05:47 |
| 5 | So all of that time that we were not | 15:05:50 |
| 6 | allowed to talk about Si or couldn't talk about Si | 15:05:54 |
| 7 | because of the fear in the industry, it kinda took our | 15:05:58 |
| 8 | opportunity away to be successful with that program. | 15:06:01 |
| 9 | Q    Did Johns Hopkins end up going forward | 15:06:13 |
| 10 | with the recovery program that SIS offers? | 15:06:18 |
| 11 | A    We did not end up doing any robotic | 15:06:22 |
| 12 | business with Johns Hopkins. | 15:06:25 |
| 13 | Q    Did you have any communications with Johns | 15:06:27 |
| 14 | Hopkins by email? | 15:06:34 |
| 15 | A    I'm sure we did. | 15:06:34 |
| 16 | Q    You also testified about a conversation | 15:06:43 |
| 17 | you had with the Mayo clinic; correct? | 15:06:44 |
| 18 | A    Yes. | 15:06:47 |
| 19 | Q    When did your conversation or | 15:06:48 |
| 20 | conversations with the Mayo Clinic happen? | 15:06:53 |
| 21 | A    Probably right around that same time. | 15:06:56 |
| 22 | Q    So that would be late 2021? | 15:07:02 |
| 23 | A    Yeah, probably, if I remember correctly, | 15:07:04 |
| 24 | probably a couple weeks or a month after that Johns | 15:07:05 |
| 25 | Hopkins call. | 15:07:09 |

Page 60

*** CONFIDENTIAL ATTORNEYS EYES ONLY ***

| | | |
|---|---|---|
| 1 | Q    Okay.  Is either Mayo Clinic or Johns | 15:07:09 |
| 2 | Hopkins a current SIS customer? | 15:07:17 |
| 3 | A    No. | 15:07:18 |
| 4 | Q    The conversation you had with the Mayo | 15:07:18 |
| 5 | Clinic, was that also specific to the EndoWrist | 15:07:27 |
| 6 | recovery program? | 15:07:30 |
| 7 | A    Yes. | 15:07:35 |
| 8 | Q    What was the result of your conversation | 15:07:35 |
| 9 | with the Mayo Clinic? | 15:07:38 |
| 10 | A    The same result as Johns Hopkins. | 15:07:43 |
| 11 | Q    They didn't move forward? | 15:07:45 |
| 12 | A    What -- what we were told was, based | 15:07:48 |
| 13 | off -- what I really -- what happened in the industry | 15:07:56 |
| 14 | was when the repair program got launched, people felt | 15:07:59 |
| 15 | that that violated their contract with Intuitive, and | 15:08:04 |
| 16 | once that precedent was set, the conversations have | 15:08:08 |
| 17 | been different since then because there is some | 15:08:12 |
| 18 | hesitancy from the hospitals about does this really, | 15:08:16 |
| 19 | truly affect our -- our service agreement or our | 15:08:22 |
| 20 | warranty with Intuitive or not. | 15:08:25 |
| 21 | Q    Did Johns Hopkins and the Mayo Clinic | 15:08:27 |
| 22 | refer to the repair program in any way in these | 15:08:33 |
| 23 | conversations they had with you? | 15:08:39 |
| 24 | A    Not that I remember because I don't | 15:08:40 |
| 25 | believe they have any SIS left.  I think Johns | 15:08:50 |

Page 61

*** CONFIDENTIAL ATTORNEYS EYES ONLY ***

```
 1    STATE OF CALIFORNIA     )

 2                            )  ss.

 3    COUNTY OF LOS ANGELES   )

 4              I, Vickie Blair, CSR No. 8940, RPR-CRR, in

 5    and for the State of California, do hereby certify:

 6              That, prior to being examined, the witness

 7    named in the foregoing deposition was by me duly sworn

 8    to testify as to the truth, the whole truth, and

 9    nothing but the truth;

10              That said deposition was taken before me

11    at the time and place therein set forth, and was taken

12    down by me stenographically and thereafter transcribed

13    via computer-aided transcription under my direction and

14    is a true record of the testimony given;

15              I further certify I am neither counsel

16    for, nor related to, any party to said action, nor

17    interested in the outcome thereof;

18              IN WITNESS WHEREOF, I have hereto

19    subscribed my name this 5th day of November, 2022.

20

21

22

23

24

25         Vickie Blair, CSR No. 8940, RPR-CRR
```

Page 65