ATTACHMENT 97

```
 1   UNITED STATES DISTRICT COURT
 2   FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3   SAN FRANCISCO DIVISION
 4
 5    - - - - - - - - - - - - - - - - - - - -x
 6   SURGICAL INSTRUMENT SERVICE COMPANY, INC.,
 7                    Plaintiff,
 8         -against-
 9   INTUITIVE SURGICAL, INC.,
10                    Defendant.
11    - - - - - - - - - - - - - - - - - - - -x
12                Virtual Zoom Deposition
13                   March 10, 2023
                      9:00 a.m.
14
15
16        VIRTUAL VIDEO DEPOSITION of PHILIP J.
17   PHILLIPS, in the above-entitled action, held
18   at the above time and place, taken before
19   Jeremy Richman, a Shorthand Reporter and
20   Notary Public of the State of New York,
21   pursuant to the Federal Rules of Civil
22   Procedure, and stipulations between Counsel.
23
24              *     *     *
25
                                              Page 1
```

```
 1                    P. PHILLIPS
 2        Q.    Okay.  Does -- but am I right         09:21:43
 3   that statements that FDA officials made          09:21:46
 4   on the topic of the regulatory status            09:21:49
 5   of extending the uses of EndoWrists is           09:21:54
 6   something that would impact your                 09:21:57
 7   opinions, correct?                               09:22:00
 8        A.    Well, I would certainly               09:22:02
 9   consider those in rendering opinions,            09:22:04
10   yes.                                             09:22:06
11        Q.    Okay.  And you didn't                 09:22:06
12   consider any of the statements that FDA          09:22:08
13   officials made in submitting -- when             09:22:10
14   you submitted your opening report;               09:22:12
15   isn't that right?                                09:22:15
16        A.    Unless there's any opinions           09:22:16
17   here, and I don't recall off the top of          09:22:18
18   my head, unless there's any opinions             09:22:19
19   that actually reflected some statements          09:22:21
20   that reviewers or other FDA officials            09:22:23
21   had made, I would agree with your                09:22:26
22   statement.                                       09:22:28
23        Q.    All right.  So if I read your         09:22:28
24   report from front to back, and I don't           09:22:31
25   see you, see you referencing a                   09:22:34
```

Veritext Legal Solutions
866 299-5127

```
 1                    P. PHILLIPS
 2    statement by an FDA official on the              09:22:36
 3    topic of extending the usages of an              09:22:38
 4    EndoWrist, then it's fair that, to               09:22:43
 5    conclude you did not consider those              09:22:47
 6    statements in forming your opinions in           09:22:48
 7    this opening report?                             09:22:50
 8           A.    Yes.                                09:22:53
 9           Q.    Under Depositions, you have         09:22:53
10    listed two depositions, do you see              09:22:58
11    that?                                            09:23:02
12           A.    Yes.                                09:23:03
13           Q.    Who is Mark Johnson and Ted        09:23:14
14    Clairborne in terms of their                     09:23:17
15    affiliation?                                     09:23:18
16           A.    I believe they're Intuitive         09:23:19
17    employees, I don't know their actual            09:23:22
18    titles.                                          09:23:23
19           Q.    So in preparing your opening        09:23:26
20    report, you did not review the                   09:23:29
21    deposition of Greg Posdal; is that              09:23:31
22    right?                                           09:23:37
23           A.    I believe that's correct, I        09:23:37
24    did not.                                         09:23:38
25           Q.    You did not review the              09:23:38
```

