ATTACHMENT 99

SONYA D. WINNER (SBN 200348)
Email: swinner@cov.com
CORTLIN H. LANNIN (SBN 266488)
Email: clannin@cov.com
ISAAC D. CHAPUT (SBN 326923)
Email: ichaput@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, California 95032
Telephone: (408) 477-9690

*Attorneys for Defendant/Counterclaimant
Intuitive Surgical, Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC.,<br><br>Plaintiff/<br>Counterclaim-Defendant<br><br>vs.<br><br>INTUITIVE SURGICAL, INC.,<br><br>Defendant/<br>Counterclaimant. | Case No.: 3:21-cv-03496-AMO-LB<br><br>**REPLY IN SUPPORT OF MOTION OF INTUITIVE SURGICAL, INC. TO EXCLUDE TESTIMONY OF RICHARD BERO**<br><br>Hearing To Be Renoticed<br>Hearing Place:  Courtroom 10<br><br>Judge:  The Honorable Araceli Martínez-Olguín |

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT ........................................................................................................2

       A.     Bero's Opinions Are Not Based Upon Reliable Data.........................................3

       B.     Bero's Estimates Are Insufficiently Grounded In The Record.........................8

       C.     Bero's Lanham Act Damage Estimate Should Be Excluded............................10

III.   CONCLUSION....................................................................................................10

REPLY IN SUPPORT OF MOTION TO EXCLUDE                          Case No. 3:21-cv-03496-AMO-LB
TESTIMONY OF RICHARD BERO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Properties Co. v. Dupont Dow Elastomers LLC*,
   361 F. Supp. 2d 958 (D. Minn. 2005) .................................................................................10

*Clear-View Techs., Inc. v. Rasnick*,
   2015 WL 3509384 (N.D. Cal. June 3, 2015) .......................................................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993).........................................................................................................2, 10

*Grasshopper House, LLC v. Clean & Sober Media, LLC*,
   2021 WL 3702243 (9th Cir. Aug. 20, 2021)......................................................................10

*Herman Schwabe, Inc. v. United Shoe Mach. Corp.*,
   297 F.2d 906 (2d Cir. 1962).................................................................................................8

*Ill. Tool Works, Inc. v. Rust-Oleum Corp.*,
   955 F.3d 512 (5th Cir. 2020) ..............................................................................................10

*J Truett Payne Co. v. Chrysler Motors Corp.*,
   451 U.S. 557 (1981).............................................................................................................3

*Kurin, Inc. v. Magnolia Med. Techs., Inc.*,
   473 F. Supp. 3d 1117 (S.D. Cal. 2020)..............................................................................10

*In re Live Concert Antitrust Litig.*,
   863 F. Supp. 2d 966 (C.D. Cal. 2012) .................................................................................8

*Magnetar Techs. Corp. v. Intamin, Ltd.*,
   801 F.3d 1150 (9th Cir. 2015) .........................................................................................2, 3

*McGlinchy v. Shell Chemical Co.*,
   845 F.2d 802 (9th Cir. 1988) ............................................................................................3, 8

*Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*,
   100 F.3d 1353 (7th Cir. 1996) .............................................................................................9

*Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*,
   2019 WL 13045054 (C.D. Cal. Feb. 28, 2019)............................................................1, 3, 8

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ..........................................................................................7, 8

*Unwired Planet, LLC v. Apple Inc.*,
   2017 WL 589195 (N.D. Cal. Feb. 14, 2017) .......................................................................8

**Statutes**

Lanham Act, 15 U.S.C. §§ 1051 *et seq.*..................................................................................1, 10

REPLY IN SUPPORT OF MOTION TO EXCLUDE                                    Case No. 3:21-cv-03496-AMO-LB
TESTIMONY OF RICHARD BERO

I.     INTRODUCTION

In its motion (Dkt. No. 126) ("Mot."), Intuitive demonstrated that plaintiff's damages expert, Richard Bero, has proffered an unreliable damages model that should be excluded.  In particular:

- Bero's lost profits damages model includes as inputs unreliable "data" that no reasonable CPA would ever rely upon.  The underlying "data" for his lost profits analysis consists almost exclusively of undocumented "discussions" with SIS employees, a Rebotix employee, and two of SIS's experts retained for this litigation.  He uses this "data" to generate incredibly high damages numbers.

