```
 1                  UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3    Before The Honorable Araceli Martinez-Olguin, District Judge

 4

 5    SURGICAL INSTRUMENT SERVICE    )
      COMPANY, INC.,                 )
 6                                   )
                                     )
 7             Plaintiff,            )
                                     )
      vs.                            )   No. C 21-03496-AMO
 8                                   )
      INTUITIVE SURGICAL, INC.,      )   Related Case:
 9                                   )
               Defendants.          )   No. C 21-03825-AMO
10    _____)

11                                       San Francisco, California
                                         Friday, June 7, 2024
12

13     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 2:22 - 3:06 = 44 MINUTES
14
      APPEARANCES:
15
      For Plaintiffs:
16                                  McCaulley Law Group
                                    180 North Wabash Avenue
17                                  Suite 601
                                    Chicago, Illinois 60601
18                           BY:    RICHARD T. MCCAULLEY, JR.,
                                      ESQ.
19
                                    Spector Roseman & Kodroff,
20                                    P.C.
                                    2001 Market Street, Suite 3420
21                                  Philadelphia, Pennsylvania
                                      19103
22                           BY:    JEFFREY J. CORRIGAN, ESQ.
                                    CHRIS BATEMAN, ESQ.
23

24

25              (APPEARANCES CONTINUED ON NEXT PAGE)
```

2

1    <u>APPEARANCES</u>:  (Cont'd.)

2    For Defendants:

3                               Paul, Weiss, Rifkin, Wharton
                                  & Garrison, LLP
4                               535 Mission Street
                                24th Floor
5                               San Francisco, California
                                  94105
6                          BY:  JOSHUA HILL, JR., ESQ.

7                               Paul, Weiss, Rifkin, Wharton
                                  & Garrison, LLP
8                               2001 K Street, NW
                                Washington, D.C. 20006
9                          BY:  KENNETH A. GALLO, ESQ.

10                              Paul, Weiss, Rifkind, Wharton
                                  & Garrison, LLP
11                              1285 Avenue of the Americas
                                New York, New York 10019
12                         BY:  WILLIAM MICHAEL, ESQ.

13                              Covington & Burling, LLP
                                Floor 54
14                              415 Mission Street
                                San Francisco, California
15                                94105
                           BY:  SONYA D. WINNER, ESQ.
16
     Transcribed by:            Echo Reporting, Inc.
17                              Contracted Court Reporter/
                                Transcriber
18                              echoreporting@yahoo.com

19

20

21

22

23

24

25

3

<u>Friday, June 7, 2024</u>                                    <u>2:22 p.m.</u>

                    P-R-O-C-E-E-D-I-N-G-S

                        --oOo--

            THE CLERK:  Calling Civil Action 21-3496, Surgical
Instrument Service Company, Inc. versus Intuitive Surgical,
Inc. and Related Case 21-3825, In Re Da Vinci Surgical Robot
Antitrust Litigation.

        Counsel, please state your appearance for the record,
beginning with the Plaintiff.

            MR. MCCAULLEY (via Zoom):  Good afternoon, your
Honor.  Richard McCaulley on behalf of Surgical Instrument
Service.

            THE COURT:  Good afternoon.

            MR. CORRIGAN (via Zoom):  Good afternoon, your
Honor.  Jeff Corrigan on behalf of the Hospital Plaintiffs.

            THE COURT:  Good afternoon.

            MR. GALLO (via Zoom):  Good afternoon, your Honor.
Ken Gallo from Paul Weiss on behalf of intuitive Surgical.
For the courtroom deputy, we had noted a couple of my
colleagues and Ms. Winner from Covington who also appear,
but if it's too much trouble, I'll survive on my own I'm
sure or I hope anyway.

            THE CLERK:  Would you like to --

            THE COURT:  Mr. Gallo, would you -- or would you
rather they be on?  I'm fine with it.

4

1          MR. GALLO:  I would if -- I would if it's not -- I

2   don't want to inconvenience anyone, but I would if it's not

3   too much trouble.

4          THE COURT:  That's fine.

5          THE CLERK:  What is her name?

6          MR. GALLO:  Well, there were three people we

7   identified, Ms. Winner from Covington and Burling, and my

8   partners, Mr. Michael and Mr. Hill.

9          THE CLERK:  Michael.

10          MR. GALLO:  Bill Michael and Josh Hill.  But,

11  again --

12          THE COURT:  Mr. Hill, Mr. Michael and Ms. Winner,

13  could you raise your hands?  I find that sometimes that

14  helps.

15          THE CLERK:  Thank you.  Hello, Mr. Hill.

16          MR. GALLO:  Thank you for your accommodation.  I

17  don't want to hold things up.

18          THE COURT:  It's only 2:20.  I'm running ahead.

19  Sorry.  I got the other two done.

20          MR. GALLO:  Thank you.

21          MR. CORRIGAN:  Your Honor, this is Jeff Corrigan

22  for the Hospital Plaintiffs.  I'm not sure what you're going

23  to get into today, but I did mention that Chris Bateman, my

24  colleague, Chris Bateman, might be helpful to this

25  discussion too.  So, if we're adding other parties, I'd like

1  to add Chris Bateman if I could, please.

2          THE COURT:  Okay.

3          THE CLERK:  That's fine.  Mr. William Michael as

4  well?

5          MR. GALLO:  That's correct.

6          THE CLERK:  Okay.  No problem.

7          THE COURT:  We're adding a full Brady Bunch

8  screen.

9          MR. MCCAULLEY:  I'm not sure any of my colleagues

10 are dressed for court, your Honor.  So I'm not going to tune

11 them in.

12          THE CLERK:  And if you can all state your

13 appearances once again.

