1  **MCCAULLEY LAW GROUP LLC**
   JOSHUA V. VAN HOVEN, (CSB No. 261815)
2  E-Mail: josh@mccaulleylawgroup.com
   3001Bishop Dr., Suite 300
3  San Ramon, California 94583
   Telephone: 925.302.5941
4
   RICHARD T. MCCAULLEY (*pro hac vice*)
5  E-Mail: richard@mccaulleylawgroup.com
   180 N. Wabash Avenue, Suite 601
6  Chicago, Illinois 60601
   Telephone: 312.330.8105
7
   *Attorneys for Plaintiff and Counter-Defendant,*
8  SURGICAL INSTRUMENT SERVICE COMPANY, INC.

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11                     **SAN FRANCISCO DIVISION**

12

13 SURGICAL INSTRUMENT SERVICE          Case No. 3:21-cv-03496-AMO
   COMPANY, INC.
14                                       **PLAINTIFF SURGICAL INSTRUMENT**
              *Plaintiff,*               **SERVICE COMPANY, INC.'S BRIEF**
15                                       **OPPOSING INTUITIVE'S MOTION TO**
         v.                              **REOPEN DISCOVERY**
16
   INTUITIVE SURGICAL, INC.,             Hearing: September 26, 2024
17                                       Time: 2 PM PDT
              *Defendant.*               Courtroom 10
18                                       The Honorable Araceli Martinez-Olguin
19                                       Complaint Filed: May 10, 2021
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**INTRODUCTION**...................................................................................................**1**

**FACTS** ..................................................................................................................**1**

**STANDARD OF REVIEW** ....................................................................................**7**

**ARGUMENT** .......................................................................................................**8**

I.  INTUITIVE'S MOTION SEEKS TO REOPEN DISCOVERY FOR IMPROPER
   PURPOSES OF AVOIDING THE COURT'S PRIOR RULINGS .................................8

    A.  The Discovery Sought By Intuitive Is Not a Search for Relevant Evidence -
      It is A Means to Resurrect Failed Legal Strategies and to Create New
      Defenses On the Eve of Trial.......................................................................9

        1.  Non-Party Sales of FDA-Cleared Reset S/Si EndoWrists........................9

        2.  Progress of Non-Parties Toward Resetting X/Xi EndoWrists...................12

        3.  Further Document Production Regarding SIS's 2023-24 Financial
       Information And Business Activities Is Unnecessary ...............................13

    B.  Setting Aside Intuitive's Improper Motives - The Legal Standard to
      Establish Good Cause For Reopening Discovery Is Not Met By Intuitive's
      Motion........................................................................................................14

        1.  The First Consideration -- Trial Of This Case Is Imminent......................15

        2.  Second Consideration -- The Request Is Opposed .................................16

        3.  Third Consideration -- SIS Would Be Prejudiced ..................................16

        4.  Fourth Consideration -- Intuitive's Lack of Sufficient Diligence &
       Fifth Consideration -- Foreseeability of the Need for Additional
       Discovery ...........................................................................................18

        5.  Sixth Consideration -- The Likelihood That The Discovery Will or
       Will Not Lead to Relevant Evidence .....................................................21

II.  THE COURT SHOULD DENY INTUITIVE'S REQUEST TO REOPEN DISCOVERY
    TO TAKE "TRIAL DEPOSITIONS" .....................................................................21

**CONCLUSION** ................................................................................................**23**

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Ashby v. Mortimer,* 337 F.R.D. 652 (D. Idaho 2020) ...................................................22

*Beauregard v. Sampson,* 2023 WL 8877806 (D. Nev. Dec. 22, 2023) ........................19

*Branch Banking & Trust Co. v. DMSI, LLC,* 871 F.3d 751 (9th Cir. 2017)..................8

*Brummett v. Martinez,* 2024 WL 2208951 (E.D. Cal. May 16, 2024)....................16, 19

*Bullets2Bandages, LLC v. Caliber Corp.,* 2019 WL 6700376 (S.D. Cal. Dec. 9, 2019) ...............................................................................................................18, 19

*Cathode Ray Tube (CRT) Antitrust Litig.,* 2015 WL 13756260 (N.D. Cal. July 31, 2015) ...........................................................................................................................18

*City of Pomona,* 866 F.3d ......................................................................................20, 21

*Henderson v. Peterson,* 2011 WL 441206 (N.D. Cal. Feb. 3, 2011)......................16, 17

*Integra Lifesciences I, Ltd. v. Merck KGaA,* 190 F.R.D. 556 (S.D. Cal. 1999) ..........22

*Kalitta Air, L.L.C. v. Central Texas Airborne Systems, Inc.,* 2004 WL 7339839 (N.D. Cal. 2004).................................................................................................21, 22

*MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.,* 2021 WL 6882328 (C.D. Cal. December 3, 2021).............................................................16, 19, 20

*Merrit v. Cogley,* 2024 WL 2819243 (S.D. Cal. June 3, 2024) ...............................8, 19

*Moriarty v. Am. Gen. Life Ins. Co.,* 2021 WL 6197289 (S.D. Cal. Dec. 31, 2021).....16

*Packaged Seafood Prods. Antitrust Litig,* 2023 WL 1090983 (S.D. Cal. Jan. 26, 2023) ...........................................................................................................................17

*Pittmon v. CACI International, Inc.,* 2024 WL 3468812 (C.D. Cal. July 10, 2024) ....19

*United Food Group, LLC v. Cargill, Inc.,* 2014 WL 12925562 (C.D. Cal. Oct. 27, 2024) ...........................................................................................................................23

*Werbicky v. Green Tree Servicing, LLC,* 2014 WL 5470466 (D. Nev. Oct. 27, 2014)..................8

*West Coast Theater Corp. v. City of Portland,* 897 F.2d 1519 (9th Cir. 1990).............7

### RULES

Fed. R. Civ. P. 26(a)(2)(B)(i)........................................................................................13

Fed.R. Civ. P. 6(b)(1)(B) ................................................................................................7

Fed.R. Civ. P. 16(b)(4)...................................................................................1, 7, 13, 19

**INTRODUCTION**

Intuitive's Motion is not actually one for "limited supplemental discovery." In reality, it constitutes a post-fact discovery, post-expert discovery, post-*Daubert* motion, and post-dispositive motion effort to resurrect its failed legal strategies and reconfigure the issues in this case to create new defenses on the eve of trial. More specifically, Intuitive distorts the purpose of Rule 16(b)(4) attempting an "end run" around the Court's ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 204) and ORDER RE: MOTIONS TO EXCLUDE EXPERT WITNESSES (Dkt. 221), which rejected key aspects of Intuitive's legal theories and strategies. Intuitive apparently hopes reopening discovery will provide it an opportunity (1) to relitigate the X/Xi reverse engineering decryption issues it previously chose to ignore, (2) to reinject issues about FDA-cleared, remanufactured and reset S/Si EndoWrists and confuse the jury about SIS's business model, repair services and the reasons for injury to its business, and (3) to relitigate Intuitive's attack on the legitimacy of Mr. Bero's antitrust damages calculations in the "but for" world of antitrust damages. As discussed below, not only is the information sought by Intuitive of little relevance, it is actually part and parcel of its anticompetitive scheme, attempting to create an artificial but-for world where Intuitive can deputize itself as the "FDA police" and enforce requirements that the FDA and this Court have refused to enforce, and where the fact that it delayed development of X/Xi workarounds for years through its anticompetitive threats to shut down hospital robot programs is disregarded.

