# VAN HOVEN DECL.
# ISO OPPOSITION TO INTUITIVE'S
# MOTION TO REOPEN DISCOVERY

# EXHIBIT 4

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3
 4   IN RE: DA VINCI SURGICAL ROBOT  ) Lead Case No.:
     ANTITRUST LITIGATION            ) 3:21-cv-03825-VC
 5   _____ )
                                     )
 6   THIS DOCUMENT RELATES TO:       )
     ALL ACTIONS                     )
 7                                   )
     _____ )
 8   SURGICAL INSTRUMENT SERVICE     ) Case No.
     COMPANY, INC.,                  ) 3:21-CV-03496-VC
 9                                   )
             Plaintiff,             )
10                                   )
             vs.                     )
11                                   )
     INTUITIVE SURGICAL, INC.,       )
12                                   )
             Defendant.             )
13   _____ )
14
15      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
16             UNDER THE PROTECTIVE ORDER
17        VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED
18              DEPOSITION OF DAN JONES
19
20            Thursday, November 10, 2022
21     Remotely Testifying from Alexandria, Virginia
22
23   Stenographically Reported By:
24   Hanna Kim, CLR, CSR No. 13083
25   Job No. 5564633
```

Page 2

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3
 4   IN RE: DA VINCI SURGICAL ROBOT  ) Lead Case No.:
     ANTITRUST LITIGATION            ) 3:21-cv-03825-VC
 5   _____ )
                                     )
 6   THIS DOCUMENT RELATES TO:       )
     ALL ACTIONS                     )
 7                                   )
     _____ )
 8   SURGICAL INSTRUMENT SERVICE     ) Case No.
     COMPANY, INC.,                  ) 3:21-CV-03496-VC
 9                                   )
              Plaintiff,             )
10                                   )
              vs.                    )
11                                   )
     INTUITIVE SURGICAL, INC.,       )
12                                   )
              Defendant.             )
13   _____ )
14
15            HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
16   UNDER THE PROTECTIVE ORDER, virtual videoconference
17   video-recorded deposition of DAN JONES remotely
18   testifying from Alexandria, Virginia, on Thursday,
19   November 10 beginning at 12:06 p.m., EST, and
20   concluding at 2:36 p.m., pursuant to the
21   stipulations of counsel thereof, before Hanna Kim,
22   CLR, Certified Shorthand Reporter, No. 13083.
23
24
25
```

1      REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:

2

3    For Plaintiff Surgical Instrument Service Company,

4    Inc:

5              HALEY GUILIANO

6              BY:  JOSHUA VAN HOVEN, ESQ.

7              111 North Market Street, Suite 900

8              San Jose, California 95113

9              669.213.1071

10             joshua.vanhoven@hglaw.com

11

12

13   For Hospital Plaintiffs:

14             HAUSFELD LLC

15             BY:  SAMUEL MAIDA, ESQ.

16             600 Montgomery Street, Suite 3200

17             San Francisco, California 94111

18             415.633.1908

19             smaida@hausfeld.com

20

21

22

23

24

25

```
                                        Page 4
 1          REMOTE APPEARANCES OF COUNSEL:  (CONT'D.)

 2

 3    For Hospital Plaintiffs and the Proposed Class:

 4            BONI, ZACK & SNYDER LLC

 5            BY:  JOSHUA D. SNYDER, ESQ.

 6            15 St. Asaphs Road

 7            Bala Cynwyd, Pennsylvania 19004

 8            610.822.0203

 9            jsnyder@bonizack.com

10

11

12    For Defendant Intuitive Surgical:

13            COVINGTON & BURLING LLP

14            BY:  KATHRYN CAHOY, ESQ.

15            3000 El Camino Real

16            5 Palo Alto Square, 10th Floor

17            Palo Alto, California 94306-2112

18            kcahoy@cov.com

19

20

21    Also Present:

22            MICHAEL BARANKOVICH, Videographer

23

24

25
```

1   object to my question.  But you will still need to

2   answer unless she instructs you not to do so.

3           Do you understand that aspect?

4       A.   Yes.

5       Q.   Okay.  I don't plan on taking too much of

6   your time today, but if you need a break, let me

7   know.  All I ask is that if there is a question

8   pending, you please finish your answer before taking

9   a break.

10          Sounds good?

11      A.   Yes.

12      Q.   Do you work at Intuitive?

13          (Interruption in audio/video.)

14          THE COURT REPORTER:  I'm sorry.  Your

15  audio cut out.

16  BY MR. MAIDA:

17      Q.   Do you work at Intuitive?

18      A.   Yes.

19      Q.   How long have you worked at Intuitive?

20      A.   Fourteen and a half years.

21      Q.   What's your current position?

22      A.   Director of external affairs.

23      Q.   How long have you been in that position?

24      A.   Twelve years, 13 years.

25      Q.   What are your responsibilities in your

1              electronically.)

