Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

William B. Michael (*pro hac vice*)
Crystal L. Parker (*pro hac vice*)
Daniel A. Crane (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
Email: jhill@paulweiss.com

*Attorneys for Defendant Intuitive Surgical, Inc.*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>*Defendant*. | Case No. 3:21-cv-03496-AMO<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR LIMITED SUPPLEMENTAL DISCOVERY**<br><br>Date:  September 26, 2024<br>Time:  2:00 p.m.<br>Courtroom:  10<br><br>The Honorable Araceli Martínez-Olguín |

# **TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................2

I.      THE COURT SHOULD PERMIT LIMITED SUPPLEMENTAL DISCOVERY
        OF FACTS POST-DATING THE CLOSE OF DISCOVERY .........................................2

        A.      Evidence Relating to Competition in the Alleged Market After the Close
                of Discovery Is Relevant ...................................................................................3

        B.      Evidence of SIS's Financial Performance After the Close of Fact
                Discovery Is Relevant ........................................................................................7

        C.      Evidence Relating to the Development of X/Xi Reset Technology After
                the Close of Fact Discovery Is Relevant............................................................9

        D.      The Remaining Rule 16 Factors Weigh in Favor of Allowing Limited
                Supplemental Discovery ..................................................................................10

II.     THE COURT SHOULD ALLOW LIMITED TRIAL DEPOSITIONS...........................14

CONCLUSION...........................................................................................................................15

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Apple, Inc.* v. *Samsung Elecs. Co.*,
    2013 WL 12324184 (C.D. Cal. Jan. 3, 2013) ........................................................................13

6

7

*City of Pomona* v. *SQM North Am. Corp*,
    866 F.3d 1060 (9th Cir. 2017) ..................................................................................10, 12

8

*Geneva Pharms. Tech. Corp.* v. *Barr Labs., Inc.*,
    2005 WL 2132438 (S.D.N.Y. Sept. 6, 2005) ............................................................3

9

10

*MAG Aerospace Indus., LLC* v. *Precise Aerospace Mfg., Inc.*,
    2021 WL 6882328 (C.D. Cal. December 3, 2021) ....................................................11

11

*Moriarty* v. *Am. Gen. Life Ins. Co.*,
    2021 WL 6197289 (S.D. Cal. Dec. 31, 2021) ............................................................11

12

13

*In re Packaged Seafood Prods. Antitrust Litig*,
    2023 WL 1090983 (S.D. Cal. Jan. 26, 2023) ............................................................12

14

15

*Pittmon* v. *CACI Int'l, Inc.*,
    2024 WL 3468812 (C.D. Cal. July 10, 2024) ............................................................11

16

*Verdandi VII, Inc.* v. *Accelerant Specialty Ins. Co.*,
    2024 WL 239093 (S.D. Cal. Jan. 22, 2024) ..............................................................3

17

18

*Werbicky* v. *Green Tree Servicing, LLC*,
    2014 WL 5470466 (D. Nev. Oct. 27, 2014) ..............................................................3

19

**Other Authorities**

20

Fed. R. Civ. P. 16 ....................................................................................................................3, 10

21

Fed. R. Civ. P. 26 ..................................................................................................................12, 13

22

23

24

25

26

27

28

Contrary to SIS's opposition, Intuitive is not seeking to "reopen" discovery or "relitigate" the Court's summary judgment and *Daubert* decisions.  Rather, Intuitive seeks only limited supplemental discovery about developments in the alleged market occurring *after* fact discovery closed in November 2022.  Such developments bear directly on disputed issues regarding SIS's theories of liability and damages as well as on the credibility of its experts— issues that the Court did not decide at summary judgment, and left for the jury to decide at trial.

SIS's whole case is premised on the idea that but for Intuitive's contract provisions restricting the use of unauthorized third-party devices, SIS would have made hundreds of millions of dollars providing modified EndoWrists to hospitals.  Yet, SIS wants to prevent Intuitive (and the Court and jury) from discovering what happened when a real-world competitor began offering modified EndoWrists with FDA clearance and Intuitive clarified publicly that it would not treat such devices as unauthorized under its contracts.  SIS also wants to collect damages from Intuitive for supposedly excluding it from the market up through the present, yet refuses to provide discovery about its financial condition or what it has (and has not) done to try to compete for the past two years.  SIS cannot use the dearth of record evidence after 2022 as both sword and shield.  If SIS insists on arguing to the jury that it was excluded from competing after the close of fact discovery, and seeks damages for those years, then Intuitive is entitled to understand what steps SIS took (and did not take) to compete in 2023 and 2024.

