Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

*Attorneys for Defendant and Counter-Claimant*
*Intuitive Surgical, Inc.*

**MCCAULLEY LAW GROUP LLC**
Joshua V. Van Hoven, (CSB No. 261815)
E-Mail: josh@mccaulleylawgroup.com
3001Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: 925.302.5941

Richard T. McCaulley (*pro hac vice*)
E-Mail: richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: 312.330.8105

*Attorneys for Plaintiff and Counter-Defendant*
*Surgical Instrument Service Company, Inc.*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC., | Case No. 3:21-cv-03496-AMO |
| *Plaintiff/Counter-Defendant,* v. | **PROPOSED SIMPLIFIED STATEMENT OF THE CASE** |
| INTUITIVE SURGICAL, INC., | Date:  November 25, 2024<br>Time:  11:00 a.m.<br>Courtroom:  10 |
| *Defendant/Counter-Claimant.* | |
| | The Honorable Araceli Martínez-Olguín |

1    Pursuant to the Court's Schedule and Pretrial Order of June 11, 2024, Dkt. 235, Plaintiff

2    Surgical Instrument Service Company, Inc. and Defendant Intuitive Surgical, Inc., by and

3    through their undersigned counsel, met and conferred and could not reach an agreement on a

4    joint simplified statement of the case and so set forth below their respective proposals.

5    **A.   SIS's Proposed Simplified Statement of the Case**

6    This is an antitrust case related to surgical robots, instruments that attach to and are used

7    with those robots, and whether the manufacturer of those robots and instruments has engaged in

8    anticompetitive conduct.

9    The plaintiff in this case is a company called Surgical Instrument Service Company (or

10    "SIS"), based in Glendale Heights, Illinois.  The defendant is a company called Intuitive

11    Surgical, based in Sunnyvale, California.

12    Intuitive, founded in 1995, invented a minimally invasive surgical robot called "da Vinci"

13    which is used by surgeons around the world.  The da Vinci allows a surgeon sitting at a console

14    to operate on patients by controlling surgical instruments called EndoWrists, also invented by

15    Intuitive.  EndoWrists are attached to mechanical arms suspended above the patient, and inserted

16    into the patient's body through small incisions.  As controlled by a surgeon, EndoWrists can

17    perform movements such as cutting, grasping, suturing, etc., allowing surgery to be done in a

18    minimally invasive manner.  EndoWrists include fine wire cables that thread through a complex

19    pulley system, allowing the surgeon to move the surgical instruments easily inside the patient's

20    body to desired angles with great precision, mimicking and even exceeding the range of motion

21    of the human wrist.  EndoWrist's instructions for use state they are to be replaced after a

22    specified number of uses, usually 10 uses.  Intuitive  markets and sells the da Vinci and

23    EndoWrist instruments throughout the United States.

24    For over 50 years, SIS has worked directly with hospitals to provide servicing of surgical

25    instruments ranging from stainless instruments to more complex systems such as surgical video

26    systems and flexible endoscopes. In the spring of 2019, SIS became aware of a company called

27    Rebotix that had a repair procedure for EndoWrist instruments. Rebotix's procedure involved

28    modifying EndoWrists for the purpose of permitting them to be reused for more than the number

- 1 -
Proposed Simplified Statement of the Case
3:21-cv-03496-AMO

1  of uses specified in Intuitive's instructions for use. Over the ensuing months, SIS worked with

2  Rebotix to understand the process. SIS began offering servicing of hospitals' S/Si EndoWrists to

3  its customer base in fall of 2019, including facilitating the inspection and repair of the

4  instruments and a reset of the use counter by Rebotix. SIS signed an agreement specific to

5  EndoWrist repairs with Vizient, the country's largest group purchasing organization (GPO)

6  representing thousands of hospitals and health care facilities.

