**MCCAULLEY LAW GROUP LLC**
JOSHUA V. VAN HOVEN, (CSB No. 262815)
E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: 925.302.5941

RICHARD T. MCCAULLEY (*pro hac vice*)
E-Mail: richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: 312.330.8105

*Attorneys for Plaintiff and Counter-Defendant,*
SURGICAL INSTRUMENT SERVICE COMPANY, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC.,<br><br>*Plaintiff/Counter-Defendant,*<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>*Defendant/Counterclaimant.* | Case No. 3:21-cv-03496-AMO<br>Honorable Araceli Martínez-Olguín<br><br>**PLAINTIFF SIS's TRIAL BRIEF ON CONTROLLING ISSUES OF LAW** |

### SIS's Trial Brief on Controlling Issues of Law

Pursuant to the SCHEDULE AND PRETRIAL ORDER entered in this case (Dkt. 235), Plaintiff Surgical Instrument Service Company, Inc. ("SIS") hereby provides its trial brief on controlling issues of law as required by the Court's Order (Dkt. 235 Section II.A.5).

I.   CONTROLLING ISSUE OF LAW RE SIS'S ANTITRUST CLAIMS

SIS brings Sherman Act claims against Intuitive Surgical, Inc. ("Intuitive"), claiming that SIS's business was harmed because Intuitive conditions the sale and servicing of its da Vinci surgical robots on customers buying replacement EndoWrists from Intuitive rather than permitting customers to use repaired EndoWrists. SIS claims that Intuitive's actions violate the antitrust laws.

First, SIS asserts that the contractual constraints Intuitive places on its customers – which together prohibit customers from having their EndoWrist instruments refurbished by third parties – constitute tying and exclusive dealing and thus are a "restraint of trade" in violation of Section 1 of the Sherman Act. 15 U.S.C. § 1. Second, SIS alleges that Intuitive violated Section 2 of the Sherman Act, 15 U.S.C. § 2, through a series of exclusionary tactics, including "tying EndoWrist replacements and repairs to sales and servicing of da Vinci surgical robots," sending cease and desist letters when customers attempted to have their EndoWrist instruments refurbished by third parties, and redesigning its instruments to prevent third-party services from resetting the use counter on its instruments. Finally, SIS brings an attempted monopolization claim under Section 2 based on this same conduct.

**The selection of the proper mode of antitrust analysis is a question of law**. *Shields v. Federation Internationale de Natation*, 649 F.Supp.3d 904, 920 (N.D. Cal. 2023) (citation omitted). The presumptive or default standard for Section 1[1] analysis is the "rule of reason," which requires the antitrust plaintiff to demonstrate that a particular contract is in fact unreasonable and anticompetitive. Id. More rarely, courts may use the "per se approach" to analyze practices that are "so harmful to competition and so rarely prove justified that the antitrust laws do not require proof that an agreement of that kind is, in fact, anticompetitive in the particular circumstances." Id. (quoting *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 833 (9th Cir. 2022)). Finally, between the rule of reason and the per se approach lies the "truncated rule of reason" or "quick look" approach. *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1134 (9th Cir. 2011). The Supreme Court, commenting on per se and quick look analyses stated:

> [S]ometimes we can determine the competitive effects of a challenged restraint in the twinkling of an eye. That is true, though, only for restraints at opposite ends of the competitive spectrum.... [S]ome restraints may be so

---

[1] Section 1 of the Sherman Act prohibits "[e]very contract, combination ..., or conspiracy in restraint of trade." 15 U.S.C. § 1. To prevail on a Section 1 claim, a plaintiff must demonstrate: "(1) that there was a contract, combination, or conspiracy; (2) that the agreement unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis; and (3) that the restraint affected interstate commerce." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1062 (9th Cir. 2001) (cleaned up).

>obviously incapable of harming competition that they require little scrutiny....
>
>At the other end, some agreements among competitors so obviously threaten to reduce output and raise prices that they might be condemned as unlawful per se or rejected after only a quick look.

Id. (quoting *Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 88-89 (2021)(cleaned up)).

If the per se or quick look approach applies in a given case, the court assumes the restraint is anticompetitive without inquiry into the particular market context in which it is found; that is, "'[a] plaintiff is not required to define a particular market for a per se claim." *Shields,* 649 F.Supp.3d at 920 (quoting *PLS.Com*, 32 F.4th at 838).

"'Per se treatment is proper only once experience with a particular kind of restraint enables the court to predict with confidence that the rule of reason will condemn it.'" *Shields,* 649 F.Supp.3d at 921 (quoting *Safeway*, 651 F.3d at 1133 (cleaned up)). Courts may use the quick look approach where "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets" *Safeway*, 651 F.3d at 1134 (cleaned up).

Tying where the seller has market power in the tying product is such a situation. "When a seller has sufficient market power in the tying product or service so that the existence of coercion is probable and there is a substantial potential for impact on competition, a tying arrangement can be proscribed without looking at the actual market conditions." *Aerotex Int'l, Inc. v. Honeywell, Int'l, Inc.*, 4 F. Supp. 3d 1123, 1133 (D. Ariz. 2014). For a tying claim to be considered a per se violation, "a plaintiff must prove: (1) that the defendant tied together the sale of two distinct products or services; (2) that the defendant possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a 'not insubstantial volume of commerce' in the tied product market." *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008).

