Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

William B. Michael (*pro hac vice*)
Crystal L. Parker (*pro hac vice*)
Daniel A. Crane (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:  (628) 432-5100
Facsimile:  (628) 232-3101
Email: jhill@paulweiss.com

*Attorneys for Defendant Intuitive Surgical, Inc.*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC., | Case No. 3:21-cv-03496-AMO |
| *Plaintiff,* | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DISPUTED JURY INSTRUCTIONS** |
| v. | |
| INTUITIVE SURGICAL, INC., | Pretrial Conference: |
| *Defendant.* | Date:  November 25, 2024 |
| | Time:  11:00 a.m. |
| | Courtroom:  10 |
| | The Honorable Araceli Martínez-Olguín |

# **TABLE OF CONTENTS**

I.      The Court Should Overrule SIS's Conclusory Objections ...................................................1

II.     The Court Should Use Intuitive's Articulation of the Relevant Markets ............................1

III.    The Jury Should Be Given a Preliminary Instruction, Disputed Instruction No. 1, That Statements Regarding FDA Clearance Are Not False or Misleading................................................................................................................1

IV.     The Court Should Adopt Intuitive's Modifications to the Model in Disputed Instruction No. 2 ......................................................................................2

V.      The Court Should Reject Disputed Instruction No. 3 ........................................................2

VI.     Disputed Instruction Nos. 4, 5, and 6 Dispel Jury Confusion About Whether Certain Protected Conduct Is Unlawful ...............................................3

VII.    The Court Should Give Disputed Instruction Nos. 7 and 8 Regarding Relevant Markets at the Outset, and Reject Disputed Instruction No. 22 .........................4

VIII.   Disputed Instruction No. 9 Is an Unobjectionable General Statement About Sherman Act Section 1 ...........................................................................5

IX.     The Court Should Provide the Standard Rule of Reason Framework of Disputed Instruction Nos. 10, 11, and 12................................................................6

X.      The Court Should Use Intuitive's Version of Disputed Instruction No. 13........................8

XI.     The Court Should Adopt Intuitive's Modifications to the Model in Disputed Instruction No. 14 ....................................................................................8

XII.    Disputed Instruction Nos. 15, 26, and 27, Which Reflect SIS's Proposed "Per Se" Tying Instructions, Should be Rejected, and Instead Disputed Instruction No. 16 Should be Given ..................................................................8

XIII.   The Court Should Use Intuitive's Modification to the Model in Disputed Instruction Nos. 17, 18, and 23 ......................................................................10

XIV.    Disputed Instruction Nos. 19. and 46 Regarding the Relevant Geographic Market, and Disputed Instruction Nos. 25, 41, 53, and 58 Regarding Interstate Commerce, Should Be Rejected ...........................................................10

XV.     Disputed Instruction Nos. 20 and 33 Properly Set Out the Law on When Authorization Requirements Can and Cannot Constitute Tying or Exclusive Dealing ..................................................................................................11

XVI.    The Court Should Instruct the Jury Through Disputed Instruction No. 21 That Voiding a Warranty Is Not Coercion................................................................12

XVII.   The Court Should Give Intuitive's Version of Disputed Instruction No. 28 Regarding Harm to Competition....................................................................13

XVIII.  The Court Should Give Intuitive's Version of Disputed Instruction No. 29 Regarding Procompetitive Rationales..........................................................13

XIX.    The Court Should Reject Disputed Instruction No. 30 ..................................................14

XX.     The Jury Should Be Permitted to Evaluate the Business Justification
        Defense in Disputed Instruction No. 31 ...............................................................14

XXI.    The Court Should Adopt Intuitive's Proposed Instruction No. 32
        Regarding Elements of Exclusive Dealing ...........................................................15

XXII.   Disputed Instruction No. 34, Which Discusses Three Elements of
        Exclusive Dealing, Should be Rejected in Favor of Disputed Instruction
        Nos. 35, 36, and 39 ...............................................................................................15

XXIII.  The Court Should Give Disputed Instruction No. 40 Regarding the Rule of
        Reason Analysis for SIS's Exclusive Dealing Claim, and Reject Disputed
        Instruction No. 38 ..................................................................................................16

XXIV.   Disputed Instruction No. 43 Is an Unobjectionable Roadmap ............................17

XXV.    Disputed Instruction No. 44 Purporting to Define Monopoly and
        Attempted Monopolization Should Be Rejected ...................................................17

XXVI.   Disputed Instruction No. 45 Regarding the Elements of Monopolization
        Should Omit Interstate Commerce .........................................................................17

XXVII.        The Court Should Adopt Intuitive's Disputed Instruction No. 48
        Regarding Monopoly Power ...................................................................................18

XXVIII.       The Court Should Adopt Intuitive's Disputed Instruction No. 49
        On Direct Evidence of Monopoly Power ...............................................................18

XXIX.   The Court Should Give Intuitive's Version of Disputed Instruction No. 28
        Regarding Harm to Competition ............................................................................19

XXX.    The Court Should Reject SIS's Disputed Instruction No. 52 Regarding
        Design Changes, and Adopt Intuitive's Version ...................................................19

XXXI.   The Court Should Adopt Intuitive's Disputed Instruction No. 54
        Regarding Elements of Attempted Monopolization ...............................................20

XXXII.        The Court Should Reject SIS's Injury Instructions in Disputed
        Instruction Nos. 42 and 59, and Should Instead Give Intuitive's Disputed
        Instruction Nos. 60, 61, 62, and 63 ......................................................................20

XXXIII.       The Court Should Give Disputed Instruction Nos. 65 and 66
        Regarding Remanufacturing and FDA Clearance ................................................21

XXXIV.        The Court Should Follow the ABA Model Instruction in Disputed
        Instruction Nos. 68 and 70 Regarding Damages .................................................22

XXXV.         The Court Should Give Disputed Instruction No. 69 Regarding
        Causation and Disaggregation ..............................................................................22

XXXVI.        The Court Should Adopt Intuitive's Version of Disputed
        Instruction No. 71 Regarding Future Lost Profits ...............................................23

- ii -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

XXXVII.    The Court Should Adopt Intuitive's Version of Disputed Instruction No. 72 Regarding Mitigation of Damages........................................................23

XXXVIII.    The Court Should Use Intuitive's Version of Disputed Instruction No. 74 on the Elements of Its Lanham Act Claim................................................23

XXXIX.    The Court Should Reject SIS's Addition to Disputed Instruction No. 76 Regarding Commercial Promotions...............................................................24

XL.    The Court Should Adopt Intuitive's Version of Disputed Instruction No. 77 Regarding Lanham Act Injury ............................................................................24

XLI.    The Court Should Use Intuitive's Version of Disputed Instruction No. 78 on the Elements of Unfair Competition ..................................................................25

XLII.    The Court Should Use Intuitive's Version of Disputed Instruction No. 79 on Tortious Interference with Contract ..............................................................25

XLIII.    The Court Should Give Intuitive's Version of Disputed Instruction No. 80 Regarding Damages on Its Counterclaims...........................................................25

Defendant's Memorandum of Law in Support of Disputed Jury Instructions
3:21-cv-03496-AMO

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Acad. of Mot. Picture Arts & Scis.* v. *Creative House Promotions, Inc.*,

5
    944 F.2d 1446 (9th Cir. 1991) ......................................................................................25

6
*Aerotec Int'l, Inc.* v. *Honeywell Int'l, Inc.*,
    836 F.3d 1171 (9th Cir. 2016) ........................................................................................9

7

*Allied Orthopedic Appliances Inc.* v. *Tyco Health Care Grp. LP*,

8
    592 F.3d 991 (9th Cir. 2010) ........................................................................................20

9
*Ohio* v. *Am. Express Co.*,

10
    585 U.S. 529 (2018) ........................................................................................................6

11
*Barry Wright Corp.* v. *ITT Grinnell Corp.*,
    724 F.2d 227 (1st Cir. 1983) ........................................................................................14

12

13
*Betaseed, Inc.* v. *U & I Inc.*,
    681 F.2d 1203 (9th Cir. 1982) ......................................................................................11

14

15
*Bigelow* v. *RKO Radio Pictures*,
    327 U.S. 251 (1946) ......................................................................................................23

16
*Brantley* v. *NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) ........................................................................................9

17

18
*Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977) ........................................................................................................2

19
*In re Can. Imp. Antitrust Litig.*,

20
    470 F.3d 785 (8th Cir. 2006) ........................................................................................22

21
*City of Vernon* v. *S. Cal. Edison Co.*,
    955 F.2d 1361 (9th Cir. 1992) ......................................................................................22

22

23
*Coronavirus Reporter* v. *Apple, Inc.*,
    85 F.4th 948 (9th Cir. 2023) ...........................................................................................5

24
*CoStar Grp., Inc.* v. *Com. Real Est. Exch. Inc.*,

25
    2023 WL 2468742 (N.D. Cal. Feb. 23, 2023) ..............................................................19

26
*Discover Fin. Servs.* v. *Visa U.S.A., Inc.*,
    582 F. Supp. 2d 501 (S.D.N.Y. 2008) ...........................................................................21

27
*Dream Big Media Inc.* v. *Alphabet Inc.*,

28
    2024 WL 3416509 (N.D. Cal. July 15, 2024) ...............................................................11

*United States* v. *Eastman Kodak Co.*,
   63 F.3d 95 (2d Cir. 1995) ................................................................................19

*Epic Games, Inc.* v. *Apple Inc.*,
   559 F. Supp. 3d 898 (N.D. Cal. 2021) ...........................................................19

*Epic Games, Inc.* v. *Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) .................................................................. *passim*

*Fido's Fences* v. *Canine Fence Co.*,
   672 F. Supp. 2d 303 (E.D.N.Y. 2009) ............................................................12

*Ford Motor Co.* v. *GMB Universal Joints (West), Inc.*,
   1988 WL 82826 (9th Cir. 1988) .....................................................................11

*Forsyth* v. *Humana, Inc.*,
   114 F.3d 1467 (9th Cir. 1997) ........................................................................18

*Gonzalez* v. *Allstate Ins. Co.*,
   2005 WL 5891935 (C.D. Cal. Aug. 2, 2005)..................................................24

