Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

*Attorneys for Defendant and Counter-Claimant,*
*Intuitive Surgical, Inc.*

**MCCAULLEY LAW GROUP LLC**
Joshua V. Van Hoven, (CSB No. 261815)
E-Mail: josh@mccaulleylawgroup.com
3001Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: 925.302.5941

Richard T. McCaulley (*pro hac vice*)
E-Mail: richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: 312.330.8105

*Attorneys for Plaintiff and Counter-Defendant*
*Surgical Instrument Service Company, Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC., | Case No. 3:21-cv-03496-AMO |
| *Plaintiff/Counter-Defendant,* v. | **JOINT PROPOSED FINAL PRETRIAL ORDER** |
| INTUITIVE SURGICAL, INC., | Date:  November 25, 2024<br>Time:  11:00 a.m.<br>Courtroom:  10 |
| *Defendant/Counter-Claimant* | The Honorable Araceli Martínez-Olguín |

Pursuant to the Court's Schedule and Pretrial Order of June 11, 2024, Dkt. 235, Plaintiff Surgical Instrument Service Company, Inc. ("SIS") and Defendant Intuitive Surgical, Inc. ("Intuitive") hereby submit the following Proposed Final Pretrial Order.

## A.    CLAIMS AND DEFENSES TO BE DECIDED

### 1.    SIS's Description of Its Claims[1]

SIS has offered repair services for medical devices for more than 50 years. In late 2019, SIS began to offer repair services that allowed its hospital clients to safely use Endowrist instruments beyond the limited number of uses set by Intuitive. When Intuitive discovered that its customers were using SIS's services, it immediately leveraged its anti-competitive agreements and monopoly power to crush this threat to its supra-competitive EndoWrist profitability. Intuitive's agreements with hospitals include numerous restrictive terms that allow Intuitive to render the da Vinci surgical robots effectively inoperable, and it threatened to (and did) exercise those terms against hospitals that used SIS's services. Despite the massive savings to hospitals and patients from SIS's EndoWrist program, SIS's customers and potential customers had no choice but to capitulate to Intuitive's threats.

Intuitive has used its monopoly power in the minimally invasive soft tissue ("MIST") surgical robot market, in the separate EndoWrist instrument replacement aftermarket, as well as in the servicing of its da Vinci MIST surgical robots, to engage in a variety of anticompetitive practices resulting in an unlawful restraint of trade. These exclusionary practices essentially prevent hospitals, health care systems, and GPO's from having access to competitors that offer to repair and refurbish EndoWrist instruments, including resetting the EndoWrist usage counter, which have been previously used.

Intuitive wields its monopoly power in the market for MIST surgical robots to coerce hospitals, health care systems, and GPO's to act in ways that have anticompetitive effects thus harming competition. Such coercion is backed up by Intuitive's threats to withhold technical support and servicing for the da Vinci surgical robots purchased by hospitals, health care

---

[1] Intuitive does not agree with or endorse SIS's description of its claims in this Section.

Proposed Final Pretrial Order
3:21-cv-03496-AMO

systems, and GPO's and to deny those customers access to additional and/or replacement EndoWrist instruments.

An additional exclusionary tactic used by Intuitive was redesigning its EndoWrist instruments for use with it X/Xi surgical robots to prevent third-party servicers from resetting the use counter on those instruments. More particularly, Intuitive's engineering design changes adopted RFID encryption for the use counter in the X/Xi EndoWrist instruments primarily to block independent repair companies from resetting the use counters.

SIS contends that the practices briefly summarized above violate Sections 1 and 2 of the Sherman Act. Intuitive denies these claims.

2. Intuitive's Description of Its Claims and Defenses to SIS's Claims[2]

SIS has asserted four antitrust claims all based on the same alleged conduct by Intuitive. SIS asserts claims under Section 1 of the Sherman Act for Tying (Dkt. 1, Count I, ¶¶ 111-113) and Exclusive Dealing (*id.*, Count II, ¶¶ 114-116), and under Section 2 of the Sherman Act for Monopolization (*id.*, Count III, ¶¶ 117-119) and Attempted Monopolization (*id.*, Count IV, ¶¶ 120-121). SIS also asserted a claim for Unfair Trade Practices—Violation of the Lanham Act (*id.*, Count V, ¶¶ 122-126), but that claim was dismissed by the Court at summary judgment (Dkt. 209 at 15, 19.) SIS bears the burden of proving each and every element of its remaining claims (Counts I-IV) Intuitive contends that SIS will not be able to carry its burden as to any of these claims for at least the following reasons:

