**EXHIBIT 8**

to

**PAUL D. BRACHMAN DECLARATION IN SUPPORT OF DEFENDANT'S TRIAL BRIEF**

```
                        UNITED STATES DISTRICT COURT
1                       NORTHERN DISTRICT OF FLORIDA
                             PANAMA CITY DIVISION
2

3

     RESTORE ROBOTICS, LLC,             )
4    RESTORE ROBOTICS REPAIRS, LLC,     )
     and CLIF PARKER ROBOTICS, LLC,     )
5                                       )
              Plaintiffs,               )
6                                       )
         v.                             )
7                                       )
                                        )
8    INTUITIVE SURGICAL, INC.,          )  Case No: 5:19-CV-55/TKW-MJF
                                        )
9             Defendant.                )  Pensacola, Florida
     _____)  January 13, 2023
10                                      )
     INTUITIVE SURGICAL, INC.,          )  2:02 p.m.
11                                      )
              Counterclaimant,          )
12       v.                             )
                                        )
13   RESTORE ROBOTICS, LLC,             )
     RESTORE ROBOTICS REPAIRS, LLC,     )
14   and CLIF PARKER ROBOTICS, LLC,     )
                                        )
15            Counterclaim              )
              Defendants.               )
16   _____)

17

18            TRANSCRIPT OF PRETRIAL CONFERENCE
          BEFORE THE HONORABLE T. KENT WETHERELL, II
19               UNITED STATES DISTRICT JUDGE
                    (Pages 1 through 108)
20

21

22

23

24              Julie A. Wycoff, RMR, CRR
             Official United States Court Reporter
25          (850) 470-8196 * julieawycoff@gmail.com
```

```
 1   APPEARANCES:

 2   For the Plaintiffs:      Jeffrey L. Berhold, P.C.
                              by:  JEFFREY L. BERHOLD
 3                            1230 Peachtree Street
                              Suite 1050
 4                            Atlanta, Georgia 30309
                              (404) 872-3800
 5                            jeff@berhold.com

 6                            Harrison Rivard Duncan & Buzzett
                              by:  WILLIAM G. HARRISON
 7                            101 Harrison Avenue
                              Panama City, Florida 32401
 8                            (850) 769-1414
                              wharrison@harrisonrivard.com
 9
10   For the Defendant:       ALLEN J. RUBY
                              15559 Union Avenue
11                            Suite 138
                              Los Gatos, California 95032
12                            (408) 477-9690
                              allen@allenruby.com
13
                              Covington & Burling, LLP
14                            by:  SONYA D. WINNER and
                                   ANDREW D. LAZEROW
15                            One CityCenter
                              850 Tenth Street NW
16                            Washington, DC 20001
                              (202) 662-5638
17                            swinner@cov.com
                              alazerow@cov.com
18
                              Skadden Arps Slate Meagher & Flom, LLP
19                            by:  KAREN M. LENT
                                   MICHAEL H. MENITOVE
20                            One Manhattan West
                              New York, New York 10001
21                            (212) 735-3000
                              karen.lent@skadden.com
22                            michael.menitove@skadden.com

23                            Beggs & Lane
                              by:  DAVID L. MCGEE
24                            501 Commendencia Street
                              Pensacola, Florida 32501
25                            (850) 432-2451
                              dlm@beggslane.com
```

```
 1                    P R O C E E D I N G S
 2          (Call to Order of the Court.)
 3              THE COURT:  Y'all be seated, please.
 4              All right.  This is Case Number 5:19cv55, Restore
 5   Robotics v. Intuitive Surgical.
 6              Why don't we begin with appearances, please.
 7              MR. BERHOLD:  Good afternoon, Your Honor.  Jeff
 8   Berhold for plaintiffs.
 9              MR. HARRISON:  William Harrison for the plaintiffs.
10              MR. RUBY:  Good afternoon, Your Honor.  My name is
11   Allen Ruby for the defendant.
12              MR. LAZEROW:  Good afternoon, Your Honor.  Andrew
13   Lazerow for defendant, Intuitive Surgical.
14              MS. WINNER:  Good afternoon, Your Honor.  Sonya Winner
15   for defendant, Intuitive.
16              MS. LENT:  Good afternoon.  Karen Lent for Intuitive.
17              MR. MENITOVE:  Good afternoon.  Mike Menitove for
18   Intuitive.
19              MR. MCGEE:  Good afternoon, Judge.  David McGee for
20   Intuitive Surgical.
21              THE COURT:  All right.  Good afternoon to everybody.
22              We've got a fair amount to cover today, and we've got
23   as much time as we need to do it.
24              I guess let me -- let's kind of begin out of order.  I
25   have one of our marshals up here because one of the issues the
```