Page 29

|    |                                            |          |
|----|--------------------------------------------|----------|
| 1  | P. PHILLIPS                                |          |
| 2  | creating a code.                           | 09:31:29 |
| 3  | So the product code database              | 09:31:31 |
| 4  | itself is quite a diverse group of         | 09:31:31 |
| 5  | codes that have varied meaning             | 09:31:35 |
| 6  | depending upon the actual reviewers,       | 09:31:37 |
| 7  | for the most part reviewers and lower      | 09:31:41 |
| 8  | level administers that create them.        | 09:31:44 |
| 9  | Q.   In your consulting practice,          | 09:31:45 |
| 10 | do you periodically look at the product    | 09:31:47 |
| 11 | codes on FDA's website?                    | 09:31:51 |
| 12 | A.   Yes.                                  | 09:31:55 |
| 13 | Q.   Why do you do that?                   | 09:31:56 |
| 14 | A.   Because it does represent             | 09:31:57 |
| 15 | groupings of devices, categorization of    | 09:31:59 |
| 16 | devices.  But again, with the              | 09:32:04 |
| 17 | limitation that I understand that those    | 09:32:07 |
| 18 | product codes are not terribly precise.    | 09:32:08 |
| 19 | Q.   And you know those product            | 09:32:10 |
| 20 | codes have a category that says            | 09:32:13 |
| 21 | "submission," right?                       | 09:32:17 |
| 22 | A.   I'm a little confused with            | 09:32:19 |
| 23 | what you're saying.                        | 09:32:22 |
| 24 | Q.   Well, when you pull up, when          | 09:32:23 |
| 25 | you go to that database, which you do      | 09:32:24 |

Page 38

|    |                                              |          |
|----|----------------------------------------------|----------|
| 1  | P. PHILLIPS                                  |          |
| 2  | comply with FDA requirements, if at          | 10:27:40 |
| 3  | all?                                         | 10:27:42 |
| 4  | MR. MCCAULLEY:  Objection to                 | 10:27:44 |
| 5  | form.                                        | 10:27:45 |
| 6  | A.   Well, I would want to be                | 10:27:45 |
| 7  | aware of any product codes that are          | 10:27:48 |
| 8  | being created.  But again, that              | 10:27:49 |
| 9  | wouldn't necessarily determine what my       | 10:27:52 |
| 10 | advice would be.                             | 10:27:54 |
| 11 | Q.   Why would you want to be                | 10:27:55 |
| 12 | aware of the product codes that have         | 10:27:56 |
| 13 | been created?                                | 10:27:58 |
| 14 | A.   Well, you can just see that             | 10:27:59 |
| 15 | again what a reviewer and administrator      | 10:28:01 |
| 16 | at FDA have done, or how they perhaps        | 10:28:05 |
| 17 | viewed a particular situation.  Again,       | 10:28:08 |
| 18 | I wouldn't necessarily believe that          | 10:28:10 |
| 19 | that represents FDA's official position      | 10:28:12 |
| 20 | because product codes are created very       | 10:28:14 |
| 21 | informally.  But I would like to be          | 10:28:17 |
| 22 | aware of it.                                 | 10:28:19 |
| 23 | Q.   And let's say you did exactly           | 10:28:21 |
| 24 | that.  They told you what I told you         | 10:28:24 |
| 25 | they wanted to do.  And you went to the      | 10:28:27 |

Page 81

```
 1                    P. PHILLIPS
 2   down to whether they were making any           10:33:35
 3   significant changes to the OEM's               10:33:37
 4   device.  That would be the determining         10:33:39
 5   factor.                                        10:33:41
 6           But there could be other               10:33:43
 7   questions that could be raised as well         10:33:45
 8   that would be extremely relevant to            10:33:48
 9   making the decision as to whether a            10:33:50
10   510(k) is an appropriate filing.               10:33:52
11       Q.   But what steps would you              10:33:56
12   take, would you recommend, for example,        10:33:58
13   that they go and consult any particular        10:34:00
14   regulation?                                    10:34:04
15       A.   Well, again, it's more                10:34:07
16   complicated than we can just simply            10:34:08
17   talk about in a few minutes.  In this          10:34:11
18   particular case, you have to determine         10:34:16
19   what activities the company is engaged         10:34:18
20   in and how FDA regulates those                 10:34:20
21   activities.                                    10:34:23
22           If the company maintains that          10:34:25
23   they are simply doing servicing of a           10:34:26
24   device and returning it back to the            10:34:30
25   healthcare provider or the hospital and        10:34:31
```