- Bero's lost profits estimates are not supported by the record.  Bero ignores facts in the record that have a clear bearing on SIS's alleged lost profits in the but-for world, like the impact of competition from other competitors like Restore and Rebotix and the impact of the lack of FDA clearance on customer demand.  He also makes assumptions about SIS's capacity that are unsupported by the record.

- Bero's estimated Lanham Act damages estimates suffer from the same flaws as Bero's lost profits analysis and do not purport to measure damages in the way the law requires.

SIS's opposition (Dkt. No. 146) ("Opp.") does not rehabilitate Bero's lost profits damages model and does not establish that the model is sufficiently reliable to be presented to the jury.  Indeed, the majority of the points SIS makes in its opposition either ignore or mischaracterize Intuitive's arguments.

*First*, Intuitive provided a detailed summary of the case law and industry standards applicable to CPAs when estimating lost profits damages.  Mot. at 7–9.  Those standards are clear that a CPA must rely upon reliable, validated information when providing lost profits estimates.  *See, e.g.*, *Mission Viejo Florist, Inc. v. Orchard Supply Co., LLC*, 2019 WL 13045054, at *1 n.2, *4 (C.D. Cal. Feb. 28, 2019) (rejecting damages calculation from CPA that "relied solely" on an "unverified estimate" from plaintiff). Rather than engaging with these cases and industry standards, SIS instead claims that Bero had no duty to "independently validate[] all of the oral information that he considers," that he is "unaware of any 'professional standards' addressing oral information" and that Intuitive has cited no case law to support that such standards exist.  Opp. at 4 n.4.  But this is precisely what Intuitive has done.  Intuitive cited cases striking lost profits expert opinions that relied on self-serving statements from parties or their experts without validating the reliability of the information.  Mot. at 8–9.  Moreover, Intuitive cited

1

industry standards (including from sources Bero himself cited) that confirmed that CPAs have a duty to assess the reasonableness of information received from others. *Id.* at 7–8. SIS has no real answer for the existence and content of those standards or for the fact that Bero simply ignored them.

*Second*, SIS's attempt to rehabilitate the reliability of Bero's lost profits model falls flat. SIS spends a significant amount of time offering sweeping discussions about Bero's report, including referencing the number of pages, footnotes and schedules. Opp. at 2–3. Quantity is no replacement for quality. Moreover, that approach ignores the key issue. Bero created a damages model and chose the inputs into that model, which operates like a funnel. Bero starts with the number of EndoWrists he calculates that are available for modification and then makes a series of assumptions to funnel down to the number of modifications he believes SIS would have undertaken in the but-for world and the resulting damages. Any faulty step in that funnel renders Bero's damages calculation unreliable. Simply put, each input must be reliable. But several are not, so the entire calculation fails, as shown below and discussed in detail in Dr. Smith's report. *See* Bass Dec. Ex. 3 (Dkt. No. 126.4) ¶¶ 14, 16-43.

*Third*, SIS's rationale for Bero's Lanham Act damages is nonsensical. Intuitive explained that Bero's estimate for hundreds of millions of dollars is untethered to the fact that only two of SIS's potential customers have been identified as receiving the letter containing the alleged false advertising. Mot. at 14-15. SIS tries to imply that more letters were sent to other actual or potential SIS customers but identifies no evidence that this was so – much less evidence that such letters went to the full universe of customers as to whom Bero calculates damages. *See* Opp. at 14. SIS has the burden to support the reliability of Bero's Lanham Act damages estimates, and those estimates simply have no connection to facts SIS can establish.