14          MR. MCCAULLEY:  Starting with the Plaintiff?

15          THE COURT:  Let me -- let me run you through

16 because now we have enough people that this could prove a

17 challenge.  So -- so, let's do this.  Counsel for Plaintiff

18 SIS?

19          MR. MCCAULLEY:  Richard McCaulley, your Honor.

20          THE COURT:  All right.  And -- no, no.  You said

21 your colleagues may not -- they don't have the luxury of

22 throwing on the robe.  I understand.

23     All right.  Hospital Plaintiffs, everyone here who's

24 for Hospital Plaintiffs, please?

25          MR. CORRIGAN:  Jeff Corrigan for Hospital

6

1  Plaintiffs.

2         MR. BATEMAN (via Zoom):  Chris Bateman for the

3  Hospital Plaintiffs too.  Good afternoon.

4         MR. GALLO:  And then for Intuitive Surgical, it's

5  Ken Gallo with Paul Weiss.

6         MR. HILL (via Zoom):  And Joshua Hill also with

7  Paul Weiss.

8         MR. MICHAEL (via Zoom):  And William Michael with

9  Paul Weiss.

10         MS. WINNER (via Zoom):  And Sonya Winner with

11  Covington and Burling.

12         THE COURT:  All right.  Good afternoon, everyone.

13  It isn't often I do get the Brady Bunch screen.  So, I'm

14  enjoying it just a little bit.  At least since joining the

15  bench, I don't get the full Brady Bunch screen very much

16  anymore.  So, thank you all.

17      Folks -- and I also wanted to -- you know, if you were

18  on for the last one, you heard me thank the other counsel

19  when I remembered to.  Thank you all also.  I'm sorry.  I

20  know you all were planning to come in person, but I took

21  ill, and no one wanted to be here for that.  Trust me.  So,

22  I apologize for needing to reschedule, and I thank you for

23  accommodating doing this on Friday afternoon rather than

24  last week on a Thursday afternoon and in person.

25      So, folks, here's -- here's what I'm -- I'm hoping to

7

1  do.  Right, two cases.  You're two separate cases.  And, in

2  fact, I have questions for you all about -- and I think

3  these in the end will be mostly -- mostly these questions

4  may be directed to -- to Mr. Gallo and his colleagues about

5  the request of how the timing between the two cases works

6  out.  We'll have questions for you all about that, but I

7  just -- I think I'm going to start with my questions for the

8  folks that are -- that are doing -- that are in the In Re Da

9  Vinci and the Hospital Plaintiffs because I just am -- in

10 some ways it -- you all -- it feels cleaner to me right now

11 just because you have a schedule and you're working through

12 things and no one's asking to go to trial immediately in

13 that case.  So -- so, I just -- here's the pieces that I

14 wanted -- here are the pieces that I wanted to discuss with

15 you all.

16     I note that at least with regard to discovery, in that

17 -- in that case, both Plaintiffs and Defendants agree that

18 there is some -- well, you agree that some discovery -- and

19 the scope of it seems to me might be like it might -- seems

20 it might be a small dispute between you.  But I do note that

21 you all say that you want more discovery.

22     I guess I want to ask both of you, and I'll ask you

23 first, Mr. McCaulley, if you intend -- if you're going to

24 move -- when you intend to move for leave to take more

25 discovery or if you all are talking about stipulating about

8

1 that, just where is it at?

2          MR. MCCAULLEY:  I think your Honor may be

3 misunderstanding.

4          THE COURT:  Okay.

5          MR. MCCAULLEY:  I'm with SIS, and we -- we don't

6 -- we believe that discovery is closed, been closed for a

7 long time.  We don't have any need for further discovery.

8 If we caused a misunderstanding, I apologize.

9          THE COURT:  I'm so sorry.  I have that you weren't

10 completely opposed to minimal narrowly tailored discovery.

11 Is -- that's what's in your statement.  Is that incorrect

12 with regard to -- is -- I'm so sorry.  I'm just -- Mr.

13 McCaulley, you're completely right.  That's a question for

14 Mr. Corrigan.

15     Mr. Corrigan, yes, apologies.  There is a typo -- or,

16 I'm sorry.  I'm just misreading my own notes.  Mr. Corrigan,

17 I understand you all are not opposed to a little bit more

18 discovery in your case.

19          MR. CORRIGAN:  Well, that might be -- that might

20 be a little strong, your Honor.  What we say is we're -- we

21 believe di minimus additional discovery may be necessary.

22          THE COURT:  All right.

23          MR. CORRIGAN:  I mean, when I say di minimus, we

24 mean di minimus.  So, I --

25          THE COURT:  So, here's --

9

1          MR. CORRIGAN:  I'm sorry.

2          THE COURT:  Yeah, go ahead.

3          MR. CORRIGAN:  Go ahead.

4          THE COURT:  No, that's okay.  Go ahead.

5          MR. CORRIGAN:  Just elaborating on what I just

6  said.  And, so, we -- Defendant has not really posed

7  anything to us in terms -- in concrete.  So, instead of just

8  rejecting it out of hand, we said some may be necessary but

9  it's unlikely that we think any is necessary, and if any

10  was, it would be very very minimal.

11          THE COURT:  All right.  So, I guess my question

12  for you all -- and, again, I apologize, Mr. McCaulley, for

13  directing the question to you.

14      My question for you all is -- is essentially ultimately

15  about whether you all are talking about it and, if you are,

16  whether you think you're -- whether you're going to move to

17  reopen discovery, even for limited purposes, or if you're

18  just going to reach a stipulation between you all about

19  that.  And it's fine if you don't have an answer.  I just

20  want to get a feel for where you all are with that.

21          MR. MCCAULLEY:  I think from --

22          MR. GALLO:  I'm -- your Honor

23          MR. MCCAULLEY:  Go ahead, Ken.  I think it's more

24  a question for you.

25          THE COURT:  Well it's not --

10

1          MR. GALLO:  I assume we're still --

2          THE COURT:  Hold on, hold on, hold on, hold on.

3   So, here's what we're -- maybe -- as you all may have seen

4   from the earlier one, unfortunately, I -- I'm trying to just

5   deal with the Hospital Plaintiffs' case right now, Mr.