**FACTS**

As this Court noted in its Summary Judgment Order, "[b]y early 2019, medical technology companies such as Rebotix Repair ('Rebotix') and Restore Robotics ('Restore') had made significant sales of repaired S/Si EndoWrists to a number of hospitals and systems in the United States." Dkt. 204 at 3:17-19. As the Court further explained:

> SIS became aware of Rebotix's repair procedure for the EndoWrist in spring of 2019, and over the ensuing months, SIS worked with Rebotix to understand the process and potentially bring it to SIS customers. SIS began offering reset S/Si EndoWrists to its customer base in fall of 2019. **SIS signed an agreement specific to EndoWrist**

1

**repairs with Vizient, the country's largest group purchasing organization (GPO) representing thousands of hospitals and health care facilities. Hospital demand for the EndoWrist repair service was "monumental," with interest from several hospitals and hospital systems across the country.**

Dkt. 204 at 3:28-4:9 (emphasis added, internal citations to evidence omitted).

It is undisputed that at the time of the Vizient agreement and the above-cited "monumental" demand in late 2019 and early 2020, neither SIS nor its technology suppliers were FDA cleared. *See* Van Hoven Exh. 1 at p. 1  (Iconocare's first FDA clearance of a single Si device, dated September 30, 2022). During questioning about the "monumental" demand for SIS EndoWrist repair, SIS provided a partial listing of hospital systems interested in repair of S/Si EndoWrists:

> Legacy Health system in Portland, Oregon; Providence health system in the West Coast; Sutter Health; Kaiser Permanente; memorial care; the UC system in California; Banner Health System; Honor Health; Baylor Scott & White in Texas; the university health systems across the country, from Michigan to Duke to North Carolina; Mayo Clinic; Cleveland Clinic; Advocate Aurora; Lahey Health System; Boston Children's Medical Center . . . Piedmont health system, Grady in Atlanta, Johns Hopkins . . . And then, in addition to that, all the Vizient conversations we've had, I've presented to all four regions of Vizient, which basically covers well over 2,000 hospitals in the United States.

Van Hoven Exh. 2 at 45:2-45:22.

Intuitive Surgical, a $100 Billion plus market cap company represented by a dozen or so white shoe lawyers, declined to depose or serve any third-party discovery on Vizient or any of these SIS customers or potential customers. Although SIS cannot know the exact reasons for this strategic decision, one reason may be that due to Intuitive's monopolistic bullying and profiteering, many hospital administrators "hate Intuitive." Van Hoven Exh. 3 at 261:7-262:17, 120:14-121:8.

As just one example of Intuitive's bullying, its 30(b)(6) witness for its threat-letter campaign to hospitals during late 2019 and early 2020 could not tell whether Intuitive was

threatening to terminate the entire robotic surgery program of a hospital system with 40-plus robots, or just the contract for a particular robots where repaired Si EndoWrists were used. Van Hoven Exh. 4 at 12:17-22, 88:17-89:1, 92:21-94:17. "Faced with the shutdown of their robotic surgery programs, all SIS customers (and to SIS's knowledge, all EndoWrist repair customers) stopped using repaired EndoWrists." Dkt. 204 at 4:13-15.

In parallel with its incredibly effective letter-writing campaign to hospitals, Intuitive also attempted to enlist FDA to go after suppliers of repaired EndoWrists, for example, in a letter sent to FDA in January of 2020. Intuitive told FDA that "companies are modifying Intuitive's robotic instruments in order to extend their use beyond the number of uses for which they have been validated" and are "**Remanufactures**" that are "subject to the full range of device manufacturer requirements, including, among other things, obtaining clearance of a 510(k) submission, and complying with Quality System Regulation, MDR Reporting, Reports of Corrections and Removals, and Establishment Registration and Device Listing requirements." Van Hoven Exh. 5 at pp. 1-3.

Intuitive's efforts to enlist FDA were not as successful as its direct threats to hospitals. Although low-level FDA staff responded to Intuitive's letter almost immediately with letters to Rebotix, when pushed for an appeal or even an appealable decision, FDA punted.[1]  Van Hoven Exh. 6; Van Hoven Exh. 7 at 98:18-100:3; *see also* Dkt. 204 at 7:9-13. As this Court explained, "[b]ecause FDA has not determined whether 510(k) clearance is necessary for SIS's aftermarket

---

[1] There is good reason why FDA would refuse to formally reach such a decision. As described in detail in SIS's Motion for Partial Summary Judgment, unlike new devices or single-use reprocessing, FDA has never been granted explicit statutory authority to regulate "remanufacturing" or other servicing of multi-use devices. Dkt. 127 at 7:18-11:17. OEMs have thus tried and failed to change governing statutes to give FDA such authority twice in recent years. Dkt. 127 at 11:18-13:22. In light of this undisputed background and history, any future attempt by FDA to seize additional authority to regulate these activities is highly unlikely to withstand judicial scrutiny. *See, e.g.*, *West Virginia v. Environmental Protection Agency*, 142 S.Ct. 2587, 2614 (2022) (rejecting authority of administrative agency "to enact a program that, long after the dangers [addressed by the regulations] 'had become well known, Congress considered and rejected'" multiple times.); *Loper Bright Enters. v. Raimondo,* 144 S. Ct. 2244, 2272 (2024) (rejecting proposition that "a statutory ambiguity, no matter why it is there, becomes a license authorizing an agency to change positions as much as it likes").

EndoWrist services, Intuitive may not proceed with its claims premised on SIS's representations that Section 510(k) clearance was not necessary, as that requires litigating an alleged FDCA violation." Dkt. 204 at 13:9-12; *see also id.* at 14:11-16 ("The Court agrees with SIS" that "it cannot have 'willfully' violated FDA regulations where the FDA has not clarified what constitutes remanufacturing and has avoided deciding whether SIS's EndoWrist services constitute remanufacturing"). The Court further explained:

> The evidence demonstrates that SIS acted with good faith in its EndoWrist services. Since the time it entered the EndoWrist service market, SIS operated under a reasonable interpretation of the relevant regulations and made its position clear: "The da Vinci® EndoWrist® is a 'multi-use' medical device. Multi-use devices, such as endoscopic instruments, have always been eligible for repair." . . . As explained by SIS at the time, "The FDA does not regulate, nor certify, repairs. The FDA regulates third party reprocessing companies and single-use devices only."