2         A.    I've clicked on it.

3         Q.    Okay.  And take a look, let me know when

4    you're ready to discuss this document.

5         A.    (Witness reviews document).

6              Okay.

7         Q.    What does this document appear to be?

8         A.    It is a similar letter to the previous one

9    we looked at.

10        Q.    And -- and this one's to Banner Health?

11        A.    Banner Health in Phoenix, Arizona.

12        Q.    Are you familiar with Banner Health?

13        A.    I think it's a pretty well known hospital

14   system in the Phoenix area.  I don't know if it's

15   part of a larger organization.  I don't know much

16   about the account.

17        Q.    Would -- would it surprise you to hear

18   that Banner Health has over 40 Intuitive robots?

19        A.    No.

20        Q.    About how much does an Intuitive system

21   cost on its initial purchase?

22        A.    It can vary anything -- I -- I haven't

23   looked at the approved price list recently.  But I

24   think we have systems that start around 700,000.

25   And systems that -- with various options can be

Page 89

1    around the $2 million per system level.  You --

2         Q.   And is --

3         A.   -- you can look up an average sales price

4    in our SEC reports.

5         Q.   Is -- is that purchase typically done as a

6    capital investment by the hospitals?

7              MS. CAHOY:  Objection to form.  Outside

8    the scope.

9              THE WITNESS:  As -- as opposed to what?

10   BY MR. VAN HOVEN:

11        Q.   As opposed to a -- a monthly rental.

12             MS. CAHOY:  Objection to form.

13             THE WITNESS:  I think --

14             MS. CAHOY:  Outside the scope.

15             THE WITNESS:  I think we report quarterly

16   the number of -- or proportion of our system deals

17   that are leases or are outright acquisitions,

18   purchases by the hospital.  If you want to -- if you

19   want to divide the world into the hospital buying it

20   up front or paying lease agreements, those are the

21   two main arrangements.

22   BY MR. VAN HOVEN:

23        Q.   I'd like to go to the section of your

24   contract with Intuitive, within the Banner letter.

25        A.   Yes.

Page 92

1  note that the -- am I correct that the sales

2  agreement and that ULSA are collectively referred to

3  as "the Agreement" in this letter?

4       A.   Yeah, it looks like there should be an

5  open quote, and there's one missing.  But it says,

6  "Each as amended (collectively, 'the Agreement')."

7  And there's a footnote on it as well.

8            Oh, okay.  That's standard legal.  Yes,

9  the footnote goes further to, I think, imply that

10  those two are collectively called "the Agreement."

11       Q.   And the -- I -- I see that there's a

12  double collectively, but almost -- the -- so that --

13  and capital A "Agreement" is referring to the

14  agreement -- to those two agreements together; is

15  that right?

16       A.   Yes.

17       Q.   If we go to the second bullet point, could

18  you take a look at that and let me know when you're

19  ready to discuss it.

20       A.   Okay.

21       Q.   It concludes with a statement that

22  "Intuitive may terminate the Agreement immediately

23  upon written notice, and any warranties applicable

24  to the System will become void."

25            Do you see that?

1        A.    Yes.

2        Q.    I'd -- I'd like to split that up into kind

3     of two portions.

4              What do you understand "Intuitive may

5     terminate the Agreement immediately upon written

6     notice" to mean?

7              MS. CAHOY:   Objection to form.   And I

8     would instruct the witness not to answer to the

9     extent it would reveal privileged information.

10             THE WITNESS:   I'm not a lawyer.   I

11    think -- and so I don't know if there's a -- a

12    period before the other party to -- to, you know,

13    dispute, but it -- it's -- I think it says the

14    arrangement that's established by the agreements

15    would cease.

16    BY MR. VAN HOVEN:

17        Q.    That --

18        A.    Are we -- are we asking what terminate

19    means, or -- I don't --

20        Q.    Sure.

21             Yeah, I -- what's it mean to terminate the

22    agreement?

23        A.    I think that it's no longer binding for

24    the two parties to fulfill their obligations.

25        Q.    And so, Intuitive would no longer have to

1   fulfill any of its obligation with respect to

2   Banner's 40 plus robots?

3               MS. CAHOY:  Objection to form.  Outside

4   the scope.

5               THE WITNESS:  Again, I don't know if the

6   agreements cover all 40 or the specific system.  I

7   don't know that case.

8   BY MR. VAN HOVEN:

9        Q.   But the termination of the agreement is

10  with respect to systems; right?

11       A.   Systems --

12              MS. CAHOY:  Objection to form.  Outside

13  the scope.

14              THE WITNESS:  I don't know if it is plural

15  systems in this case.  I don't know if it was one

16  system or more systems that were being covered by

17  those agreements.

18  BY MR. VAN HOVEN:

19       Q.   Right.

20              So -- but whether it's one or more

21  systems, the agreement is the agreement is for the

22  system; right?

23       A.   I don't know.  I was just saying I didn't

24  know whether it applied to plural systems.

25       Q.   But you do know that the agreement