Discovery about developments in the alleged market during those years is especially important in this case, because the period postdating the close of fact discovery provides a natural experiment that directly tests SIS's "but for" theory of injury and damages.  In March 2023, Intuitive clarified publicly that it would not apply its contracts in a way that would stop hospitals from using FDA-cleared EndoWrists with reset use counters.  And a new competitor, Iconocare (and its affiliate Encore Medical), has been promoting FDA-cleared remanufactured EndoWrists in the market for the past two years.  Whether hospital customers purchased such products is obviously relevant to testing SIS's "but for" theory that Intuitive's contracts stopped hospitals from using EndoWrists with reset use counters (as SIS claims).  If hospitals bought few or no such remanufactured EndoWrists (even though Intuitive made it clear

Reply in Support of Motion for Limited Supplemental Discovery
3:21-cv-03496-AMO

its contracts authorized such purchases), that supports Intuitive's contention that its contracts did not cause hospitals to decline to buy or SIS's business to fail.  If many such Endowrists were sold, that would tend to support SIS's case.  It may be telling that SIS does not want these facts to be discovered.

Facts relating to Iconocare's EndoWrist business are all the more relevant because SIS's own witnesses testified that SIS was actively engaged in a business partnership to market and sell Iconocare's remanufactured EndoWrists as of the end of 2022.  SIS cannot argue it was excluded from the alleged market since 2022 and simultaneously block all discovery into its plans to pursue a business partnership with Iconocare.  If that business foundered after 2022, or was abandoned for reasons independent of Intuitive's contracts and conduct, such facts are obviously relevant to SIS's claims and Intuitive's defenses.  SIS can contest such facts.  But it should not be allowed to block discovery about them in order to present the jury with a distorted and one-sided version of reality.  Likewise, SIS should not be allowed to argue—as its counsel has now done repeatedly—that its business is presently being "bled dry" by Intuitive—without updating the discovery about its financial condition to account for the past two years.

In short, the new information Intuitive seeks is highly relevant, could not have been discovered prior to the close of fact discovery, and is critical to Intuitive's ability to cross-examine SIS's witnesses and defend itself at trial.  The Court should grant Intuitive's motion.

**ARGUMENT**

**I.     THE COURT SHOULD PERMIT LIMITED SUPPLEMENTAL DISCOVERY OF FACTS POST-DATING THE CLOSE OF DISCOVERY**

Despite claiming that it was excluded from the alleged market for "repair" of EndoWrists in 2023 and 2024—and seeking nearly $150 million dollars in damages (after trebling) for those years, Dkt. 244-2 at Sch. 1—SIS now asks the Court to prohibit *any* discovery about its efforts (or lack thereof) to compete or about its financial performance during that time. SIS also refuses to stipulate to any facts on those subjects.  Mot. 7; Dkt. 244-13 (Intuitive's proposed stipulation).  There is no reason to pretend that the world stopped in November 2022 at the close of fact discovery, as SIS requests, and doing so will ensure that the jury is presented

with a materially incomplete record at trial.  The Rule 16 factors weigh in favor of allowing

supplemental discovery.[1]  Where relevant events occur in the alleged market after fact discovery,

"justice requires the parties have an opportunity to develop" those facts for trial.  *Geneva*

*Pharms. Tech. Corp.* v. *Barr Labs., Inc.*, 2005 WL 2132438, at *5 (S.D.N.Y. Sept. 6, 2005).

### A.    Evidence Relating to Competition in the Alleged Market After the Close of Discovery Is Relevant

Shortly before the close of fact discovery, a new competitor (Iconocare) obtained

the first 510(k) clearance from the FDA to market one type of EndoWrist instrument with reset

use counters.  Thereafter, Intuitive publicly clarified (after the close of fact discovery) that the

use of FDA-cleared EndoWrist instruments does not breach any customer's contract with

Intuitive or subject a customer to adverse action from Intuitive.  Mot. 4.  In other words, Intuitive

told its customers—indeed, told the whole world—that using FDA-cleared remanufactured

EndoWrists was not unauthorized under its contracts and that Intuitive would not take adverse

action against customers who purchased such instruments.  Whether SIS could have pursued a

strategy like Iconocare did, or could have partnered with Iconocare, after the close of fact

discovery—or whether it made a choice *not* to do so in favor of investing in this litigation or for

other reasons—is relevant to SIS's claim that it was excluded from the alleged market.  Those

facts also are relevant to the calculation of SIS's damages, the majority of which were allegedly

incurred after Iconocare obtained its clearance and Intuitive made its public announcement.  Mot.

11.  And the customer demand (or lack thereof) for FDA-cleared modified EndoWrists is

relevant to assessing the demand for SIS's instruments in the but-for world.  Mot. 9–10.

SIS argues that facts relating to third-party efforts to market reset EndoWrists

after the close of discovery are irrelevant because "Intuitive's anticompetitive conduct shut down

SIS's EndoWrist repair business in 2019 and 2020."  Opp. 11.  But that is at odds with the record

---

[1] SIS argues that the Court should apply an "excusable neglect" standard, citing *Branch Banking & Trust Co.* v. *DMSI, LLC*, 871 F.3d 751 (9th Cir. 2017) and *Werbicky* v. *Green Tree Servicing, LLC*, 2014 WL 5470466 at *1 n.1 (D. Nev. Oct. 27, 2014), Opp. 8, but that standard derives from a District of Nevada Local Rule that has no application here.  *See Verdandi VII, Inc.* v. *Accelerant Specialty Ins. Co.*, 2024 WL 239093, at *5 (S.D. Cal. Jan. 22, 2024) ("*Branch Banking* applied a District of Nevada Local Rule, which does not apply here.").  In any event, as demonstrated here, there is no question of "neglect" with respect to the discovery requested here.