7       SIS alleges that Intuitive's contracts with its customers prevented them from engaging

8  SIS to service the hospitals' S/Si EndoWrists, which included resetting the use counter to allow

9  the EndoWrist instruments to be reused for another 10 uses.  SIS alleges that Intuitive enforced

10  those contractual restrictions by sending cease and desist letters to customers who used modified

11  EndoWrists.  SIS alleges that Intuitive is able to force customers to accept these contractual

12  restrictions because it is a monopolist in what SIS contends is a market for minimally invasive

13  soft-tissue surgical robots.  SIS claims that Intuitive uses its alleged monopoly power to

14  contractually condition the sale and servicing of da Vinci surgical robots on the customers'

15  agreement not to purchase EndoWrist instruments that have been modified by a third-party.  SIS

16  claims that Intuitive's contracts have allowed Intuitive to monopolize an alleged market for the

17  repair and replacement of EndoWrist instruments. Additionally, SIS alleges that Intuitive

18  redesigned its X/Xi instruments to prevent third-party services from resetting the use counter on

19  its instruments. SIS disputes Intuitive's claims that the contractual provisions that SIS challenges

20  were put in place for legitimate procompetitive reasons.

21       SIS claims it was excluded from selling repaired EndoWrists because of limitations in

22  Intuitive's contracts with its customers. SIS seeks damages from Intuitive including what SIS's

23  lost profits would have been but for Intuitive's challenged conduct. SIS seeks damages from

24  2020 through 2026.

25       Intuitive denies these claims.  Intuitive asserts that customers choose its da Vinci surgical

26  systems over other competing alternatives because Intuitive offers a superior combination of

27  product quality, service and price.  Intuitive contends that its customers are highly sophisticated

28  buyers who understand the contract terms and costs associated with da Vinci systems, including

1    EndoWrists, understand that EndoWrists are designed for a limited number of uses, and

2    knowingly and expressly agree not to use EndoWrists that have been modified by any

3    unauthorized third party when they make the choice to buy or lease a da Vinci system.  Intuitive

4    asserts that the contractual provisions that SIS challenges were put in place for legitimate and

5    procompetitive reasons, at a time when Intuitive had no significant sales or share of any market.

6    According to Intuitive, those reasons include protecting patient safety, ensuring product quality,

7    promoting innovation, and protecting Intuitive's reputation and brand.  Intuitive contends that its

8    contracts have not harmed competition or excluded competitors.  Intuitive maintains that its

9    contracts restrict only the use of unauthorized third-party products and services, and that SIS

10   chose not to seek authorization for its products and services.  Intuitive disputes that it has the

11   power to force customers to accept its contractual terms.  Intuitive contends that the da Vinci

12   surgical system competes against other products and methods of performing surgery, and that

13   customers can elect to use those alternative products and surgical methods if they do not wish to

14   accept Intuitive's products, prices or contract terms.

15         Intuitive also asserts counterclaims against SIS arising out of SIS's marketing,

16   advertising and related activities.  First, Intuitive alleges that in its marketing materials and

17   communications, SIS made false and misleading statements and engaged in unfair competition.

18   Second, Intuitive alleges that SIS engaged in deceptive and fraudulent conduct with the intent to

19   confuse and deceive the public into using its service and purchasing modified EndoWrists.

20   Third, Intuitive alleges that SIS was aware of Intuitive's contractual relationships with its

21   customers that contain limitations concerning the modification or alteration of Intuitive

22   EndoWrists by unauthorized third-parties, and that SIS undertook intentional acts to disrupt

23   and/or induce Intuitive customers to breach those contractual relationships.  SIS denies these

24   counterclaims.

25

26

27

28

Proposed Simplified Statement of the Case
3:21-cv-03496-AMO

1    **B.  Intuitive's Proposed Simplified Statement of the Case**

2        This is an antitrust case.

3        The plaintiff in this case is a company called Surgical Instrument Service Company (or

4    "SIS"), based in Glendale Heights, Illinois.  The defendant is a company called Intuitive

5    Surgical, based in Sunnyvale, California.

6        Intuitive, founded in 1995, invented a device called "da Vinci" which is used by surgeons

7    around the world to perform surgery.  The da Vinci allows a surgeon sitting at a console to

8    operate on patients by controlling surgical instruments called EndoWrists, also invented by

9    Intuitive.  EndoWrists are attached to mechanical arms suspended above the patient, and inserted

10   into the patient's body through small incisions.  As controlled by a surgeon, EndoWrists can

11   perform movements such as cutting, grasping, suturing, etc., allowing surgery to be done in a

12   minimally invasive manner.  EndoWrists include fine wire cables that thread through a complex

13   pulley system, allowing the surgeon to move the surgical instruments easily inside the patient's

14   body to desired angles with great precision, mimicking and even exceeding the range of motion

15   of the human wrist.  The Food and Drug Administration (FDA) granted clearance to Intuitive  to

16   market and sell the da Vinci and EndoWrist instruments throughout the United States.