The rule of reason includes a three step analysis and burden-shifting framework:

>[T]he plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant

market. If the plaintiff carries its burden, then the burden shifts to the defendant to show a procompetitive rationale for the restraint. If the defendant makes this showing, then the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means.

*PLS.Com*, 32 F.4th at 834 (cleaned up). "The goal is to distinguish between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Ohio v. Am. Express Co.*, 585 U.S. 529, 541-42 (2018). Further, "where a plaintiff's case comes up short at step three, the district court must proceed to [a] step four and balance the restriction's anticompetitive harms against its procompetitive benefits." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 993-994 (9th Cir. 2023).

"To prove a substantial anticompetitive effect directly, the plaintiff must provide proof of actual detrimental effects ... in the relevant market. When a plaintiff does so, no inquiry into market definition and market power is required." *PLS.Com*, 32 F.4th at 834 (cleaned up). "Market power is essentially a surrogate for detrimental effects. If a plaintiff can make a showing of actual anticompetitive effects, then a full-blown market analysis is not necessary." *Intel Corp. v. Fortress Inv. Grp. LLC*, 511 F.Supp.3d 1006, 1014 (N.D. Cal. 2021) (cleaned up). However, the Supreme Court explained that defining the relevant market is a requirement when the restraint at issue is vertical. *Am. Express Co.*, 585 U.S. at 543, n. 7.

Sherman Act § 2 targets independent anticompetitive conduct. *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 989-90 (9th Cir. 2020) Section 2 "makes it illegal to 'monopolize ... any part of the trade or commerce among the several States.' " Id. at 990. "To establish liability under § 2, a plaintiff must show: (a) the possession of monopoly [or monopsony] power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." Id. (cleaned up).

A Section 2 claim includes two elements: (1) the defendant has monopoly power in the relevant market, and (2) the defendant has willfully acquired or maintained monopoly power in that market. Both elements are required. To meet the first element of a Section 2 claim, a plaintiff

generally must (1) define the relevant market, (2) establish that the defendant possesses market share in that market sufficient to constitute monopoly power, and (3) show that there are significant barriers to entering that market. *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022).

"Monopoly power is the ability to control prices and exclude competition in a given market. If a firm can profitably raise prices without causing competing firms to expand output and drive down prices, that firm has monopoly power." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007). Direct evidence of monopoly power is "restricted output and supracompetitive prices." *Rebel Oil Co. v. Atl. Richfield Co.,* 51 F.3d 1421, 1434 (9th Cir. 1995) (citation omitted). The former refers to the defendant's power to restrict its own output in a way that "restrict[s] marketwide output and, hence, increase[s] marketwide prices." Id. The latter refers to the defendant's power to "raise prices without causing competing firms to expand output and drive down prices." *Broadcom*, 501 F.3d at 307.

II.   CONTROLLING ISSUE OF LAW RE INTUITIVE'S LANHAM ACT FALSE ADVERTISING COUNTERCLAIM

Defendant / Counterclaimant, Intuitive Surgical, Inc. ("Intuitive"), alleges, inter alia, that SIS engaged in false advertising in violation of the Lanham Act.[2]

---

[2] Intuitive bases its Lanham Act false advertising counterclaim on the following allegations: (1) "SIS states that it is 'repairing' EndoWrists"; (2) "SIS purports to offer a 'complete evaluation, repair, and test' of EndoWrists"; (3) "SIS claims that serviced EndoWrists will 'meet the quality and functional requirements of a new device' "; (4) "SIS similarly claims that a 'repaired' EndoWrist "is an original da Vinci manufactured device that has been repaired to original specifications' "; (5) "SIS advertises that its service offers significant savings for customers"; (6) "SIS's communications similarly have falsely suggested that the 'repair' service was authorized by, approved by or affiliated with Intuitive, including through misleading references to Intuitive trademarks and describing SIS as an 'authorized' EndoWrist 'service' company"; (7) "SIS's communications stating that '[a] repaired EndoWrist® is not an alternative or replacement device,' but rather 'an original da Vinci® manufactured device that has been repaired to original specifications.' "; (8) SIS furthers the deception about what the 'repair' actually entails by falsely touting that a 'repaired' EndoWrist (i) 'meet[s] the quality and functional requirements of a new device' (Ex. 3) and (ii) 'has been repaired to original specifications' " Dkt. 75 p. 42, ¶ 9.a-d; p. 43, ¶ 12; p. 44, ¶ 15; p. 55, ¶ 60.

Statements that constitute puffery escape false advertising liability. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir.1990). A statement is puffery if the claim is extremely unlikely to induce consumer reliance. "[A] statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (internal citation and quotation omitted). "Puffing is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir.1997). **The determination of whether an alleged misrepresentation is a statement of fact or is instead mere puffery is a legal question**. *Newcal*, 513 F.3d at 1053.

Dated: October 28, 2024

McCAULLEY LAW GROUP LLC
By: */s/ Joshua Van Hoven*
JOSHUA V. VAN HOVEN
E-Mail: josh@mccauleylawgroup.com
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: 925.302.5941

RICHARD T. MCCAULLEY (pro hac vice)
E-Mail: richard@mccauleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: 312.330.8105

Attorneys for SURGICAL INSTRUMENT SERVICE COMPANY, INC.