*Ill. Tool Works Inc.* v. *Independent Ink, Inc.*,
   547 U.S. 28 (2006)...............................................................................5, 8, 9

*Jefferson Parish Hospital District No. 2* v. *Hyde*,
   466 U.S. 2 (1984)..........................................................................................16

*Marts* v. *Xerox, Inc.*,
   77 F.3d 1109 (8th Cir. 1996) .........................................................................12

*United States* v. *Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001)..........................................................................14

*United States* v. *Microsoft Corp.*,
   87 F. Supp. 2d 30 (D.D.C. 2000).....................................................................16

*Mozart Co.* v. *Mercedes-Benz of N. Am., Inc.*,
   833 F.2d 1342 (9th Cir. 1987) ........................................................................14

*Mozart Co.* v. *Mercedes-Benz of N. Am., Inc.*,
   593 F. Supp. 1506 (N.D. Cal. 1984) ...............................................................11

*Nat'l Collegiate Athletic Ass'n* v. *Alston*,
   594 U.S. 69 (2021)..................................................................................7, 14

*Ne. Tel. Co.* v. *Am. Tel. & Tel. Co.*,
   651 F.2d 76 (2d Cir. 1981)..............................................................................13

*Newcal Indus., Inc.* v. *Ikon Office Sol'n*,
   513 F.3d 1038 (9th Cir. 2008) ...................................................................4, 24

*Omega Env't, Inc.* v. *Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) ................................................................................................16

*PharmacyChecker.com* v. *Nat'l Assoc. of Bds. of Pharmacy*,
    2022 WL 347669 (S.D.N.Y. Feb. 4, 2022) .............................................................................22

*Photovest Corp.* v. *Fotomat Corp.*,
    606 F.2d 704 (7th Cir. 1979) ................................................................................................11

*Pullos* v. *Alliance Laundry Sys., LLC*,
    2009 WL 10708625 (D. Nev. 2009) ......................................................................................11

*FTC* v. *Qualcomm, Inc.*,
    969 F.3d 974 (9th Cir. 2020) ..............................................................................................3, 7

*Rebel Oil Co., Inc.* v. *Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ................................................................................................18

*In re Remeron Direct Purchaser Antitrust Litig.*,
    367 F. Supp. 2d 675 (D.N.J. 2005) ......................................................................................19

*Safeway Inc.* v. *Abbott Lab'ys*,
    761 F. Supp. 2d 874 (N.D. Cal. 2011) ..................................................................................18

*Southland Sod Farms* v. *Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ..............................................................................................24

*Sterling Merchandising, Inc.* v. *Nestle, S.A.*,
    656 F.3d 112 (1st Cir. 2011) ................................................................................................16

*Theme Promotions, Inc.* v. *News Amer. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) ................................................................................................18

*Union Carbide Corp.* v. *Montell N.V.*,
    27 F. Supp. 2d 414 (S.D.N.Y. 1998) ....................................................................................16

*Va. Panel Corp.* v. *MAC Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1997) ..............................................................................................12

*Verizon Commc'ns Inc.* v. *Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ........................................................................................................17, 18

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
    868 F.3d 132 (3d Cir. 2017) ................................................................................................22

**Statutes**

Lanham Act, 15 U.S.C. § 1125 ................................................................................................23

Defendant's Memorandum of Law in Support of Disputed Jury Instructions
3:21-cv-03825-AMO

**Other Authorities**

AM. BAR ASS'N, ANTITRUST LAW DEVELOPMENTS (8th ed. 2017)..................................................16

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (5th ed. 2023).......................................19

California Civil Jury Instructions.....................................................................................................25

Courtney Lindwall, *Fixing Your Electronics Just Got Easier in California and Minnesota*, Consumer Reports (July 1, 2024) ............................................................................3

MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT (9th Cir. Jury Instructions Comm. 2017 ed.)..............................................1, 23

MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES (AM. BAR ASS'N ANTITRUST L. SECTION 2016) ..................................................................................5, 9, 10, 14

Defendant's Memorandum of Law in Support of Disputed Jury Instructions
3:21-cv-03825-AMO

Pursuant to Section II.A.3 of the Court's Schedule and Pretrial Order, Dkt. 235, and for the reasons set forth below, Intuitive respectfully requests that the Court reject SIS's proposed versions of the disputed jury instructions, and adopt Intuitive's proposals.  For ease of reference, Intuitive attaches hereto, as Exhibit A, a "clean" draft of its proposed jury instructions.

## I.    THE COURT SHOULD OVERRULE SIS'S CONCLUSORY OBJECTIONS

SIS repeatedly objects in conclusory fashion to Intuitive's proposals to give instructions drawn directly from the ABA model, asserting they are "overly argumentative, misleading and create[] a substantial risk of confusing the jury."  SIS does not explain how the ABA model instructions are "argumentative," "misleading," or "confusing." These instructions generally provide neutral presentations of the law, used by countless courts.  The Ninth Circuit's model jury instructions, which do not include specific antitrust instructions, refer to the ABA model as a "helpful" source.[1]  The Court should overrule all of SIS's boilerplate and baseless objections.

## II.    THE COURT SHOULD USE INTUITIVE'S ARTICULATION OF THE RELEVANT MARKETS

There is a difference between the parties' articulations of the relevant markets throughout the jury instructions.  SIS says the two relevant product markets are "minimally invasive surgical robots" and "repaired and replacement EndoWrists."  This is inconsistent with SIS's economic expert, Dr. Russell L. Lamb, who alleges in his expert report that Intuitive has market power in two (and only two) markets: "MIST surgical robots" and "EndoWrist repair and replacement." Dkt. 230-4 at 17, 33.  Intuitive proposes in these Instructions to refer to the alleged markets using the terminology actually put forward by SIS's economic expert.  (In Disputed Instruction Nos. 37, 47, 50, 55, and 56, the articulations of the relevant markets are the only difference between the parties' proposals.)

## III.    THE JURY SHOULD BE GIVEN A PRELIMINARY INSTRUCTION, DISPUTED INSTRUCTION NO. 1, THAT STATEMENTS REGARDING FDA CLEARANCE ARE NOT FALSE OR MISLEADING

In its summary judgment decision, the Court dismissed both SIS's and Intuitive's claims

---

[1] *See* MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT § 14 (2017 ed.).

and affirmative defenses to the extent based on the alleged falsity of statements about the legal necessity for SIS to obtain 510(k) clearance from the FDA.  *See* Dkt. 204 at 11–15; Dkt. 240. However, the jury will inevitably hear and see such statements throughout the trial.  Among other things, such statements are contained within Intuitive's letters to customers that SIS claims are the cause of its lost sales.  Complaint, Dkt. 1 ¶ 92.  SIS witnesses also testified that Intuitive's statements about the FDA in particular "scared" customers into not doing business with SIS.  SIS nonetheless objects to the proposed instruction, stating that "matters regarding FDA clearance by any party should not be permitted in this matter"—ignoring its own allegations and claims.

There is a serious risk that the jury will be misled into believing that such statements were unlawful unless the jury is informed at the outset that the Court instructs them that such statements are not false and misleading and are thus not actionable conduct in this case.[2]  Indeed, SIS's objection seems to *agree* with this point, in suggesting that "curative instructions be given during trial before such evidence or testimony will be presented to the jury."  That is exactly the point of Intuitive's proposed Instruction No. 1, and confirms why it should be given.

## IV.   THE COURT SHOULD ADOPT INTUITIVE'S MODIFICATIONS TO THE MODEL IN DISPUTED INSTRUCTION NO. 2

Intuitive and SIS both draw Disputed Instruction No. 2 from the ABA model instruction regarding the purpose of the antitrust laws.  To the model, Intuitive has added a sentence, drawn directly from Supreme Court case law, setting forth the maxim that the Sherman Act was "enacted for the protection of competition, not competitors."  *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (citation and quotation marks omitted).  Intuitive has then added a second sentence explaining that, as a result of this established proposition, SIS must prove not just harm to itself, but harm to *competition*.  Intuitive respectfully requests that the Court adopt these modifications, which are necessary to conform with controlling Supreme Court law.

## V.   THE COURT SHOULD REJECT DISPUTED INSTRUCTION NO. 3

In Disputed Instruction No. 3, SIS proposes providing a laundry list of all its antitrust

---

[2] Intuitive is also moving *in limine* to exclude evidence or argument that Intuitive's statements to its customers regarding the need for FDA clearance were false or misleading.

1  claims. Instead, Intuitive proposes that SIS's Sherman Act Section 1 claims be summarized briefly

2  before providing the elements of those claims, *see* Disputed Instruction No. 9, and that SIS's

3  Sherman Act Section 2 claims be summarized before the elements of those claims, *see* Disputed

4  Instruction No. 43. If the Court does adopt SIS's proposal, then at a minimum it should include a

5  statement that SIS bears the burden of proving each of its claims and Intuitive denies each claim.

6  **VI.    DISPUTED INSTRUCTION NOS. 4, 5, AND 6 DISPEL JURY CONFUSION
         ABOUT WHETHER CERTAIN PROTECTED CONDUCT IS UNLAWFUL**

7
   Intuitive has proposed three instructions intended to ensure the jury is not confused about
8
   the legality of certain conduct that will be discussed during the trial.
9
   In Disputed Instruction No. 4, Intuitive proposes the jury be given an ABA model
10
   instruction that individuals and entities have a First Amendment right to petition the government,
11
   and thus Intuitive's communications with the FDA cannot be considered anticompetitive. SIS
12
   objects on the ground that it is seeking to exclude all FDA communications via a motion in limine.
13
   If the Court denies that motion (as Intuitive contends it should), then the jury should be given this
14
   instruction rather than risk that they erroneously believe Intuitive having raised concerns with the
15
   FDA about the safety of SIS's EndoWrist repair program was anticompetitive.
16
   In Disputed Instruction No. 5, Intuitive proposes the jury be instructed that so-called "right
17
   to repair" laws have no applicability in this case. Such laws—which relate to consumer electronics
18
   and appliances—have received extensive recent media coverage, especially in California.[3] If not
19
   otherwise instructed, jurors may erroneously believe that such laws give a hospital a legal right to
20
   have its medical equipment, like EndoWrists, serviced by unauthorized third parties.
21
   In Disputed Instruction No. 6, Intuitive proposes the jury be instructed that there is no
22
   obligation for a firm to help its competitors, a concept well-established in antitrust law that is
23
   subject only to a narrow exception when a monopolist terminates a profitable prior course of
24
   dealing for anticompetitive reasons. See *FTC* v. *Qualcomm, Inc.*, 969 F.3d 974, 993–94 (9th Cir.
25
   2020). Absent this instruction, jurors may erroneously believe that Intuitive had an obligation to
26

27
28 [3] *See, e.g.*, Courtney Lindwall, *Fixing Your Electronics Just Got Easier in California and Minnesota*, Consumer Reports (July 1, 2024), https://www.consumerreports.org/right-to-repair/new-state-laws-just-made-it-easier-to-repair-electronics-a5222930321/.