1.    Intuitive did not engage in unlawful tying, exclusive dealing, or any other form of anticompetitive conduct. Intuitive's contracts restrict only the use of unauthorized third-party products and services, and SIS chose not to seek authorization for its products and services. Such contractual authorization requirements do not constitute tying or exclusive dealing arrangements, do not foreclose competition, and do not violate the antitrust laws.

2.    The contractual provisions that SIS challenges were put in place for legitimate and procompetitive business reasons, at a time when Intuitive had no significant sales or share of any market, and those provisions remain procompetitive. The procompetitive rationales include

---

[2] SIS does not agree with or endorse Intuitive's description of its claims in this Section.

1   protecting patient safety, ensuring product quality, promoting innovation, and protecting

2   Intuitive's reputation and brand.  SIS cannot prove the availability of any substantially less

3   restrictive means of achieving Intuitive's legitimate business objectives.

4   3.       Intuitive did not coerce its customers to buy anything from Intuitive.  Customers choose

5   its da Vinci surgical systems over other competing alternatives because Intuitive offers a superior

6   combination of product quality, service and price.  Intuitive's customers are highly sophisticated

7   buyers who understand the contract terms and costs associated with da Vinci systems, including

8   EndoWrists, understand that EndoWrists are designed for a limited number of uses, and

9   knowingly and expressly agree not to use EndoWrists that have been modified by any

10  unauthorized third party when they make the choice to buy or lease a da Vinci system.

11  4.       Intuitive contracts have not harmed competition or excluded competitors.

12  5.       Intuitive lacks the power to force customers to accept its contractual terms.

13  6.       Contractual provisions that void warranties in the event the customer uses unauthorized

14  third-party products or services are not anticompetitive as a matter of law.

15  7.       Intuitive does not have market power or monopoly power in any properly defined

16  antitrust market.  The da Vinci surgical system competes against other products and methods of

17  performing surgery, including open and laparoscopic surgery, and customers can elect to use

18  those alternative products and surgical methods if they do not wish to accept Intuitive's products,

19  prices or contract terms.

20  8.       There is no market limited to "EndoWrist repair and replacement."  SIS cannot establish

21  the legal requirements for a single-brand market.

22  9.       SIS has not suffered any antitrust injury as a result of Intuitive's conduct.  SIS's claimed

23  injuries are the result of other factors, including the competitive process itself and SIS's own

24  choices about how to run its business.

25  10.      SIS is not entitled to any antitrust damages.  SIS cannot prove any non-speculative

26  amount of lost profits.  Nor can it separate out any losses caused by the alleged anticompetitive

27  conduct from losses caused by other, lawful factors.

28

Proposed Final Pretrial Order
3:21-cv-03496-AMO

1    Intuitive asserts five counterclaims against SIS arising out of SIS's marketing, advertising

2    and related activities.  In its marketing materials and communications, SIS made numerous false

3    and misleading statements, including but not limited to statements that misrepresent:  (i) the

4    nature, efficacy, and/or safety of the service SIS coordinates (*e.g.*, by referring to those services

5    as mere "repairs" or similar terms); (ii) that "repaired" EndoWrists meet applicable quality and

6    functional requirements; (iii) that devices "serviced" through SIS had been repaired to meet

7    "original specifications" of EndoWrists and are safe to use; (iv) that SIS itself developed, has

8    tested and conducts the "repairs," and/or has a patent for the "repair" process; (v) that use of the

9    service will result in substantial cost savings; (vi) that use of the service does not carry any

10   adverse financial, legal or other consequences (e.g., voiding Intuitive customers' warranties);

11   (vii) that use limits built into EndoWrists are "arbitrary" or Intuitive otherwise is not trustworthy;

12   and (viii) that SIS and/or the "repair" service is authorized, approved, or endorsed by Intuitive.

13   SIS has also engaged in other deceptive and fraudulent conduct with the intent to confuse and

14   deceive the public into using its service and purchasing modified EndoWrists.