1    saying, "We had this series of correspondence" -- excuse me --
2    "and the FDA quite recently said, when you do this, it's
3    remanufacturing."
4              And the jury can decide, is that what Restore was
5    doing and does that require 510(k) clearance or not?
6              But we thought that she stopped short of the line that
7    you drew, which was to say, is 510(k) clearance required?  She
8    did not say that.
9              THE COURT:  Well, I'm reading the last sentence of her
10   updated report where she says, "The consistency of these
11   communications, as well as the creation of a new product code,
12   demonstrates that the FDA has a clear and distinct policy that
13   any increase in the number of uses to EndoWrist instruments
14   beyond which they were originally cleared requires a 510(k)
15   submission, review, and a clearance determination of the
16   510(k)."
17             MS. LENT:  And that's her explaining what that QSM
18   code means.  Again, I think that that's consistent with your
19   order.  She's not saying, "Restore needed 510(k) clearance."
20   She's saying, "The FDA has determined that extending the number
21   of uses in these EndoWrist instruments is remanufacturing.
22   Under the FDA regulations, remanufacturing requires
23   510(k) clearance."  I think that's as far as she'd go.
24             THE COURT:  I guess, to me, that -- the conclusion
25   she's drawing there is, if not over the line I thought I drew,

1   it's further than I think she should be permitted to go.  I

2   don't have a problem with her describing that -- what I just

3   said, that on the newfangled Xi version, Intuitive submitted a

4   request, or whatever they did, and the FDA sent it back and said

5   they have to go through 510.  I mean, that fact could be

6   evidence from which the jury could infer that the FDA has

7   decided that it's required.

8           Similarly with the QSM code, the fact that they have

9   created a new code could be evidence from which the jury could

10  infer that 510 clearance is required.

11          Finally, this whole run-it-up-the-chain process,

12  again, is evidence from which the jury could infer that that

13  statement from the team lead is wrong, right -- I don't remember

14  exactly what it was.

15          But I think all of those facts, I don't have a problem

16  with her coming in and telling the jury what happened in the

17  context in which it happened, but taking that next step, which I

18  read that last sentence to do, to say, "Jury, I'm now telling

19  you what -- the answer to the question, and you've got an

20  instruction in there on it.  I'm telling you what the answer to

21  that question is," I have a little bit of concern with that,

22  because while it's not specifically saying Restore needed one,

23  for all intents and purposes, it is.

24          And so maybe I'm drawing too fine of a distinction in

25  my mind, but that's kind of how I see it.  Because ultimately,

1    what I anticipated in this whole thing was that we would do
2    something very similar to what you've proposed -- y'all had
3    proposed, or somebody's proposed in their instructions, which is
4    to say, "The FDA regulates medical devices.  Some devices that
5    are comparable to other devices can be approved through or
6    cleared through the 510(k) process.  Devices that are
7    remanufactured can't.  A remanufactured device is this, that, or
8    the other."
9             And essentially, that's kind of -- we tell them what
10   the law is in the remanufacturing context.  We've got
11   Ms. Rosecrans and whatever they're going to bring forward, lay
12   witnesses or experts, to articulate what -- how the process
13   works and what their particular devices are and where they fit
14   in, and the jury then will ultimately have to make that
15   determination, is how I see it.  Maybe I'm just completely
16   missing something, or the hour has gotten to me, but...
17            MS. LENT:  Well, Your Honor, your prior ruling said
18   that she couldn't espouse a personal interpretation that
19   differed from the FDA's public interpretations, and these are
20   the FDA's public interpretations which specifically says to
21   Iconocare, "When you extend the number of uses of these
22   EndoWrist instruments, that is remanufacturing."  And that --
23            THE COURT:  And again, I think she can come in and
24   explain what the significance of this new QSM code is and the
25   fact that it was given to the folks that they now own, and --