Page 87

| | | |
|---|---|---|
| 1 | P. PHILLIPS | |
| 2 | that they've not made any significant | 10:34:33 |
| 3 | changes to the device, then that's one | 10:34:35 |
| 4 | particular path that you would have to | 10:34:39 |
| 5 | travel to develop the documentation to | 10:34:40 |
| 6 | support whatever the final position is. | 10:34:44 |
| 7 | If the company is making | 10:34:45 |
| 8 | significant changes to the device, if | 10:34:47 |
| 9 | they acknowledge that the changes they | 10:34:49 |
| 10 | made are significant, then they may be | 10:34:52 |
| 11 | either a remanufacturer or perhaps even | 10:34:53 |
| 12 | a manufacturer. And then there's a | 10:34:56 |
| 13 | whole other set of questions that have | 10:35:01 |
| 14 | to be asked because a significant | 10:35:02 |
| 15 | change could result in a nonsubstantial | 10:35:04 |
| 16 | equivalent determination and not being | 10:35:06 |
| 17 | eligible to go to market by way of a | 10:35:08 |
| 18 | 510(k). | 10:35:11 |
| 19 | It depends upon the | 10:35:13 |
| 20 | circumstances and there's a lot of | 10:35:15 |
| 21 | different circumstances that could | 10:35:17 |
| 22 | affect an outcome of this type of a | 10:35:20 |
| 23 | situation. | 10:35:21 |
| 24 | Q.    Why does it depend on the | 10:35:22 |
| 25 | circumstances? | 10:35:24 |

Page 88

|    |                                              |           |
|----|----------------------------------------------|-----------|
| 1  | P. PHILLIPS                                  |           |
| 2  | A.   What is the company engaged             | 10:35:25  |
| 3  | in?  Are they relabelling the product?       | 10:35:28  |
| 4  | Are they offering the product for sale       | 10:35:31  |
| 5  | as part of their catalog?  Have they         | 10:35:34  |
| 6  | made significant changes to the device?      | 10:35:37  |
| 7  | All of these things are extremely            | 10:35:38  |
| 8  | important decisions before you can           | 10:35:40  |
| 9  | advise a client as to what it is that        | 10:35:43  |
| 10 | they should actually do.                     | 10:35:46  |
| 11 | Q.   And if the company comes to             | 10:35:47  |
| 12 | you and says we're making a significant      | 10:35:50  |
| 13 | change to an OEM's device, at that           | 10:35:52  |
| 14 | point you need tell them they need to        | 10:36:02  |
| 15 | get a 510(k); is that fair?                  | 10:36:04  |
| 16 | A.   No, that's not fair.  I would           | 10:36:07  |
| 17 | question the basis for how they              | 10:36:09  |
| 18 | concluded the change is significant.         | 10:36:11  |
| 19 | If a company wants to be subject to          | 10:36:12  |
| 20 | higher regulation than is required by        | 10:36:15  |
| 21 | law, I've helped some companies do that      | 10:36:16  |
| 22 | on occasion.  But generally speaking         | 10:36:18  |
| 23 | what I would first do is dive a little       | 10:36:24  |
| 24 | deeper as to why they believe that a         | 10:36:26  |
| 25 | particular change that they've made is       | 10:36:28  |

Page 89

```
 1                    P. PHILLIPS
 2    are very egregious examples that are so        11:47:12
 3    clear.  A company remanufactures to the        11:47:18
 4    extent that the device doesn't look            11:47:19
 5    anything like the original device.  It         11:47:21
 6    would have to be something very                11:47:23
 7    extreme.  Otherwise, I would suggest           11:47:25
 8    responding and addressing the issues           11:47:26
 9    and I do that quite frequently.                11:47:27
10        Q.    What is the process, to your         11:47:29
11    knowledge, about how, that the FDA goes        11:47:31
12    through to get approval to, internally         11:47:35
13    to send an "It Has Come to Our                 11:47:38
14    Attention" letter, do you know?                11:47:41
15        A.    Well, there's, again, let me         11:47:42
16    tell you, there's been a recent                11:47:45
17    reorganization within CDRH, and Christy        11:47:47
18    Foreman is aware of that as well.  So          11:47:51
19    we're both perhaps living a couple             11:47:53
20    years ago where it was a slightly              11:47:55
21    different organizational structure.            11:47:57
22            But the individuals that are           11:47:58
23    responsible for taking compliance              11:47:59
24    actions, they do have delegation of            11:48:01
25    authority.  So not just anyone can send        11:48:04
```