## II.   ARGUMENT

SIS has not put forth any meaningful arguments to meet its burden to establish the admissibility of Bero's opinions. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993). SIS has not shown that the "data" underlying Bero's damages estimates is sufficiently reliable to support those estimates. *See Magnetar Techs. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1159 (9th Cir. 2015) (criticizing expert damages estimate that "only compared [plaintiff's] actual results versus their business plan,

which showed that they did not achieve their business plan," and "did not delve into the merits of the projected results"). Nor has SIS established that Bero relied upon data of a type normally relied upon by professionals in his field. *See, e.g.*, *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3509384, at *5 (N.D. Cal. June 3, 2015) (precluding an accountant expert from relying on the opinion of a technical expert because defendants failed to show that CPAs would "normally rely" on such information).

As noted above, SIS does not meaningfully engage with any of the cases Intuitive cited on the standards that apply to CPAs modeling lost profits damages. SIS instead points to a case from 40 years ago in the context of the Robinson-Patman Act to claim there is a "relaxed" burden to show antitrust injury. *See* Opp. at 2 (citing *J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981). Citing to an off-point case that predates the Supreme Court's decision in *Daubert* does not relieve SIS and Bero from the obligation to satisfy the requirements of the cases that make clear that a CPA offering a lost profits damages opinion – and indeed any expert offering such an opinion – has a duty to ensure that the data and methodology underlying that opinion are reliable. SIS cites no authority for the notion that there is a relaxed reliability standard for damages experts; nor would the case law support such an assertion. *See, e.g.*, *Magnetar Techs.*, 801 F.3d at 1159-60 (finding expert witness did not provide competent evidence from which a jury could fairly estimate lost profits in antitrust case); *Mission Viejo Florist*, 2019 WL 13045054, at *4 (excluding expert damages calculation in unfair competition and breach of contract case where expert "engaged in no independent analysis to determine whether" information received from plaintiff "was accurate"). Otherwise, the jury is left to only impermissible "'speculation or guesswork' in determining the amount of damages to award." *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988); *see also Amer. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041 (N.D. Cal. 2001).

A.    **Bero's Opinions Are Not Based Upon Reliable Data.**

In its motion, Intuitive demonstrated that multiple inputs into Bero's lost profits damages model lack a reliable basis. SIS has not established that those inputs are sufficiently reliable to yield a lost profits damages estimate that should be presented to the jury.

*First*, Bero has no reliable basis for the input in his damages model for the number of hospitals that would have used SIS's reset EndoWrists. Bero's model assumes that SIS's penetration or "conversion" rate of hospitals affiliated with Vizient is 15% in the first year, 50% in the second year, and 70% in the third year and each year thereafter. Bass Dec. Ex. 1 (Dkt. No. 126.2) at 50–51. If Bero is wrong about the number of Vizient hospitals that would have used SIS's services, Bero's entire model is wrong. SIS's defense of this input into Bero's model is contained in one paragraph. *See* Opp. at 10–11. SIS admits that Bero relies solely on the opinions offered by another SIS expert, Jean Sargent, for these rates in his damages model. *Id.* at 10. As explained in Intuitive's simultaneously filed *Daubert* motion (Dkt. No. 117), Sargent has no basis for this opinion. If the Court strikes Sargent's opinion on this topic, all of Bero's lost profits damages opinions must be stricken as well. Indeed, Bero confirmed that Sargent provided no documentary evidence to Bero to support this assertion, and he was simply taking her word for it. Bass Dec. Ex. 2 at 145:25–147:4. Bero also admitted in his deposition that he is not an expert on conversion rates of medical devices at hospitals. *Id*. at 145:7–10.

*Second*, Bero has no reliable basis for his next assumption: that of the hospitals that would have used SIS's reset service, 70% of the EndoWrists of those hospitals would be collected for modification. SIS's defense of this input into Bero's model is also contained in one paragraph. *See* Opp. at 11. SIS admits that Bero again claims his collection rate assumption is based on Sargent's opinion. *Id.* As explained in the Sargent *Daubert* motion, Sargent has no basis for her opinion on the anticipated collection rate at hospitals for EndoWrists. *See* Dkt. No. 117 at 8–9. If the Court strikes Sargent's opinion on this topic, Bero has no reliable basis for this input in his damages model either. Bero confirmed that Sargent provided no documentary evidence to him to support her opinion. Bass Dec. Ex. 2 at 29:8–10.