6   McCaulley.  So, I know.  I'll come back to you all and

7   discovery in just a moment.

8       So, Mr. Corrigan, I apologize.  I'm the one that

9   brought you in in the first place.  That's my fault.  But,

10  Mr. Corrigan and Mr. Gallo, where are you all in talking

11  about whether or not additional discovery will be taken in

12  this case, in -- in the Hospital Plaintiffs case?

13         MR. GALLO:  Your Honor, I'm happy to address that

14  if it's okay with Mr. Corrigan.  I don't want to cut him

15  off.  Okay.

16      So, your Honor, I think there's just two open issues.

17  I think it's fair to characterize it as we are in

18  discussions.  We are conferring, and I would propose that we

19  continue to confer, and we don't know whether there will be

20  any dispute or not.

21      The two areas that I have in my mind that there may

22  have to be additional discovery are the following.  One is

23  we got the Plaintiffs' class certification papers late last

24  night, you know, midnight last night.  I haven't even,

25  frankly, had a chance to review them, but I know that we got

11

1  a 470-page expert declaration, and I have in my mind the

2  possibility that there could conceivably be some limited

3  discovery before we file our class certification brief, but

4  I don't know that.  I just -- you asked, and I'm just trying

5  to be responsive to your question.  I don't even know that.

6      The second thing I have -- and this will come up in --

7  when we turn to the SIS case as well in mind -- is that by

8  the time the Hospital case were to get to trial, after we go

9  through class certification and if -- and you -- the Court

10  sets a trial date let's assume in 2025, fact and expert

11  discovery will have been closed for two and a half years.

12  And, in my experience, it's common in big antitrust cases

13  like this for there to have to be some narrow targeted

14  supplemental discovery.  For example, damages reports will

15  be two years old or two and a half years old.  Most of the

16  times the plaintiffs want to update their damages reports.

17  The defendants want to respond.

18      There may have been things that occurred in the

19  marketplace that one side or the other thinks is important

20  to put on in evidence at trial and, therefore, may wish to

21  disclose it to the other side, and that may lead to targeted

22  discovery.

23      So, when we raised this with Mr. Corrigan and his

24  colleagues, they said quite reasonably, We'll see.  But

25  right now, they -- they don't -- they're certainly not

12

1   agreeing to anything, and I think it would be premature to

2   bother the Court with it at this point.

3          THE COURT:  If I'm understanding you right --

4   well, let me ask, Mr. Corrigan, is there anything you want

5   to add before I ask another question?

6          MR. CORRIGAN:  No, your Honor.  That sounds right.

7          THE COURT:  Okay.  Okay.  The -- the unfair

8   questions the Court always has, which is I appreciate you

9   all not bringing it to me now if it doesn't need to be in

10  front of me now.

11      I'm curious.  It sounds like at least one of those is

12  related to the class cert motion.  So, you will be taking

13  care of that sooner rather than later.  I -- I leave that in

14  your good hands.  I mean, I -- I sort of want to ask the

15  unfair question of when, but, you know, you all can sort

16  that out at some point.  If you agree to things, it makes --

17  you know this.  It makes it all a lot easier.

18      All right.  So, the other question that I have for the

19  -- for Mr. Corrigan and Mr. Gallo and any of their

20  colleagues who may want to jump in, but let me leave it with

21  them for the time being, is just about ADR, right.  I

22  understand you all have -- I -- I just want to ask because

23  you -- I do it in -- well, you know, this is not an initial

24  Case Management Conference.  But, nonetheless, I feel the

25  need to ask whether anyone wants a referral to any of the

13

Court's resources at this point.  I know you all have been

having some further discussions with -- with your mediator

in recent months.  So, I'm -- I will -- what ever you all

tell me, I just want to ask.  Does anyone -- do either of

you think that it would be fruitful to refer you to either a

Magistrate Judge for a settlement conference or to one of

the -- one of the Court's panel mediators?

        MR. CORRIGAN:  Your Honor, I -- this is Mr.

Corrigan, Jeff Corrigan, as you know.  I would say no.  We

-- we agreed on a -- an experienced mediator that we're both

very comfortable with.  He's very good.  We've had

conversations with him.  We had sort of a semiformal

mediation a couple of years ago, but we've had more recent

conversations with him since your -- your Honor's opinions

came down, the summary judgment, the Daubert opinions.

    So, I think that mediation -- we're -- we're

comfortable with sticking with Mr. Lindstrom.

        MR. GALLO:  Your Honor, this is Ken Gallo.  Agreed

on all points.

        THE COURT:  Okay.  Okay.  So, for what it's worth,

my sense -- my sense is that -- by the way, Mr. Gallo, you

can't go even if you wanted to, but, Mr. Corrigan, you're

welcome to -- these are -- those are the questions that I

have for the -- for the folks in the Hospital Plaintiffs

case because, ultimately, my sense is you all are -- you're

14

1   no your track, right.  You are briefing -- you're briefing

2   your class cert.  There may be -- I'm sorry.  Not -- yes,

3   later, you're briefing class cert, and we'll sort of pick it

4   up from there in terms of the rest of the scheduling.

5       So, absent either Mr. Corrigan or Mr. Gallo wanting to

6   raise anything else related to the Hospital Plaintiffs suit,

7   I'm sort of going to put it down and pick up SIS.

8       So, let me pause and see if either Mr. Corrigan or Mr.

9   Gallo want anything else in here.

10              MR. CORRIGAN:  As of right now, no, your Honor.  I

11  guess that could depend on what Mr. McCaulley says in the

12  SIS case, but as of right now, no, your Honor.

13              THE COURT:  I'm certainly not asking you to leave

14  either.  You know, please stick around.

15              MR. CORRIGAN:  Thank you.

16              THE COURT:  Mr. Gallo -- of course -- anything

17  else in this matter?