Dkt. 204 at 14:17-24 (internal citations to evidence omitted).

Having failed in its effort to enlist FDA and the Courts to force EndoWrist repair suppliers to undergo burdensome FDA clearances for each of dozens of EndoWrist models, **Intuitive has deputized itself as a private interpreter and enforcer of FDA authority and regulations**.

1 ████████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████████████████

4 ██████████████████

5      ████████████████████████████████████████████████████████████

6 ████████████████████ did Intuitive proclaim, after the close of discovery in this case and

7 immediately prior to summary judgment briefing in March 2023, that "Intuitive will not void its

8 service contract with, cease doing business with, or consider it a breach of contract by a customer

9 in the United States who chooses to purchase remanufactured instruments that have been

10 remanufactured by a third party pursuant to and in compliance with a 510(k) clearance or

11 equivalent granted by the FDA." Dkt. 244-5 at ¶ 45. As SIS explained during summary judgment

12 briefing and Intuitive has not disputed, Intuitive's contracts have never included such an FDA

13 exception – as is only possible from a monopolist, Intuitive simply decreed it to be so ███████

14 ████████████████████████████████████████████████████████████. Dkt. 228 at 11:1-

15 12:2 (compiling evidence).

16      In late 2022, an Affiliate of Restore (Iconocare) did in fact obtain FDA clearance for a

17 single "8mm Monopolar Curved Scissors" that "is used with the Intuitive Surgical IS3000 da

18 Vinci Surgical system for cutting cauterizing, cauterizing, coagulation, manipulating and blunt

19 dissection of tissue." Van Hoven Exh. 1 at p. 4 (Indications for Use). Although this clearance did

20 conclusively demonstrate that the nearly identical process that would have been employed by SIS

21 and its technology partners in 2019 and 2020 is safe and effective, by the time that the clearance

22 was granted Intuitive had largely completed the obsolescence and phaseout of Si, a process which

23 will be entirely complete at the end of this year. *See* Dkt. 244-5 at ¶ 45 ("Intuitive is not aware

24 that FDA has granted 510(K) or equivalent clearance to any party to remanufacture any

25 instruments for use with 4th generation da Vinci technology, including the da Vinci X, Xi and SP

26 Systems."); Van Hoven Ex. 10 (acknowledging the December 31, 2024 "end-of-service (EOS)

27 date for the da Vinci Si Surgical System and associated instruments, accessories, and

28 endoscopes").

1   Despite being starved of funding from over three years of lost sales ███████

2   █████████████████████████████████, and prior to the close of fact discovery, SIS's

3   technology partners testified during fact discovery in this case that "'from a technical perspective

4   today - as of today, Rebotix has figured out how to reset the usage counter for Xi instrument."

5   Van Hoven Exh. 11 at 42:1-11, 38:9-42:11; *see* ████████████████████████████

6   ██████████████████████████████████████████████████████████████████████

7   ██████. SIS presented technical expert testimony that this effort could have been completed

8   much earlier if appropriate funding and resources were available. Intuitive filed a *Daubert* motion

9   to exclude this testimony, which was denied. Dkt. 221 at 5:9-9:12.

10   At that time, the entirety of Intuitive's strategy on X/Xi encryption appears to have been to

11   succeed on *Daubert*. Intuitive failed to explore in any detail the technical efforts of others that

12   Intuitive knew about prior to the close of discovery. And its "encryption" expert refused to opine

13   on or even consider X and Xi encryption. Van Hoven Exh. 197:15-19 ("Yeah, I haven't performed

14   an analysis of what would be required to break the [Xi EndoWrist]."); *id.* at 190:2-6 ("I don't

15   have an opinion on" whether "the encryption employed by [the chip used in X/Xi EndoWrists] is

16   particularly complicated compared with the sort of encryption you typically have worked

17   with[.]"); *id.* at 187:5-11 ("So, I – I just haven't done that analysis" of how one "would . . .go

18   about trying to circumvent the encryption on the use counter within [the chip used in the X/Xi.]");

19   *id.* at 188:3-189:7 ("I would need some time thinking about it"; "I haven't really thought about

20   it"; "Yes, I would have to think about that"); *id.* at 198:12-14 ("So, it's a multi-step process, and

21   I haven't performed even the first step yet is the problem.").[2]

22   Although SIS cannot know the exact reasons why Intuitive's army of attorneys chose a

23   "bury our heads in the sand" strategy on X/Xi encryption during fact and expert discovery, one

24   plausible explanation is that to maintain professional credibility its expert would have been

25   required to state the well-known fact, as summarized by one of Intuitive's lead engineers, that

26   "encryptions have a computer limit, right? Like, there is processing power that's needed, and you

27

28   [2] Intuitive is precluded from entering expert testimony at trial as to whether or not SIS could have
broken the encryption on X/Xi EndoWrists.

have to try combinations . . . [A]ny encryption can be end of the day broken" Van Hoven Exh. 14 at 123:2-17. Although he never performed any "legwork" and refused to discuss what "legwork" would be involved in examining X/Xi encryption, Intuitive's expert similarly admits that solving encryption problems is a matter of "legwork." Van Hoven Exh. 13 at 187:5-189:7; 196:16-198:19.

Following the Court's Summary Judgment and *Daubert* Orders, Intuitive apparently hired yet another white-shoe law firm to work on this case, with at least five new attorneys appearing *pro hac vice* within weeks of those decisions. *See* Dkts. 208, 209, 210, 211, and 212. These new attorneys apparently seek:

- An examination of EndoWrist demand only after Intuitive has successfully leveraged its monopoly power and cash to become a private extender and enforcer of FDA regulations (after prior counsel ignored actual hospital demand for SIS' repaired EndoWrists, and following prior counsel's summary judgment loss on FDA issues);

- An about face of prior counsel's "head in the sand" X/Xi encryption strategy; and

- An unfettered and completely undefined set of new depositions, because they do not like the manner in which prior counsel elicited testimony (or the substance of such testimony).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 16(b)(4), the Court's scheduling order "may be modified only for good cause and with the judge's consent." Intuitive, however, fails to demonstrate "good cause" for reopening discovery to pursue potentially ten (10) additional depositions – the default number of depositions for an entire litigation – along with the production of a broad range of additional documents and data to be sought almost entirely from non-parties. It is significant when a party is seeking to reopen discovery rather than extend the discovery deadline. *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1524 (9th Cir. 1990). "The difference [between the two types of requests] is considerable" because "a request for an extension acknowledges the importance of a deadline, [while] a retroactive request suggests that the party paid no attention at all to the deadline." *Id.* A request to reopen discovery - as distinct

7

from a request to continue deadlines when discovery is still open - imposes a higher bar. *Merrit v. Cogley,* No.:23-cv-1031-CAB-KSC, 2024 WL 2819243 at *2 (S.D. Cal. June 3, 2024).