- 3 -

that already exists.  Witnesses testified that multiple third parties, including SIS, were pursuing modification of EndoWrists to bring to market around or after the close of fact discovery:  SIS intended to pursue a partnership to bring FDA-cleared modified EndoWrists to market, Dkt. 243-3 at 17:10–23, and also was partnering with Restore to develop reset X/Xi EndoWrist instruments, Dkt. 243-5 at 43:1–24.  And Iconocare, for its part, was partnering with its affiliate, Restore, to obtain more FDA clearances for reset X/Xi instruments.  Dkt. 243-4 at 33:5–22.  Whether Iconocare or Restore actually obtained additional FDA clearances, and whether SIS actually partnered with either company to bring modified EndoWrist instruments to market (and if not, why not), is directly relevant to testing SIS's claim that Intuitive foreclosed competition from third party companies (including SIS) in 2023 and 2024, and up to the present day.  SIS cannot claim that competition was foreclosed in the years postdating fact discovery while blocking discovery on that issue, including the reasons why third parties (including SIS and its "technology partners," Restore and Rebotix) succeeded or failed.  That SIS's witnesses testified that it was actively pursuing efforts to compete during those years—testimony that SIS now ignores and contradicts in its briefing—makes its position all the more unreasonable.  The Court should not allow such sword-and-shield tactics.

SIS also argues that evidence relating to Iconocare is not relevant because of the Court's summary judgment ruling.  Opp. 10–11.  That is a non sequitur.  The Court rejected at summary judgment Intuitive's argument that SIS lacked antitrust standing as a matter of law because it had not obtained FDA clearance.  Dkt. 204 at 16.  Intuitive is not asking the Court to revisit that ruling.  But as Intuitive explained in its motion, regardless of whether Iconocare or SIS was legally *required* to obtain FDA clearance, a key question for the jury will be whether SIS and others could have competed in the alleged market, free from the alleged restraints allegedly imposed by Intuitive, by *choosing* to obtain FDA clearance or by marketing FDA-cleared instruments.  Mot. 11 n.4.  Indeed, Iconocare testified that it did not believe a 510(k) was "required," but nevertheless *chose* to invest in obtaining FDA clearance because it wanted to tell customers, "from a marketing standpoint," that its "device basically has a Good Housekeeping seal of approval from FDA."  Brachman Decl. Ex. 15 at 94:22–95:11.

1    Whether SIS was willing to take the same steps to compete, and/or why it chose

2  not to take such steps—particularly after Intuitive clarified publicly that it would not take any

3  adverse action against hospitals that bought FDA-cleared devices—is relevant (at a minimum) to

4  SIS's claim that it was excluded from the alleged market from 2023 onwards.  As discussed

5  above, SIS testified during the discovery period that it was at least considering following

6  Iconocare's lead or partnering with Iconocare to market FDA-cleared devices.  *Supra* at 4.  The

7  jury should hear whether SIS instead chose to sit on the sidelines and refrain from competing.

8    SIS spends a considerable portion of its Opposition advancing the bizarre theory

9  that facts postdating discovery are not relevant because Intuitive's March 2023 announcement is

10  evidence of a scheme to create an "artificial" market for FDA-cleared reset EndoWrists.  As

11  proof of this supposed scheme, SIS points to settlement agreements Intuitive entered into with

12  Restore and Rebotix, respectively,[2] each of which ████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████.  Opp. 4–5, 10.  There is no evidence to

15  support SIS's conspiracy theory, and SIS has never advanced any claim in this case that

16  Intuitive's settlement agreements are anticompetitive restraints of trade.[3]  It would be far too late

17  for SIS to try to do so now.  And more importantly for present purposes, the motivation for

18  Intuitive's March 2023 announcement is irrelevant to this motion.  The supplemental discovery

19  Intuitive seeks here is relevant to evaluating whether SIS could have competed in the alleged

20  market by obtaining clearance, or partnering with Iconocare or Restore, but chose not to do so.

21    Finally, demand for Iconocare's FDA-cleared instruments after the close of fact

22  discovery also is relevant to assessing the extent to which hospitals are willing to switch to

23  remanufactured EndoWrists in the absence of Intuitive's challenged contractual provisions,

24

25  [2] Whether those settlement agreements are admissible for any purpose at trial is an evidentiary
   question that will be resolved at a later date.