17   EndoWrists' labeling, including the instructions for use, state they are to be replaced after a

18   specified number of uses.

19       For over 50 years, SIS has worked directly with hospitals to provide servicing of surgical

20   instruments ranging from stainless instruments to systems such as surgical video systems and

21   flexible endoscopes.  In the spring of 2019, SIS became aware of a company called Rebotix that

22   had a procedure for modifying EndoWrists for the purpose of permitting them to be reused for

23   more than the number of uses specified by Intuitive.  SIS began offering the Rebotix service to

24   its customer base in fall of 2019.

25       SIS alleges that Intuitive's contracts with its customers prevented them from engaging

26   SIS to service the hospitals' S/Si EndoWrists, which included resetting the use counter to allow

27   the EndoWrist instruments to be reused for another 10 uses.  SIS alleges that Intuitive enforced

28   those contractual restrictions by sending cease and desist letters to customers who used modified

- 4 -

1   EndoWrists.  SIS alleges that Intuitive is able to force customers to accept these contractual

2   restrictions because it is a monopolist in what SIS contends is a market for minimally invasive

3   soft-tissue surgical robots.  SIS claims that Intuitive uses its alleged monopoly power to

4   contractually condition the sale and servicing of da Vinci surgical robots on the customers'

5   agreement not to purchase EndoWrist instruments that have been modified by a third-party.  SIS

6   claims that Intuitive's contracts have allowed Intuitive to monopolize an alleged market for what

7   SIS describes as the repair and replacement of EndoWrist instruments. Additionally, SIS alleges

8   that Intuitive redesigned its X/Xi instruments to prevent third-party services from resetting the

9   use counter on its instruments.  SIS disputes Intuitive's claims that the contractual provisions that

10  SIS challenges were put in place for legitimate procompetitive reasons.

11          SIS claims it was excluded from selling modified EndoWrists because of limitations in

12  Intuitive's contracts with its customers.  SIS seeks damages from Intuitive, including what SIS

13  claims its lost profits would have been but for Intuitive's challenged conduct.

14          Intuitive denies these claims.  Intuitive asserts that customers choose its da Vinci surgical

15  systems over other competing alternatives because Intuitive offers a superior combination of

16  product quality, service and price.  Intuitive contends that its customers are highly sophisticated

17  buyers who understand the contract terms and costs associated with da Vinci systems, including

18  EndoWrists, understand that EndoWrists are designed for a limited number of uses, and

19  knowingly and expressly agree not to use EndoWrists that have been modified by any

20  unauthorized third party when they make the choice to buy or lease a da Vinci system.  Intuitive

21  asserts that the contractual provisions that SIS challenges were put in place for legitimate and

22  procompetitive reasons, at a time when Intuitive had no significant sales or share of any market.

23  Those reasons include protecting patient safety, ensuring product quality, promoting innovation,

24  and protecting Intuitive's reputation and brand.  Intuitive contends that its contracts have not

25  harmed competition or excluded competitors.  Intuitive maintains that its contracts restrict only

26  the use of unauthorized third-party products and services, and that SIS chose not to seek

27  authorization for its products and services.  Intuitive disputes that it has the power to force

28  customers to accept its contractual terms.  Intuitive contends that the da Vinci surgical system

Proposed Simplified Statement of the Case
3:21-cv-03496-AMO

1    competes against other products and methods of performing surgery, and that customers can

2    elect to use those alternative products and surgical methods if they do not wish to accept

3    Intuitive's products, prices or contract terms.

4          Intuitive contends that SIS is not entitled to any damages, and that any "lost profits" that

5    SIS claims are the result of factors unrelated to Intuitive's conduct, including SIS's own business

6    choices.