1  cooperate with SIS by allowing it to modify or "repair" EndoWrists.[4]

2      SIS objects to these instructions on the grounds that they are not (or, as to Disputed

3  Instruction No. 4, should not be) issues in the case, but those objections miss the point. Without

4  clarifying instructions, the jury may misunderstand the evidence or law.

5  **VII.    THE COURT SHOULD GIVE DISPUTED INSTRUCTION NOS. 7 AND 8
           REGARDING RELEVANT MARKETS AT THE OUTSET, AND REJECT
6          DISPUTED INSTRUCTION NO. 22**

7      All of SIS's claims require proving a relevant market. *See Newcal Indus., Inc.* v. *Ikon*

8  *Office Sol'n*, 513 F.3d 1038, 1044 n.3 (9th Cir. 2008). As such, Intuitive proposes providing in

9  Instruction No. 7, at the outset of the antitrust instructions, a single instruction on relevant markets

10  drawn from the ABA model that the jury can apply to all claims, rather than repeatedly explaining

11  the relevant market analysis in the context of each of SIS's claims.

12      Intuitive proposes adding to the model specific instructions on one of SIS's two proposed

13  markets—the alleged aftermarket for EndoWrist repair and replacement. As the Ninth Circuit

14  recently held: "[T]o establish a single-brand aftermarket, a plaintiff must show: (1) the challenged

15  aftermarket restrictions are 'not generally known' when consumers make their foremarket

16  purchase; (2) 'significant' information costs prevent accurate life-cycle pricing; (3) 'significant'

17  monetary or non-monetary switching costs exist; and (4) general market-definition principles

18  regarding cross-elasticity of demand do not undermine the proposed single-brand market." *Epic*

19  *Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 977 (9th Cir. 2023). Intuitive's proposed instruction

20  faithfully reflects Ninth Circuit law by setting out these four factors that a "plaintiff must show."[5]

21      SIS, by contrast, proposes giving the instruction on relevant markets among the elements

22  of SIS's tying claim. *See* Disputed Instruction No. 22. This placement has the potential to confuse

23  the jury about applicability of the relevant market inquiry to SIS's other claims. Further, SIS's

24  proposed instruction is incomplete. SIS does not include the "General" instruction on relevant

25

26

27  _____

[4] Other courts have given such an instruction, even when there is no unilateral refusal to deal claim
28  in the case, to avoid this problem. *See, e.g.*, Jury Instructions at 26, *AngioDynamics, Inc.* v. *C.R.*
*Bard, Inc.*, No. 1:17-cv-00598 (N.D.N.Y. Oct. 6, 2022), ECF No. 472.
[5] For a more fulsome discussion of this issue, see Section V.B of Defendant's Trial Brief.

markets from the ABA model, even though it provides critical context for the inquiry.[6]  SIS's proposal also is silent on the *Epic* factors, and provides no guidance to the jury on how to evaluate whether SIS has properly alleged a single-brand aftermarket for EndoWrist repair and replacement.

SIS may argue that *Epic* does not apply because Intuitive allegedly has market power in the alleged foremarket for minimally invasive soft tissue ("MIST") surgery robots, but that is a heavily contested factual issue that the jury will be asked to determine.  Further, Ninth Circuit case law shows that the *Epic* factors apply even if the defendant has monopoly power in the foremarket. *See, e.g.*, *Coronavirus Reporter* v. *Apple, Inc.*, 85 F.4th 948 (9th Cir. 2023).  SIS's approach also would be inconsistent with the fundamental principle that "in all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." *Ill. Tool Works Inc.* v. *Independent Ink, Inc.*, 547 U.S. 28, 46 (2006).

In addition to the ABA model instruction on relevant product markets, Intuitive proposes in Disputed Instruction No. 8 giving an ABA model instruction on the impact of "supply substitutability" on the relevant product market analysis—*i.e.*, the effect of other manufacturers being able to alter their production methods to enter the market in response to a price increase. SIS objects to this instruction on the ground that there are no such manufacturers who are capable of doing so in this case.  SIS's objection assumes the answer to the disputed factual question that Intuitive proposes be submitted to the jury—that is, whether there are such firms.

## VIII.   DISPUTED INSTRUCTION NO. 9 IS AN UNOBJECTIONABLE GENERAL STATEMENT ABOUT SHERMAN ACT SECTION 1

In Disputed Instruction No. 9, Intuitive proposes the standard ABA model instruction that explains what a plaintiff must prove to establish a violation of Section 1 of the Sherman Act.  SIS asserts that the proposed instruction is repetitive of its proposed Instruction No. 3, but that proposal merely lists SIS's claims without explaining what SIS must prove to establish them, and should not be given to the jury for the reasons noted above.  *See supra* Section V.

---

[6]  *See* MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, Chapter 3 – Section 2 of the Sherman Act—Monopolization–General, Instruction 3: Relevant Market—General (AM. BAR ASS'N ANTITRUST L. SECTION 2016).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IX.   THE COURT SHOULD PROVIDE THE STANDARD RULE OF REASON FRAMEWORK OF DISPUTED INSTRUCTION NOS. 10, 11, AND 12

In Disputed Instruction Nos. 10, 11, and 12, Intuitive proposes ABA model instructions regarding the rule of reason framework that applies to both of the claims (tying and exclusive dealing) that SIS asserts under Sherman Act Section 1.  Because this framework applies to both claims, Intuitive proposes to instruct on it before addressing the specific elements of each claim.

SIS asserts these instructions should be omitted, and instead given in the context of SIS's tying claim.  That objection suffers from two flaws.  *First*, SIS proposes instructions on the elements of a per se tying claim, and that the rule of reason analysis should be provided only as an alternative if the jury finds that it has not met the per se standard; but for the reasons stated below in Section XII, SIS's proposed per se instructions should be rejected.  *Second*, by giving the rule of reason instructions only in the context of the tying claim, the jury may mistakenly believe that they do not apply to SIS's exclusive dealing claim.  To avoid such confusion, the rule of reason instructions should be given before the elements of either of the two Sherman Act Section 1 claims.

To the ABA model instructions, Intuitive has proposed a few modifications.  SIS does not specifically object to any of them, and for the following reasons, the Court should adopt them.

In Disputed Instruction No. 10, which provides an overview of the rule of reason, Intuitive has removed the final sentence from the model, which provides: "The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit."  While some courts have endorsed such balancing, it is not a part of the three-part rule of reason burden-shifting framework that has been adopted by the Supreme Court and Ninth Circuit.  *See, e.g.*, *Ohio* v. *Am. Express Co.*, 585 U.S. 529, 541–42 (2018) ("To determine whether a restraint violates the rule of reason . . . the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market.  If the plaintiff carries its burden, then the burden shifts to the defendant to show a procompetitive rationale for the restraint.  If the defendant makes this showing, then the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." (citations

- 6 -

omitted)); *Nat'l Collegiate Athletic Ass'n* v. *Alston*, 594 U.S. 69, 96–100 (2021) (endorsing the *American Express* framework); *Qualcomm Inc.*, 969 F.3d at 991–92 (adopting the *American Express* framework). This Court likewise adopted the *American Express* three-step burden shifting framework in its opinion on the parties' cross-motions for summary judgment. *See* Dkt. 204 at 17.

In Disputed Instruction No. 11, regarding proof of harm to competition, Intuitive has proposed adding a single sentence to the model, consisting of a direct quote from this Court's summary judgment decision: "It is not enough that 'conduct has the effect of reducing consumers' choices or increasing prices to consumers.'" Dkt. 204 at 17 (quoting *Qualcomm*, 969 F.3d at 993–94 (quoting *Brantley* v. *NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012))). This sentence provides helpful context on what constitutes harm to competition, and reflects the law already applied in this case and controlling law of the Ninth Circuit.

In Disputed Instruction No. 12, Intuitive has added a paragraph that explains the standards a plaintiff must meet to prove, at step three of the rule of reason framework, that the defendant's procompetitive rationales could have been achieved through substantially less restrictive means. This proposed insert directly quotes this Court's summary judgment opinion and controlling Ninth Circuit precedent. *See* Dkt. 204 at 17 ("A procompetitive rationale is a 'nonpretextual claim that [defendant's] conduct is indeed a form of competition on the merits because it involves, for example, greater efficiency or enhanced consumer appeal.'" (quoting *Qualcomm*, 969 F.3d at 991)); *Epic Games*, 67 F.4th at 990 ("When evaluating proposed alternative means, courts must give wide berth to defendants' business judgments and must resist the temptation to require that enterprises employ the least restrictive means of achieving their legitimate business objectives. . . . As such, this circuit's test—which the Supreme Court approved in *Alston*—requires a *substantially* less restrictive alternative." (quotations omitted) (citing *Alston*, 594 U.S. at 100–01); *id.* ("To qualify as "substantially less restrictive," an alternative means "must be 'virtually as effective' in serving the [defendant's] procompetitive purposes . . . without significantly increased cost." (citing *Cnty. of Tuolumne* v. *Sonora Cmty. Hosp.*, 236 F.3d 1148, 1159 (9th Cir. 2001))).

## X.    THE COURT SHOULD USE INTUITIVE'S VERSION OF DISPUTED INSTRUCTION NO. 13

In Disputed Instruction No. 13, SIS and Intuitive both provide the ABA model instruction on the definition of tying, differing only in that Intuitive has indicated that it opposes the claim. The Court should adopt Intuitive's version.