15       Intuitive asserts that these acts by SIS constitute Unfair Competition and False

16   Advertising in violation of the Lanham Act, 15 U.S.C. § 1125 (Dkt. 75, Count One, ¶¶ 84-91);

17   Unfair Competition under CA. Stat. § 17200 (*id.*, Count Two, ¶¶ 92-96); False Advertising under

18   CA Stat. § 17500 (*id.*, Count Three, ¶¶ 97-100); and Unfair Competition under common law (*id.*,

19   Count Four, ¶¶ 101-104).  In addition, SIS undertook intentional acts to disrupt and/or induce

20   Intuitive customers to breach their contractual relationships with Intuitive.  Intuitive asserts that

21   these acts constitute Tortious Interference with Contract (*id.*, Count Five, ¶¶ 105-109).  Intuitive

22   further asserts a defense to SIS's claims of unclean hands (*id.*, p. 39), based on SIS's misconduct.

23   SIS denies Intuitive's counterclaims.

24       **B.    RELIEF REQUESTED**

25       1.    <u>SIS's Statement of Relief Requested</u>

26       SIS seeks monetary damages that it claims are sufficient to compensate it for Intuitive's

27   violations of Section 1 and Section 2 of the Sherman Act.  SIS contends that such monetary

28   damages will be comprised primarily of lost profits resulting from Intuitive's anti-competitive

conduct.  SIS also seeks equitable relief from the Court in the form of an injunction precluding Intuitive from engaging in the conduct complained of in the complaint and any other anti-competitive conduct established at trial.  The exact contours of the injunctive relief are to be established after all of the evidence is heard at trial.

### 2.  Intuitive's Statement of Relief Requested

Intuitive seeks damages it asserts were caused by SIS's false and misleading statements and SIS's tortious interference with contract.  In addition to damages, Intuitive may also seek— as equitable relief, to be determined by the Court—disgorgement of profits and injunctive relief, including preventing SIS from making false and misleading statements or interfering with Intuitive's contracts with its customers.  Intuitive also seeks costs, expenses, reasonable attorneys' fees, and post-judgment interest on all sums awarded, in amounts to be determined by the Court.

**C.    STIPULATED FACTS**

1.    The relevant geographic market for the antitrust claims in this action is the United States.

2.    SIS filed suit against Intuitive on May 1, 2021.

3.    SIS began offering reset S/Si EndoWrists to its customer base in fall of 2019.

**D.    JOINT EXHIBIT LIST**

See Appendix D, attached.

The parties stipulate to the following relating to exhibits, including trial exhibits and demonstrative exhibits:

1.    ***Party-Produced Documents***.  The Parties agree that neither Party will lodge objections to exhibits produced from either Party's files in the N.D. Cal. Actions, or the "related actions" as defined by SIS in its First Requests for Production, on the basis that they are not authentic or do not qualify as business records under Federal Rule of Evidence 803(6); provided, however, that each Party may lodge objections to specific documents as to which the Party has a good faith argument that the document is not authentic or does not qualify as a business record.

1  No other objection shall be waived as a result of this stipulation, including any objection on the

2  basis of hearsay-within-hearsay.

3       2. ***Third Party-Produced Documents***.  The Parties agree that the third party-

4  produced documents listed in Appendix A are authentic and constitute business records, as

5  apparent on their face under Rules 803(6), 901(a).  Each of the documents in Appendix A was

6  produced from the files of a third party in response to subpoenas served in this litigation or the

7  related actions, or otherwise appears on the third party's website.  No other objection shall be

8  waived as a result of this stipulation, including any objection on the basis of hearsay-within-

9  hearsay.

10       3. ***Further Stipulations on Admissibility of Exhibits***.  The Parties agree to work

11  together to identify documents falling within the following categories, and to stipulate to the

12  admissibility of such documents: (1) transactional and other data relied upon by the Parties'

13  experts or by the Parties themselves in conducting their day-to-day business; and (2) contracts

14  executed by a Party and produced by a Party.

15       4. ***Exchange of Exhibits for Direct Examination of Witnesses***.  Each Party will

16  disclose, by exhibit number, the exhibits that will be used in its direct examination of a witness

17  called in its case-in-chief no later than 9:00 a.m. on the day before the Party reasonably

18  anticipates the witness will testify.  This stipulation shall not apply to documents that prove

19  necessary to refresh the witness's recollection.