1  but again, I think there's still a line that gets her to the
2  point of instructing the jury about the law, and I'm not sure
3  that's her job.
4         MS. LENT:  I'm not sure where that line begins and
5  ends.  Because --
6         THE COURT:  Right.
7         MS. LENT:  -- the documents say, literally, when you
8  extend the usage, the use -- the number of uses in these
9  instruments, it is remanufacturing.  So why couldn't she say
10 that?
11        THE COURT:  Mr. Berhold.
12        MR. BERHOLD:  I'm not familiar with that quote
13 actually.  One, I agree with the Court that the line was drawn
14 in the first place.  I agree that she's gone over the line.  I
15 think it's important to say -- I mean, that's the whole debate,
16 right, is the FDA itself has never -- even the FDA, after
17 four years, has never taken a clearer position.
18        They're saying, "We can interpret from a product code
19 this," or "We can interpret from the boilerplate from a 510(k)
20 that."  So, so long as the FDA hasn't made a decision on that
21 point that a 510(k) is required, we don't think it's -- if that
22 was the case, that would be evidence in and of itself.  It would
23 speak for itself.
24        In the meantime, it's not Ms. Rosecrans' position to
25 say one way or the other.  In fact, we know the FDA has never

```
 1   stopped anyone from repairing these instruments.  That's the
 2   issue of fact.
 3           THE COURT:  And their argument on that was they
 4   told -- I don't know if it was you or Rebotix -- to stop,
 5   definitively, through -- or at least some email, whatever that
 6   was.  I remember that email in the record saying, "We think this
 7   is remanufacturing.  You need to submit a 510(k)."  So I guess
 8   it didn't tell you to stop, but it sent the message that you
 9   need to go through their process.
10           And the response back was, "We're doing other things
11   right now, so put a pin in it."
12           And so semantics, maybe, but it may be significant.  I
13   mean, they're going to argue that their last definitive
14   statement was telling y'all that you needed one.  You're going
15   to argue that the last definitive statement was this team lead
16   saying, "We haven't decided."  And they're going to then say,
17   "Well, maybe they haven't specifically decided, but the team
18   lead has said nobody's run that up the flagpole; and that, thus,
19   is the last statement, coupled with the fact that they made us
20   go get one, coupled with the fact that they created this new
21   product code."
22           Again, to me, it's all argument for counsel to make in
23   closing or wherever.  And it's Ms. Rosecrans' function to
24   explain the process and what happened, not to then make what I
25   think is a legal assessment, which I read her last thing -- last
```

1   sentence of that report to be, ipso facto, 510(k) is required.
2   And I don't think -- I think you're right.  I think it is
3   required.  I think the FDA is sending the message that it's
4   required, but they haven't said it, and I'm not going to say it
5   in the first instance.  And I know you want me to, and we've had
6   that debate.  We're past that.
7           But the fact remains, I don't -- and because we're
8   simply giving the jury in the instruction -- maybe it's not
9   going to be these exact words, I haven't found it, but page 99,
10  your FDA clearance, that was, in essence, what I expect -- and I
11  know we'll have argument on it at the appropriate time, but that
12  was the essence of what I expected to instruct the jury on.
13  There's a requirement.  It depends on whether you're
14  remanufacturing or not.  They will have heard evidence, and they
15  can decide using Ms. Rosecrans' assessment of things, the
16  plaintiff's assessment of things whether that's remanufacturing
17  or not and make a determination.
18          So all that being said, I'm -- the ultimate ruling is
19  that I'm denying the motion, the Daubert motion or whatever it
20  was called, in large part with that clarification that
21  Ms. Rosecrans cannot provide that ultimate opinion that she
22  seems to want to provide, that FDA has now definitively
23  determined that 510 clearance is required for this type of
24  activity.
25          So she can take the jury up to that point, and it will

```
 1   be up to the jury to make that last inference, if that's the
 2   inference they want to make.  Well, in the order that comes out
 3   of today, we'll try to articulate that in a slightly better way.
 4          But is there any confusion on that, or do you get the
 5   gist of what I'm saying?
 6          MR. BERHOLD:  Restore gets the gist of it.
 7          THE COURT:  Ms. Lent?
 8          MS. LENT:  I understand what you're saying.
 9          THE COURT:  Okay.  All right.  We'll try to articulate
10   that, and the same rule will apply that in the event that we
11   don't articulate it in a way that makes sense or creates more
12   problems or goes beyond what you think we said and what you
13   think you understand, we'll entertain clarification, but
14   certainly not reargument because I think we've hashed and
15   rehashed pretty well.
16          So I think we've gotten to most everything.
17          Mr. Ruby, you had mentioned something about jury
18   instructions, and I know we're not going to go through the
19   instructions as a whole.
20          One thing I did want to specifically speak to -- and I
21   know the parties just gave me -- on a lot of the preliminary
22   instructions, just gave them to me not knowing whether we're
23   going to use depositions or interrogatories and admissions and
24   things like that, but we've got the language if we need it.
25          Jury questions, my understanding is that there's no
```