Page 154

|   |   |   |
|---|---|---|
| 1 | P. PHILLIPS | |
| 2 | one of those letters. | 11:48:07 |
| 3 | So that does represent the | 11:48:07 |
| 4 | views of the organization, but there | 11:48:09 |
| 5 | are ways of either challenging those | 11:48:12 |
| 6 | letters, they all have contacts and | 11:48:14 |
| 7 | dates associated with when you're | 11:48:17 |
| 8 | supposed to respond.  And depending | 11:48:18 |
| 9 | upon what the outcome of that is, you | 11:48:21 |
| 10 | can always go to a higher level, appeal | 11:48:24 |
| 11 | any kind of a decision that FDA is | 11:48:26 |
| 12 | making. | 11:48:28 |
| 13 | Q.   Does FDA today have the | 11:48:29 |
| 14 | authority to determine whether a | 11:48:31 |
| 15 | particular activity is remanufacturing? | 11:48:33 |
| 16 | A.   Yes, they have the authority | 11:48:39 |
| 17 | to make that decision, yes. | 11:48:40 |
| 18 | Q.   Okay.  Did you see in the | 11:48:41 |
| 19 | course of your work in this matter any | 11:48:43 |
| 20 | "It Has Come to Your Attention" | 11:48:45 |
| 21 | letters? | 11:48:47 |
| 22 | A.   Not that I recall. | 11:48:47 |
| 23 | Q.   Would an "It Has Come to Your | 11:48:49 |
| 24 | Attention" letter being sent to Rebotix | 11:48:54 |
| 25 | change your opinions in this matter? | 11:48:57 |

Page 155

| | | |
|---|---|---|
| 1 | P. PHILLIPS | |
| 2 | didn't mean to confuse you. | 14:14:02 |
| 3 | There's no application before | 14:14:03 |
| 4 | them, I understand, I have no problem, | 14:14:06 |
| 5 | you're saying the FDA would want to | 14:14:08 |
| 6 | know from the company why it thinks | 14:14:10 |
| 7 | they're engaged in servicing and what | 14:14:15 |
| 8 | it is they're doing, that's what you're | 14:14:17 |
| 9 | telling me, right? | 14:14:18 |
| 10 | A.   Yes. | 14:14:18 |
| 11 | Q.   Okay.  And, but when it comes | 14:14:19 |
| 12 | time for FDA to decide is this activity | 14:14:22 |
| 13 | a significant change that brings it | 14:14:25 |
| 14 | into the realm of remanufacturing, the | 14:14:27 |
| 15 | FDA is going to look, is going to make | 14:14:29 |
| 16 | that decision based on the activities | 14:14:32 |
| 17 | that are actually being performed on | 14:14:34 |
| 18 | the device. | 14:14:35 |
| 19 | Do you agree with me on that? | 14:14:36 |
| 20 | A.   Yes. | 14:14:38 |
| 21 | Q.   Do you have tab 22 in front | 14:14:38 |
| 22 | of you? | 14:14:45 |
| 23 | A.   That's not the one you | 14:14:49 |
| 24 | requested, right, it's still in the | 14:14:51 |
| 25 | box? | 14:14:52 |

Page 261

| | | |
|---|---|---|
| 1 | P. PHILLIPS | |
| 2 | labeled REBOTIX175417 through 418. | 16:23:19 |
| 3 | (Exhibit 268, marked for | 16:23:27 |
| 4 | identification, Bates stamped | 16:23:27 |
| 5 | REBOTIX175417 through 418.) | 16:23:28 |
| 6 | A.   I have that in front of me | 16:23:28 |
| 7 | now. | 16:23:29 |
| 8 | Q.   Okay.  This document you did | 16:23:30 |
| 9 | not review in advance of submitting | 16:23:34 |
| 10 | your opening expert report in this | 16:23:39 |
| 11 | matter, correct? | 16:23:41 |
| 12 | A.   Yeah, I believe that's | 16:23:42 |
| 13 | correct. | 16:23:43 |
| 14 | Q.   And I believe you cited it in | 16:23:43 |
| 15 | your rebuttal report, but let me just | 16:23:47 |
| 16 | look. | 16:23:56 |
| 17 | Yes, you included it in | 16:23:57 |
| 18 | Exhibit 1 in your rebuttal. | 16:23:59 |
| 19 | A.   Okay. | 16:24:01 |
| 20 | Q.   This is a letter dated | 16:24:02 |
| 21 | November 16, 2021, from Mark Trumbore | 16:24:07 |
| 22 | to Chris Gibson, Chief Operating | 16:24:11 |
| 23 | Officer, Rebotix Repair, LLC; is that | 16:24:15 |
| 24 | right? | 16:24:19 |
| 25 | A.   Correct. | 16:24:19 |