On this input, SIS claims that Bero also relied on Intuitive's projection for a pilot program at three hospitals for collection of six X/Xi instruments as part of Intuitive's own contemplated refurbishment program. Opp. at 11. But, as the document Bero relied on shows, the *actual* collection rates at the hospitals varied greatly, never reached 70% and were as low as 4%. *See* Lazerow Sargent Dec. Ex. 9 (Dkt. No. 117.10) at -604. Intuitive abandoned the program in part due to the difficulty of

4

collecting instruments.[1]  As Bero acknowledges in his rebuttal report, given the significantly lower *actual* collection rates, Intuitive adjusted its target collection rate to 40% after the pilot program.  Bass. Dec. Ex. 5 (Dkt. No. 126.6) at 22.  Despite this, Bero assumes that the original target rate of 70% is "reasonable" because hospitals would have had a financial incentive to use the third parties' services. *Id*. at 22–23.  Sargent's opinions certainly do not support this assumption, Intuitive's limited experience does not do so either, and Bero has no expertise on which to base such an assumption.  Indeed, despite relying on rates for Intuitive's program, Bero expressly admitted that he did not undertake any analyses to compare Intuitive's program to that of SIS.  Bass Supp. Dec. Ex. 11 at 160:2–12.

*Third*, Bero's damages model relies upon an inflated expiration rate for EndoWrist instruments, *i.e.*, the number of EndoWrist instruments that expire in a given year (and therefore would be potentially candidates for the modifications SIS wished to offer).  SIS does not dispute that rather than calculating the average expiration rate across the whole set of EndoWrist instruments, Bero selected the "top 5" (in sales volume).  Opp. at 11–12.  Although Bero had the data available to him on all instruments, he simply chose not to use it.  *See* Bass. Dec. Ex. 3  ¶ 38 n.84.  SIS's defense of this decision is to say that the top 5 instruments account for 60% of Intuitive's sales (Opp. at 11) – but that statement admittedly ignores the expiration rates on the other 40% of sales.  Taking account of the true figures for this element across the full population to which Bero's damages calculations purport to apply (information that was available to Bero) reduces Bero's damages estimates considerably.  *See* Bass Dec. Ex. 3 ¶¶ 37– 38, 42.  SIS has provided no justification for Bero's arbitrary decision to inflate his numbers by using the expiration rate for only some instruments.

*Fourth*, Bero has no reasonable basis for SIS's costs in the but-for world that he includes in his model.  Bero's calculations of SIS's costs include the cost of chips in his "in-house" model (where SIS performs the repair services itself) and the distributor costs in his "distributor model" (where SIS acts as a distributor for a third party).  SIS does not dispute that Bero had available to him actual cost

---

[1] *See* Lazerow Sargent Dec. Ex. 7 (Dkt No. 117.8) at 172:4–173:20 (explaining the logistical challenges of instrument collection that impeded Intuitive's "refurbishment" pilot project); Lazerow Dec. Ex. 8 (Dkt No. 117.9) at 37:14–21, 44:9–20 (explaining that "Project Refurbished Instrument" never became an "actual commercial program" because the low yield of collected instruments meant the program "didn't make sense to actually complete").

information from the record that Bero could have used for these calculations, which Bero did rely upon

in his opening report. ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████ Opp.

at 8–9. █████████████████████████████████████████████████

███████████████████████████████████████████ *Id.* at 8. ████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████ *Compare* Bass Dec. Ex. 1 at 6 *with* Bass Dec. Ex. 5 at 12. ████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████.[2]

    *Finally*, Bero has no reliable basis for the inclusion in his damages model of X/Xi units or the

dates he uses to model when the third parties would have had the capability to modify X/Xi EndoWrists.