18              MR. GALLO:  Nothing else, your Honor.  Thank you.

19              THE COURT:  All right.  So -- all right.  Let's --

20  let's pick up all the pieces.  So, let me talk with you all.

21  So, Mr. McCaulley, now I will have questions for you.

22              MR. MCCAULLEY:  Okay.

23              THE COURT:  And, Mr. Gallo, you direct me to -- to

24  yourself or to whoever else you might need to for these.

25  So, here there are -- I feel like there are many more things

1  to discuss.  So, let's jump into them.  I have a short list

2  that I'm going to try and work my way through them and see

3  sort of where we get, and -- yeah.  Let's -- let's see where

4  we are.  I think -- I want to start just by talking for a

5  moment about the -- the affirmative defenses, right.  I

6  didn't note in your -- in your Case Management -- in your

7  Case Management Statement that there is I think a fair

8  disagreement about -- about where -- where Intuitive

9  Surgical -- where Intuitive Surgical's affirmative defenses

10 are.  I will tell you that in looking back through -- in

11 looking through the statement and looking back through the

12 order, I tend to agree with Intuitive that Plaintiff didn't

13 -- that in the end, the motion was limited to anything

14 related to the F -- to the FDA.  And, so, I agree with

15 Intuitive that at this point, their affirmative defenses are

16 not entirely gone.  Their -- their counter -- their

17 affirmative defenses are not entirely gone.  What's -- what

18 is gone are the pieces about the FDA.  So, I just want to --

19 I want to nip in the bud the idea that you all need to file

20 a motion for that because I -- I want to try and clarify it.

21      Go ahead.  Was that you, Mr. McCaulley?

22           MR. MCCAULLEY:  I'm sorry.  I had a good call with

23 Mr. Gallo's team, and we agree as well, your Honor.  We told

24 them we agree, and we were just going to propose today we

25 had a good and fair and open discussion, reached agreement

16

1  and -- and proposed that we either put it in front of the

2  Court by way of stipulation or an administrative motion if

3  there's a slight disagreement, but -- but we -- we read it

4  the same way, your Honor.  And we've been talking about

5  that.

6          THE COURT:  I very rarely get to hear that the

7  parties agree with me.  So, I thank you.  I'm telling you,

8  the small victories.  So, I -- I would love the stipulation

9  because I think it also just cleans up the record some.  So,

10 if there's a short stipulation you all can send my way, I

11 will gladly stamp it, sign it, whatever.  So, great.  All

12 right.

13      So, may the rest of -- may the rest of this go that

14 smoothly.

15      All right.  So, let's talk -- let's talk about the

16 scheduling, which I think is, right, the -- the biggest

17 issue here.

18      So, I get it.  Here's -- here's my sense of your -- of

19 your respective positions.  SIS, trial soon as possible.  I

20 got -- I got that's what you want.  All right.  Intuitive is

21 -- suggests that I hold off scheduling trial until after the

22 resolution of the pending motion for reconsideration and

23 also because the resolution -- because -- well, and also I

24 think because I got the sense that you think, Mr. Gallo, and

25 your colleagues, that pieces of what happens in the Hospital

17

1  Plaintiffs case will be relevant for this case.

2      So, here's my question to you, Mr. Gallo.  I see very

3  clearly that you are not asking for consolidation between --

4  of -- you're not asking for the two cases to be

5  consolidated.  Are you -- but I'm curious if you think the

6  two -- it would be efficient for the two cases to be tried

7  together.

8          MR. GALLO:  Your Honor, just before I answer that

9  question, can I go back to the affirmative defense point to

10 clarify one thing?

11     There's a similar -- it's not precisely the same but

12 essentially the same point with respect to our

13 counterclaims, and you characterize it as affirmative

14 defenses, and I think Mr. McCaulley and we agree, but I just

15 -- since we're on the record, we would want to do the same

16 stipulation essentially on the counterclaims, and I didn't

17 want to leave that unclear.

18          THE COURT:  No, I appreciate you clarifying that.

19 I will tell you that I -- I have a little note to myself as

20 well that it relates to your counterclaim.  So, again, to

21 the extent that it's something you all have agreed to, all

22 the better.  If it's just you making clear so that

23 ultimately I need to put something in that clarifies that it

24 relates both to your counterclaims and your affirmative

25 defenses, by all -- to your counterclaims, by all means.

18

1          MR. GALLO:  Yes.  Okay.  Thank you, your Honor.
2  So --
3          THE COURT:  Now talk to me about trial.
4          MR. GALLO:  Yes.  So, we have not moved for
5  consolidation, nor has either Plaintiff.  We are content to
6  have the SIS case go to trial on its own schedule and
7  separate from the Hospital case.  We think while both cases
8  are complicated -- I mean, they're significant antitrust
9  cases -- the SIS case is a little less complicated because
10  it's a single competitor instead of a class, and we think
11  that, frankly, trial and resolution of the SIS case will be
12  an informative thing for the parties and may promote
13  settlement of the class case.  If we were to win, for
14  example, it might affect settlement.  If we were to lose, it
15  might affect settlement of the class case.
16      Now, having said that, you are correct that we think
17  there is a relationship between the cases that comes up with
18  respect to our motion for reconsideration, and the point
19  there is that the same market issues, whether it's a single
20  brand market, whether we have power in that market, whether
21  there are separate products, are present in both cases, the
22  same issues that are the subject of motion for
23  reconsideration.
24      Now, Mr. McCaulley in the SIS case did not move on
25  that.  And, so, your ruling is obviously only in the

19

1  Hospital case.  But we do think that the Hospital case will

2  be -- that the -- that the SIS competitor case, that your

3  ruling on reconsideration will inform how the Court

4  approaches, for example, jury instructions in the SIS case.

5      So, just to be concrete about it, you've currently

6  ruled against us, against Intuitive on market definition and

7  market power and -- and separate products.  We respectfully,

8  are asking you to reconsider that ruling.