When considering whether good cause exists for modifying the Court's Scheduling Order to allow for reopening discovery, courts consider: (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence. *City of Pomona v SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (citation omitted).

When the motion to extend time is made after time has expired, the Court must also consider excusable neglect. *See* Fed.R.Civ.P. 6(b)(1)(B). The excusable neglect analysis is guided by factors that include (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Branch Banking & Trust Co. v. DMSI, LLC*, 871 F.3d 751, 764-65 (9th Cir. 2017). When a threshold showing of good cause is not made, however, the Court need not reach the issue of excusable neglect. *Werbicky v. Green Tree Servicing, LLC*, No. 2:12–cv–01567–JAD–NJK, 2014 WL 5470466 at *1 n.1 (D. Nev. Oct. 27, 2014).

## **ARGUMENT**

I.     INTUITIVE'S MOTION SEEKS TO REOPEN DISCOVERY FOR IMPROPER PURPOSES OF AVOIDING THE COURT'S PRIOR RULINGS

Although all of the "good cause" factors weigh against allowing Intuitive to reopen discovery, most fundamentally Intuitive has failed to show that the discovery will lead to relevant evidence. Rather, Intuitive's motion attempts a runaround on this Court's rulings, and a do-over on its counsel's deliberate choices and decisions made during fact and expert discovery.  Thus, this factor will be addressed first.

A.   The Discovery Sought By Intuitive Is Not a Search for Relevant Evidence - It is A Means to Resurrect Failed Legal Strategies and to Create New Defenses On the Eve of Trial

1.   <u>Non-Party Sales of FDA-Cleared Reset S/Si EndoWrists</u>

Intuitive seeks to reopen discovery for the purpose of, *inter alia*, obtaining further document and deposition discovery relating to non-party marketing and general sales (if any) of FDA-cleared remanufactured S/Si EndoWrists during the period after the close of fact discovery, i.e. after November 10, 2022. Intuitive bases this request on the grant to Iconocare of FDA clearance for **a single model** <u>*of an Si EndoWrist*</u> in September of 2022, and its own subsequent announcement – ███████████████████████████████████████████████████████

████████████████ – "that the purchase of FDA-cleared remanufactured EndoWrists, like Iconocare's, does not violate Intuitive's contracts." Dkt. 243-1 at p. 1. Intuitive also notes that "as recently as April of this year, third-party companies have marketed their ability to sell FDA-cleared reset EndoWrists." *Id.* According to Intuitive, these sales activities are relevant because "how hospitals behaved in the actual world after Intuitive announced that buying FDA-cleared remanufactured EndoWrists does not violate its contracts is directly relevant to the assumptions made by SIS's damages expert, Richard Bero, about the demand for reset EndoWrists that would have existed in a 'but-for' world without Intuitive's contractual limitations." *Id.* at pp. 1-2.

As discussed *supra*, Intuitive had no interest in "how hospitals behaved in the actual world" during discovery, when there were still thousands of Si EndoWrists available to be repaired and hospitals were in fact using the repair services of SIS and others. Only after causing years of delay by its threats to hospitals, only after having deputized itself as a private FDA to ██████████ ██████████████████████████████████, only when it knew the only devices then cleared were for a single Si instrument, and only when it knew that Si robots had been almost entirely removed from the market, did Intuitive declare that it would not enforce its agreements against use of 510(k) cleared remanufactured EndoWrists.

This artificial "market," created solely through Intuitive's further leverage of its monopoly power, has no bearing on the but-for world if Intuitive had not engaged in anti-competitive conduct, *i.e.*, without Intuitive shutting down all EndoWrist repair programs in 2019 and 2020

9

based on its threats to shut down hospital robot programs entirely. SIS's damages expert, Mr. Richard Bero, quantified the amount of lost profit damages that SIS would have earned based on the lost SIS repair units in the "but-for" world in which Intuitive's hospital contracts that expressly prevent hospitals from using third parties such as SIS to repair or otherwise service hospital-owned EndoWrists are not in place. Dkt. 243-2 at pp. 1, 41. Because Intuitive's artificial market is completely unmoored from what a market would look like without Intuitive's anticompetitive conduct, allowing such evidence to be considered would not only have little relevance, but would be unfairly prejudicial to SIS.

Intuitive's attempt to manipulate but-for market conditions is evidenced by its statement that "SIS claims it was excluded from ***selling*** such modified EndoWrists [with reset use counters] because of limitations in Intuitive's contracts with its customers." Dkt. 243-1 at p. 1 (emphasis added)). SIS has always been in the business of repair, in which it does not take title to the EndoWrist and returns the repaired EndoWrists to hospitals. These were the market conditions in 2019 and 2020, when SIS achieved fast success and monumental demand for (then still prevalent) Si EndoWrist repairs. "Sales" activities under a 510(k) regime, with a single cleared Si instrument and two and a half more years of Intuitive's Si end-of-life phaseout, are simply not relevant to the activities contemplated by SIS claims or the circumstances discussed in Mr. Bero's expert damages report.

If anything, Intuitive's further attempt to leverage its monopoly power into a role as a private FDA – even after this Court's rulings that its basis for doing so is unfounded – is further evidence of anticompetitive conduct in violation of Sections 1 and 2 of the Sherman Act. With EndoWrist profits of over a hundred million dollars a month, Intuitive can afford to ███████ ███████████████████████████████. With absolute market power over hospitals, Intuitive can unilaterally announce – contrary to the language of its agreements with hospitals – that FDA clearances that FDA has not itself required are necessary for hospitals to use serviced EndoWrists.

And this Court has already rejected Intuitive's self-appointed role as a private FDA. In its cross-motion for summary judgment, Intuitive argued that SIS had not suffered any antitrust injury. Specifically, Intuitive contended that it was SIS's failure to first obtain Section 510(k)

10

clearance from the FDA that restrained SIS's aftermarket EndoWrist servicing and repair business, and any conduct by Intuitive thus did not proximately cause antitrust injury to SIS. Dkt. 204 at pp. 15-16. This Court ruled that Intuitive is not permitted "to seek private enforcement of the FDCA" which is the issue upon which Intuitive's argument against injury causation rests. Dkt. 204 at p. 16. Intuitive's effort to seek discovery about third-party FDA-cleared, remanufactured and reset S/Si EndoWrists is nothing more than a bid to avoid the impact of the Court's rulings and interject irrelevant evidence at trial that will confuse the jury about whether the lack of FDA-clearance caused SIS's injury rather than Intuitive's anticompetitive conduct. Again, Intuitive's arguments are improper and cannot establish legitimate good cause for reopening discovery.