26  [3] The only testimony in the record on this point contradicts SIS's theory.  At his May 1, 2023

27  deposition, David Rosa, Intuitive's President, was asked if there was a connection between
   Intuitive's March 2023 announcement and the terms of the two settlements and answered, "I am

28  unaware of a connection."  Brachman Decl. Ex. 16 at 157:16–20.  SIS's lawyer was present at
   that deposition and chose not to ask a single question.

precisely the dynamic SIS maintains would have prevailed in the but-for world.  Mot. 9–10.  SIS

argues that real-world hospital demand (or lack thereof) for FDA-cleared instruments cannot be

relevant because SIS chose to conduct its business without seeking FDA clearance and there

was, supposedly, "monumental" demand for SIS's services.  Opp. 9–10.[4]  But that argument

assumes its own conclusion.  The level of demand for SIS's services—and whether or not it was

"monumental"—is a hotly contested issue that will be presented to the jury at trial.[5]  Among

other things, Intuitive contends that whatever demand there may have been for SIS's services

was driven by SIS's false and misleading statements to customers, which are the subject of

Intuitive's counterclaims.  Further, SIS chose a business model that involved modification of

Intuitive's products without FDA clearance, but no one compelled it to make that choice—it

could have chosen instead to seek such clearance, as Iconocare did, and thus—according to SIS's

own characterization—could have "conclusively demonstrated" that its processes were "safe and

effective."  Opp. 5.  If demand for remanufactured EndoWrists were actually as "monumental"

as SIS claims, and if SIS actually was (as it claims) employing a process that was "nearly

identical" to that of Iconocare, *id.*, then there is no apparent or legitimate reason why SIS would

*not* have sought FDA clearance—especially after Iconocare demonstrated that it was possible

and Intuitive confirmed to the world that hospitals do not breach their contracts with Intuitive by

using FDA-cleared instruments.  The much more plausible explanation is that neither the demand

for remanufactured EndoWrists nor SIS's ability to demonstrate the safety and effectiveness of

its products are or were what SIS claims.  But that is for the jury to decide—at this stage,

---

[4] SIS also argues that Iconocare's performance is irrelevant because SIS did not "sell" EndoWrists with reset use counters to hospitals.  Opp. 10.  Regardless of what label SIS wants to apply, there is no dispute that the business it purports to pursue is providing EndoWrists with reset use counters to hospitals in exchange for payment.  Whether hospitals were willing to use such EndoWrists is a key question in this case.  Iconocare's performance after the close of fact discovery bears on that question, and SIS has provided no evidence or reason to believe that FDA-cleared remanufactured EndoWrists would be *less* attractive to hospitals than the EndoWrists that SIS marketed to hospitals.

[5] That the Court referenced SIS testimony to this effect at summary judgment, Opp. 1–2, does not settle the issue.  As the summary judgment opinion correctly explains, the Court was *required* to "view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor" at the summary judgment stage of the case.  Dkt. 204 at 10.

Intuitive seeks only limited discovery to find out how competitors and customers responded in the real world when an FDA-cleared device was made available.[6]

## B. Evidence of SIS's Financial Performance After the Close of Fact Discovery Is Relevant

SIS's expert, Bero, calculates damages for 2023, 2024, and 2025—all of which postdate the close of fact discovery in this case. He states in his report, citing "[d]iscussions with SIS witnesses," that "SIS. . . has continued to sell its repair services." Dkt. 243-2 at 42 & n.333. Citing that evidence, and other SIS witness testimony regarding SIS's plans to partner with Iconocare to market FDA-cleared reset EndoWrists in the future, Intuitive sought by its motion to require SIS to update its production of financial records and other materials on which Bero relied to calculate damages. Mot. 6, 10.

SIS now claims in its Opposition that, contrary to Bero's report and its own witness testimony, "there are no actual repair services provided by SIS relating to EndoWrists that occurred after the close of discovery and so, no relevant financial information exists for the post-discovery time frame." Opp. 14. Its Opposition further suggests—without citing a single piece of evidence—that the reason it has not offered repair services or invested in FDA clearance is because it has been "starved of funding" by Intuitive, *id.* 6, 9–10, and that this is also a reason why it should not have to produce any supplemental discovery, *id.* 17 ("My client [SIS] is definitely definitely a short David against Goliath, and reopening discovery in a broad way for the next eight months will bury us."). There are several problems with that argument.

*First*, neither Intuitive, nor the Court, nor the jury should be forced to rely on unsubstantiated lawyer argument from SIS's counsel on the extent of SIS's activities in the alleged market after the close of fact discovery, nor its financial wherewithal to compete. As of the close of discovery, SIS's remaining business had not been affected by its supposed

---

[6] SIS alternatively argues that demand for Iconocare's reset EndoWrist is irrelevant because Intuitive is phasing out the S/Si instrument for which Iconocare obtained FDA clearance. Opp. 5. But SIS concedes that the planned "End-of-Service" date for the Si system is not until the end of 2024. *Id.* Thus, as Intuitive explained in its motion, Iconocare has had over two years—including all of 2023 and 2024—to market its instruments. Mot. 9. And Iconocare's exclusive distributor, Encore, was continuing to promote the FDA-cleared Si EndoWrist instrument as recently as four months ago. *Id.* 4; Dkt. 244-6 (press release).

foreclosure from selling remanufactured EndoWrists and in fact its revenues were growing.  *See*

Brachman Decl. Ex. 17 at 15:23–16:4 ("Q.:  What has SIS's annual gross revenue been over the

last four or five years?  A.:  It's grown from somewhere around eight or nine to the 18 that we're

at right now.").  Assuming those trends have continued, they are highly relevant to whether or

not SIS has been "excluded" as a competitor.