7          Intuitive also asserts counterclaims against SIS arising out of SIS's marketing,

8    advertising and related activities.  *First*, Intuitive alleges that in its marketing materials and

9    communications, SIS made false and misleading statements and engaged in unfair competition.

10   *Second*, Intuitive alleges that SIS engaged in deceptive and fraudulent conduct with the intent to

11   confuse and deceive the public into using its service and purchasing modified EndoWrists.

12   *Third*, Intuitive alleges that SIS was aware of Intuitive's contractual relationships with its

13   customers that contain limitations concerning the modification or alteration of Intuitive

14   EndoWrists by unauthorized third-parties, and that SIS undertook intentional acts to disrupt

15   and/or induce Intuitive customers to breach those contractual relationships.  SIS denies these

16   counterclaims.

17

18    Dated:  October 28, 2024              By: /s/ *Kenneth A. Gallo*
                                                Kenneth A. Gallo
19
                                           Kenneth A. Gallo (*pro hac vice*)
20                                         Paul D. Brachman (*pro hac vice*)
                                           **PAUL, WEISS, RIFKIND, WHARTON &**
21                                         **GARRISON LLP**
                                           2001 K Street, NW
22                                         Washington, DC  20006-1047
                                           Telephone:  (202) 223-7300
23                                         Facsimile:  (202) 204-7420
                                           Email: kgallo@paulweiss.com
24                                         Email: pbrachman@paulweiss.com
25
                                           William B. Michael (*pro hac vice*)
26                                         Crystal L. Parker (*pro hac vice*)
27                                         Daniel A. Crane (*pro hac vice*)

28

Proposed Simplified Statement of the Case
3:21-cv-03496-AMO

1
2
3
4
5
6

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

7
8
9
10
11

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:  (628) 432-5100
Facsimile:  (628) 232-3101
Email: jhill@paulweiss.com

12
13
14
15
16

Sonya D. Winner (SBN 200348)
**COVINGTON & BURLINGTON LLP**
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091
Email: swinner@cov.com

17
18
19
20
21

Kathryn E. Cahoy (SBN 298777)
**COVINGTON & BURLINGTON LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: kcahoy@cov.com

22
23
24
25
26

Andrew Lazerow (*pro hac vice*)
**COVINGTON & BURLINGTON LLP**
One City Center 850 Tenth Street NW
Washington DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: alazerow@cov.com

27
28

- 7 -
Proposed Simplified Statement of the Case
3:21-cv-03496-AMO

1

2
                                  Allen Ruby (SBN 47109)
                                  **ALLEN RUBY, ATTORNEY AT LAW**

3
                                  15559 Union Ave. #138
                                  Los Gatos, California 95032

4
                                  Telephone: (408) 477-9690
                                  Email: allen@allenruby.com

5

6
                                  Attorneys for *Defendant*
                                  *Intuitive Surgical, Inc.*

7

8
Dated:  October 28, 2024                  By: /s/ *Richard T. McCaulley*
                                      Richard T. McCaulley

9

10
                                  Richard T. McCaulley (*pro hac vice*)
                                  **MCCAULLEY LAW GROUP LLC**

11
                                  E-Mail: 180 N. Wabash Avenue, Suite 601
                                  Chicago, Illinois 60601

12
                                  Telephone: (312) 330-8105
                                  richard@mccaulleylawgroup.com

13

14
                                  Joshua V. Van Hoven (CSB No. 262815)
                                  3001 Bishop Dr., Suite 300

15
                                  San Ramon, California 94583
                                  Telephone: (925) 302-5941

16
                                  E-Mail: josh@mccaulleylawgroup.com

17
                                  *Attorneys for Plaintiff Surgical Instrument*
                                  *Service Company, Inc.*

18

19

20

21

22

23

24

25

26

27

28

- 8 -

**E-Filing Attestation**

I, Kenneth A. Gallo, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above have concurred in this filing.


Dated:  October 28, 2024                    By:  */s/ Kenneth A. Gallo*
                                                  Kenneth A. Gallo