## XI.    THE COURT SHOULD ADOPT INTUITIVE'S MODIFICATIONS TO THE MODEL IN DISPUTED INSTRUCTION NO. 14

In Disputed Instruction No. 14, SIS and Intuitive both provide the ABA model instruction on the rationale for the prohibition of tying arrangements.  To the model, Intuitive has added a sentence derived from the Supreme Court's discussion of the historical development of tying law in *Illinois Tool Works Inc.* v. *Independent Ink, Inc.*, 547 U.S. 28, 35–36 (2006), to explain that tying arrangements may have legitimate benefits for consumers.  The Court should adopt this proposed modification, which accurately reflects Supreme Court precedent.

## XII.    DISPUTED INSTRUCTION NOS. 15, 26, AND 27, WHICH REFLECT SIS'S PROPOSED "PER SE" TYING INSTRUCTIONS, SHOULD BE REJECTED, AND INSTEAD DISPUTED INSTRUCTION NO. 16 SHOULD BE GIVEN

SIS proposes that the jury be instructed as to a "per se" tying claim, *see* Disputed Instruction No. 15, and only be instructed as to tying under the rule of reason as an alternative if SIS fails to prove that Intuitive has "sufficient market power" in the alleged tying market for MIST surgical robots, *see* Disputed Instruction No. 26.  This approach makes no sense.

*First*, SIS did not assert a "per se" claim.  At summary judgment, the Court said:  "[T]he parties here do not appear to dispute the market at issue, ***nor does SIS assert that the alleged restraints here are*** **per se** ***unreasonable***.  Their arguments focus on whether the parties can satisfy the respective burdens imposed by the rule of reason." Dkt. 204 at 17 (emphasis added).

*Second*, any "per se" tying claim in this case is foreclosed by law.  In *Epic*, the Ninth Circuit clarified that per se tying cases are limited to those where the tie is "'plainly anticompetitive' and 'lacking in any redeeming virtue' such that it can be 'conclusively presumed illegal.'" *Epic Games*, 67 F.4th at 997 (quoting *Broad. Music, Inc.* v. *Columbia Broad. Sys., Inc.*, 441 U.S. 1, 7–8 (1979)) (alterations omitted).[7]  The Court has already concluded there is "directly conflicting

---

[7] Other recent Ninth Circuit cases have similarly applied the rule of reason or more generally

- 8 -

1   evidence regarding the potential benefits of Intuitive's conduct" that is "best left for a jury to

2   weigh."    Dkt. 204 at 18.    This is not the rare situation where the alleged tie is "plainly

3   anticompetitive."

4       *Third*, SIS seems to argue that the difference between a per se and rule of reason case

5   derives from the defendant having "sufficient market power" in the tying market.  *See* Disputed

6   Instruction No. 26.  But that is at odds with *Epic*, and with the Supreme Court's *Illinois Tool Works*

7   decision, which holds that "in **all** cases involving a tying arrangement, the plaintiff must prove that

8   the defendant has market power in the tying product."  547 U.S. at 46 (emphasis added).

9       Moreover, giving both per se and rule of reason instructions would be confusing because

10  ultimately the jury must decide the same elements.  The ABA model instructions for per se and

11  rule of reason tying are identical except that element 5 in the rule of reason instruction—"the tying

12  arrangement has unreasonably restrained trade in that it had a substantial adverse effect on

13  competition as to [the tied product]"—does not appear in the per se instruction.[8]  But even in a per

14  se tying case, the ABA model explains that the plaintiff still must prove that the tying arrangement

15  had "a substantial adverse effect on competition with respect to" the tied product.[9]  The parties

16  have stipulated to including that instruction here.  *See* Stipulated Instruction No. 24.

17      In contrast to SIS's proposed per se tying instruction, Intuitive proposes in Instruction No.

18  16 that the jury be given the ABA model instruction regarding the elements of a tying claim under

19  the rule of reason.  That is the claim that SIS has actually pleaded, and unlike SIS's proposed per

20  se tying instruction, presents all required elements in one place.

21      Finally, SIS proposes two additional instructions regarding the evaluation of SIS's tying

22  claim under the rule of reason in the event that SIS does not prove its tying claim under a "per se"

23

24  discussed the required elements of tying without using the per se label.  *See Aerotec Int'l, Inc.* v.
    *Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178–80 (9th Cir. 2016); *Brantley*, 675 F.3d at 1197.

25  [8] *Compare* MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, Chapter 2  Section 1 of the
    Sherman Act—Tying Arrangements, Instruction 4:  Elements – Unlawful Tying Under Rule of

26  Reason (AM. BAR ASS'N ANTITRUST L. SECTION 2016), *with id.* at Chapter 2  Section 1 of the
    Sherman Act—Tying Arrangements, Instruction 3:  Elements – Per Se Unlawful Tying.

27  [9] MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, Chapter 2  Section 1 of the Sherman

28  Act—Tying Arrangements, Instruction 9:  Foreclosure of a Substantial Volume of Commerce with
    Respect to the Tied Product (AM. BAR ASS'N ANTITRUST L. SECTION 2016).

theory.  *See* Disputed Instruction Nos. 26, 27.  If the Court rejects SIS's proposed "per se" tying Instruction No. 15 and provides Intuitive's proposed Instruction No. 16 on the rule of reason, there is no need to provide these additional rule of reason instructions regarding SIS's tying claim.[10]

## XIII.    THE COURT SHOULD USE INTUITIVE'S MODIFICATION TO THE MODEL IN DISPUTED INSTRUCTION NOS. 17, 18, AND 23

In Disputed Instruction Nos. 17, 18, and 23, each of which elaborates on one of the elements of SIS's tying claim, Intuitive has added a roadmap paragraph to orient the jury as to which element is at issue in the instruction.  Intuitive requests the Court adopt these roadmaps.

Additionally, in Disputed Instruction No. 23, which provides the ABA model instruction regarding market power in the tying market, Intuitive has added a sentence directly from the general ABA model instruction on proof of competitive harm:  "The ability to charge higher prices for better products or services, however, is not market power."[11]   Intuitive requests this modification be adopted because the quality of Intuitive's alleged tying product, the da Vinci, is a fundamental issue in this case and the instruction thus provides helpful context to the jury.

## XIV.    DISPUTED INSTRUCTION NOS. 19. AND 46 REGARDING THE RELEVANT GEOGRAPHIC MARKET, AND DISPUTED INSTRUCTION NOS. 25, 41, 53, AND 58 REGARDING INTERSTATE COMMERCE, SHOULD BE REJECTED

In Disputed Instruction No. 19 and 46, SIS proposed to instruct that "SIS and Intuitive agree that the relevant geographic market is the United States of America."  These instructions are redundant and unnecessary—the parties have stipulated to the geographic market, and the jury will be read that stipulation.  The same goes for SIS's proposed instructions that Intuitive's conduct "occurred in or affected interstate commerce."  In addition to listing that requirement as an element for each claim, *see* Disputed Instruction Nos. 15, 32, 45, 54, SIS proposes to state repeatedly that "Intuitive's agreements affected interstate commerce."  *See* Disputed Instruction Nos. 25, 41, 53, and 58.  Where, as here, this element is not contested, courts omit it.[12]

---

[10] Intuitive has proposed a substantially similar version of SIS's proposed Instruction No. 26 as its Instruction No. 10, which should be given for the reasons above.  *See supra* Section IX.

[11] *See* MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, Chapter 1 – Sherman Act—General, Instruction 3B:  Rule of Reason – Proof of Competitive Harm (AM. BAR ASS'N ANTITRUST L. SECTION 2016).

[12] *See, e.g.*, Jury Instructions at 20, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal. Dec. 6, 2023), Dkt. 850 (omitting interstate commerce element of monopolization

1

2

**XV. DISPUTED INSTRUCTION NOS. 20 AND 33 PROPERLY SET OUT THE LAW ON WHEN AUTHORIZATION REQUIREMENTS CAN AND CANNOT CONSTITUTE TYING OR EXCLUSIVE DEALING**

3    Intuitive's contracts on their face prohibit customers only from using EndoWrists serviced

4  or modified by *unauthorized* or unapproved third parties.  Where, as here, a supplier's "contractual

5  language at least provides for the possibility of purchasing" a secondary product from third-party

6  sources, courts are "reluctant to find a tying arrangement without some evidence that [the

7  defendant] applied the contract language so restrictively as to constitute a de facto tying clause."

8  *Photovest Corp.* v. *Fotomat Corp.*, 606 F.2d 704, 722 (7th Cir. 1979).  Such contracts do not

9  amount to a tie unless the possibility of "authorization" is "illusory."  *Mozart Co.* v. *Mercedes-*

10 *Benz of N. Am., Inc.*, 593 F. Supp. 1506, 1517 (N.D. Cal. 1984) (citing *United States* v. *Mercedes-*

11 *Benz of N. Am., Inc.*, 517 F. Supp. 1369, 1383–84 (N.D. Cal. 1981)); *see also Ford Motor Co.* v.

12 *GMB Universal Joints (West), Inc.*, 1988 WL 82826, at *3 (9th Cir. 1988) (unpublished

13 disposition) (citing *Mozart*, 593 F. Supp. at 1517).[13]  It is the plaintiff's burden to prove that the

14 defendant in fact applied a contractual third-party authorization clause so restrictively as to

15 constitute a de facto tie.  *Photovest*, 606 F.3d at 722.

16    Intuitive's proposed Instruction No. 20 accurately reflects this case law.  Intuitive proposes

17 the same instruction regarding SIS's exclusive dealing claim in Instruction No. 33:  that claim is

18 based on the same contract provisions, and courts often consider tying and exclusive dealing claims

19 arising from the same alleged conduct under the same analytical framework.  *See, e.g.*, *Dream Big*

20 *Media Inc.* v. *Alphabet Inc.*, 2024 WL 3416509, at *5 (N.D. Cal. July 15, 2024).

21    SIS does not challenge Intuitive's articulation of the law, nor does it point to any contrary

22 caselaw.  Instead, SIS asserts that these proposed instructions are "inconsistent with the wording

23

24

---

claim); *id.* at 43 (omitting interstate commerce element of tying claim); Jury Instructions at 15–16, *AngioDynamics, Inc.* v. *C.R. Bard, Inc.*, No. 1:17-cv-00598 (N.D.N.Y. Oct. 6, 2022), ECF No. 472 (omitting interstate commerce element of tying claim).