20       5. ***Exchange of Demonstrative Exhibits for Witness Examinations***.  Each Party

21  will disclose the demonstrative exhibits (including slides) to be used in its direct examination of

22  a witness called in its case-in-chief no later than 9:00 a.m. on the day before the Party reasonably

23  anticipates the witness will testify.  Demonstrative exhibits (including slides) that will not be

24  moved into evidence do not need to be identified on the Parties' exhibit lists.

25       6. ***Exchange of Demonstrative Exhibits for Opening Statements***.  The Parties will

26  exchange the demonstrative exhibits (including slides) to be used in opening statements the day

27  before opening statements are to be given.  The Parties agree to negotiate the exact timing of this

28  exchange at a later date.

7.     ***Exchange of Demonstrative Exhibits for Closing Statements***.  The Parties agree to negotiate the timing for the exchange of demonstrative exhibits to be used in closing arguments at a later date.

8.     ***Summary Exhibits***. The Parties agree that the Parties identify Rule 1006 summary exhibits by description on the Parties' exhibit lists, but agree to exchange the summaries themselves no later than 14 days before the first day of trial, and exchange objections to summary exhibits no later than 7 days before the first day of trial.

9.     ***Exchange of Real Evidence***. The Parties agree to identify real evidence by description on the Parties' exhibit lists, and to make such evidence available for inspection and to exchange objections based on such inspection at a later date to be agreed upon by the Parties but no later than November 22.  For the avoidance of doubt, this does not include objects to be used solely as demonstratives

**E.     PARTIES' WITNESS LISTS**

See Appendix E, attached.

The parties stipulate to the following relating to trial witnesses and deposition designations:

1.     ***Video depositions.***  The Parties agree that for any witness whose video depositions will be played for the jury, ***any*** testimony designated or counter-designated by any party will be played to the jury in a continuous manner, i.e., all designations will be played sequentially in the order the testimony was given in the deposition.

2.     ***Trial Time***.  The Parties agree to divide the allotted trial time evenly.  Each Party's allotted trial hours shall be inclusive of opening statements, closing statements, direct and cross examination, and the reading/playing of that Party's deposition designations.

**IT IS SO ORDERED.**

Dated: _____

Proposed Final Pretrial Order
3:21-cv-03496-AMO

Dated:  October 28, 2024

By: /s/ *Kenneth A. Gallo*
Kenneth A. Gallo

Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

William B. Michael (*pro hac vice*)
Crystal L. Parker (*pro hac vice*)
Daniel A. Crane (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:  (628) 432-5100
Facsimile:  (628) 232-3101
Email: jhill@paulweiss.com

Sonya D. Winner (SBN 200348)
**COVINGTON & BURLINGTON LLP**
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091
Email: swinner@cov.com

Kathryn E. Cahoy (SBN 298777)
**COVINGTON & BURLINGTON LLP**
3000 El Camino Real

5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: kcahoy@cov.com

Andrew Lazerow (*pro hac vice*)
**COVINGTON & BURLINGTON LLP**
One City Center 850 Tenth Street NW
Washington DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: alazerow@cov.com

Allen Ruby (SBN 47109)
**ALLEN RUBY, ATTORNEY AT LAW**
15559 Union Ave. #138
Los Gatos, California 95032
Telephone: (408) 477-9690
Email: allen@allenruby.com

Attorneys for *Defendant*
*Intuitive Surgical, Inc.*

Dated:  October 28, 2024                By: /s/ *Richard T. McCaulley*
                                             Richard T. McCaulley

Richard T. McCaulley (*pro hac vice*)
**MCCAULLEY LAW GROUP LLC**
E-Mail: 180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: (312) 330-8105
richard@mccaulleylawgroup.com

Joshua V. Van Hoven (CSB No. 262815)
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: (925) 302-5941
E-Mail: josh@mccaulleylawgroup.com

*Attorneys for Plaintiff Surgical Instrument*
*Service Company, Inc.*

**E-Filing Attestation**

I, Kenneth A. Gallo, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above have concurred in this filing.


Dated:  October 28, 2024                    By:   */s/ Kenneth A. Gallo*
                                                      Kenneth A. Gallo