Page 359

| | | |
|---|---|---|
| 1 | P. PHILLIPS | |
| 2 | Q.   And this is a "It Has Come to | 16:24:19 |
| 3 | Our Attention" letter, correct? | 16:24:23 |
| 4 | A.   Yes. | 16:24:25 |
| 5 | Q.   And that's a particular type | 16:24:26 |
| 6 | of FDA -- of letter that FDA uses in | 16:24:27 |
| 7 | certain circumstances, right? | 16:24:30 |
| 8 | A.   Yes, it is. | 16:24:32 |
| 9 | Q.   And what are the | 16:24:33 |
| 10 | circumstances when FDA decides to send | 16:24:34 |
| 11 | a "It Has Come to Our Attention" | 16:24:37 |
| 12 | letter? | 16:24:39 |
| 13 | A.   Well, it's not an enforcement | 16:24:39 |
| 14 | action, it's really an opportunity have | 16:24:43 |
| 15 | a dialogue.  I mean, obviously FDA has | 16:24:44 |
| 16 | some sort of a concern in order to | 16:24:48 |
| 17 | issue the letter, but they've not made | 16:24:51 |
| 18 | any kind of decisions at that time, | 16:24:53 |
| 19 | they're fact-finding and they want to | 16:24:54 |
| 20 | get actually more information from the | 16:24:57 |
| 21 | regulated company. | 16:24:58 |
| 22 | Q.   And if you were advising | 16:24:59 |
| 23 | Rebotix at the time in November of 2021 | 16:25:01 |
| 24 | when they received this letter, would | 16:25:07 |
| 25 | you advise they engage with FDA in | 16:25:09 |

Page 360

|    |                                                          |           |
|----|----------------------------------------------------------|-----------|
| 1  | P. PHILLIPS                                              |           |
| 2  | response to this letter?                                 | 16:25:12  |
| 3  | A.    Yes.                                               | 16:25:12  |
| 4  | Q.    And it says "It has come to                        | 16:25:13  |
| 5  | our attention that you may be                            | 16:25:15  |
| 6  | remanufacturing the da Vinci S                           | 16:25:16  |
| 7  | EndoWrist instruments."                                  | 16:25:19  |
| 8  | Do you see that?                                         | 16:25:19  |
| 9  | A.    Yes.                                               | 16:25:20  |
| 10 | Q.    If you look at the third                           | 16:25:20  |
| 11 | paragraph, the third paragraph says                      | 16:25:23  |
| 12 | "Specifically the da Vinci S EndoWrist                   | 16:25:25  |
| 13 | instruments were cleared for a set                       | 16:25:28  |
| 14 | number of uses.  By extending the                        | 16:25:30  |
| 15 | number of uses, your activities may be                   | 16:25:32  |
| 16 | altering the intended use of the                         | 16:25:35  |
| 17 | subject device."                                         | 16:25:37  |
| 18 | Do you see that?                                         | 16:25:37  |
| 19 | A.    Yes.                                               | 16:25:38  |
| 20 | Q.    And then the FDA requests                          | 16:25:47  |
| 21 | that Rebotix provide information with                    | 16:25:50  |
| 22 | three bullet points.  Do you see that?                   | 16:25:51  |
| 23 | A.    Yes.                                               | 16:25:51  |
| 24 | Q.    And the first bullet point is                      | 16:25:52  |
| 25 | "FDA clearance or approval number for                    | 16:25:54  |