SIS claims that Bero relies on another SIS expert, Kurt Humphrey, for these propositions.  Opp. at 12–

13.  As explained in Intuitive's Humphrey *Daubert* motion (Dkt. No. 118), Humphrey has no basis for

these opinions.  SIS claims that Humphrey's opinions are supported by testimony ███████████████

████████████████████████████████████████████████████████████████

██████████████████████ Opp. at 13.  This does not change the fact that Bero is relying on

Humphrey for his Scenario 1 assumption that the encryption on the X/Xi was illegal and for the specific

entry dates Bero uses in his Scenario 2 for when X/Xi capabilities would have been available in the but-

for world, all opinions for which Humphrey himself has no basis. ██████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████ *Id.*  Bero identifies no reliable support for his assumption that third parties would have

---

[2] SIS's claim that Bero relied for some purposes on a financial statement of SIS in Schedules 15.0 and 15.1 in his assessment of SIS's costs misses the point.  *See* Opp. at 12.  Bero did not rely on that statement for SIS's costs for chips or distribution costs in the but-for world, which are key drivers of Bero's model.  Instead, Bero relies on ███████████████████████████ as the input in his model on these costs.  *See* Bass Dec. Ex. 5 at 9 n.43.

been able to develop the technology any sooner in the but-for world.  This critical, unsupported assumption leads to 95% of his lost profits damages – again, hardly a "nit."  *See* Bass Dec. Ex. 3 ¶ 24.

SIS's final rejoinder is to claim that the ultimate penetration rate that Bero calculates for SIS (after all of the suspect inputs into his damages model are applied) of 2% in the first year and 12% thereafter is "conservative" compared to "estimates by Intuitive and multiple independent third parties." Opp. at 10.  This is incorrect.  As an initial matter, SIS is wrong to point to the 2% to 12% market penetration rate that Bero finds for SIS alone.  As Dr. Smith explained, based on Bero's own calculations, if SIS obtained a market penetration rate of 12%, the overall market penetration rate for all third parties would have been 21.2% in the but-for world.[3]  Bass Dec. Ex. 3 ¶ 35.  Bero agreed on rebuttal with Dr. Smith's calculation.  Bass Dec. Ex. 5 at 18.  Thus, although the estimates of "independent third parties" Bero cites are not apt comparators for a number of reasons, even taking those documents at face value, they present rates of 4-6% (Deutsche Bank) and 8.5-9% (Stryker), well below 21.2%.  Bass Dec. Ex. 1  at 52–53.  That leaves Bero only with an Intuitive document about its own potential refurbishment program.  *Id.*  But the projection in that document – which was an estimate about possible future events, not a report on actual experience – had nothing to do with penetration rates by third parties.  Rather, the Intuitive document is about the program Intuitive considered  (*Id.* at 52 & n.388) – but never adopted – to replace component parts and resell those EndoWrists as the OEM. Those estimates are simply not indicative of expected penetration rates by third parties selling remanufacturing services for EndoWrists.  Thus, pointing to these "estimates" does nothing to bolster the reliability of Bero's damages model.

As the preceding discussion shows, SIS has not demonstrated that Bero relied on anything close to what a reasonable accountant would in forming his opinion or that the over one hundred million dollars in lost profits damages that he estimates have a reliable basis.  SIS is not helped by its assertion that "[t]here is no legal prohibition against experts relying on orally conveyed facts and data that the expert has been made aware of or personally observed," citing *Southland Sod Farms v. Stover Seed Co.*,

---

[3] This is consistent with Bero's acknowledgement in his deposition that other third parties would have made some sales in the but-for world.  Bass Supp. Dec. Ex. 11 at 92:9–95:16.