9      If you were -- if you were to leave that ruling in

10  place, Mr. McCaulley's going to be litigating in his case,

11  in the SIS case, the same issues.  If you were to lift that

12  ruling and reverse it, the same issues are going to come to

13  you.  They're going to come to you in the form of what do

14  you instruct the jury about what is the -- how does one

15  determine whether there's a separate product or not.  Is --

16  is Intuitive correct that the Plaintiffs have to establish

17  the four elements of the Epic case or not.

18      So, we're not -- we're not saying they have to be put

19  together, but it does seem to us that we can't be blind to

20  the fact that the issues are in both cases, and your ruling

21  will be instructive for both cases.  That's what we were

22  trying to convey.  I hope that's responsive and helpful.

23          THE COURT:  It is.  I'm curious, Mr. McCaulley or

24  Mr. Corrigan, if either of you have thoughts that -- well,

25  I'll start with you, Mr. McCaulley.

1           MR. MCCAULLEY:  Sure.  Thank you.

2           THE COURT:  Yeah. Go ahead, please.

3           MR. MCCAULLEY:  Thank you, your Honor.  We

4  understand that we didn't move on it, as Mr. Gallo

5  acknowledges.  I think if your order stands, there'd be an

6  issue of collateral estoppel that would be applicable in our

7  case and issue preclusion.  But we're prepared if -- if that

8  issue is still in limbo, that -- to try that issue was our

9  intention when we moved for summary judgment.  We didn't --

10 we moved independently from the Hospital Plaintiffs.  And

11 while we coordinate, we did not coordinate on summary

12 judgment, and we -- we went our own way.  So, we're prepared

13 to try it if we have to.

14          THE COURT:  All right.  That is helpful.

15      All right.  So, Mr. Gallo, let me -- I think I've --

16 I've gotten the gist of what you have so far.  I'm curious

17 if there's anything else because it's a similar question,

18 but I think one other way that I was thinking about it was

19 you've -- I think you may have answered it more concretely

20 by telling me how the -- how the two cases are -- how the

21 two cases are interrelated, at least with regard to the jury

22 instructions.

23      I think the other note I had for myself was to ask you

24 why -- why SIS should slow down for the -- for the Hospital

25 Plaintiffs case.  And I'm -- I'm curious if you have

21

anything further about that.

MR. GALLO:  Well, yeah.  I don't -- we -- we certainly wouldn't -- we're not -- we didn't intend to convey, and apparently we did, that it should slow down for the Hospital case.  I did not intend to convey that.  I do think that there's some work to be done before the SIS case is ready to go to trial, and that's why we suggested, respectfully, a 2025 trial date.  We said second quarter. The world's not going to end if it's first quarter, but we respectfully suggested a 2025 trial date because we do think there's work to be done before Mr. McCaulley's case is ready to go to trial, and -- and it is in the nature of supplemental discovery largely and trial prep discovery. And if I could give the Court just -- I won't take more than two minutes, but just to make it more concrete.

As I indicated, I think there is some targeted discovery that needs to be done before the case is ready to go to trial.  If, for example, you set the trial in the first part of 2025, fact discovery will have been over for about two and a half years.  Expert discovery will have been over for about two years.  We will have a damage study from the Plaintiffs through 2022.  We will not have a damage study for 2023 or 2024, and in my experience, most Plaintiffs want to bring their damages up to date through trial.  We -- it seems to me we'd have to get a supplemental

22

damages study.  There may be some documents that accompany
that from the Plaintiffs.  The Defendants probably would
want to put in -- we would want to put in our responsive
expert report.  So, that would need to be done.

Second, the parties agreed, because there are many
witnesses in these antitrust cases, that if a witness was
disclosed at the front end of the case but not deposed and
if the party is going to call that witness at trial, that we
would each have an opportunity to depose that witness.

Now, on Mr. McCaulley's initial disclosure, there are
10 nonparty witnesses.  We haven't deposed them.  I don't
know how many of them he actually expects to call.  But if
he expects to call them, we would want an opportunity to
depose them.  I'm not saying it's the biggest deal in the
world, but it just is some work that needs to be done.

There -- third, Hospital witnesses, even though they
are nonparties and not Plaintiffs in the SIS case, are going
to be important witnesses at this trial because they're the
customers along with the patients who get the surgery.  So,
they're going to be important witnesses.  Several of them
were deposed back in 2022, some in 2021.  But there are
events that have occurred in 2023 and 2024 that are relevant
to their testimony they've not been questioned about.
There've been a couple of entrants, for example, who compete
with SIS.  And, so, the question is are those entrants

23

1  successfully offering products to these hospitals.

2      I'm not -- we're not going to go, you know, burn the

3  earth down, but there might be three or four Hospital trial

4  depositions that would be very probative to bring the

5  Hospital testimony up to date so that it's not two and a

6  half years old when we go to trial.

7      Last example.  Intuitive Surgical, we like to believe,

8  has continued to innovate and invest and bring out new

9  products to compete, for example, with different types of

10  surgery, laparoscopic surgery and to make our products more

11  attractive to hospitals and give greater value to hospitals.

12  We expect our executives are going to testify about what

13  they've done in the last two years.  They were deposed back

14  in 2022.  I would expect that the Plaintiffs are not going

15  to like hearing that testimony for the first time at trial,

16  and if they wanted to do a supplemental deposition so they

17  know what our people are going to say about the last couple

18  of years, it seems to me that that would be reasonable.

19      And the thing I would add, your Honor, is in my

20  experience in these antitrust cases, this is -- it's common.

21  It's sort of -- it's almost -- I don't know.  I don't want

22  to -- I mean, it's expected that when there's a lag of a

23  couple of years between the end of fact and expert

24  discovery, you kind of need to top it off, and it takes a

25  little bit of time.  It's not the end of the world, but we

24

1  need a little bit of time to top off the record.  And, so, I

2  was, candidly, surprised when Mr. McCaulley didn't agree to

3  any kind of supplemental discovery.  But, of course, he can

4  -- he can speak for himself.  But that's why we're proposing

5  a little bit of time and then a trial in 2025.