Furthermore, the admissibility of Mr. Bero's antitrust damages calculations in the "but-for" world has already been ruled on by the Court. In its *Daubert* motion, Intuitive moved to exclude all of Bero's damages estimates based upon alleged unreliable data and alleged unreliable methodologies. The Court rejected Intuitive's challenge to Bero's projected profit figures observing that "Intuitive's arguments misdirect and obfuscate." Dkt. 221 at p. 21. Intuitive further accused Bero of ignoring the impact of competition in the "but-for" world from other competitors like Restore and Rebotix. Again, the Court rejected Intuitive's argument. Dkt. 221 at p. 22. With regard to Mr. Bero, the Court ruled: "In sum, Bero's principles and methods used in constructing his lost profits damages models are reliable and are reliably applied to the facts of this case." Dkt. 221 at p. 26.

The Court should reject Intuitive's attempt to use the present Motion for reopening discovery to generate a new record of what competition looks like in the actual world long after Intuitive's anticompetitive conduct shut down SIS's EndoWrist repair business in 2019 and 2020. Not only is such evidence irrelevant to consideration of what SIS's lost profits damages would have been in the "but-for" world absent Intuitive's anticompetitive conduct of threatening to shut down hospital robot programs, such evidence would likely confuse the jury regarding the legally correct model for calculating SIS's antitrust damages in this case.

2.     Progress of Non-Parties Toward Resetting X/Xi EndoWrists

Intuitive also seeks to reopen discovery for the purpose of obtaining from non-parties further document and deposition discovery relating to "the progress, if any, that third-party companies have made in the past two years towards developing the technology necessary to reset EndoWrists that are compatible with the newer X/Xi model da Vinci surgical robots" Dkt. 243-1 at p. 2.

Intuitive's desire to investigate the present status of third-party efforts to reverse engineer and break the X/Xi EndoWrist encryption is nothing more than an attempt to generate a rebuttal case that Intuitive deliberately chose not to proffer through its own expert. Supported by record evidence from Rebotix, Restore, and Intuitive, SIS's reverse engineering expert, Kurt Humphrey, provided expert opinion testimony about, *inter alia*, the feasibility of breaking X/Xi encryption and the hypothetical timeframe for when a fully developed process to successfully reset an X/Xi EndoWrist use counter could have been accomplished had the appropriate funding and resources been available, "but-for" Intuitive's anticompetitive conduct. Dkt. 221 at 7:22-9:12. As discussed *supra*, Intuitive opted for a "head in the sand" strategy in which its expert failed to even look at or consider X/Xi encryption.

Intuitive lost its *Daubert* Motions against Mr. Humphrey and Mr. Bero on the timing of X/Xi decryption. Dkt. 221 at pp. 8-9 and 22. Noting that "Intuitive takes [Mr. Humphrey's] dates out of context," the Court acknowledged that "Humphrey refers to 'at least as early as 2019' to describe a possible time frame to achieve X/Xi use counter reset consistent with being compressed through the use of additional computing power and financial resources." *Id.* at pp. 8-9. "Bero cites these dates as conservative estimates for when SIS would have been able to reset the X/Xi Endo Wrist use counters in the context of various damages scenarios that he considered, if the reverse engineering efforts had begun at a time certain." *Id.* at p. 9. "Based on Restore's testimony along with the reverse engineering expertise of Humphrey, Bero had a reliable basis to include in his damages model the estimate that it would have been possible to repair X/Xi Endo Wrists either by January 1, 2021, or January 1, 2022, absent Intuitive's allegedly anti-competitive conduct." *Id.* at p. 25.

Having lost on its *Daubert* strategy, Intuitive has now devised a new approach in hopes of relitigating the X/Xi encryption feasibility and timing issues. Notwithstanding all the record evidence cited to support Mr. Bero's damages opinions and calculations, Intuitive seeks to reopen discovery claiming that "[w]hether any third party has actually developed that technology in the past two years is relevant to evaluating the reasonableness of Bero's assumptions and thus is relevant to assessing the large damages that SIS is claiming related to X/Xi EndoWrists." Dkt. 243-1 at p. 2). The Court already addressed this contention in denying Intuitive's *Daubert* motion on Mr. Bero:

> Intuitive implies that Bero's model is flawed because "to date, no one has successfully developed a method to reset X/Xi Endo Wrists." Mot. Exclude Bero at 4. Intuitive ignores Bero's analysis of the factual record, which led him to conservatively conclude that X/Xi reset technology would have been developed and marketed by either January 1, 2021, or January 1, 2022, but-for Intuitive's alleged anticompetitive conduct. See, e.g., Bero Report at 31-32 (citing deposition testimony). Bero points out in his report that such successful real-world efforts were delayed by Intuitive's anti-competitive conduct. *Id.* at 30-32. Though Intuitive disagrees with the premise, Bero relies on record evidence and is sufficiently reliable.

Dkt. 221 at p. 22.

After ignoring this issue during fact and expert discovery, Intuitive apparently hopes to use the fruits of further third-party discovery about what has happened ***in view of its anticompetitive conduct*** to create a rebuttal to Humphrey's opinions and a new basis for challenging Mr. Bero's damages calculations. This is not the sort of "good cause" accepted by courts under Rule 16(b)(4) to justify reopening discovery, especially on the eve of trial, and particularly where Intuitive expressly declined to pursue this line of analysis during discovery.

          3.    <u>Further Document Production Regarding SIS's 2023-24 Financial Information And Business Activities Is Unnecessary</u>

Intuitive asserts that "the underlying financial data on which SIS's damages expert [Mr. Bero] relies are also out of date." Dkt. 243-1 at p. 5. SIS's position is that Mr. Bero has fully

13

complied with Fed. R. Civ. P. 26(a)(2)(B)(i) by providing written expert reports that contain a complete statement of all opinions he will express at trial and the basis and reasons for them. Intuitive has previously deposed Mr. Bero with regard to his reports and his opinions. Additionally, Intuitive previously submitted a *Daubert* motion seeking to exclude Mr. Bero from testifying at trial, which was denied by the Court.

Mr. Bero is not and will not be relying on any "updated versions" of the SIS financial information cited in his expert report. Additionally, there are no actual repair services provided by SIS relating to EndoWrists that occurred after the close of discovery and so, no relevant financial information exists for the post-discovery time frame. Consequently, Intuitive does not offer any compelling reason or the existence of good cause to reopen discovery during the final stages of preparation for trial. The financial information Intuitive seeks through reopening discovery is irrelevant to Mr. Bero's damages calculations and will not assist the jury to resolve the factual disputes related to the calculation of SIS's lost profits damages.