        *Second*, SIS should not be permitted unilaterally to restrict the financial

information it provides to EndoWrist "repair services" when Intuitive contends that the relevant

market in which SIS competes is far broader than that.  Bero relied in his expert report on data

relating to SIS's overall financial performance.  Dkt. 243-2 at Sch. 15.1.  And he also cited to

information about SIS's businesses beyond so-called EndoWrist "repairs"—including other

EndoWrist-related services that SIS offered, such as its so-called EndoWrist "recovery"

business.  Bero, for example, noted that SIS views the opportunities for its recovery business as

"[s]imilar to the repair business opportunities."  Dkt. 243-2 at 28.  There is no reason why

Intuitive's expert should not have access to updated information about SIS's businesses for the

past two years.

        *Finally*, SIS not only continues to seek hundreds of millions of dollars in damages

for the years postdating the close of fact discovery, but also recently confirmed (after filing its

opposition brief) that Bero will be providing "updated calculations . . . to account for the

additional time included in the 'but-for' damages period," which will result "in a change in

numbers that will be reflected in supplemental schedules to his report."  Brachman Decl. Ex. 18

at 1.  And yet, SIS continues to refuse to update any of the SIS financial information that Bero

uses for his analysis.[7]

        SIS cannot have it both ways.  It should either drop its claim for damages post-

2022, or be required to update the discovery record to include financial records, contracts, and

other materials reflecting its commercial activities and financial condition.

---

[7] SIS has also refused to produce Bero for a deposition on the "change in numbers" that will be
reflected in his updated, forthcoming report.  Brachman Decl. Ex. 18 at 1.

**C.    Evidence Relating to the Development of X/Xi Reset Technology After the Close of Fact Discovery Is Relevant**

The overwhelming majority (over 95%) of SIS's claimed damages are linked to X/Xi EndoWrist sales.  Dkt. 243-2 at Sch. 2.0 & 3.0.  Bero claims it is reasonable to assume that SIS would have been able to make these sales, beginning as early as 2020, because an appropriately financed and incentivized competitor could have developed the technology necessary to reset the X/Xi EndoWrist within one year.  Dkt. 244-4 at 4–5.  Intuitive explained in its motion that developments since the close of discovery—namely, whether any third party has developed a commercial solution for resetting the X/Xi EndoWrist use counter—bear directly on the reasonableness of Bero's assumption.  Mot. 11–12.

SIS argues such evidence is irrelevant because the Court has already ruled that SIS's experts' opinions on the timing and feasibility of breaking the X/Xi encryption are admissible.  Opp. 12–13.  That is simply not responsive.  Intuitive is not seeking to relitigate the Court's *Daubert* rulings.  But the fact that the Court deemed certain expert opinions regarding X/Xi technology admissible under *Daubert* does not mean those opinions contain correct and conclusive statements of fact, as SIS tries to suggest.  To the contrary, the Court expressly noted that opinions regarding the feasibility of resetting the X/Xi use counter would be the subject of cross-examination at trial.  Dkt. 203 at 9.  And the evidence Intuitive seeks by its motion is necessary to conducting such cross-examination.

In particular, Restore testified in 2022 that it was pursuing a project to bring an FDA-cleared X/Xi EndoWrist to market, and SIS testified that it was financing Restore's efforts.  Mot. 5.  Bero relied on that testimony, in part, to bolster his opinions regarding the timing of SIS's entry into the business of resetting X/Xi EndoWrists and his associated damages calculations.  Dkt. 244-4 at 4–5.  Whether Restore has actually succeeded in developing that technology in the nearly two years since then is relevant to testing SIS's experts' assumptions and opinions about what would have happened in the but-for world.  And, once again, SIS should not be allowed to wield the absence of discovery on this issue as both a sword and a shield—arguing that any failure by Restore or other third parties to develop X/Xi reset

technology in the past two years must be due to Intuitive's alleged anticompetitive conduct (Opp. 6), while, at the same time, maintaining that Intuitive cannot discover any facts on that subject.

SIS also argues that Intuitive should be blocked from discovering whether third parties like Restore succeeded in breaking the X/Xi encryption because Intuitive's expert supposedly did not analyze the feasibility of doing so.  Opp. 11–12.  That is entirely beside the point.  Whether it is technically *possible* to reset the X/Xi EndoWrist on a commercial scale does not determine how long it would have taken SIS's "technology partners" to do so.  SIS put *that question* at issue when its own experts chose to rely on testimony from Restore witnesses and others regarding their progress made towards resetting the X/Xi use counter as of the close of fact discovery.  Intuitive has every right to cross-examine those experts about the basis for their opinions at trial, regardless of whether its own experts present a contrary opinion.  And Intuitive should be permitted to discover relevant facts postdating the close of discovery that may undermine (or support) the assumptions on which SIS's experts chose to rely.