25

26

[13] Where the defendant "never refused a request to approve a supplier," a third-party authorization clause is not illusory and  there is no tie.  *Betaseed, Inc.* v. *U & I Inc.*, 681 F.2d 1203, 1224 (9th

27 Cir. 1982); *see also Pullos* v. *Alliance Laundry Sys., LLC*, 2009 WL 10708625, at *13 (D. Nev.

28 2009) (rejecting tying claim where customers were permitted to purchase from third parties that met defendant's specifications).

1  of the actual contractual provision that Intuitive seems to rely on here." That is false; even SIS's

2  complaint alleges that "Intuitive's ULSA prohibits customers from engaging any ***unauthorized***

3  third party to repair, refurbish, or recondition EndoWrist instruments . . . ." Dkt. 1 ¶ 4 (emphasis

4  added). If what SIS means is that, according to SIS, the contracts worked differently in practice,

5  then SIS is proposing to displace the role of the jury to determine, as a factual matter, whether

6  Intuitive's contracts actually do allow for its hospital customers to obtain EndoWrist repair

7  services from authorized third-party servicers. The Court should overrule the objection and give

8  Intuitive's proposed Instruction Nos. 20 and 33, so the jury can decide the question, not SIS.

9  **XVI.  THE COURT SHOULD INSTRUCT THE JURY THROUGH DISPUTED**
   **INSTRUCTION NO. 21 THAT VOIDING A WARRANTY IS NOT COERCION**

10

11      Intuitive's contracts with its customers provide that warranties on its products may be

12  voided if the customer uses an unauthorized third-party product or service. In Disputed Instruction

13  No. 21, Intuitive proposes the jury be instructed that such contractual provisions are, as a matter

14  of law, not so coercive as to create a tying arrangement. *See, e.g.*, *Va. Panel Corp.* v. *MAC Panel*

15  *Co.*, 133 F.3d 860, 870 (Fed. Cir. 1997) ("[V]oiding a warranty on a product already sold, while

16  possibly a breach of warranty, cannot be a tying arrangement because the purchaser is not deciding

17  whether to buy a product."); *Marts* v. *Xerox, Inc.*, 77 F.3d 1109, (8th Cir. 1996) ("Although

18  the warranty does condition its continuation on the use of Xerox cartridges, a warranty is only one

19  way of receiving service for a new Xerox copier. . . . An owner of a new Xerox copier could forego

20  the benefits of the warranty, buy service from Xerox or an independent provider, and purchase

21  cartridges from the vendor of its choice."); *Fido's Fences* v. *Canine Fence Co.*, 672 F. Supp. 2d

22  303, 312 (E.D.N.Y. 2009) ("[I]t is well settled that warranties that are not sold as a separate product

23  do not result in consumer coercion if the warranty sets forth requirements.").

24      SIS's objection does not take issue with Intuitive's articulation of the law or cite any

25  contrary law. Instead, SIS again proposes to usurp the role of the jury on a disputed factual

26  question by asserting that the instruction simply "is not applicable to the issues and agreements in

27  this case." But again, SIS's position is inconsistent with its own complaint, which alleges that if

28  a customer violates the prohibitions on unauthorized third-party products and services, "Intuitive

has threatened to void the warranties on the da Vinci robotic system." Dkt. 1 ¶ 86.

While SIS also alleges other consequences associated with such contractual violations, that does not change the fact that at least one of the supposed "threats" on which SIS bases its claim is entirely lawful conduct. The impact of such lawful conduct on customers' decisionmaking, in contrast to any alleged unlawful conduct, is a factual issue for the jury to decide. SIS's objection that its claims are based on "many actions taken by Intuitive," and that "it would be improper to instruct the jury that it cannot find in SIS's favor based solely on a warranty claim" thus has no merit. What would be "improper" would be allowing SIS to bootstrap its way into having the jury consider conduct that, as a matter of law, *cannot* support a tying claim.[14] The Court should reject SIS's attempt to decide disputed issues of fact and introduce legal error.

## XVII. THE COURT SHOULD GIVE INTUITIVE'S VERSION OF DISPUTED INSTRUCTION NO. 28 REGARDING HARM TO COMPETITION

Disputed Instruction No. 28 consists of an ABA model instruction regarding whether SIS has proved, for its tying claim, a substantial harmful effect on competition. The versions proposed by Intuitive and by SIS differ in two respects. *First*, as in Disputed Instruction No. 11, *see supra* Section IX, Intuitive proposes adding a single, direct quote from the Court's summary judgment decision. *See* Dkt. 204 at 17 ("It is not enough that 'conduct has the effect of reducing consumers' choices or increasing prices to consumers.'" (quoting *Qualcomm*, 969 F.3d at 993–94)). *Second*, because Intuitive has proposed that the Court provide an instruction on market power in Instruction No. 11, Intuitive proposes removing the repetitive instruction on that issue in Instruction No. 28.

## XVIII. THE COURT SHOULD GIVE INTUITIVE'S VERSION OF DISPUTED INSTRUCTION NO. 29 REGARDING PROCOMPETITIVE RATIONALES

In Disputed Instruction No. 29, both parties propose an ABA model instruction regarding the second and third steps of the rule of reason analysis. Intuitive has proposed the same modifications it does for Disputed Instruction No. 12, discussed above in Section IX.

---

[14] *See, e.g.*, *Ne. Tel. Co.* v. *Am. Tel. & Tel. Co.*, 651 F.2d 76, 96 (2d Cir. 1981) ("[A] new trial is ordered to enable [plaintiff] to prove [a violation of the Sherman Act] without resort to evidence of conduct that we have found not to have been anticompetitive . . . .").

1

**XIX.  THE COURT SHOULD REJECT DISPUTED INSTRUCTION NO. 30**

2

3

Intuitive objects to SIS's proposed Disputed Instruction No. 30 because it includes a balancing test that the Supreme Court and Ninth Circuit have rejected.  *See supra* Section IX.

4

**XX.  THE JURY SHOULD BE PERMITTED TO EVALUATE THE BUSINESS JUSTIFICATION DEFENSE IN DISPUTED INSTRUCTION NO. 31**

5

6

7

8

9

10

11

12

13

14

15

16

17

Intuitive contends that the contract provisions which SIS challenges as "tying" are justified for legitimate business purposes, including patient safety, protecting Intuitive's brand and reputation, and preventing free riding.  Accordingly, in Disputed Instruction No. 31, Intuitive proposes giving the ABA model instruction on the business justification defense to tying.  Other than filling in a placeholder for Intuitive's specific business justifications, Intuitive proposes only two modifications.  One adds the word "substantially" before "less restrictive means," consistent with controlling Supreme Court and Ninth Circuit law.  *See Epic Games*, 67 F.4th at 985–86, 990 ("[T]his circuit's test—which the Supreme Court approved in *Alston*[, 594 U.S. at 100]—requires a '*substantially* less restrictive' alternative." (emphasis in original)).  The second is to add two sentences explaining that a legitimate business purpose is one that benefits the actor regardless of any harmful effect on competitors, and how to make that determination without reference to the actor's subjective intent.  *See Barry Wright Corp.* v. *ITT Grinnell Corp.*, 724 F.2d 227, 232 (1st Cir. 1983) (Breyer, J.); *see also United States* v. *Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001).

18

19

20

21

22

23

24

25

SIS objects that this instruction should not be given because it is "largely repetitive and unnecessary" in light of the other rule of reason instructions regarding SIS's tying claim.  But the ABA model instruction explains clearly that the business justification defense applies only if the "plaintiff has proven all of the elements of a tying claim"—that is, if the plaintiff has proven its claim under the rule of reason.[15]  In other words, the business justification defense *adds* to the rule of reason and applies even if SIS were to carry its burden under the rule of reason burden-shifting framework.[16]  The Ninth Circuit has endorsed just such an approach.  *See Mozart Co.* v. *Mercedes-*

26

27

28

[15] MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, Chapter 2 – Section 1 of the Sherman Act—Tying Arrangements, Instruction 11:  Business Justification Defense (AM. BAR ASS'N ANTITRUST L. SECTION 2016).

[16] Other courts have given the business justification defense instruction following rule of reason instructions on a tying claim.  *See, e.g.*,  Jury Instructions at 24–25, *AngioDynamics, Inc.* v. *C.R.*

- 14 -

1    *Benz of N. Am., Inc.*, 833 F.2d 1342, 1350 n.7 (9th Cir. 1987).  SIS's objection should be overruled.

2    **XXI.  THE COURT SHOULD ADOPT INTUITIVE'S PROPOSED INSTRUCTION NO.
3          32 REGARDING ELEMENTS OF EXCLUSIVE DEALING**

4          Intuitive's and SIS's competing proposals for Instruction No. 32—which provides the

5    elements for SIS's exclusive dealing claim based on the ABA model instruction—differ in only a

6    few respects.  *First*, for brevity, Intuitive's version of the instruction omits from the first paragraph

7    several examples of types of exclusive dealing arrangements that no party suggests actually apply

8    in this case.  *Second*, in the first element of the claim, Intuitive follows the model instruction's

9    language that SIS must prove that Intuitive's agreements with its customers "*totally* foreclose"

10   purchases from other suppliers, whereas SIS modifies the language of the instruction—without

11   providing any authority—to suggest it must prove only that these agreements "*substantially*

12   foreclose[]" buying from other suppliers.  *Third*, Intuitive proposes to omit the interstate commerce

13   element, which it does not contest.  *See supra* Section XIV.

14   **XXII.  DISPUTED INSTRUCTION NO. 34, WHICH DISCUSSES THREE ELEMENTS
15           OF EXCLUSIVE DEALING, SHOULD BE REJECTED IN FAVOR OF
16           DISPUTED INSTRUCTION NOS. 35, 36, AND 39**

17          In Disputed Instruction No. 34, SIS proposes to give an ABA model instruction, which the

18   ABA titled "Exclusive Dealing – Additional Considerations."  This single model instruction

19   weaves together paragraphs that relate to three separate elements of an exclusive dealing claim:

20   (1) a substantial adverse effect on competition, (2) a substantial foreclosure of competition, and

21   (3) substantial market power.  For analytical clarity, Intuitive proposes that the single instruction

22   be split up, so that each of those elements is explained in its own instruction.