Page 361

```
 1                    P. PHILLIPS
 2     the remanufactured da Vinci S EndoWrist      16:25:55
 3     instruments."                                16:25:59
 4              Do you see that?                    16:25:59
 5        A.    Yes.                                16:26:00
 6        Q.    The second one is "Prior            16:26:00
 7     submission numbers, if previously            16:26:04
 8     withdrawn or found not substantially         16:26:05
 9     equivalent, related to your activities       16:26:08
10     with the da Vinci S EndoWrist                16:26:10
11     instruments.                                 16:26:14
12              Do you see that?                    16:26:14
13        A.    Yes.                                16:26:15
14        Q.    And the third one is "The           16:26:15
15     basis for your determination of whether      16:26:16
16     or not you are required to obtain FDA        16:26:20
17     clearance or approval for the da Vinci       16:26:22
18     S EndoWrist instruments."                    16:26:25
19              Do you see that?                    16:26:26
20        A.    Yes.                                16:26:28
21        Q.    Would you advise the company,       16:26:28
22     in this situation Rebotix, to provide        16:26:29
23     the basis for their determination of         16:26:33
24     whether or not they're required to           16:26:36
25     obtain clearance or approval for the         16:26:37
```

Page 362

|  |  |  |
|---|---|---|
| 1 | P. PHILLIPS | |
| 2 | da Vinci S EndoWrist instruments? | 16:26:42 |
| 3 | A. Yes, I wouldn't ignore this | 16:26:43 |
| 4 | letter. | 16:26:46 |
| 5 | Q. Do you know whether SIS | 16:26:46 |
| 6 | received a letter like this? | 16:27:01 |
| 7 | A. I do not know. | 16:27:04 |
| 8 | Q. Did you see anywhere in the | 16:27:05 |
| 9 | files of anything you reviewed in this | 16:27:12 |
| 10 | matter where you saw that SIS made a | 16:27:14 |
| 11 | determination on whether or not it was | 16:27:19 |
| 12 | required to obtain FDA clearance or | 16:27:20 |
| 13 | approval to reset da Vinci S EndoWrist | 16:27:22 |
| 14 | instruments? | 16:27:26 |
| 15 | A. Well, I know that they | 16:27:26 |
| 16 | believed they were simply engaged in | 16:27:28 |
| 17 | repair activities. I'm not exactly | 16:27:30 |
| 18 | sure of internal documentation, is that | 16:27:32 |
| 19 | what you're asking about? | 16:27:35 |
| 20 | Q. Yeah. Did you see internal | 16:27:36 |
| 21 | documentation where they came to that | 16:27:38 |
| 22 | conclusion you're talking about? | 16:27:41 |
| 23 | A. No. | 16:27:43 |
| 24 | Q. In your box there should be a | 16:27:44 |
| 25 | tab 3, you might want to use the box | 16:27:49 |

Page 363

```
 1                P. PHILLIPS
 2   that type of a determination.              17:27:22
 3        Q.   So that statement is not         17:27:23
 4   false and misleading?                      17:27:25
 5        A.   Well, no, I believe it is        17:27:27
 6   false and misleading to make those         17:27:29
 7   types of statements.  Because again,       17:27:30
 8   what was the purpose of making the         17:27:34
 9   statement?  There's a point that's         17:27:35
10   being made, yes, the statement may look    17:27:37
11   relatively benign, but I think you need    17:27:39
12   to look at it in the complete context      17:27:41
13   of the overall communication.              17:27:43
14        Q.   And did you look at the          17:27:44
15   overall communication in which this        17:27:45
16   statement was made?                        17:27:46
17        A.   No, I looked at what was         17:27:48
18   quoted from the complaint.                 17:27:52
19        Q.   And then the last one says in    17:27:52
20   this Paragraph 97, "Intuitive also         17:27:56
21   states that, quote, any modification to    17:27:59
22   allow for use of a da Vinci product        17:28:01
23   beyond its useful life exceeds the         17:28:03
24   scope of the original clearance by         17:28:05
25   expanding the FDA cleared indications      17:28:08
```

Page 420

CERTIFICATION

I, JEREMY RICHMAN, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose testimony as herein set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 19th day of March, 2023.

JEREMY RICHMAN

\*      \*      \*

Page 430