REPLY IN SUPPORT OF MOTION TO EXCLUDE                          Case No. 3:21-cv-03496-AMO-LB
TESTIMONY OF RICHARD BERO

108 F.3d 1134 (9th Cir. 1997).  Opp. at 5.  In *Southland*, plaintiff's turf grass expert conducted a statistical analysis of the growth rates of Bonsai trees based on surveys of tree growth conducted by others.  *Southland*, 108 F.3d at 1140.  The defendants argued that the expert should be stricken because he did not personally perform the comparison tests which he summarized and analyzed.  *Id.* at 1140–42. The court disagreed, finding that the fact that data was collected by others did not render the opinions inadmissible.  *Id.* at 1142.  Here, Bero is not relying on data collected by others, and *Southland* does not stand for the broad proposition SIS claims.  Indeed, the case law is to the contrary and confirms that a CPA may not uncritically rely on information provided by others.  *Mission Viejo Florist*, 2019 WL 13045054, at *4.

Bero offers the type of disingenuously precise damages numbers that should not be presented to the jury.  *See Herman Schwabe, Inc. v. United Shoe Mach. Corp.*, 297 F.2d 906, 912 (2d Cir. 1962) (jury must be protected from experts presenting "an array of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it"); *Unwired Planet, LLC v. Apple Inc.*, 2017 WL 589195, at *2 (N.D. Cal. Feb. 14, 2017) (Chhabria, J.) (rejecting expert damages model with unsupported assumptions, noting it "shroud[ed] . . . results in an air of legitimacy . . . rais[ing] the risk of juror confusion, making it all the more essential that the Court exercise its gatekeeping function until admission is adequately supported").

### B.    Bero's Estimates Are Insufficiently Grounded In The Record.

In its opening brief, Intuitive showed that Bero also fails to account for important aspects of the record that render his damages estimates unreliable.  *See In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 973–74 (C.D. Cal. 2012) (expert damage estimates not grounded in the real world are "so incomplete as to be inadmissible as irrelevant"); *McGlinchy*, 845 F.2d at 806–07 (affirming exclusion of expert damages estimates that "ha[d] scant basis in the record . . . rest[ing] on unsupported assumptions and unsound extrapolation").  SIS's cursory consideration of these issues supports Intuitive's point.

*First*, Bero fails to effectively account for the impact of competition in the but-for world from other third party companies like Restore and Rebotix.  SIS does not claim that Bero modeled the impact of competition from Restore and Rebotix on SIS's sales in the but-for world (because he did not).  All

SIS offers is that Bero "captured" the "monumental impact" of customer interest for SIS's sales at Vizient in his damages model and that his model considers SIS's "50 years" of working with hospitals. Opp. at 5.  None of this addresses the fact that Bero failed to take into account the competition SIS would have faced in the but-for world, competition he does not deny would have existed and that would have taken away a significant portion of the sales for which he calculates damages.

*Second*, Bero ignores the impact of the absence of FDA clearance on customer demand for EndoWrist remanufacturing.  SIS addresses this argument in a footnote, claiming that Bero did account for the need for FDA clearance because he assumes clearance would not be necessary in the but-for world and thus would not impact demand.  Opp. at 5 n.6.  This confirms that Bero simply ignored the issue.  He did not even consider the possibility that some customers would be reluctant so long as FDA continues to assert that clearance is needed – which the agency indisputably has done for many years.[4]

*Third*, Bero fails to reasonably assess whether SIS had the physical capacity to expand from the 49 EndoWrist resets it actually sold – all of which were performed by Rebotix – to nearly 50,000 resets per year that Bero assumes SIS would perform itself.  Contrary to SIS's claim, Intuitive did not ignore the portions of Bero's report that discuss how many resets SIS could perform in the but-for world, also citing pages 45–46 of Bero's Report.  Mot. at 13–14.  Rather, Intuitive's point was that those assumptions were not reasonable given, among other things, Bero's rosy prediction that each reset would take "30 minutes," which conflicts with prior testimony of SIS's engineering expert Dr. T. Kim Parnell, who actually observed the process and said it took "on the order of a few hours."  *Compare* Bass Dec. Ex. 1 at 45 *with* Bass Dec. Ex. 9 (Dkt. No. 126.10) at 98:5–16.  SIS is silent on this point from Parnell, and identifies no record evidence that it had the ability to perform EndoWrist remanufacturing operations it has never performed at all, much less at the immense scale Bero assumes.