6      We also thought it was broadly consistent with when the

7  Court was setting trial dates, but that's a little

8  presumptuous of me because you know your schedule.  I don't

9  know your schedule.

10         THE COURT:  Mr. McCaulley, I want to give you an

11  opportunity to respond to Mr. Gallo.  I don't -- I want to

12  -- I want to share this with you so that you are not having

13  to respond in the dark and because it -- it touches directly

14  on -- on Mr. Gallo's last point, which is this.

15     My schedule does not permit trial any time before

16  January 2025.  And, in fact, I want to -- I want to share

17  with you all because I did -- I did sort of try to sketch

18  this out -- the soonest that I could do this, I can do -- I

19  keep losing this -- I keep losing this -- I literally lost

20  this Post-It note between last week and this week.  Here it

21  is.  I can put you all -- what I'm thinking at this point --

22  and I'm not -- this -- I'm not setting it today, but I want

23  you all to -- I want you to have this date in mind as we

24  start to talk about actual -- about getting you all on

25  calendar.  I can hold -- I will hold -- I will ask -- I will

25

1  ask my courtroom deputy to put holds there.  I will hold it
2  for you all, but it -- we can -- we can figure out whether
3  or not this is right.  What I can do is plan to do your
4  pretrial conference on November 25th at 11:00 a.m., and then
5  we can start trial on January 6, 2025, and I'll set that for
6  20 days because I got the sense that, Mr. McCaulley, your
7  estimate was 14 days, excluding a bunch of other things.
8  And I got SI -- and I got Intuitive's suggestion that it was
9  20 days, including most of those things.  So, I've -- that's
10 where I can fit in a 20-day trial.  So --
11          MR. MCCAULLEY:  Okay.
12          THE COURT:  -- I just -- before you respond to
13 everything he says and -- and try to argue to tell me to do
14 it sooner, I just -- I want you to know a 20-day trial,
15 that's where I can -- that's where I can conceivably fit it
16 in right now.  It's that or April.  So, that was -- so,
17 please, go ahead.  Please, please.  But in the end --
18          MR. MCCAULLEY:  Your Honor --
19          THE COURT:  -- I feel like -- go ahead.
20          MR. MCCAULLEY:  SIS then requests a trial on
21 January 6th.  I want to feel like I'm winning.  So, yeah.
22 And Mr. Gallo and I have had several conversations about
23 this, and there's no indication, just like with Ms. Winner
24 before, that the parties can't work together.  I will tell
25 you this, your Honor.  My client is definitely definitely a

26

 1 short David against Goliath, and reopening discovery in a
 2 broad way for the next eight months will bury us.  So, you
 3 know, we want to have some certainty about the record we've
 4 created, the record that we've relied on.  I have asked my
 5 damages expert to prepare updated numbers, but it's simply
 6 updating his report, not new opinions.  I expect to have it
 7 to Mr. Gallo in the next few weeks.  He was kind enough and
 8 his team was kind enough to send us updated numbers.  I
 9 think anticipating the request -- he didn't even make us ask
10 for it -- they sent over the -- the numbers, and we would
11 definitely update our numbers, and we anticipate that, but
12 reopening discovery would be a huge blow to my client
13 financially, your Honor.  And we are -- you know, we're
14 happy to go to trial.  We're happy to -- to square off.  But
15 their team and the resources are -- have buried us and will
16 continue to bury us if we have significant discovery.
17     I'm happy to work with Mr. Gallo.  The one thing we did
18 talk about was updating some testimony that was kind of
19 rambling from witnesses, and -- and, you know, what I was
20 going to propose to him is we can maybe summarize those so
21 we didn't have to retake them, to make it less excruciating
22 for the jury.  But new issues, new -- redeposing a bunch of
23 witnesses, there were so many depositions in this case.  It
24 almost broke my client the first time around.  I'm not sure
25 we can do it again.

1          THE COURT:  Folks, let me -- let me suggest this,

2   and I realize, you know, in -- in the other case I asked Mr.

3   Corrigan and Mr. Gallo about when you might come to the

4   Court with questions about discovery and, right, we -- I

5   left that very much in your hands.  I continue to leave it

6   in the parties' hands.

7      I think the piece that I would note is that, of course,

8   Mr. Gallo, if you -- if you really do want to move -- I hear

9   -- what I hear you all saying is you are actually -- and,

10  believe you me, it is refreshing and -- and wonderful to see

11  that you can work on it together.  I'm not refereeing -- I'm

12  not refereeing a screaming match.  So, I thank you.

13         So, do keep talking.  But in the end, at some point,

14  Mr. Gallo, if you -- if you want to bring that motion, I'll

15  consider it at that time, and -- and I hear you, Mr.

16  McCaulley, but in the end, right, I'll -- if you all can't

17  -- if you get to the point where you can't agree on what it

18  is you're exchanging or what it is you're doing to move

19  forward, just bring the motions, and we'll figure out what

20  -- whether to reopen discovery and what -- and to what

21  extent.

22         MR. GALLO:  We'll try to get it resolved in the

23  next say 10 days or -- and then move promptly if we're

24  unable to reach an agreement with Mr. McCaulley, because I

25  know we -- we got to get it in front of you if we want that.

1  So, we'll do that.

2       And, your Honor, for the record only, can I note so

3  that just -- we've made the point in our paper, and I just

4  wanted to note it on the record that if there were to be an

5  interlocutory appeal on the -- on the summary judgment

6  ruling, right now, of course, we're hoping the court will

7  resolve it through reconsideration, but that our -- our

8  position is that it would make no sense to go to trial on

9  the SIS case if there were to be -- while an interlocutory

10 appeal was pending.  That's something of an academic and

11 speculative issue right now, but I feel like I need to say

12 it for the record.