Intuitive also asserts that "[t]he record regarding SIS's efforts to compete in the alleged market in 2023 and 2024 is thus undeveloped". Dkt. 243-1 at p. 5. Having artificially limited ███████████ hospitals to sales pursuant to an issued 510(k) clearance, Intuitive has used its monopoly power to completely foreclose SIS sales in its standard repair business. Because only a single 510(k) clearance on a single Si instrument for an obsoleted Si system has been granted, SIS's efforts to engage in "sales" of such instruments is irrelevant, and if allowed at trial, would be highly prejudicial as completely divorced from the relevant but-for world.

**B.   Setting Aside Intuitive's Improper Motives - The Legal Standard to Establish Good Cause For Reopening Discovery Is Not Met By Intuitive's Motion**

As an initial matter, the additional document discovery Intuitive seeks is hardly "limited".[3]

---

[3] "Specifically, and for the reasons set out herein, Intuitive requests that the Court: (i) order SIS to produce updated financial statements and documents reflecting its sales to, and contracts with, hospital customers since the close of fact discovery; (ii) order SIS to produce documents relating to its efforts to compete to develop and/or sell reset EndoWrists since the close of fact discovery, including any efforts to partner with Restore, Rebotix, Iconocare, Encore Medical, or other third parties to do so; (iii) order SIS to produce a corporate representative to sit for a deposition regarding SIS's efforts to compete in the alleged market since the close of fact discovery; and (iv) grant

14

As for whether the additional deposition discovery is "limited", it is not even clear how many total depositions Intuitive seeks to take. Intuitive's Motion identifies five (5) depositions in footnote 1 and "up to five trial depositions" of unidentified non-parties. An additional 10 depositions cannot be fairly characterized as "limited" or "supplemental". Further, Intuitive does not suggest a proposed schedule nor even attempt to estimate how long it might take to complete the discovery it seeks. To the extent any of the depositions Intuitive seeks involve re-deposing non-party witnesses, SIS represents to the Court its understanding that those non-parties will vigorously contest any such duplicative depositions. Clearly then, Intuitive asks the Court to reopen discovery in order to conduct substantial document and deposition discovery, largely of non-parties, which will likely be highly contested and require a substantial amount of time to complete.

### 1.   The First Consideration -- Trial Of This Case Is Imminent

Intuitive's Motion is silent and does not even address this consideration. On June 7, 2024, the Court held a case management conference, set November 25, 2024 for the final Pretrial Conference, and January 6, 2025 as the date for jury selection and trial. Five (5) days later, the Court issued the "Schedule and Pretrial Order" in this matter setting deadlines and providing instructions for the parties to prepare for trial. The Court set October 28, 2024 as the deadline for the parties to file a jointly signed "Proposed Final Pretrial Order". Dk. 235 at p. 1. Clearly then, the month of October will be taken up largely by the parties' efforts to meet and confer about and to jointly prepare the Proposed Final Pretrial Order.

The Proposed Final Pretrial Order is due slightly more than one (1) month from the hearing date set for this Motion. The Final Pretrial Conference is slightly more than two (2) months after the hearing. And the jury trial is set to begin on January 6, 2025, only about three (3) months from when the Court hears Intuitive's motion to reopen discovery. In this context, the trial is certainly "imminent" and this consideration favors denying Intuitive's Motion. *See Brummett v. Martinez,*

---

Intuitive leave to serve subpoenas duces tecum on Restore, Rebotix, Iconocare, and Encore Medical regarding competition to develop and/or sell reset EndoWrists since the close of fact discovery." (Dkt. 243-1, p. iii at n.1).

No. 1:21-cv-00086-BAM (PC), 2024 WL 2208951 at *3 (E.D. Cal. May 16, 2024) (parties agreed that trial was imminent when only five (5) months from Court's ruling denying motion to reopen discovery); *MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.,* No. 5:18-cv-01096-RGK-JC, 2021 WL 6882328 at *2 (C.D. Cal. December 3, 2021) (trial considered imminent when only three months away).

### 2.   Second Consideration -- The Request Is Opposed

Intuitive acknowledges that SIS opposes its request to reopen discovery and this consideration supports denial of Intuitive's Motion. *See, e.g., Moriarty v. Am. Gen. Life Ins. Co.,* No.: 17-CV-1709-BTM-WVG, 2021 WL 6197289 at *10 (S.D. Cal. Dec. 31, 2021).

### 3.   Third Consideration -- SIS Would Be Prejudiced

Intuitive merely asserts that "the limited supplemental discovery that Intuitive seeks here would not impose an undue burden on SIS." Dkt. 243-1 at p. 8. The additional document discovery Intuitive seeks is not "limited." Further, an additional five to ten depositions cannot be fairly characterized as "limited" or "supplemental". Intuitive does not address how long it might take to complete the discovery it seeks or whether non-parties are likely to resist providing further discovery in this case. Obviously, obtaining extensive document discovery and then conducting an additional 10 depositions would be expected to consume substantial amounts of time, assuming such efforts were uncontested. Even if the Court ruled from the bench at the hearing on September 26, 2024, granting Intuitive's Motion, it's reasonable to anticipate that at least two or three months would be required to complete the discovery Intuitive seeks, and even more if the non-parties resist the discovery.

Intuitive's reliance on *Henderson v. Peterson*, No. C 07–2838 SBA PR, 2011 WL 441206 at *2 (N.D. Cal. Feb. 3, 2011) for the proposition that "any burden associated with discovery of this information is 'inherent in litigation'" (Dkt. 243-1 at p. 8) is misplaced. The *Henderson* case involved a plaintiff who was a state prisoner and who sought to take limited discovery from the defendants. Unlike this case, non-parties were not involved and the proposed discovery would not require changing the trial date. Further, the Court was not persuaded that the discovery imposed an unnecessary economic burden on state taxpayers because the defendants made

16

generalized and unsupported complaints regarding the discovery process, which the Court observed "could be made in *any* civil action. *Id*. at *2.

SIS will suffer very real and substantial prejudice in two ways. First, the financial burden of reopening discovery and conducting additional document production and depositions is considerable and thus prejudicial to SIS. *See In re Packaged Seafood Prods. Antitrust Litig*, 15md2670-DMS-MDD, MDL No. 2670, 2023 WL 1090983 at *5-6 (S.D. Cal. Jan. 26, 2023) (exposure to significant financial expenses due to reopening discovery found to be prejudicial). As SIS's counsel advised the Court at the Case Management Conference: "My client [SIS] is definitely definitely a short David against Goliath, and reopening discovery in a broad way for the next eight months will bury us. * * * [R]eopening discovery would be a huge blow to my client financially, your Honor. * * * [T]heir [Intuitive's] team and the resources are -- have buried us and will continue to bury us if we have significant discovery. * * * [R]edeposing a bunch of witnesses, there were so many depositions in this case. It almost broke my client the first time around. I'm not sure we can do it again." Dkt. 244-14 at 25:25 - 26:25.