### D.    The Remaining Rule 16 Factors Weigh in Favor of Allowing Limited Supplemental Discovery

SIS argues that, even if evidence post-dating the close of fact discovery is relevant—and it is, for the reasons set out above and in Intuitive's moving brief—the jury should not be able to consider that relevant evidence in this $300 million dollar antitrust case because (1) Intuitive was not diligent in pursuing discovery that was foreseeably necessary, (2) additional discovery would be burdensome for SIS, and (3) there is not enough time to complete supplemental discovery before trial.  Opp. 15–20.  SIS's arguments do not withstand scrutiny.

***Intuitive diligently pursued supplemental discovery.***  The diligence and foreseeability factors ask whether the moving party was diligent in obtaining discovery "within the guidelines established by the court," and whether the need for additional discovery was foreseeable "in light of the time allowed for discovery by the district court."  *City of Pomona* v. *SQM North Am. Corp*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States ex rel. Schumer* v. *Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995)).  Intuitive sought and obtained testimony "within the guidelines" and the "time allowed for discovery" on each of the

topics that it now seeks to supplement—including Iconocare's commercial activities, SIS's plans to pursue 510(k) clearance or to partner with Iconocare to market FDA-cleared instruments, and the progress made by third parties towards developing the technology necessary to reset the X/Xi EndoWrist.  What Intuitive could not have done—and was not required to do—was take discovery on facts that did not yet exist, or prematurely seek additional discovery before the Court had ruled on summary judgment and narrowed the issues for trial.  By raising the need for supplemental discovery in the parties' first case management statement following the summary judgment ruling, Intuitive acted with the requisite diligence.  And SIS does not and cannot dispute that Intuitive has diligently pursued the discovery it seeks from that point forward.

The cases cited by SIS are distinguishable.  In *Moriarty* v. *Am. Gen. Life Ins. Co.*, 2021 WL 6197289, at \*7, \*9 (S.D. Cal. Dec. 31, 2021), the court held that the moving party could have explored "additional avenues of discovery . . . within the bounds of the fact discovery cut-off" and that "no new facts" justified reopening discovery.  Here, by contrast, Intuitive exhausted its ability to take discovery on these issues within the discovery period and new facts have occurred—namely, Iconocare's emergence as a competitor with an FDA-cleared instrument, and Intuitive's announcement that it would not take action against customers who use FDA-cleared remanufactured instruments.  In *Pittman* v. *CACI International, Inc.*, 2024 WL 3468812, at \*4 (C.D. Cal. July 10, 2024), the moving party was "aware of" the subject on which it sought to reopen discovery "long before the end of discovery."  Here, however, Intuitive could not have discovered the facts it now seeks "before the end of discovery," because those facts were not yet in existence.  *See* Mot. 8 (citing, *e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 13756260, at \*4–5 (N.D. Cal. July 31, 2015)).[8]  Finally, in *MAG Aerospace Indus., LLC* v. *Precise Aerospace Mfg., Inc.*, 2021 WL 6882328 (C.D. Cal. December 3, 2021), the moving party waited months after the pretrial scheduling order had been entered to seek

---

[8] SIS claims that *In re Cathode Ray Tube* and other cases cited by Intuitive are distinguishable because Intuitive "chose not to investigate hospital demand or X/Xi decryption during discovery." Opp. 19.  But Intuitive is not seeking to reopen discovery on issues that it could have investigated during the discovery period. Rather, as in *In re Cathode Ray Tube*, it seeks discovery of facts that did not exist until *after* the discovery period had ended.

1    additional discovery; here, Intuitive flagged this issue before the Court entered its pretrial order

2    and brought this motion promptly after spending weeks attempting repeatedly to meet and confer

3    with SIS's counsel.  Mot. 8 & n.2.  The diligence and foreseeability factors are, therefore,

4    satisfied.  *See City of Pomona*, 866 F.3d at 1066–67.

5                 ***SIS has not shown it will be prejudiced by supplemental discovery.***  Apart from

6    the argument of its counsel, SIS has come forward with no evidence that participating in limited,

7    supplemental discovery would be unduly burdensome.  This is not a case like *In re Packaged*

8    *Seafood Prods. Antitrust Litig*, 2023 WL 1090983 (S.D. Cal. Jan. 26, 2023), Opp. at 17, where

9    the parties would have to fly across the globe (there, to Korea) or hire interpreters to conduct

10   particularly costly depositions.  And although SIS's counsel claims that initial discovery in this

11   matter "almost broke [SIS]" and that additional discovery would be a "huge blow to [SIS]

12   financially," Opp. 17, this is yet another example of SIS's sword/shield tactics.  Rather than

13   substantiate its assertions of prejudice, SIS *refuses* to produce any information about its financial

14   performance over the past two years.  And what evidence is available suggests that SIS's revenue

15   *doubled* from 2018 to 2022.  Brachman Decl. Ex. 17 at 15:23–16:4.  Moreover, as noted in

16   Intuitive's opening brief, SIS is seeking to collect *hundreds of millions of dollars* from Intuitive

17   in this case—including nearly $150 million in the years postdating fact discovery—making the

18   limited additional discovery that Intuitive seeks proportional to the needs of the case.  *See* Fed.