23          In Disputed Instruction No. 35, Intuitive proposes to provide the portions of the "Additional

24   Considerations" instruction that relate to substantial adverse effect on competition.  To the model,

25   Intuitive has added, as in Disputed Instruction Nos. 11 and 28, *supra* Sections IX, XVII, a single,

26   direct quote from the Court's summary judgment decision.  *See* Dkt. 204 at 17 ("It is not enough

27   that 'conduct has the effect of reducing consumers' choices or increasing prices to consumers.'"

28   (quoting *Qualcomm*, 969 F.3d at 993–94)).

---

*Bard, Inc.*, No. 1:17-cv-00598 (N.D.N.Y. Oct. 6, 2022), ECF No. 472.

1      In Disputed Instruction No. 36, Intuitive proposes to provide the portions of the "Additional

2   Considerations" instruction that relate to substantial foreclosure of competition.  Intuitive proposes

3   to change the minimum percentage of the market that must be foreclosed from "20 percent," which

4   is in the model, to "30–40 percent," which more accurately reflects prevailing caselaw.  *See, e.g.*,

5   *Omega Env't, Inc.* v. *Gilbarco, Inc.*, 127 F.3d 1157, 1162–65 (9th Cir. 1997) ("Although 38%

6   [foreclosure] appears significant, . . . we conclude that it considerably overstates the size of the

7   foreclosure and its likely anticompetitive effect for several reasons." (citation and internal

8   quotation marks omitted)); *Sterling Merchandising, Inc.* v. *Nestle, S.A.*, 656 F.3d 112, 123–24 (1st

9   Cir. 2011) ("[I]n applying the rule of reason calculus to exclusive dealing arrangements,

10  foreclosure levels are unlikely to be of concern where they are less than 30 or 40 percent, and while

11  high numbers do not guarantee success for an antitrust claim, low numbers make dismissal easy."

12  (citation and quotation marks omitted)); *United States* v. *Microsoft Corp.*, 87 F. Supp. 2d 30, 52–

13  53 (D.D.C. 2000) (foreclosure rate closer to 40 percent is required before an exclusive contract

14  raises competitive concerns).[17]

15      Finally, in Disputed Instruction No. 39, Intuitive proposes to provide the portions of the

16  "Additional Considerations" instruction that relate to market power.  To provide context for these

17  paragraphs—which are specific to the exclusive dealing context, and relate to the contracting

18  process and sophistication of Intuitive's customers—Intuitive has inserted language on market

19  power from the general rule of reason instruction in Intuitive's proposed Instruction No. 11.

20  **XXIII. THE COURT SHOULD GIVE DISPUTED INSTRUCTION NO. 40 REGARDING**
           **THE RULE OF REASON ANALYSIS FOR SIS'S EXCLUSIVE DEALING**
21         **CLAIM, AND REJECT DISPUTED INSTRUCTION NO. 38**

22      In Disputed Instruction No. 38, SIS proposes—without citation to authority or

23

24  [17] *See also Union Carbide Corp.* v. *Montell N.V.*, 27 F. Supp. 2d 414, 417 (S.D.N.Y. 1998)
    (foreclosure percentage in the 30 percent range is the point at which firms are "presumptively
25  incapable of exercising market power"); AM. BAR ASS'N, 1 ANTITRUST LAW DEVELOPMENTS 213–
    14  (8th ed. 2017) ("Although foreclosure of 20 to 30 percent was a gray area before [*Jefferson
26  Parish Hospital District No. 2* v. *Hyde*, 466 U.S. 2 (1984)], the concurring opinion in *Jefferson
    Parish*, the concurring opinion in *Jefferson Parish*, which found exclusive dealing lawful without
27  detailed analysis when 30 percent of the market was foreclosed, has led many courts to hold that
    higher market share thresholds are a prerequisite to finding exclusive dealing unlawful—and even
28  then, a finding that the arrangement is anticompetitive is not a foregone conclusion.").

explanation—the jury be instructed to "evaluate whether Intuitive's agreements with hospitals amount to an unreasonable restraint of trade that resulted in a substantial adverse effect in the market for replacement and repaired EndoWrists under the rule of reason."  The Court should reject SIS's proposal as insufficient to actually instruct the jury on this issue.  Intuitive proposes in Disputed Instruction No. 40 to give the jury guidance to make this determination, via an ABA model instruction regarding the second and third steps of the rule of reason analysis (which Intuitive has also proposed at Instruction Nos. 12 and 29).  *See supra* Sections IX, XVIII.

**XXIV. DISPUTED INSTRUCTION NO. 43 IS AN UNOBJECTIONABLE ROADMAP**

In Disputed Instruction No. 43, Intuitive merely proposes to provide a roadmap to the jury by stating that SIS has stated claims for monopolization and attempted monopolization under Section 2 of the Sherman Act.  SIS's objections that this completely neutral instruction is somehow "overly argumentative" or "repetitive" border on frivolous, and should be overruled.

**XXV.  DISPUTED INSTRUCTION NO. 44 PURPORTING TO DEFINE MONOPOLY AND ATTEMPTED MONOPOLIZATION SHOULD BE REJECTED**

SIS proposes in its Disputed Instruction No. 44 to "[d]efine" monopolization and attempted monopolization.  But SIS's proposed instruction focuses on defining only monopoly power, and as such risks misleading the jury into believing that the mere possession of monopoly power is unlawful, which is contrary to law.  *See Verizon Commc'ns Inc.* v. *Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).  Further, both parties have proposed in Disputed Instruction No. 48 an instruction on "Monopoly Power Defined," which is drawn directly from the ABA model. There is no reason to give the jury Instruction No. 44 in addition.

SIS's proposed Instruction No. 44 also notes that attempted monopolization claims require only an attempt to achieve a monopoly—not that the defendant actually succeed.  The jury will be instructed on this issue more completely in the instructions on SIS's attempted monopolization claim.  *See* Disputed Instruction Nos. 54, 57.  Instruction No. 44 is thus unnecessary.

**XXVI. DISPUTED INSTRUCTION NO. 45 REGARDING THE ELEMENTS OF MONOPOLIZATION SHOULD OMIT INTERSTATE COMMERCE**

Intuitive's and SIS's competing proposals for Instruction No. 45—providing the elements for monopolization based on the ABA model instruction—differ only in that Intuitive proposes to

1    omit the interstate commerce element, which it does not contest.  *See supra* Section XIV.

2    **XXVII.    THE COURT SHOULD ADOPT INTUITIVE'S DISPUTED
          INSTRUCTION NO. 48 REGARDING MONOPOLY POWER**

3

4            In Disputed Instruction No. 48, both Intuitive and SIS start from the ABA model instruction

5    on the definition of monopoly power.  To that instruction, Intuitive proposes two modifications,

6    which it respectfully requests the Court adopt.  *First*, Intuitive proposes to add a sentence that

7    directly quotes the Ninth Circuit's recent decision in *Epic*, explaining that the acquisition or

8    maintenance of monopoly power is not unlawful if it is comes from "growth or development as a

9    consequence of a superior product, business acumen, or historic accident."  67 F.4th at 998.  This

10   is important to clarify, so the jury does not mistakenly believe that the mere possession of

11   monopoly power may violate the antitrust laws.  *See Law Offices of Curtis V. Trinko*, 540 U.S. at

12   407.  *Second*, Intuitive proposes to add a simple roadmap explaining that the jury will hear, in

     Instruction Nos. 49 and 50, two ways of proving monopoly power (direct and indirect).

13   **XXVIII.    THE COURT SHOULD ADOPT INTUITIVE'S DISPUTED
          INSTRUCTION NO. 49 ON DIRECT EVIDENCE OF MONOPOLY POWER**

14

15           In Disputed Instruction No. 49, both Intuitive and SIS start from the ABA model instruction

16   on proving monopoly power through direct evidence.  To that instruction, Intuitive proposes two

17   modifications.  *First*, Intuitive proposes language to specify that proving monopoly power by

18   direct evidence requires proving *both* that the defendant has the ability to raise or maintain prices,

19   *and* to restrict output, as case law makes clear is required.  *See, e.g.*, *Rebel Oil Co., Inc.* v. *Atl.*

20   *Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995) ("If the plaintiff puts forth evidence of restricted

21   output and supracompetitive prices, that is direct proof of the injury to competition which a

22   competitor with market power may inflict, and thus, of the actual exercise of market power.");

23   *Forsyth* v. *Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997) ("Direct proof of market power may

24   be shown by evidence of restricted output and supracompetitive prices."), *overruled on other*

25   *grounds*, *Lacey* v. *Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012); *Theme Promotions, Inc.* v. *News*

26   *Amer. Mktg. FSI*, 546 F.3d 991, 1001 (9th Cir. 2008) ("Evidence of restricted output and

27   supracompetitive prices is direct evidence of market power.").[18]

28   _____

     [18] *See also Safeway Inc.* v. *Abbott Lab'ys*, 761 F. Supp. 2d 874, 887 (N.D. Cal. 2011) ("To prove

1    *Second*, Intuitive proposes a sentence making clear that, when considering whether prices

2    are supracompetitive, the jury may consider Intuitive's "total fixed costs, including capital costs

3    and research and development."  This is supported by the leading antitrust treatise and several

4    cases.  *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 516g (5th ed. 2023) ("No

5    matter how accurately measured, of course, a substantial excess of price over marginal cost does

6    not necessarily bring excess returns on investment.  A firm generates excess profit only if price

7    exceeds its average total cost, including its cost of capital.").[19]

8    **XXIX. THE COURT SHOULD GIVE INTUITIVE'S VERSION OF DISPUTED
     INSTRUCTION NO. 28 REGARDING HARM TO COMPETITION**

9

10   Disputed Instruction No. 51 on willful acquisition/maintenance of monopoly power is

11   drawn from the ABA model.  As in Disputed Instruction Nos. 11, 28, and 35, *supra* Sections IX,

12   XVII, XXII, Intuitive proposes adding a single, direct quote from the Court's summary judgment

13   decision.  *See* Dkt. 204 at 17 ("It is not enough that 'conduct has the effect of reducing consumers'

14   choices or increasing prices to consumers.'" (quoting *Qualcomm*, 969 F.3d at 993–94)).