These issues further magnify the leap of faith Bero would be asking the jury to take if he were permitted to present his lost profits damages model of hundreds of millions of dollars.  *See, e.g.*, *Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1375 (7th Cir. 1996) (granting a new

---

[4] This issue is discussed in detail in the parties' briefing on summary judgment and on the *Daubert* motion concerning SIS's FDA expert, Phillip Phillips.

trial because "[e]ach one of the[] steps in the [expert's] estimation of [plaintiff's] lost profits involve[d] a substantial leap of faith . . . and taken collectively, which they must be to arrive at this sizable award, they render the award unreasonably speculative, excessive and unsupported by the evidence").

**C.      Bero's Lanham Act Damage Estimate Should Be Excluded.**

SIS's opposition does not take issue with Intuitive's statement of the law on Lanham Act damages.  The law is clear that a plaintiff must show a link between the claimed damages and the Lanham Act violation and that courts reject expert damages estimates that fail to do so.  *See Grasshopper House, LLC v. Clean & Sober Media, LLC*, 2021 WL 3702243, at *3–4 (9th Cir. Aug. 20, 2021); *Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 514 (5th Cir. 2020); *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F. Supp. 3d 1117, 1146 (S.D. Cal. 2020); *3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 973 (D. Minn. 2005).  SIS therefore must show damages that are actually attributable to the alleged Lanham Act violation.

The only purported false statement that SIS has identified is the statement Intuitive made in letters sent to certain Intuitive customers.  The question for Bero then was what damages are attributable to those letters.  SIS only had six customers.  Bero identified only one letter that was sent to an SIS customer.  Bass. Dec. Ex. 1 at 59.  Intuitive's expert, Dr. Smith, identified a letter sent to another potential SIS customer, for a total of at most two letters.  Bass. Dec. Ex. 3 ¶ 45 n.95.  SIS and Bero offer no evidence that any other SIS customer or prospective customer ever received a letter from Intuitive containing the allegedly false statement.  Yet Bero's Lanham Act damages calculation effectively assumes that *everyone* in the marketplace received and was influenced by the letter, causing all of the "lost sales" he calculates to be attributable to the statement as it appeared in such letters.[5]  SIS identifies no basis for such an assumption, and there is none.  There is no "fit" between the showing the law requires SIS to make for its Lanham Act claim and Bero's damages opinions.  *See Daubert*, 509 U.S. at 591.

**III.     CONCLUSION**

For the reasons set forth above, the Court should exclude all of Bero's damage estimates.

---

[5] That calculation of lost sales is itself defective for multiple reasons, as set forth above.

REPLY IN SUPPORT OF MOTION TO EXCLUDE                          Case No. 3:21-cv-03496-AMO-LB
TESTIMONY OF RICHARD BERO

DATED:  May 11, 2023

By:  */s/ Kathryn E. Cahoy*
      KATHRYN E. CAHOY

*Attorney for Intuitive Surgical, Inc.*

*Additional Counsel for Intuitive Surgical, Inc.*

ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, California 95032
Telephone: (408) 477-9690

KAREN HOFFMAN LENT (*Pro Hac Vice*)
Email: karen.lent@skadden.com
MICHAEL H. MENITOVE (*Pro Hac Vice*)
Email: michael.menitove@skadden.com
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2040

KATHRYN E. CAHOY (SBN 298777)
Email: kcahoy@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

SONYA WINNER (SBN 200348)
Email: swinner@cov.com
CORTLIN H. LANNIN (SBN 266488)
Email: clannin@cov.com
ISAAC D. CHAPUT (SBN 326923)
Email: ichaput@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

ANDREW LAZEROW (*Pro Hac Vice*)
Email: alazerow@cov.com
ASHLEY E. BASS (*Pro Hac Vice*)
Email: abass@cov.com
JOHN KENDRICK (*Pro Hac Vice*)
Email: jkendrick@cov.com
COVINGTON & BURLING LLP
One City Center 850 Tenth Street NW
Washington DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

11