13          THE COURT:  It's in the recording.  I've got it in

14 your papers.  I also appreciate the -- the need to be

15 thorough.  So, by all means.

16      All right.  So, folks, Mr. Gallo -- I'm -- Mr. Gallo,

17 unless you object, I actually will go ahead and just set

18 that January trial date because that's the easiest way to

19 just keep it on my calendar, as well as the pretrial

20 conference November 25th at 11:00 a.m.  So, we'll -- we'll

21 set both of those dates and go from there, and if for some

22 reason they -- you know, as -- as -- we hold the dates.  We

23 work toward them, and if something happens -- but I'm going

24 to -- I'm going to hold them because that way I just -- I

25 can see it, and I don't have to worry about finding you all

1  20 days somewhere else, because that is not an easy task.

2      All right.  Folks, I want to make sue -- I wanted to

3  talk with you all also about the stips that you submitted

4  regarding sealing procedures.  Thank you.  It's a good stip.

5      Here's my question.  So, I'm going to grant that.  I

6  think my -- my one question is whether it makes sense -- and

7  I wanted to -- I don't know, Mr. Corrigan, if you had -- if

8  you discussed this at all or something similar with

9  intuitive, but my one -- the one thing I wanted to say since

10  I have all of you is could -- if you haven't already seen

11  the -- the stipulation for sealing procedures, I wanted to

12  ask Mr. Gallo if you could show -- I would love to adopt the

13  same procedure in both cases given how hefty the -- the --

14  how much -- how much -- the extent of the documents for

15  which -- for which sealing was requested in both cases.

16      So, Mr. Corrigan, have you -- I don't want to put you

17  on the spot.  If you haven't, let me just ask this.  Mr.

18  Gallo and your team, if you haven't yet proposed it to the

19  Plaintiffs in the Hospital Plaintiffs case, I would request

20  that you please do so that I can have consistent procedures

21  in both cases.

22      Yes, Ms. Winner?

23          MS. WINNER:  Yes, and maybe I can speak to that.

24  I don't know, but Mr. Gallo, I suspect, will appreciate it

25  if I speak to that.  I believe -- and Mr. Corrigan correct

30

1 me because it was my -- actually, my partner who dealt with
2 this, but I believe that it was with Mr. Corrigan and his
3 colleagues that that stipulation was submitted. It's been
4 submitted in the Hospital case, because we did it because of
5 this class certification motion that we got last night.  So,
6 I don't know whether we have raised it yet with Mr.
7 McCaulley and his colleagues.
8     We certainly would be completely in favor of having the
9 same procedure apply, but I -- Mr. McCaulley may not want to
10 be put on the spot about it, and we --
11         MR. MCCAULLEY:  You know, I'm fine.  If Mr.
12 Corrigan agreed to it, then I'm going to agree.  He's one of
13 my favorite --
14         MR. CORRIGAN:  He's really grasping now.
15         THE COURT:  It's a lovefest.  I love it.  All
16 right.  But, in any case, so, Ms. Winner, I'm -- thank you.
17 I -- I'm going to have to start -- I just need to create two
18 separate piles of documents for you all.  I made the -- this
19 is the problem.  Put them all together, and this -- and in
20 my head, this was -- this was -- yeah, in the other case and
21 not in the Hospital Plaintiffs case.
22     So, do me a favor, Mr. McCaulley, just look at it.  I
23 -- I don't want to put you on the post, but I do want to ask
24 you to --
25         MR. MCCAULLEY:  We'll be happy to.

1           THE COURT:  -- look at it.

2           MR. MCCAULLEY:  We'll be happy to.

3           THE COURT:  Thank you.

4           MS. WINNER:  Your Honor, may I -- and just because

5  we would otherwise now be on a clock, can we now assume that

6  you actually will approve it, approve the stipulation for

7  the Hospital case so that we don't have to --

8           THE COURT:  Yes.  That's --

9           MS. WINNER:  -- do something different right now?

10          THE COURT:  This is that lovely moment where I get

11 to say so ordered, and it will just be in the minutes that

12 that -- that that stipulation was approved.  It is -- just

13 for the sake of my courtroom deputy, it is Document Number

14 265 in 21-CV-3825.  So, we'll -- we'll -- that -- that's

15 granted.  And you all can -- then that -- that will be your

16 new -- your new process.

17     All right.  Folks, so last thing -- the last thing that

18 I have for you all because, as you see, it's -- it's what I

19 like to do, which is I just want to ask about ADR.  So, let

20 me -- let me put that out there.

21     Does anyone want a referral of any kind at this point?

22     (Pause.)

23          MR. MCCAULLEY:  Your Honor, from -- from SIS's

24 perspective, I mean, we've always been willing to talk

25 settlement.  It hasn't been the right moment for Intuitive,

32

1 but I'm not sure the issues will get any more clear before

2 November 25th.  So, from our perspective, we would -- we

3 don't have -- as I alluded to before and certainly my client

4 I think is listening in, I'm not trying to make it sound

5 like he's on death's doorstep or anything, but a private

6 ADR, private mediation would be very expensive for us, but

7 we would welcome the opportunity to go before a Magistrate

8 or take the four hours from the Court's program.  But, you

9 know, thus far, we haven't -- we haven't really had any

10 discussions.  And, so, I'd leave it to Mr. Gallo in terms of

11 whether things would be productive, but whatever -- you

12 know, I think it would have to be some structured system,

13 some structure.  I've had wonderful experience with the

14 Magistrates in the Northern District and as recently as

15 earlier this week.  Happy to -- to do that or -- or whatever

16 the Judge -- your Honor thinks is appropriate.

17          MR. GALLO:  Your Honor --

18          THE COURT:  (Zoom glitch.)

19          MR. GALLO:  I'm sorry to interrupt.  I apologize.

20          THE COURT:  It's okay.  Go ahead, Mr. Gallo.  I'm

21 just thanking him.