Second, SIS is prejudiced if Intuitive's untimely motion is granted because such an outcome would be effectively ignoring the Court's Scheduling Order that governed this case and disregarding the scheduled and long-expired deadlines for completion of discovery. SIS has operated under and relied upon those deadlines. Eviscerating the Scheduling Order will prejudice SIS's right to timely and orderly dispose of this case after over three (3) years. Additionally, whether calculated or not, whether consistent with Intuitive's actual motive or not, granting Intuitive's motion would *de facto* nullify the Court's June 11, 2024 Schedule and Pretrial Order (Dkt. 235), resulting in the dates the Court set for the Final Pretrial Conference, and the beginning of the jury trial in this case, being inevitably continued.

This case has been active for over three (3) years and fact discovery has been closed for 18 months. Plaintiff SIS has successfully defended against Intuitive's motion for summary judgment and Intuitive's *Daubert* motions seeking to exclude every one of SIS's experts from testifying at trial. SIS is ready to proceed to trial. Vacating these scheduled dates for completing pretrial preparations and beginning the jury trial, combined with the anticipated, but as yet unknown

17

extensive delay in SIS getting its case to trial, constitutes serious prejudice. *See Brummett,* 2024 WL 2208951 at *4 (Court finds that Defendant will be prejudiced if discovery is reopened, both due to the likely delay of trial and the unlikelihood that the requested discovery will lead to relevant evidence).

With regard to the potential prejudice to Intuitive if the Motion is denied, Intuitive offers only the broad, generalized contention that without the discovery it seeks "Intuitive will not be able to fully or fairly defend itself at trial." Dkt. 243-1 at p. 9. It never attempts to explain how sales of a single Si EndoWrist well into the obsolescence program that Intuitive initiated are necessary to defend itself at trial, nor why being bound to its previous "ignore X/Xi decryption" strategy will prevent it from fully or fairly defending itself.  In sum, Intuitive provides no detailed discussion of exactly how not being able to reopen discovery and investigate the various subject matters identified in this Motion will prevent Intuitive from being able to fully or fairly defend itself at trial. Rather, Intuitive conceals that its requests are in fact efforts to "do over" of strategic decisions made during fact and expert discovery, motivated by the Court's rejection of Intuitive's FDA-related strategy at summary judgment and its largely failed "Daubert every SIS expert" gambit. The prejudice consideration weighs in favor of SIS and supports not permitting the reopening of discovery.

4.   <u>Fourth Consideration -- Intuitive's Lack of Sufficient Diligence & Fifth Consideration -- Foreseeability of the Need for Additional Discovery</u>

Citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, Master Case No 3:07-cv-05944-SC, MDL No 1917, 2015 WL 13756260, at *4–5 (N.D. Cal. July 31, 2015) and *Bullets2Bandages, LLC v. Caliber Corp.*, No.: 18cv669-GPC(MSB), 2019 WL 6700376, at *3 (S.D. Cal. Dec. 9, 2019), Intuitive asserts that it "could not have taken discovery on these new competitive developments during the fact discovery period." Dkt 243-1 at p. 8. The circumstances in the *Cathode Ray* case and the *Bullets2Bandages* case are distinguishable from the situation presented by Intuitive's motion. In *Cathode Ray*, the Court observed that there was no evidence that the defendants knew of the existence of an executed DAP settlement agreement before the discovery cutoff. *Id.* at *4. Likewise, in *Bullets2Bandages*, the Court noted that the "AP Agreement was

executed weeks after the close of fact discovery, and Caliber could not have requested discovery about the AP Agreement within the deadlines set by the Court." *Bullets2Bandages*, at *3. Intuitive, however, chose not to investigate hospital demand or X/Xi decryption during discovery. The initial 510(k) clearance for a single Si EndoWrist occurred during fact discovery, and its pronouncement of March 2023 is merely a voluntary furtherance of its anticompetitive conduct to create an artificial market long after Si demand had withered due to Intuitive's own end of life phase out program for that generation of da Vinci robots and associated EndoWrists. Moreover, Intuitive's own encryption expert never took the time to even "think about" X/Xi encryption.

As such, the record demonstrates that Intuitive certainly could have foreseen the need to conduct the additional discovery it now seeks, long before bringing this untimely motion to reopen discovery. It has been over a year and a half since its FDA pronouncement. It knew of Iconocare's Si instrument clearance and the progress of X/Xi workaround developments in fall of 2022, during fact discovery. Intuitive's decision to raise these issues roughly 635 days after the close of fact discovery equates more to clear carelessness or a deliberate choice, which is not compatible with a finding of diligence. *See e.g.*, *Beauregard v. Sampson,* No. 2:20-cv-02123-KJD-DJA, 2023 WL 8877806 (D. Nev. Dec. 22, 2023), *see also, Brummett,* 2024 WL 2208951 at *4 (Court found lack of diligence based on fact that Plaintiff was aware of the existence of the evidence being sought, should have foreseen the need to make the request before trial was imminent, had many months in which to file such a request and Plaintiff did not do so). Intuitive's lack of diligence, therefore, defeats its attempt to establish "good cause" under Rule 16(b). *See MAG Aerospace,* 2021 WL 6882328, at *2 (lack of sufficient diligence when party seeking to reopen discovery delayed six (6) months before bringing its motion); *see also Merrit v. Cogley*, 2024 WL 2819243 at *4 (S.D. Cal. Jun. 3, 2024)(failure of diligence found where movant had waited over a month after close of fact discovery to request relief from the Court); *Pittmon v. CACI International, Inc.*, No. 2:21-cv-02044-DOC-SSC, 2024 WL 3468812 at *4 (C.D. Cal. July 10, 2024).

In an apparent attempt to show recent events and diligence, Intuitive tells the Court that "[w]ithin the last four months, another third party company, Encore Medical Device Repair (the

exclusive distributor for Iconocare's products), has announced that it 'is the only company that can sell FDA cleared remanufactured robotic instruments.'" Dkt. 243-1 at 4:21-24. Intuitive fails to inform the court that it has known of Encore Medical's relationship as an exclusive distributor for Rebotix / Iconocare since at least early 2023. As stated in the January 18, 2023 report of an Intuitive expert, Dr. Loren Smith:

> In addition, I understand that Iconocare has announced that Encore Medical Device Repair will be their exclusive distributor. PRWeb, "FDA Clearance to Remanufacture Da Vinci Robotic Instruments Could Present Hospitals with Substantial Savings," November 3, 2022, accessed on January 17, 2023, https://www.prweb.com/releases/fda_clearance_to_remanufacture_da_vinci_roboti c_instruments_could_present_hospitals_with_substantial_savings/prweb18980465. htm.

Dkt. 244-15 at p. 20, fn. 64.