19   R. Civ. P. 26(b)(1) (providing that appropriate scope of discovery should consider "amount in

20   controversy" among other factors).

21                 SIS thus has not shown that it would suffer undue prejudice from participating in

22   the limited, supplemental discovery Intuitive seeks.  And, if SIS's representations about its

23   commercial activities since the close of discovery are to be believed, there may be very little at

24   all for the company to produce by way of additional documents.  Furthermore, SIS could have

25   drastically minimized the burden it now claims by agreeing to stipulate to facts about

26   developments in the market since the close of fact discovery—as Intuitive proposed.  Mot. 7;

27   Dkt. 244-13.  Yet, SIS never responded to Intuitive's proposed stipulation, which Intuitive

28   provided to it more than a month ago (on July 18).  SIS fails to even mention that proposed

1  stipulation in its opposition, much less offer any explanation as to why it refuses to agree to the

2  facts set forth therein, given its unwillingness to provide supplemental discovery.

3         ***The trial date in this case does not preclude supplemental discovery.***  SIS's

4  concerns about the imminence of trial are overstated.  Trial is still four months away.  To the

5  extent additional discovery yields documents that either side wishes to use at trial, the parties can

6  supplement their exhibit lists.  And the parties' Discovery Protocol stipulation already

7  contemplates that some number of depositions may need to be conducted in the months between

8  the filing of the pretrial order and the start of trial.  Indeed, the parties agreed that any witness

9  listed on a witness list who was not deposed during fact discovery could be deposed prior to trial.

10  Dkt. 95 at III.D.  As of this filing, SIS has not confirmed that no such witnesses will be included

11  on its witness list.  There is no reason why five depositions on targeted and limited topics cannot

12  be completed in the same manner.  Furthermore, to the extent that the limited discovery Intuitive

13  seeks cannot be completed in the time remaining before trial, that is a problem of SIS's own

14  making.  At the pretrial conference, Intuitive raised that a January trial date may be ambitious,

15  depending in part on whether the parties could agree as to the scope and timing of additional

16  discovery, and the Court noted that "the continuing conversations you're having about the

17  amount of discovery that still needs to be taken will drive some of this."  Dkt. 244-14 at 34:21–

18  35:8, 36:7–10.  Since then, SIS took weeks to get back to Intuitive on its proposals, *see* Mot. 8 &

19  n.2, refused to enter into the stipulation Intuitive proposed regarding the post-discovery time

20  period, and has insisted on litigating this motion.  If as a result of SIS's own actions it is no

21  longer possible to complete the necessary discovery before January, that should not count as a

22  factor in SIS's favor.[9]

23

24  [9] SIS also "represents to the Court" that non-parties will oppose additional discovery.  Opp. 15.
To begin with, much of the supplemental discovery Intuitive seeks here can be obtained from
25  SIS itself.  But the Court need not decide vague and as-yet unasserted objections from non-
parties in a vacuum.  The threshold question on this motion is whether Intuitive should be
26  permitted to serve additional discovery on non-parties in the first place.  In doing so, the Court
will necessarily determine whether the information Intuitive seeks is relevant (which it is, for all
27  the reasons discussed above, *supra* 2–10).  And that determination will factor significantly in
resolving any third-party objections, should they ever materialize:  "[I]n deciding whether to
28  quash or modify a subpoena to a third party, a court must balance the relevance of the discovery

1                                   *       *       *

2          In sum, Intuitive seeks limited, supplemental discovery of facts occurring after the

3  close of discovery in this case that are highly relevant to SIS's claims and damages and to

4  Intuitive's defenses.  Intuitive has been diligent in seeking this tailored supplemental discovery,

5  and SIS has not substantiated the burden that updating the trial record would supposedly impose.

6  Intuitive's motion for leave to conduct supplemental discovery should be granted so that the

7  parties can update the factual record and present the jury with a complete and accurate picture of

8  the competitive dynamics in the alleged market at trial.

9  **II.     THE COURT SHOULD ALLOW LIMITED TRIAL DEPOSITIONS**

10         Intuitive seeks leave to take a total of five (not ten) depositions of non-party

11  witnesses to update and complete the trial record in this case.[10]

12         SIS opposes these depositions on the ground that the non-parties may already

13  have been deposed during discovery.  Opp. 21–22.  But as Intuitive made clear in its motion,

14  those witnesses were not, and could not have been, questioned about the competitive

15  developments postdating fact discovery discussed above, all of which are highly relevant to the

16  parties' claims and defenses at trial.  Intuitive seeks additional trial depositions to update the

17  record on events postdating the close of fact discovery, because they are necessary to present the

18  jury with a complete and accurate picture of the competitive dynamics in the alleged market.