15   **XXX.  THE COURT SHOULD REJECT SIS'S DISPUTED INSTRUCTION NO. 52
     REGARDING DESIGN CHANGES, AND ADOPT INTUITIVE'S VERSION**

16   SIS attacks as anticompetitive design changes that Intuitive made with its X/Xi model

17   EndoWrists.  Generally, a design change is not an antitrust violation.  "To count as unlawful

18   exclusionary conduct, a firm must not have had any 'procompetitive justification' for its design

19   change."  Mot. to Dismiss Order, Dkt. 70 at 8 (quoting *Allied Orthopedic Appliances Inc.* v. *Tyco*

20   *Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010)).  Once a firm establishes that its design

21

22   _____

     monopoly power directly, supracompetitive pricing must be accompanied by restricted output. . . .
23   Both are required to prove monopoly power directly."); *CoStar Grp., Inc.* v. *Com. Real Est. Exch.*
     *Inc.*, 2023 WL 2468742, at *5 (N.D. Cal. Feb. 23, 2023) ("[D]irect evidence of the injurious
24   exercise of market power . . . is evidence of restricted output and supracompetitive prices."
     (citation and quotation marks omitted)); *Epic Games, Inc.* v. *Apple Inc.*, 559 F. Supp. 3d 898, 1031
25   (N.D. Cal. 2021) (lack of evidence of restricted output "fatal in demonstrating monopoly power").
     [19] *See also United States* v. *Eastman Kodak Co.*, 63 F.3d 95, 109 (2d Cir. 1995) ("Certain
26   deviations between marginal cost and price, such as those resulting from high fixed costs, are not
     evidence of market power."); *In re Remeron Direct Purchaser Antitrust Litig.*, 367 F. Supp. 2d
27   675, 681 n.10 (D.N.J. 2005) ("[W]ithout evidence that sheds light on material factors such as
     [defendant's] price relative to its total costs (marginal and fixed) . . . , monopoly power cannot be
28   found as a matter of law.").

has a procompetitive reason, "[t]here is no room . . . for balancing the benefits or worth of a product improvement against its anticompetitive effects," and the design "*is necessarily tolerated by the antitrust laws*." *Allied Orthopedic*, 592 F.3d at 1000 (quotation marks omitted; emphasis added).

SIS's version of Instruction No. 52 contradicts Ninth Circuit law. SIS argumentatively and misleadingly starts from the position that redesigning products can give rise to antitrust liability, and then goes on to provide five gratuitous and legally erroneous paragraphs purporting to describe ways that a design change can be anticompetitive. Nowhere does SIS acknowledge that under *Allied Orthopedic*, the presumption is that a design change that improves a product *cannot* give rise to antitrust liability *unless* it is accompanied by some other, associated anticompetitive conduct. Further, at the end of its proposed instruction SIS sets forth its own contentions as to why Intuitive's introduction of the X/Xi model EndoWrists were anticompetitive, without acknowledging any of Intuitive's proffered procompetitive justifications.

Intuitive's version of Instruction No. 52 accurately reflects controlling law under *Allied Orthopedic*, by starting with the proposition that improvement in product design is presumptively procompetitive, while acknowledging that this presumption can be overcome if other associated anticompetitive behavior is present. Intuitive also proposes informing the jury about both its position on the procompetitive justifications for the X/Xi model EndoWrist, and SIS's contention that the introduction of this new technology violated the antitrust laws.

## XXXI. THE COURT SHOULD ADOPT INTUITIVE'S DISPUTED INSTRUCTION NO. 54 REGARDING ELEMENTS OF ATTEMPTED MONOPOLIZATION

Intuitive's and SIS's proposals for Instruction No. 54, elements of attempted monopolization, differ in that SIS suggests the third element state, "there was a dangerous probability that Intuitive would sooner or later achieve its goal of monopoly power . . . ." The ABA model does not include "sooner or later," and SIS offers no justification for its addition. Intuitive also proposes to omit the interstate commerce element. *See supra* Section XIV.

## XXXII. THE COURT SHOULD REJECT SIS'S INJURY INSTRUCTIONS IN DISPUTED INSTRUCTION NOS. 42 AND 59, AND SHOULD INSTEAD GIVE INTUITIVE'S DISPUTED INSTRUCTION NOS. 60, 61, 62, AND 63

At the conclusion of the instructions on both its Section 1 and Section 2 claims, SIS

proposes giving virtually identical versions of an instruction regarding whether SIS has proven that it suffered injury. *See* Disputed Instruction Nos. 42, 59. In addition to being duplicative, both instructions omit key elements from the ABA model instruction on injury. Because SIS's claims are all based on the same alleged conduct, Intuitive proposes one set of instructions on injury after instructing on the other elements of SIS's claims. Intuitive uses an instruction from the ABA model that explains the three elements of injury SIS must prove: injury in fact, causation, and antitrust injury. *See* Disputed Instruction No. 60. Intuitive then proposes breaking up the ABA model instruction into three separate instructions, one for each element. *See* Disputed Instruction Nos. 61, 62, and 63. Intuitive also proposes clarifying the ABA model instruction on causation by stating that if SIS's injuries were caused *primarily* by factors other than the alleged anticompetitive conduct, it has not proven causation. *See Discover Fin. Servs.* v. *Visa U.S.A., Inc.*, 582 F. Supp. 2d 501, 504–05 (S.D.N.Y. 2008). Intuitive requests that the Court reject SIS's proposed Instruction Nos. 42 and 59, and give Intuitive's proposed Instruction Nos. 60, 61, 62, and 63.

**XXXIII.    THE COURT SHOULD GIVE DISPUTED INSTRUCTION NOS. 65 AND 66 REGARDING REMANUFACTURING AND FDA CLEARANCE**

In Disputed Instruction No. 65, Intuitive proposes an instruction for the jury to determine, as a matter of fact, whether the insertion of a memory chip into an EndoWrist to change its usage limit is "remanufacturing." This is the same jury instruction that the court in *Restore Robotics, LLC* v. *Intuitive Surgical, Inc.*, indicated was the "essence of what [it] expected to instruct the jury on" had that case proceeded to trial. *See* Pretrial Conf. Tr. at 93:22–95:5, No. 5:19-cv-00055 (N.D. Fla. Jan. 13, 2023), ECF No. 226. The *Restore* court indicated that although experts could not opine on whether 510(k) clearance is legally required, the jury would decide as a factual matter whether Restore's activities constituted "remanufacturing." *See id.* Its decision to give this instruction was consistent with its summary judgment opinion, which this Court approvingly cited in its own summary judgment opinion. *See* Dkt. 204 at 12–13 (citing *Restore Robotics, LLC* v. *Intuitive Surgical, Inc.*, 2019 WL 8063988, at *2–3 (N.D. Fla. Nov. 14, 2019)).

In Disputed Instruction No. 66, Intuitive proposes to instruct the jury that if SIS could not lawfully insert a memory chip into an EndoWrist to change its usage limit without having obtained

510(k) clearance, then it cannot have suffered antitrust injury.[20]  Notwithstanding the Court's summary judgment rulings, *see* Dkt. 204 at 12–13, Intuitive respectfully submits that this instruction is consistent with prevailing law, and preserves all appellate rights with respect to it.

## XXXIV.    THE COURT SHOULD FOLLOW THE ABA MODEL INSTRUCTION IN DISPUTED INSTRUCTION NOS. 68 AND 70 REGARDING DAMAGES

Intuitive's proposal for Instruction No. 68—which explains how the jury may calculate damages—follows the ABA model.  SIS's proposal combines instructions from multiple sources, without justification.  SIS's approach to Instruction No. 70 should be rejected for the same reason.

## XXXV.    THE COURT SHOULD GIVE DISPUTED INSTRUCTION NO. 69 REGARDING CAUSATION AND DISAGGREGATION

In Disputed Instruction No. 69, Intuitive proposes the ABA model instruction informing the jury that an antitrust plaintiff must "disaggregate" its damages—meaning that it must "segregate the losses . . . caused by acts which were not antitrust violations from those that were." *City of Vernon* v. *S. Cal. Edison Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992).  The model instruction also includes a placeholder to list "examples of ways plaintiff could lose sales in the normal course of competitive business activity," which Intuitive has done.  SIS claims this "instruction is a further attempt by Intuitive to inject into the case matters that are not at issue," by pointing to the fact that SIS's own failure to seek FDA clearance may have contributed to its business failures.  This ignores other factors identified in Intuitive's proposal that may have caused SIS's losses, such as SIS's reliance on Rebotix to provide parts and services, and customer preference for purchasing EndoWrists from Intuitive for safety and liability concerns.  Moreover, whether or not FDA clearance was a legal requirement for SIS's business, SIS could have chosen to seek and obtain that clearance, as Iconocare did.  If all or some of SIS's alleged losses are attributable to SIS's own *choice* not to pursue FDA clearance, those losses cannot be recovered as antitrust damages.

---

[20] *See, e.g.*, *PharmacyChecker.com* v. *Nat'l Assoc. of Bds. of Pharmacy*, 2022 WL 347669, at *3 (S.D.N.Y. Feb. 4, 2022) ("Plaintiff bears the burden of proving that its business is legal."); *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 163–65 (3d Cir. 2017) (Plaintiff "must point to evidence affirmatively showing" it satisfied the legal requirements to engage in the business); *In re Can. Imp. Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006) (antitrust claim dismissed where injury was caused by FDA import restrictions and not defendants' conduct).