22          MR. GALLO:  Yeah.  So -- so, Intuitive Surgical's

23 always willing to discuss settlement, and if the Court

24 wished to refer us to an ADR, the -- the sponsored court

25 panel, we will, you know, happily participate in that.

1    If you're asking me for a prediction, I'm not terribly

2 optimistic, but we will participate as responsible corporate

3 citizens and litigants.

4         MR. MCCAULLEY:  My response to that, your Honor,

5 I'm not interested in wasting time.  I'd rather just get

6 ready for trial.

7         THE COURT:  Understood.  Let me ask you all this

8 because I think -- if I refer you to a Magistrate today, it

9 will be a number of months -- it is often a number of months

10 before they can fit you into their usual rotation.

11 Occasionally, because our Magistrate Judges are amazing,

12 they will fit people in at the request of the -- of the

13 referring judge.

14    As you might imagine, I like to keep those -- I like to

15 keep those for when they are -- when the parties think it

16 will be particularly fruitful, right.  I -- I don't want to

17 ask a colleague to squeeze in a case for -- in -- in their

18 docket if -- if no one feels very confident that -- that

19 something very productive will come from it.

20    So -- so, let us do this.  I want to leave you all with

21 the idea that I'm happy if -- I am happy to refer you all to

22 a Magistrate Judge, and I bet I can even get one for you on

23 a slightly -- on a slightly more abbreviated time frame if

24 you all come to think that it will be fruitful.  I hear both

25 of you saying you would do it.  No one -- you don't need to

34

1  think it's -- no, I'm not looking for anyone to have like a

2  rosy -- no one -- I'm not looking for rosy -- for a rosy

3  outlook.  But if -- if in the coming months you all want to

4  tell me that I should refer you, I can and will, and if you

5  happen to get to a place where on -- I'm sure you all know

6  this.  You all are experienced practitioners, but on the

7  chance that you get to a place where you want to meet and

8  confer and tell me who you want to be referred to, I can

9  even ask that, just as a reminder.  So --

10            MR. GALLO:  Understood.

11            THE COURT:  Yeah, take -- just take that with you.

12  Counsel, that, I think, is everything that was on my list.

13  Is there anything else that you all wanted to discuss today?

14            MR. MCCAULLEY:  Your Honor, from -- from SIS's

15  perspective, will we get an order setting the pretrial, and

16  will that include deadlines for pretrial submissions?

17            THE COURT:  Yes, you will get a pretrial order.

18            MR. MCCAULLEY:  Thank you.

19            THE COURT:  Anything else, Mr. Gallo or anyone

20  else for --

21            MR. GALLO:  Your Honor, only -- the only thing I'd

22  like to note, and I don't -- I -- I appreciate the time the

23  Court spent with us and the approach the Court has taken

24  very much.  I do -- I have a slight concern that given the

25  things I indicated need to be done and then the pretrial

35

1  submissions that would be required before November 25th, I
2  do have a slight concern about whether the parties can meet
3  that deadline.  I don't want to really advocate for an April
4  trial date here live at this moment because I appreciate the
5  Court's approach, but I am a little concerned that the April
6  date with a slightly later pretrial would be better.  I -- I
7  note that for the Court, but I'm happy to work with Mr.
8  McCaulley and try to get the -- get it done.
9          THE COURT:  Well, can I tell you all, that
10 pretrial is -- there's more space between that pretrial and
11 my usual pretrial from the beginning of trial, mostly to try
12 to accommodate December.
13         MR. GALLO:  Right.
14         THE COURT:  I -- I sort of took for -- I mean, I
15 don't have to.  We could have the pretrial in December, but
16 -- so, let -- so, let me suggest this.  Let me for the time
17 being set what looks like a slightly more -- let's set this
18 today.  I appreciate -- I will -- I appreciate you noting --
19 I appreciate you sort of putting -- bringing all of that
20 into relief, Mr. Gallo.  If -- if you all -- if we end -- if
21 you all think the deadlines need to move, we can do that.  I
22 think it will also be clearer.  Right now the pretrial --
23 neither of you have seen the pretrial order.  You have a --
24 you all know I think full well sort of what those deadlines
25 are likely going to look like and when things will be due in

36

1  relation to that -- to that pretrial conference in late

2  November, but maybe seeing the -- maybe once you have the

3  dates in writing, you can have -- then you can have a more

4  fruitful conversation about where to move it.  In the end --

5  in the end, you all -- if you all end up wanting to

6  stipulate to an April date, we can do that.  If -- if

7  ultimately -- my sene is that the conversations you -- the

8  continuing conversations you're having about the amount of

9  discovery that still needs to be taken will drive some of

10  this.  So, right, like keep having those conversations.

11  We'll set those dates now.  I like to think I'm not

12  unreasonable, but I also just want to be candid that it's --

13  it's -- right now it's looking like January or April, and,

14  you know, who knows?  In the -- if it takes you all -- if it

15  takes you all a couple of weeks to figure out that maybe you

16  want April, who knows, something else.  I -- I come not --

17  I've come not to be surprised.  My March may clear up.  Who

18  knows?  So, maybe there's some things -- you know, other

19  things settle.  So -- so, we'll see.

20          MR. GALLO:  Thank you, your Honor.  Appreciate it.

21          THE COURT:  Of course.  All right.  Anything else?

22          MR. GALLO:  No.

23          MR. CORRIGAN:  No, your Honor, not from Hospital

24  Plaintiffs.  Thank you.

25          THE COURT:  All right.  Thank you all.  Have a

1 good rest of your day.

2          ALL:  Thank you, your Honor.

3      (Proceedings adjourned at 3:06 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

38

1                CERTIFICATE OF TRANSCRIBER

2

3       I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9       I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16             Echo Reporting, Inc., Transcriber

17                  Thursday, June 27, 2024

18

19

20

21

22

23

24

25