Waiting over a year and a half on this issue clearly doesn't satisfy the diligence standard, whether or not Encore has since issued additional press releases. *See MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.,* 2021 WL 6882328 at *2 (C.D. Cal. December 3, 2021) (issues were foreseeable during the original discovery period and the fact that new discovery might lead to some relevant evidence does not outweigh other factors).

In sum, Intuitive was aware of all of these purported new issues well before the parties submitted their Updated Joint CMS filed with the Court on May 31, 2023, six (6) months after the close of fact discovery. Intuitive's deliberate decision not to seek reopening of discovery is reflected in that filing: "Fact and expert discovery has been completed in this case. There are no pending or otherwise unresolved discovery disputes." Dkt. 180 at p. 5, ¶ 8.

Intuitive argues that "discovery should be permitted on "relevant scientific developments" after the close of discovery where, as here, they are material to the defense. *City of Pomona*, 866 F.3d at 1066–67. That case, however, is inapposite because the problem of delay and any issue of diligence was not caused by the party seeking to reopen discovery. "Any potential delay, however, was brought about by the combination of an expeditious trial date and the amount

20

1  of time Pomona's motion sat undecided." *Id.* at 1066. Additionally, the proffered updates related

2  to current state of knowledge in the scientific community that were material to the criticisms

3  directed to Pomona's expert witness testimony, which is not an issue having anything to do with

4  the justifications proffered for Intuitive's motion.

5          The considerations of foreseeability and diligence do not favor Intuitive and

6  strongly militate against granting Intuitive's request to reopen discovery.

7          5.      <u>Sixth Consideration -- The Likelihood That The Discovery Will or Will Not
            Lead to Relevant Evidence</u>

8

9          As addressed in detail in Section I.A, *supra*, not only is the requested discovery not

10  relevant, but is in fact highly prejudicial, as it is based on Intuitive's continued anticompetitive

11  actions to establish an artificial market based on a single Si EndoWrist after Si discontinuance by

12  Intuitive, as well as its own efforts to dry up funding for X/Xi workaround efforts and ███████

13  ████████████████████████████████████████████. Accordingly, this consideration

14  weighs strongly in favor of denying Intuitive's Motion.

15  II.     THE COURT SHOULD DENY INTUITIVE'S REQUEST TO REOPEN DISCOVERY
            TO TAKE "TRIAL DEPOSITIONS"

16

17          Intuitive requests that the Court reopen discovery so Intuitive can create "trial" deposition

18  testimony from up to five (5) non-party witnesses who cannot be compelled to testify live at trial.

19  Dkt. 243-1 at p. 2. Intuitive does not identify who these non-party witnesses are, so it may be that

20  some or all of these non-parties have already been deposed in this case. If Intuitive has already

21  deposed these non-parties, it appears to justify reopening discovery in that case arguing that such

22  "depositions were taken for discovery purposes and even in different cases, not for purposes of

23  preserving trial testimony in this case, and thus do not present testimony in a clear manner that

24  will be easy for the jury to digest." *Id.*

25          It is not the practice of the Courts in the Northern District of California to allow parties to

26  conduct depositions after the close of discovery for any purpose. *Kalitta Air, L.L.C. v. Central*

27  *Texas Airborne Systems, Inc.,* No. C 96-2494 CW, C 97-0378 CW, 2004 WL 7339839 at *1 (N.D.

28  Cal. 2004). The Court in *Kalitta* recognized "the very realistic possibility that parties would use

1    such a rule to abuse the discovery process." *Id.* (citations omitted).

2          It is not apparent from the Motion whether Intuitive's unidentified "trial deposition"

3    deponents are witnesses who have already been deposed. If not, Intuitive could have taken the

4    depositions of the non-party witnesses who cannot be compelled to testify live at trial during the

5    scheduled discovery period "for purposes of preserving trial testimony", but Intuitive did not do

6    so. Moreover, if Intuitive did not depose the unidentified "trial deposition" deponents, then clearly

7    the primary purpose is the discovery of additional information, rather than the mere preservation

8    for trial of information of which Intuitive is already aware.

9          Intuitive conducted deposition discovery in the manner it saw fit and cannot now, years

10   after those depositions were taken, ask for another "bite at the apple" because Intuitive believes

11   its second effort might produce testimony in a clearer manner that will be easier for the jury to

12   digest.  Additionally, Intuitive was aware during the discovery period that Iconocare was seeking

13   FDA clearance to sell a remanufactured Si EndoWrist. Intuitive could have asked deponents about

14   the impact, if any, that FDA-cleared Si EndoWrists for sale might have had on hospital customers

15   with respect to their continued willingness to use the EndoWrist repair service offered by SIS.

16         "[T]he overwhelming majority of district courts within the Ninth Circuit—including the

17   District of Idaho—have held that trial preservation depositions are subject to the limits and time

18   restrictions within the Federal Rules." *Ashby v. Mortimer,* 337 F.R.D. 652, 655 (D. Idaho 2020)

19   (trial preservation depositions requested less than two months before trial was set to begin, and

20   over a year and one half after the discovery period closed). Intuitive's request to reopen discovery

21   to take trial preservation depositions effectively eviscerates the discovery deadlines in the Court's

22   Scheduling Order. A request to take a deposition after the discovery cut-off period should not be

23   granted absent exceptional circumstances or good cause. *Integra Lifesciences I, Ltd. v. Merck*

24   *KGaA*, 190 F.R.D. 556, 560 (S.D. Cal. 1999).

25         The "trial depositions" Intuitive seeks are not warranted and are not supported by the

26   required "good cause" showing needed to justify reopening discovery. Deposing a witness a

27   second time for the sole purpose of "organizing" and "streamlining" testimony that has already

28   been given does not justify reopening discovery. *See United Food Group, LLC v. Cargill, Inc.,*

1  No. CV 11-7752 SS, 2014 WL 12925562 at *2 (C.D. Cal. Oct. 27, 2024).

2  <u>**CONCLUSION**</u>

3  For the foregoing reasons, Plaintiff SIS respectfully requests that the Court deny Intuitive's

4  motion to reopen discovery.

5

6  Dated: August 26, 2024                    **McCAULLEY LAW GROUP LLC**

   By: /s/ *Joshua Van Hoven*
7                                            JOSHUA V. VAN HOVEN

8                                            E-Mail: josh@mccaulleylawgroup.com
                                             3001 Bishop Dr., Suite 300
9                                            San Ramon, California 94583
                                             Telephone: 925.302.5941
10

11                                           RICHARD T. MCCAULLEY (*pro hac vice*)
                                             E-Mail: richard@mccaulleylawgroup.com
                                             180 N. Wabash Avenue, Suite 601
12                                           Chicago, Illinois 60601
                                             Telephone: 312.330.8105
13

14                                           *Attorneys for* SURGICAL INSTRUMENT
                                             SERVICE COMPANY, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff SIS's Brief Opposing Reopening Discovery
3:21-cv-03496-AMO