19  Mot. 13–14.  Such supplemental discovery is appropriate for the reasons discussed above.

20         SIS argues additional depositions should not be allowed because "Intuitive was

21  aware during the discovery period that Iconocare was seeking FDA clearance to sell a

22  remanufactured Si EndoWrist," and so "could have asked deponents about the impact, if any,

23

24  sought and the burden to the party seeking the subpoena against the potential hardship to the
    deponent, keeping in mind Rule 26's broad policy favoring full discovery."  *Apple, Inc.* v.
25  *Samsung Elecs. Co.*, 2013 WL 12324184, at *1 (C.D. Cal. Jan. 3, 2013).

26  [10] SIS argues it is unclear how many depositions Intuitive's motion seeks.  Notably, SIS never
    asked Intuitive to clarify this point before filing its opposition.  In any event, Intuitive seeks a
27  total of five—not ten—supplemental depositions, excluding any depositions that are already
    permitted by the parties' stipulation governing the deposition of trial witnesses not previously
28  deposed during fact discovery.

that FDA-cleared Si EndoWrists for sale might have had on hospital customers." Opp. 22. But that argument just confirms why these issues could *not* have been adequately developed during the fact discovery period. Iconocare obtained its 510(k) clearance on September 30, 2022. Fact discovery closed on November 10, 2022. By SIS's logic, Intuitive would have been limited to asking fact witnesses hypothetical questions about their likely future purchasing habits. This Court has previously indicated, in its summary judgment ruling in the Hospital Plaintiffs' case, that "hypothetical" testimony about hospital purchasing habits is not sufficient to create a genuine dispute of fact. *See* Order re: Cross Mots. For Summ. J. at 17, *In re: da Vinci Surgical Robot Antitrust Litig.*, No. 21-cv-03825-AMO (N.D. Cal. Mar. 31, 2024), Dkt. 232. There is no reason why the record regarding Iconocare's marketing of 510(k) cleared instruments should have been limited to hypothetical questions and speculative answers about events that either had not yet occurred or that were barely in their infancy when fact discovery closed in this matter. The jury, like this Court,[11] will naturally be curious to know about the demand for Iconocare's instruments, or whether other third parties succeeded in obtaining clearance for, and marketing, additional instruments as they predicted they would during fact discovery. Mot. 4–5.

Accordingly, the Court should permit Intuitive to conduct up to five trial depositions to update and complete the record in this case prior to trial. This would include depositions of Restore, Rebotix, and/or Iconocare/Encore witnesses, as needed and depending on what the supplemental discovery described above shows. It may also include depositions of a limited number of hospital witnesses—again depending on what the supplemental discovery shows as to events of the past two years and depending on what non-party hospital testimony SIS intends to and is permitted to present.

**CONCLUSION**

For the foregoing reasons, Intuitive respectfully requests that the grant its motion and enter the proposed order filed at Dkt. 244-16.

---

[11] At the summary judgment hearing, this Court asked, "Is Rebotix or anyone else currently providing EndoWrist modification services?" Dkt. 196 at 67:6–7. Counsel for the hospital plaintiffs responded: "Not to our knowledge, although Iconocare does have the 510(k) on an Si instrument. So, certainly, these companies are ramping up." *Id.* at 67:8–10.

| | |
|---|---|
| 1 | Dated:  September 3, 2024 |
| 2 | |

By: /s/ *Kenneth A. Gallo*
    Kenneth A. Gallo

Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

William B. Michael (*pro hac vice*)
Crystal L. Parker (*pro hac vice*)
Daniel A. Crane (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
Email: jhill@paulweiss.com

Sonya D. Winner (SBN 200348)
**COVINGTON & BURLINGTON LLP**
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: swinner@cov.com

Kathryn E. Cahoy (SBN 298777)
**COVINGTON & BURLINGTON LLP**
3000 El Camino Real

Reply in Support of Motion for Limited Supplemental Discovery
3:21-cv-03496-AMO

5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: kcahoy@cov.com

Andrew Lazerow (*pro hac vice*)
**COVINGTON & BURLINGTON LLP**
One City Center 850 Tenth Street NW
Washington DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: alazerow@cov.com

Allen Ruby (SBN 47109)
**ALLEN RUBY, ATTORNEY AT LAW**
15559 Union Ave. #138
Los Gatos, California 95032
Telephone: (408) 477-9690
Email: allen@allenruby.com

*Attorneys for Defendant*
*Intuitive Surgical, Inc.*

Reply in Support of Motion for Limited Supplemental Discovery
3:21-cv-03496-AMO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

On September 3, 2024, I caused a copy of Intuitive's Reply in Support of Motion for Limited Supplemental Discovery to be electronically filed via the Court's Electronic Case Filing System, which pursuant to the Court's order of September 29, 2008, constitutes service in this action on counsel of record for Surgical Instrument Service Company, Inc.

Dated:  September 3, 2024                              By:  */s/ Kenneth A. Gallo*_____
                                                               Kenneth A. Gallo