**XXXVI.    THE COURT SHOULD ADOPT INTUITIVE'S VERSION OF DISPUTED INSTRUCTION NO. 71 REGARDING FUTURE LOST PROFITS**

Intuitive's and SIS's competing proposals for Instruction No. 71, regarding future lost profits, are both based on the ABA model, but differ in two respects.  The Court should adopt Intuitive's version.  *First*, SIS asserts that it is claiming entitlement to damages for lost profits stretching "2 years into the future."  However, until October 25, 2024, SIS's damages expert, Richard Bero, had not disclosed any opinion about lost profit damages beyond the end of 2025.  SIS has now provided an update to Bero's damages calculations that purports to show SIS's damages through 2026, but with no supporting documentation or evidence.  The law is clear that the jury may not award damages based on "speculation or guesswork."  *Bigelow* v. *RKO Radio Pictures*, 327 U.S. 251, 264 (1946).  *Second*, while the ABA model instruction tells the jury that it should discount future damages to present value, it does not say what discount rate to use.  Intuitive has added a sentence from the Ninth Circuit's model jury instructions, which provides this missing explanation.[21]

**XXXVII.    THE COURT SHOULD ADOPT INTUITIVE'S VERSION OF DISPUTED INSTRUCTION NO. 72 REGARDING MITIGATION OF DAMAGES**

Intuitive proposes, in Instruction No. 72, to provide the ABA model instruction on a plaintiff's duty to mitigate its damages.  SIS objects that "mitigation is not at issue because Intuitive has not asserted SIS failed to mitigate its damages."  This ignores that SIS's own damages expert stated in his report:  "Inherent within [his lost profits damages analysis] is the question of mitigation," and that his but-for world analysis is based on his "understand[ing that] SIS has mitigated its lost profits to the best of its ability."  *See* Dkt. 229-45 at 42.

**XXXVIII.    THE COURT SHOULD USE INTUITIVE'S VERSION OF DISPUTED INSTRUCTION NO. 74 ON THE ELEMENTS OF ITS LANHAM ACT CLAIM**

In its first counterclaim, Intuitive alleges that SIS engaged in unfair competition and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125.  Because the Ninth Circuit does not have model jury instructions for such a claim, Intuitive has proposed in Instruction No. 74 one that

---

[21] *See* MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT § 5.4 (9th Cir. Jury Instructions Comm. 2017 ed.).

is based on model jury instructions from the Seventh, Eighth, and Eleventh Circuits, and that is

consistent with Ninth Circuit case law.  *See Southland Sod Farms* v. *Stover Seed Co.*, 108 F.3d

1134, 1139 (9th Cir. 1997); *Newcal Indus., Inc.* v. *Ikon Office Solution*, 513 F.3d 1038, 1052 (9th

Cir. 2008).  SIS proposes an instruction that parrots the text of the statute, without reference to

case law distilling it into the elements of a claim.  Intuitive requests that the Court give its version.

## XXXIX.    THE COURT SHOULD REJECT SIS'S ADDITION TO DISPUTED INSTRUCTION NO. 76 REGARDING COMMERCIAL PROMOTIONS

Intuitive's and SIS's competing proposals for Instruction No. 76—which instructs the jury

on what constitutes a "commercial advertisement or promotion"—differ in only one respect.  To

Intuitive's proposal, SIS has added a statement that "a handful of statements to customers does not

trigger protection from the Lanham Act unless the potential purchasers in the market are relatively

limited in number," citing *Coastal Abstract Serv., Inc.* v. *First Am. Title Ins. Co.*, 173 F.3d 725,

735 (9th Cir 1999).  That presents an unduly restrictive view of the law.  Cases from within the

Ninth Circuit make clear that "the inquiry focuses on the 'relevant industry' and whether the

communication was sufficiently disseminated in that context," and that in the right context, "even

a single promotional representation to an individual purchaser may be enough to trigger the

protections of the [Lanham] Act." *Gonzalez* v. *Allstate Ins. Co.*, 2005 WL 5891935, at *7 (C.D.

Cal. Aug. 2, 2005).  The undisputed portions of Instruction No. 76 already explain that "informal

types of promotion" may qualify, as long as they were "disseminated sufficiently to the potential

customers to constitute advertising or promotion within that industry."  SIS's proposal focusing

on the number of potential purchasers would unduly restrict the jury's inquiry.

## XL.    THE COURT SHOULD ADOPT INTUITIVE'S VERSION OF DISPUTED INSTRUCTION NO. 77 REGARDING LANHAM ACT INJURY

Intuitive's proposed Instruction No. 77 regarding its injuries from its Lanham Act claim is

based on model instructions from the Seventh, Eighth, and Eleventh Circuits, and is consistent

with Ninth Circuit precedent, which Intuitive has supplemented by reference to Supreme Court

case law explaining how a plaintiff can actually prove such injury.  SIS objects that this instruction

is "repetitive" in light of Instruction No. 72, which provides the elements of Intuitive's Lanham

Act claim.  But that mere listing of the elements provides no information for the jury about what

types of injury are cognizable.  Instruction No. 77 provides that necessary instruction to the jury.

SIS, in the alternative, proposes its own version of Instruction No. 77, that differs from Intuitive's version only in that it includes language regarding what makes a statement false or misleading.  That issue is already covered in the parties' Stipulated Instruction No. 75.

## XLI. THE COURT SHOULD USE INTUITIVE'S VERSION OF DISPUTED INSTRUCTION NO. 78 ON THE ELEMENTS OF UNFAIR COMPETITION

There are no model instructions for common law unfair competition, so  Intuitive's version of Instruction No. 78 derives them from case law.  SIS proposes an instruction that provides *no* elements, and suggests this claim should succeed or fail solely based on Intuitive's Lanham Act claim.  While the Ninth Circuit has explained that common law unfair competition is "substantially congruent" to a *trademark infringement* claim under the Lanham Act, *see e.g.*, *Acad. of Mot. Picture Arts & Scis.* v. *Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991), it has not said the same about the Lanham Act claim for unfair competition and false advertising at issue here.  Intuitive thus requests that the Court give its version of Instruction No. 79.

## XLII. THE COURT SHOULD USE INTUITIVE'S VERSION OF DISPUTED INSTRUCTION NO. 79 ON TORTIOUS INTERFERENCE WITH CONTRACT

While both SIS and Intuitive derive Disputed Instruction No. 79 on the elements of Intuitive's tortious interference with contract claim from the California Civil Jury Instructions, in the third element SIS omits language from the model, which allows for liability if Intuitive can prove that SIS "knew that disruption of performance [of the contract] was certain or substantially certain to occur."[22]  SIS offers no justification or authority for this omission.

## XLIII. THE COURT SHOULD GIVE INTUITIVE'S VERSION OF DISPUTED INSTRUCTION NO. 80 REGARDING DAMAGES ON ITS COUNTERCLAIMS

In Disputed Instruction No. 80, Intuitive proposes instructions on how to evaluate Intuitive's claimed damages.  To do so, it provides some context to explain, for example, that the damages sought are compensatory and Intuitive must prove its damages by a preponderance of the evidence.  SIS's version of Instruction No. 80 proposes to omit that helpful context.

---

[22] Judicial Council of California Civil Jury Instructions 2201 – Intentional Interference with Contractual Relations – Essential Factual Elements (2024 ed.).

| 1 | Dated:  October 28, 2024 | By: /s/ *Kenneth A. Gallo* |
| 2 | | Kenneth A. Gallo |
| 3 | | Kenneth A. Gallo (*pro hac vice*) |
| | | Paul D. Brachman (*pro hac vice*) |
| 4 | | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
| 5 | | 2001 K Street, NW |
| | | Washington, DC  20006-1047 |
| 6 | | Telephone:  (202) 223-7300 |
| 7 | | Facsimile:  (202) 204-7420 |
| | | Email: kgallo@paulweiss.com |
| 8 | | Email: pbrachman@paulweiss.com |
| 9 | | William B. Michael (*pro hac vice*) |
| | | Crystal L. Parker (*pro hac vice*) |
| 10 | | Daniel A. Crane (*pro hac vice*) |
| 11 | | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
| 12 | | 1285 Avenue of the Americas |
| | | New York, NY 10019-6064 |
| 13 | | Telephone:  (212) 373-3000 |
| 14 | | Facsimile:  (212) 757-3990 |
| | | Email: wmichael@paulweiss.com |
| 15 | | Email: cparker@paulweiss.com |
| | | Email: dcrane@paulweiss.com |
| 16 | | |
| 17 | | Joshua Hill Jr. (SBN 250842) |
| | | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
| 18 | | 535 Mission Street, 24th Floor |
| 19 | | San Francisco, CA 94105 |
| | | Telephone:  (628) 432-5100 |
| 20 | | Facsimile:  (628) 232-3101 |
| 21 | | Email: jhill@paulweiss.com |
| 22 | | Sonya D. Winner (SBN 200348) |
| | | **COVINGTON & BURLINGTON LLP** |
| 23 | | 415 Mission Street, Suite 5400 |
| | | San Francisco, California 94105-2533 |
| 24 | | Telephone:  (415) 591-6000 |
| 25 | | Facsimile:  (415) 591-6091 |
| | | Email: swinner@cov.com |
| 26 | | |
| 27 | | Kathryn E. Cahoy (SBN 298777) |
| | | **COVINGTON & BURLINGTON LLP** |
| 28 | | 3000 El Camino Real |

- 26 -

Defendant's Memorandum of Law in Support of Disputed Jury Instructions
3:21-cv-03496-AMO

1    5 Palo Alto Square, 10th Floor
     Palo Alto, California 94306-2112
2    Telephone: (650) 632-4700
     Facsimile: (650) 632-4800
3    Email: kcahoy@cov.com

4
     Andrew Lazerow (*pro hac vice*)
5    **COVINGTON & BURLINGTON LLP**
     One City Center 850 Tenth Street NW
6    Washington DC 20001-4956
     Telephone: (202) 662-6000
7    Facsimile: (202) 662-6291
     Email: alazerow@cov.com
8

9    Allen Ruby (SBN 47109)
     **ALLEN RUBY, ATTORNEY AT LAW**
10   15559 Union Ave. #138
     Los Gatos, California 95032
11   Telephone: (408) 477-9690
     Email: allen@allenruby.com
12

13   *Attorneys for Defendant*
     *Intuitive Surgical, Inc.*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Memorandum of Law in Support of Disputed Jury Instructions
3:21-cv-03496-AMO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

On October 28, 2024, I caused a copy of Intuitive's Memorandum of Law in Support of Disputed Jury Instructions to be electronically filed via the Court's Electronic Case Filing System, which pursuant to the Court's order of September 29, 2008, constitutes service in this action on counsel of record for Surgical Instrument Service Company, Inc.

Dated: October 28, 2024                          By:  */s/ Kenneth A. Gallo*
                                                      Kenneth A. Gallo