**EXHIBIT 1**

**to**

**PAUL D. BRACHMAN DECLARATION
IN SUPPORT OF DEFENDANT'S TRIAL
BRIEF**

# SALES, LICENSE, AND SERVICE AGREEMENT

**Agreement No.: MA-886-2019 (409753)**

This Sales, License, and Service Agreement ("Agreement") is dated **December 16, 2019** (the "Effective Date") and is between **Intuitive Surgical, Inc.**, a Delaware corporation ("Intuitive"), located at 1020 Kifer Road, Sunnyvale, California 94086, and **Northwestern Memorial Healthcare** located at **251 E Huron St., Chicago, IL 60611** (collectively "Customer").

**The parties agree as follows:**

## 1.    Introduction

Customer agrees to purchase the Hardware and license the Software and Documentation from Intuitive, and Intuitive agrees to respectively sell and license the same to Customer, as well as provide Service for the System all according to the terms and conditions of this Agreement.

## 2.    Definitions

2.1    **"Acceptance"** means Customer's acceptance of the System as specified in **Exhibit A**.

2.2    **"Delivery Date"** means the estimated scheduled date for delivery of the System to Customer specified in **Exhibit A**.

2.3    **"Instruments and Accessories"** means those instruments or accessories made or approved by Intuitive for use with the System.

2.4    **"Procedure"** means a surgical procedure or a diagnostic procedure.

2.5    **"Proctoring"** means the assistance, coaching, or surgical training provided by a physician (the "Proctor") who is familiar with the System to another physician (the "Proctee") on how to perform a particular Procedure (or Procedures) using the System.

2.6    **"Services"** means the support and maintenance of the System described in Section 5 for the Service fees designated in **Exhibit A**.

2.7    **"System"** means the items comprising the ION™ Endoluminal System specified in **Exhibit A** consisting of certain hardware components ("Hardware"), software program elements ("Software") and related manuals, labeling, instructions for use, notifications or other documentation ("Documentation"),that Customer may receive, purchase and license under this Agreement. If Customer purchases multiple Systems under this Agreement, all references to "System" or "System(s)" apply to each System sold and licensed. Each System purchased is a separate transaction to be delivered, accepted, and paid for separately.

2.8    **"Taxes"** means any taxes, levies, or similar governmental charges, now in force or enacted in the future, and however designated, including related penalties and interest, imposed by any governmental authority on, or measured by, the activities described.

2.9    **"Order"** means any purchase order issued by Customer to Intuitive.

2.10    **"Customer's Access Requirements"** means any reasonably applicable requirements designated by Customer that Intuitive personnel must meet to gain access to Customer's facility. Such requirements may include, but are not limited to, compliance with Customer's site policies and vendor credentialing requirements, such as vaccination, immunization, background investigation, training, hospital orientation, and liability insurance coverage.

2.11    **"Reprocess" or "Reprocessing"** means Customer's process for cleaning, disinfection, and sterilization of Instruments and Accessories, including testing to validate cleaning, disinfection and sterilization process as may be required by applicable law and/or regulation.

## 3.    System Delivery, Use, Disposal

3.1    **Delivery and Installation.** Subject to credit approval of Customer by Intuitive, Intuitive will use commercially reasonable efforts to deliver the System on or before the Delivery Date. The parties may, by mutual agreement, adjust the Delivery Date. Customer will fully cooperate with Intuitive to permit Intuitive to install the System. Intuitive will use commercially reasonable efforts to install the System in an efficient and expeditious manner. Customer will also provide Intuitive with information, consultation, and advice reasonably necessary to permit installation. If the System is not fully operational in accordance with its specifications and as required under this Agreement within sixty (60) days following the date of delivery, then Customer shall have the right to return the System to Intuitive and receive a replacement System at no cost.

Highly Confidential-AEO                                       Intuitive-01862315

3.2 **Delivery Terms.** Intuitive will deliver the System to Customer's designated location noted as the "Ship-to" in **Exhibit A** using a carrier selected by Intuitive. Fees for shipping the System are specified in **Exhibit A.** Intuitive shall package all items in suitable containers to permit safe handling and transportation. Risk of loss or damage to the System passes to the Customer upon delivery of the System to Customer. Title to the System (excluding Software and Documentation) passes to the Customer upon Acceptance.

3.3 **On-Site Support.** At no charge to Customer, Intuitive will provide periodic on-site support to Customer's designated personnel on the proper operation and upkeep of the System in order for Customer to operate the System as further described in Section 3.4. To clarify, this support includes, but is not necessarily limited to, training on draping the System for use during a Procedure, proper attachment of Instruments and Accessories, cleaning of parts of the System, the Instruments and Accessories and discussing opportunities to improve cost efficiencies. The cleaning to be performed regularly by Customer is described in the Documentation.

3.4 **Use of System.** Customer will ensure the proper use of the System consistent with the Documentation, and Customer will ensure the proper management and supervision of the System. Customer will not, nor will Customer permit any third party to, modify, disassemble, reverse engineer, alter, or misuse the System or Instruments and Accessories. Prohibited actions include, but are not limited to: (1) adding or subtracting any Customer or third party equipment, hardware, firmware, or software to or from the System, or (2) reconfiguring any of the Intuitive equipment, Hardware, firmware, or Software as originally provided to Customer as part of the System without Intuitive's express written permission. Customer will ensure that the System is moved and operated only by trained personnel in accordance with the Documentation and Intuitive's instructions. If Customer fails to comply with the requirements of this Section 3.4, Intuitive may terminate this Agreement immediately upon written notice, and any warranties applicable to the System will become void.

3.5 **Reprocess and Disposal.** Customer is responsible for properly Reprocessing and/or disposing of all medical instruments, devices, and systems related to the operation and function of the System, including Instruments and Accessories, in accordance with the Documentation and the then current local environmental and safety laws and standards.

## 4. Software License and Restrictions

Software embedded within the System and Software upgrades provided per the ION Services Plan are provided under license and are not sold to Customer. Subject to the terms and conditions of this Agreement, Intuitive grants to Customer a non-exclusive, non-transferable, fully paid, restricted use license to use the Software solely as incorporated in the System in machine-executable object code form and solely in connection with the operation of the System as described in the Documentation. Customer must not use, copy, modify, or transfer the Software or any copy thereof, in whole or in part, except as expressly provided in this Agreement. In addition, Customer must not reverse engineer, decompile, disassemble, attempt to derive the source code for, or otherwise manipulate the Software, except that manipulation of the Software is permitted if, and then only to the extent that, the foregoing prohibition on manipulation is required to be modified by applicable law. In that case, Customer must first request from Intuitive the information to be sought from the Software, and Intuitive may, in its discretion, provide information to Customer under good faith restrictions and impose reasonable conditions on use of the Software. The structure and organization of the Software are valuable trade secrets of Intuitive and Customer will protect the Software as Intuitive's Proprietary Information (as defined in Section 13). Intuitive reserves all rights to the Software not expressly granted to Customer.

## 5. Services

5.1 **Services Included.** If Customer is current in payment to Intuitive of the Service fees specified in **Exhibit A**, Intuitive, directly or through one of its designated service providers, will provide Services to Customer as listed below. Intuitive will use parts sourced by Intuitive, which may, at Intuitive's discretion, include reconditioned parts, ("Equivalent to New" or "ETN"). ETN parts are components, assemblies, or partial products which have had prior usage, but have been inspected, reworked, and tested as required so that their function, performance, and appearance will be essentially equivalent to that of new parts. Regardless of whether parts are new or ETN, Intuitive's appropriate warranties under Section 10.1(A) apply.

Intuitive will provide Services under the ***ION Services Plan***, with benefits and limitations as follows:

(A) Adjust parts on the System from time to time;
(B) Replace defective or malfunctioning System parts (excludes Instruments and Accessories; and any items contained in the Instrument Starter Kit, Camera Starter Kit, and Training Instrument Starter Kit set forth in Exhibit A);
(C) Repair System operational malfunctions;
(D) Replace and install Software, Hardware, and mechanical equipment for safety and reliability;
(E) Provide telephone support by qualified service personnel Monday through Friday 8am - 8pm Eastern Time;
(F) Provide and install Software upgrades for feature enhancements. Software upgrades and Service with respect to additional equipment not included on **Exhibit A** may be subject to separate terms to be agreed upon by the parties;
(G) Respond to Customer's request for Services described in Section 5.1(B)-(C) by phone, e-mail, or an on premise visit, during normal business hours (excluding Intuitive holidays) promptly as is reasonable after Intuitive's receipt

of Customer's request, but not later than twenty-four (24) hours after the longer of Intuitive's receipt or end of Intuitive holiday. Normal business hours are Monday through Friday, 8:00 a.m.- 5:00 p.m. Customer's local time. Billable rates are applicable for service outside of normal business hours, and for reasons defined below in Section 5.2 (Limitations of Service).

(H)     Perform System preventative maintenance inspections as necessary to maintain factory specifications.
(I)     Provide on-site visits for support of advanced training of Customer's personnel on sterile Reprocessing process.
(J)     Provide access to the da Vinci Surgery Customer Portal.

5.2     **Limitations on Services.**

(A)     **General.**  Intuitive does not have an obligation to provide Services (1) on any System where installation, repair, or adjustments have been made by an individual other than an Intuitive technician or an individual approved by Intuitive or (2) which are either necessary or desired as a direct or indirect result, in whole or in part, of unauthorized repair, modification, disassembly, alteration, addition to, subtraction from, reconfiguration, or misuse of the System, or negligence or recklessness on the part of Customer.

(B)     **Cleaning.**  Regular daily cleaning of the System as described in the Documentation is not included in the Services.

(C)     **Additional Equipment.**  Intuitive's Services obligations do not include the provision to Customer of any hardware developed by Intuitive that is not contained in the initial System purchased by Customer, and which Intuitive offers as a separate product or for an additional fee.

(D)     **Time and Materials.**  If the System needs repair or maintenance services due to any of the circumstances described in Section 5.2(A)-(B) above, Intuitive may, on the parties' agreement, provide repair services at Customer's expense and at mutually agreed upon time and material rates. Intuitive is not obligated to provide Services on any System for which any applicable warranty has been voided, or for which the performance of Services is otherwise excused by the terms of this Agreement.

(E)     **Unauthorized Instruments and Accessories.**  The System is designed for use only with the Instruments and Accessories made or approved by Intuitive. If Customer uses the System with any surgical instrument or accessory not made or approved by Intuitive, Intuitive may discontinue Services, and any warranties applicable to any Services provided prior to any discontinuance will be void.

5.3     **Customer's Obligations.**

(A)     **Notice, Access, and Cooperation.**  Customer will notify Intuitive or Intuitive's designated service provider of any requests for Services. Customer will fully cooperate with and assist Intuitive in the provision of Services.

(B)     **Clinical Liaison.**  Customer will designate one of its employees, agents, or representatives as a "Clinical Liaison." The Clinical Liaison will be the point of contact with Intuitive for installation, Services, use of the System, and other related issues. Nothing in this Section 5.3 authorizes Customer or the Clinical Liaison to perform Services or to perform any act otherwise prohibited by this Agreement.

6.     **Training**

Intuitive offers training to physician personnel on the use and operation of the System. At Customer's request, at mutually agreed times and at mutually agreed locations, Intuitive will provide training in the use of the System to Customer's physician personnel in accordance with the terms specified in **Exhibit A**.

7.     **Proctoring**

At Customer's request, and upon Customer's issuance of an Order, Intuitive will arrange for Proctoring at Customer's location in accordance with the terms specified in **Exhibit A**. Each Proctor is an independent contractor, is not an agent or employee of Intuitive, and is not authorized to act on behalf of, or legally bind, Intuitive. Intuitive is not responsible for Proctoring services provided by Proctors. The decision to utilize a Proctor is solely that of the Customer. Customer is responsible for ensuring that each Proctor meets Customer's credentialing requirements.

8.     **Instruments and Accessories**

Instruments and Accessories will be made available to Customer from Intuitive pursuant to separate Orders. Instruments and Accessories are subject to a limited license to use those Instruments and Accessories with, and prepare those Instruments and Accessories for use with, the System. For multi-use Instruments, Customer is responsible for Reprocessing Instruments in accordance with the Documentation. Any other use is prohibited, whether before or after the Instrument or Accessory's license expiration, including repair, refurbishment, or reconditioning not approved by Intuitive, and cleaning or sterilization inconsistent with the Documentation. This license expires once an Instrument or Accessory is used up to its maximum number of uses, as is specified in the Documentation accompanying

Highly Confidential-AEO                                    Intuitive-01862317

the Instrument or Accessory. Customer may purchase Instruments and Accessories for the purpose of Customer's Reprocessing requirements. The cost of Instruments and Accessories used in Customer's Reprocessing, including Instrument and Accessories used or involved in destructive testing, will be the responsibility of the Customer. Customer may contact Intuitive's Customer Support Department if, during the Reprocessing, Customer experiences results unacceptable under applicable law and/or regulation. Intuitive will provide commercially reasonable assistance in such investigations and remediation efforts but shall not be obligated to conduct or pay for such studies or provide materials at no cost or reduced cost as a condition of purchase or continued use.

9. **Pricing and Payment Terms**

9.1 **System.**

(A) **Price.** Customer will pay to Intuitive the price specified in **Exhibit A** for the System acquired under this Agreement according to the payment terms in Section 9.1(B). On the Effective Date, Customer will provide an Order for the System to Intuitive. The issuance of an Order for the System is for Customer's convenience, and does not affect Customer's commitment to acquire and pay for the System under this Agreement.

(B) **Payment Terms.** Upon Acceptance, Intuitive will deliver an invoice to Customer for amounts due under this Agreement for the System. Each Customer affiliated-corporation shall be separately invoiced at its individual billing address. Customer will pay the invoiced amount not later than sixty (60) days after the date the invoice is received. Interest will accrue from the date on which payment is due, at an annual rate of eight percent (8%) or the maximum rate permitted by applicable law, whichever is lower.

(C) **Right to Reclaim.** If Customer defaults in its payment for the System, Intuitive has the right, without liability to Customer, to reclaim the System.

9.2 **Services.**

(A) **Price.** Customer will pay for the Services at the price specified in **Exhibit A**. The issuance of an Order by Customer is for the convenience of the Customer solely.

(B) **Payment Terms.** Intuitive will deliver to Customer an invoice for the annual Services fee thirty (30) days prior to the first anniversary of Acceptance and each subsequent anniversary of Acceptance throughout the Initial Term of the Agreement. Each Customer affiliated-corporation shall be separately invoiced at its individual billing address. Customer will pay the invoice for Services not later than sixty (60) days after the date the invoice is received. Interest will accrue from the date on which payment is due, at an annual rate of eight percent (8%) or the maximum rate permitted by applicable law, whichever is lower.

9.3 **Funding Entity.**

Both parties agree that as of the Effective Date, Customer does not receive funding from funding entities. Notwithstanding the foregoing, in the event that during the term of this Agreement, Customer does receive funding from a Funding Entity, the terms contained herein shall apply. A funding entity ("Funding Entity") may provide the funding for Customer to purchase the System defined herein, provided however, Customer remains responsible for payment in full according to the terms of this Agreement if Funding Entity fails to pay. A Funding Entity will have no rights or obligations whatsoever under this Agreement, except as specified in this Agreement. Customer acknowledges and agrees that once Acceptance has occurred and title of the System has passed to the Customer, if Customer subsequently enters into an arrangement with a Funding Entity, then Customer will enter into an agreement (such as a sale and lease-back agreement) directly with the Funding Entity that does not involve Intuitive. Intuitive will not reverse the sale of the System to Customer in order to sell it to another entity, including but not limited to a Funding Entity.

9.4 **Taxes.**

If applicable, Customer will pay any Taxes in addition to the prices invoiced. Customer will pay, or reimburse Intuitive for the payment of all Taxes, including related penalties and interest, except Taxes for which Customer has provided a certificate of exemption acceptable to both Intuitive and the appropriate taxing authority prior to delivery of the System. If applicable, Customer will also pay, or reimburse Intuitive for, all Taxes, related penalties, or interest resulting from Customer's use of a Funding Entity. As of the Effective Date, provided Customer maintains tax exempt status and has provided proof of such status upon request, Northwestern Memorial HealthCare, Northwestern Memorial Hospital, NMG, Northwestern Lake Forest Hospital, CDH-Delnor Health System, Central DuPage Hospital Association, Delnor-Community Hospital, NM-RMG, KishHealth System, Kishwaukee Community Hospital, Valley West Community Hospital, KPG, Marianjoy Rehabilitation Hospital, Northwestern Medicine McHenry Hospital, Northwestern Medicine Woodstock Hospital, and Northwestern Medicine Huntley Hospital are Illinois not-for-profit, tax-exempt corporations and as such are exempt from Illinois Retailers Occupation and Use Taxes and federal excise taxes on all goods and Services purchased.

10.   **Warranty and Disclaimer**

   10.1   **System Warranty.**

      (A)   Intuitive warrants to Customer that:

         (1)   the System as delivered will be free and clear of all liens and encumbrances (except as otherwise specified in this Agreement), and

         (2)   for the period specified in **Exhibit A**, will be free from defects in material and workmanship and will conform in all material respects to the Documentation when used in accordance with the Documentation and Intuitive's instructions.

      (B)   Intuitive's obligations under this Section 10.1 are limited to the repair (as further described in Section 5.1(B)-(C)) or, at Intuitive's option, replacement of all or part of the System.

      (C)   This warranty is void with respect to any claims:

         (1)   due to any installation, repair, adjustment, modification, disassembly, alteration, reconfiguration, addition to, subtraction from, or misuse of the System by Customer or any third party without the express written permission of Intuitive; or

         (2)   to the extent Customer has not operated, repaired, or maintained the System in accordance with the Documentation or any reasonable handling, maintenance, or operating instructions supplied by Intuitive; or

         (3)   to the extent Customer has used the System with surgical instruments or accessories that are not Instruments or Accessories; or

         (4)   to the extent Customer or Customer's employee, agent, or contractor has subjected the System to unusual physical or electric stress, misuse, abuse, negligence, or accident.

      (D)   The foregoing expresses Customer's sole and exclusive remedy, and Intuitive's sole and exclusive liability, for any breach of warranty with respect to the System by Intuitive.

   10.2   **Services Warranty.** Intuitive represents and warrants that all Services shall be completed in a professional and workmanlike manner, with the degree of skill and care that is required by current, good and sound professional procedures consistent with generally accepted industry standards. Further, Intuitive represents and warrants that the Service shall be completed in accordance with applicable specifications and shall be correct and appropriate for the purposes contemplated in this Agreement. If Intuitive breaches this warranty, Customer's sole and exclusive remedy will be that Intuitive shall re-perform the work not in compliance with this warranty. Such non-compliance must be brought to its attention within a reasonable time after that work is originally performed. Intuitive represents and warrants that the performance of Services hereunder will not conflict with, or be prohibited by, any other agreement or legal restriction to which Intuitive is bound.

   10.3   **No Other Warranties. INTUITIVE MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, IN CONNECTION WITH THE SYSTEM OR SERVICES PROVIDED HEREUNDER AND THIS TRANSACTION, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, AND NON-INFRINGEMENT.   SOME JURISDICTIONS DO NOT ALLOW THE LIMITATION OR EXCLUSION OF IMPLIED WARRANTIES; THEREFORE, THE ABOVE LIMITATION WILL APPLY ONLY TO THE EXTENT PERMITTED BY APPLICABLE LAW.**

11.   **Indemnification**

   11.1   **Intuitive's Indemnification Obligations.**

      (A)   **General.** To the extent allowable by law, Intuitive hereby assumes all liability for, and agrees to indemnify, defend and hold harmless Customer, its successors, permitted assigns, medical staff, agents and employees from and against, any and all liabilities, losses, damages, claims and expenses to the extent that they arise from third party claims, actions or demands including without limitation, claims arising in contract or tort (including negligence), strict liability or otherwise (collectively, "Claims") in any way relating to or arising from (a) Intuitive's breach of any of its representations or warranties or any other obligation hereunder including a breach by Intuitive of the terms and conditions of any Business Associate Agreement entered into by the parties, or (b) Intuitive's negligence or willful misconduct; provided that Intuitive's indemnification obligations under this Section 11.1(A) shall not apply to the extent that (i) such Claims arise from Customer's negligence or willful misconduct or breach of any of its obligations hereunder.

Highly Confidential-AEO                                                      Intuitive-01862319

(B)   **Intellectual Property Indemnification.** Intuitive will indemnify defend and hold Customer harmless Customer against all liabilities, expenses, or damages in connection with any third party claim that the System infringes any third party patent, trade secret, or copyright. If Customer is enjoined from the use of the System due to any such third party claim, Intuitive will promptly, at its option and expense, either (1) substitute the System or any part thereof with non-infringing material that will perform substantially in accordance with the Documentation; or (2) obtain the right of Customer to continue to use the System; or (3) remove the System and refund to Customer the purchase price of the System less reasonable depreciation.

(C)   **Indemnification Limitations.** Intuitive has no obligation under this Section 11.1 to the extent any claim of infringement is based upon or arises out of: (1) any modification to the System if the modification was not made directly by Intuitive or through its designated service provider; or (2) the use or combination of the System with any hardware, software, products, data or other materials not specified, provided or approved by Intuitive.

(D)   **THE PROVISIONS OF THIS SECTION 11 STATE THE SOLE AND EXCLUSIVE OBLIGATIONS OF INTUITIVE FOR ANY PATENT, COPYRIGHT, TRADEMARK, TRADE SECRET OR OTHER INTELLECTUAL PROPERTY RIGHTS INFRINGEMENT.**

11.2   **Customer's Indemnification Obligations.** To the extent allowable by law, Customer hereby assumes all liability for, and agrees to indemnify, defend and hold harmless Intuitive and its successors, permitted assigns, agents and employees from and against, any and all Claims by third parties to the extent that they arise from: (a) Customer's or its employees', medical staff's, agents', affiliates' or representatives' negligence or willful misconduct in the use, possession, or operation of the System, including without limitation, (i) use of the System by individuals who have not completed appropriate training or whose training was not conducted by Intuitive, (ii) use of the System with any surgical instrument or accessory that is not made or approved by Intuitive for use with the System, or (iii) the conduct of surgical procedures on cadavers used in training; or (b) Customer's breach of any of its representations or warranties or any other obligation hereunder, including without limitation Customer's failure to comply with the requirements of Section 3.4 (Use of System) or Section 3.5 (Reprocess and Disposal) and including a breach by Customer of the terms and conditions of any Business Associate Agreement entered into between the parties. Notwithstanding the foregoing, Customer's indemnification obligations under this Section 11.2 shall not apply to the extent that such claims arise from Intuitive's negligence or willful misconduct or breach of any of its obligations hereunder. Intuitive will not be liable for, and Customer will indemnify and hold Intuitive harmless from and against, any claims or damages caused by Customer's failure to comply with the requirements of Sections 3.4 (Use of the System) or 3.5 (Disposal).

11.3   **Claim Notification Requirement.** A party's indemnification obligations under this Section 11 will not apply unless the indemnified party promptly notifies the indemnifying party of the claim as soon as the indemnified party became aware of it. The indemnifying party will have the right to control the defense or settlement of any claim at its cost and with its choice of counsel. The indemnified party will provide all reasonable cooperation to assist the indemnifying party in the defense or settlement of the claim. The Indemnifying Party shall not enter into a settlement that involves any admission of liability on the party of Indemnified Party, without Indemnified Party's prior written consent, which consent shall not be unreasonably withheld.

## 12.   Limitation of Liability

Notwithstanding Intuitive's insurance coverage minimums referenced in Section 15.6, and except for a breach of the obligations in Sections 3.4 (Use of System), 4 (Software License and Restrictions), 8 (Instruments and Accessories), 9 (Pricing and Payment Terms), the indemnification obligations of Section 11, 13 (Proprietary Information), to the extent permitted by applicable law, each party's aggregate liability to the other for claims relating to this Agreement, whether for breach in contract or tort (including negligence), is limited to an amount equal to the sum of amounts paid by Customer under this Agreement for the activity (such as procurement of the System, Service, or training) giving rise to the claim. Except for a breach of the obligations in Sections 3.4, 4, 8, or 13, neither party will be liable for any indirect, punitive, special, incidental, or consequential damages in connection with or arising out of this Agreement (including loss of business, revenue, profits, use, data, or other economic advantage), even if that party has been advised of the possibility of damages. Some jurisdictions do not allow the limitation of liability for incidental or consequential damages; therefore in those jurisdictions, the foregoing limitation of liability applies only to the extent permitted by law.

## 13.   Proprietary Information

13.1   Intuitive's Confidential Information

(A)   Customer may acquire knowledge of Intuitive's Confidential Information (as defined below) in connection with its performance hereunder and agrees to not to disclose such Intuitive Confidential Information during and following termination or expiration of this Agreement. "Intuitive Confidential Information" includes, but is not limited to, all information, whether written, oral or electronic,in any form, relating to products, business plans, customers, vendors, finances, personnel data, deliverables, procedures, processes, improvements, developments, drawings, work in progress, designs, discoveries, models, devices, computer programs and other material or information considered proprietary by Intuitive relating to the current or anticipated business affairs of Intuitive which is disclosed directly

Highly Confidential-AEO                                                   Intuitive-01862320

to Customer.  In addition, Intuitive's Confidential Information includes the terms and conditions of this Agreement and all information derivable from the System, but excluding information that can be learned simply through observation of the System and its operation.. Intuitive Confidential Information does not include any information (i) which Customer lawfully knew without restriction on disclosure before Intuitive disclosed it to Customer, (ii) which is now or becomes publicly known through no wrongful act or failure to act of the Customer, (iii) which the Customer developed independently without use of the Intuitive's Confidential Information, as evidenced by appropriate documentation, or (iv) which is hereafter lawfully furnished to the Customer by a third party as a matter of right and without restriction on disclosure.  In addition, the Customer may disclose Confidential Information which is required to be disclosed as required by law or court order so long as the Customer provides prompt notice to Intuitive of such requirement prior to disclosure.

(B)     Customer agrees not to copy, alter or directly or indirectly disclose any Intuitive Confidential Information. Additionally, Customer agrees to limit its internal distribution of Intuitive Confidential Information to its employees, agents, consultants, physicians, counsel, group purchasing organization or auditors who have a need to know in order to appropriately and effectively manage Customer's business.  Customer will take steps to ensure that the dissemination is limited only for purposes stated herein. In no event will Customer use less than the degree of care and means that it uses to protect its own information of like kind, but in any event not less than reasonable care to prevent the unauthorized use of Intuitive Confidential Information.

(C)     Customer further agrees not to use the Intuitive Confidential Information except in the course of performing hereunder and will not use such Intuitive Confidential Information for its own benefit or for the benefit of any third party. The mingling of the Intuitive Confidential Information with information of Customer shall not affect the confidential nature or ownership of the same as stated hereunder. All Intuitive Confidential Information is and shall remain the property of Intuitive. Upon Intuitive's written request or the termination of this Agreement, Customer shall make commercially reasonable attempts to return, transfer, destroy or assign to Intuitive all Intuitive Confidential Information and all copies thereof. Notwithstanding the foregoing, Customer may disclose Confidential Information which is required to be disclosed as required by law or court order so long as the Customer provides prompt notice to Intuitive of such requirement prior to disclosure.

13.2    Customer's Confidential Information.

(A)     Intuitive may acquire knowledge of Customer Confidential Information (as defined below) in connection with its performance hereunder and agrees to keep such Customer Confidential Information in confidence during and following termination or expiration of this Agreement. "Customer Confidential Information" includes but is not limited to all information, whether written, oral, or electronic in any form, including without limitation, information relating to business plans, customers, patients, vendors, finances, personnel data, deliverables, procedures, processes, improvements, developments, drawings, work in progress, designs, discoveries, models, devices, computer programs and other material or information considered proprietary by Customer relating to the current or anticipated business or affairs of Customer which is disclosed directly or indirectly to Intuitive. Customer Confidential Information does not include any information (i) which Intuitive lawfully knew without restriction on disclosure before Customer disclosed it to Intuitive, (ii) which is now or becomes publicly known through no wrongful act or failure to act of Intuitive, (iii) which Intuitive developed independently without use of the Customer Confidential Information, as evidenced by appropriate documentation, (iv) which is hereafter lawfully furnished to Intuitive by a third party as a matter of right and without restriction on disclosure, or (v) any Data which Intuitive has a right to use under this agreement. In addition, Intuitive may disclose Confidential Information which is required to be disclosed pursuant to a requirement of a government agency or law so long as Intuitive provides prompt notice to Customer of such requirement prior to disclosure.

(B)     Intuitive agrees not to copy, alter or directly or indirectly disclose any Customer Confidential Information. Additionally, Intuitive agrees to limit its internal distribution of Customer Confidential Information to Intuitive's employees who have a need to know, and to take steps to ensure that the dissemination is so limited. In no event will Intuitive use less than the degree of care and means that it uses to protect its own information of like kind, but in any event not less than reasonable care to prevent the unauthorized use of Customer Confidential Information.

(C)     Intuitive further agrees not to use the Customer Confidential Information except in the course of performing hereunder and will not use such Customer Confidential Information for its own benefit or for the benefit of any third party. The mingling of the Customer Confidential Information with information of Intuitive shall not affect the confidential nature or ownership of the same as stated hereunder. All Customer Confidential Information is and shall remain the property of Customer. Upon Customer's written request or the termination of this Agreement, Intuitive shall return, transfer, destroy or assign to Customer all Customer Confidential Information and all copies thereof. Notwithstanding the foregoing, Customer may disclose Confidential Information which is required to be disclosed as required by law or court order so long as the Customer provides prompt notice to Intuitive of such requirement prior to disclosure.

Northwestern Memorial Healthcare
Rev date: 16Dec19
MA-886/2019/409753
Intuitive Proprietary Information                              Page 7 of 15

Highly Confidential-AEO                                                        Intuitive-01862321

14.    **Term**

14.1    **Initial Term**. The Initial Term is specified in **Exhibit A** unless Customer terminates the Service portion of this Agreement pursuant to Section 14.3 below.

14.2    **Termination and Survival**. Either party may terminate this Agreement if the other party breaches a material term or condition of this Agreement and fails to cure the breach following thirty (30) days' written notice from the non-breaching party. Sections 3.4, 3.5, 4, 9 (provided that in the event of a conflict between the terms of Section 9.2 and any renewal Service Agreement, the terms of the renewal Service Agreement shall prevail), 11, 12, 13, 14.2, 15, and any other provision which by its nature will survive, will remain in effect notwithstanding the expiration or termination of this Agreement.

14.3    **Termination for Convenience.** Upon thirty (30) days written notice, Customer may terminate this agreement for its own convenience. For the avoidance of doubt, if Customer terminates for their own convenience, Customer will not be entitled to the refund of any unused, prepaid Service fees.

14.3    **Additional Remedies**. These termination rights are not exclusive but are cumulative, and are in addition to any similar rights provided by law or equity.

15.    **Miscellaneous**

15.1    **Assignment**. This Agreement will be binding upon the permitted successors and assigns of the parties. Neither party may assign this Agreement without the prior written consent of the other party, except pursuant to a transfer of all or substantially all of a party's assets and business relating to the subject of this Agreement, whether by merger, re-organization, sale of assets, sale of stock, or otherwise. Customer may not assign or transfer the Software license granted to it under this Agreement to any third party without Intuitive's prior written consent. Any attempt by either party to assign this Agreement or any rights or duties hereunder contrary to the foregoing provision is void. Intuitive consents to Customer's assignment of this Agreement to a Funding Entity as part of Customer's financing arrangement with the Funding Entity. If Customer assigns this Agreement to a Funding Entity, Customer retains its right to all benefits under this Agreement, including without limitation all warranties, representations, and indemnification provided by Intuitive, and may independently enforce any obligation, warranty, or representation, including without limitation Intuitive's obligations under Section 5 (Services).

15.2    **Costs**. Except as otherwise specifically provided herein, each party will bear its own costs and expenses incurred in connection with the performance of its obligations hereunder.

15.3    **Debarment**. Intuitive warrants and represents that individuals of its organization involved in providing Services under this Agreement have not been convicted of any criminal offense relating to health care and are not debarred, excluded, or otherwise ineligible for participation in any federal or state health care program. If at any time before completion of this Agreement, Intuitive or any individual in its organization involved in providing Services under this Agreement is so convicted or is debarred, excluded or otherwise determined to be ineligible, Intuitive will notify Customer in writing, the individual will immediately cease providing Services under this Agreement, and Intuitive will replace the individual with a replacement employee reasonably suitable to Customer, and, if it is Intuitive, this breach will be considered a material breach by Intuitive.

15.4    **Federal Audit**. Until the expiration of four (4) years after furnishing Services under this Agreement, Intuitive will make available upon written request of the Secretary of the Department of Health and Human Services (the "Secretary") or upon request of the U.S. Comptroller General, or any of their duly authorized representatives, this Agreement and the books, documents, and records of Intuitive that are necessary to certify the nature and extent of costs for which Customer may properly seek reimbursement. If Intuitive carries out any of the duties of this Agreement through a subcontract with a value or cost of ten thousand dollars ($10,000) or more over a twelve (12) month period, the subcontract will contain a clause to the effect that until the expiration of four (4) years after furnishing of services under the subcontract, the subcontracting party will make available, upon written request of the Secretary, or upon request of the U.S. Comptroller General or any of their duly authorized representatives, the subcontract, and the books, documents, and records of the organization that are necessary to verify the nature and extent of the costs. Intuitive will promptly notify Customer of any requests for information made under this provision.

15.5    **Force Majeure.** . "Force Majeure" means any event or circumstance that is beyond either party's reasonable control, including, but not limited to, any of the following events and circumstances: a strike, lockout, riot, war, act of terrorism, insurrection, fire, flood, windstorm, explosion, natural disaster, act of God or public enemy, or any governmental law, order, regulation or ordinance. Either party may delay delivery, performance, or acceptance of goods or Services ordered in the event of a Force Majeure event. In the case of Intuitive, it may hold such goods or refrain from furnishing such Services and will deliver the goods, or commence Service when the cause of the delay is eliminated. The parties will use their commercially reasonable efforts to provide the other party with prompt notice of such events, and provide the other party with an estimate of revised delivery or performance dates. The parties will perform their respective obligations as soon as practicable after the Force Majeure event.

Highly Confidential-AEO                                                                          Intuitive-01862322

15.6    **Insurance**. Intuitive has obtained, and will maintain throughout the term of the Agreement, (i) Commercial General Liability Insurance including coverage for contractual liability, product liability, personal injury and bodily injury in an amount not less than $1,000,000 per occurrence/$3,000,000 aggregate (or as may be aggregated by the excess liability policy on the General Liability policy) (ii) workers' compensation insurance with coverages no less than required by applicable state law; and (iii) employers' liability insurance, with minimum limits of One Million Dollars ($1,000,000) per accident or covered illness or diseaseor (iv) a self-insurance program of equivalent protection. If Intuitive will maintain or transfer any data, Intuitive shall carry cyber liability coverage with minimum limits of Five Million Dollars ($5,000,000) per claim and Five Million Dollars ($5,000,000) annual aggregate, including coverage for data reconstruction, financial damages resulting from the unauthorized disclosure of or general corruption or loss of personal data, identity theft monitoring services for individuals whose data was compromised, costs of incident response, investigation and follow-up, coverage for actions of rogue employees and the costs of defending or responding to (including damages and fines) any investigations or informational requests from any regulatory agency or other governmental or quasigovernmental agency responsible for the control and use of personal health information or other confidential information. If Intuitive shall provide any hardware, software or other products to a Customer, Intuitive's general liability policy must include coverage for products liability. If Intuitive shall in any manner supervise any Customer's employees, Intuitive shall maintain employment practices liability insurance with minimum limits of One Million Dollars ($1,000,000) per occurrence and Three Million Dollars ($3,000,000) annual aggregate. Intuitive will furnish the Customer with a certificate of insurance evidencing the coverage as outlined above, or comparable evidence of self-insurance, on Customer's request. Intuitive carries, and will continue to carry, Workers' Compensation Insurance as required by law.

15.7    **Interpretation**. Headings used in this Agreement are provided for convenience only and do not in any way affect the meaning or interpretation hereof. The terms "sale", "purchase", "acquire", "procure" and variations of such terms, as used in this Agreement with respect to the System, do not imply that the Software and Documentation aspect of the System are sold or purchased; the Software and Documentation are licensed under this Agreement and only the Hardware is sold. Neither party is the drafter of this Agreement. Accordingly, the language of this Agreement will not be construed for or against either Party.

15.8    **Notices**. Any notices given under this Agreement must be in writing and will be deemed given and received five (5) days after the date of mailing, one (1) day after dispatch by overnight courier service or electronic mail, or upon receipt if by hand delivery, or upon completion of confirmed transmission if by facsimile. Any notices under this Agreement must be sent to Intuitive or the Customer at the address shown in the preamble above, in both cases to the Contracts Dept/General Counsel's office. Each party may change its address for receipt of notices by giving the other party notice of the new address.

15.9    **Relationship of the Parties**. The parties' relationship is one of contract, and they are not, and will not be construed as partners, joint venturers, or agent and principal. Neither party is authorized to act for, or on behalf of, the other party.

15.10   **Severability**. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, then that provision will not affect the validity of the remaining provisions of the Agreement, and the parties will substitute a valid provision for the invalid provision that most closely approximates the intent and economic effect of the invalid provision.

15.11   **Access to Customer's Facilities**. Intuitive agrees that any Intuitive personnel who routinely provide Services at Customer's facilities will use commercially reasonable efforts to comply with Customer's Access Requirements, provided that Customer provides Customer's Access Requirements in writing prior to execution of this Agreement. Customer's need for Service may be unplanned and urgent with patient safety at stake. Therefore, if Customer denies access to its facilities to any Intuitive personnel for performance of Services (Section 5) or warranty (Section 10) obligations in connection with a Procedure because such personnel have not met Customer's Access Requirements, Intuitive's Services and warranty obligations in this Agreement will be suspended during such denial of access, provided that Intuitive uses commercially reasonable efforts to find replacement Intuitive personnel who comply with Customer's Access Requirements. Customer will indemnify and hold harmless Intuitive from any losses, claims, liabilities or causes of action to the extent caused by Customer's unreasonable denial of access when unplanned and urgent Service is needed

15.12   **Data Use** Customer agrees that Intuitive and its affiliates within the Intuitive Surgical group of companies (collectively, "Intuitive") may collect data relating to the use of Intuitive products. "Data" includes vision probe video, catheter shape, and anonymized CT scans. In some instances Data may be communicated via data gathering or transmission technology to Intuitive. In other instances, Intuitive may require Customer and Customer agrees to provide Data to Intuitive. In the event Customer provides Data to Intuitive, Customer represents and warrants that Customer has the authority and permission to provide Intuitive with such Data. Such Data may be used for a variety of purposes, including, but not limited to (1) providing support and preventative maintenance of Intuitive products, (2) improving Intuitive products or services, (3) ensuring compliance with applicable laws and regulations, and (4) providing a general resource for Intuitive's research and business development. Intuitive will not intend to collect protected health information (PHI) as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or analogous foreign patient privacy laws or regulations, as may be amended from time to time. In the event any Data communicated to Intuitive identifies an entity or individual, Intuitive will not share such Data with any third parties without the entity's or individual's consent, unless required by law or regulatory authorities. Should Intuitive become a Business Associate, the parties will enter into a mutually agreed Business Associate Agreement. Notwithstanding the foregoing, if the parties have executed a Business Associate Agreement (BAA), then the terms and conditions of the BAA will govern Intuitive's use of PHI.

Highly Confidential-AEO                    Intuitive-01862323

15.13 **Waivers.** No waiver of any right by either party under this Agreement will be of any effect unless the waiver is in writing and signed by the waiving party. Any purported waiver not consistent with the foregoing is void.

15.14 **Use of Name.** Neither party shall use the name of the other party or of any of the other party's employees, or any logo, trademark or service mark of the other party in its sales promotion, advertising or any other publication without the prior written approval of an authorized representative of the other party.

15.15 **Counterparts.** This Agreement may be executed by facsimile or in multiple copies, each of which is an original, and all of which taken together will constitute one single agreement.

15.16 **Entire Agreement; Amendment.** This Agreement is the entire agreement between Intuitive and Customer and supersedes any prior agreements, understandings, promises, and representations made either orally or in writing by either party to the other party concerning the subject matter herein, pricing, and the applicable terms. Any terms or conditions in Customer's (or as applicable, Funding Entity's) purchase order that are different from, inconsistent with, or in addition to, the terms and conditions of this Agreement will be void and of no effect, unless otherwise mutually agreed to in writing by the parties. This Agreement may be amended only in writing, signed by both parties. Any purported oral modification intended to amend the terms and conditions of this Agreement is void.

**BOTH PARTIES HAVE READ, UNDERSTOOD, AND AGREED TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT AND EXECUTE THIS AGREEMENT AS OF THE EFFECTIVE DATE.**

**ACCEPTED BY:**

Intuitive Surgical, Inc.

**Signature:** _Marc Giuffrida (Dec 18, 2019)_

**Email:** marc.giuffrida@intusurg.com

**Title:** Sr. Director, Contract Administration

**Company:** Intuitive Surgical, Inc

Date: _____

**ACCEPTED BY:**

Northwestern Memorial Healthcare

By: _____

Name: _Gary Feaapss y_

Title: _Chief of SC_

E-mail: _____

Date: _12/12/19_

Highly Confidential-AEO

# EXHIBIT A
## Deliverables, Price and Delivery

**I.      Intuitive will provide Customer with the following:**

SYSTEM TYPE: Ion™ Endoluminal System

One (1): Ion™ System Cart
One (1): Ion™ Controller
One (1): PlanPoint™ Planning Laptop
        Warranty period: One (1) year from the Acceptance.

Ion™ Endoluminal System Documentation including:
        System, Instruments, and Accessories User Manual
                Warranty period: n/a

        PlanPoint™  Software and Planning Laptop Supplement
                Warranty period: n/a

        Reprocessing User Manual Kit
                Warranty period: n/a

        Reprocessing User Manual Appendices
                Warranty period: n/a

        Reprocessing Wall Charts Kit
                Warranty period: n/a

Ion™ Endoluminal System Software
        Warranty period: One (1) year from the Acceptance.

PlanPoint™ Software
        Warranty period: One (1) year from the Acceptance.

(all kits subject to change without notice) (rev 3/2019)

Highly Confidential-AEO                                                           Intuitive-01862325

# EXHIBIT A (con't)

**2.** **Pricing.** All amounts are shown in US Dollars

| Description | Quantity | Delivery Date* | Price | Delivery Charge | Annual Service Fees |
|---|---|---|---|---|---|
| Ion™ Endoluminal System | 1 | February 28, 2020 | ███ | ███ | Service plan selection (see Section 5):<br><br>☒ ION Services Plan<br><br>First Year of Initial Term:<br>████<br><br>Subsequent Years (2-5) of the Initial Term: ███ per year |

Intuitive makes no representation with regard to Certificate of Need requirements for this purchase. It is Customer's responsibility to determine whether this purchase complies with Customer's State Certificate of Need law and what Certificate of Need filing, if any, needs to be made with regard to this purchase.

*The Delivery Date is an estimated "on or before" delivery date to Customer's designated location (see "Ship-to" below).

**3.** **Acceptance.** The System is deemed accepted by Customer upon delivery and successful installation of the System under supervision of the Customer and physicians designated by Customer to verify that it is in proper working order in accordance with specifications and the Documentation and as evidenced by Customer's execution of an acceptance letter, a form of which is attached hereto as Exhibit B ("Acceptance").

**4.** The **"Ship-To"** information for Customer is:

> Northwestern Memorial Healthcare
> 251 E Huron St.
> Chicago, IL 60611

**5.** The **"Bill-To"** information for Customer is:

> Northwestern Memorial Healthcare
> 251 E Huron St.
> Chicago, IL 60611

**6.** **Taxes.** Customer represents that Customer is or is not exempt from sales and use tax by checking the appropriate box below. If no box is checked, Customer will be deemed to not be exempt from sales and use tax and appropriate sales and use tax will be charged to Customer. If exempt, Customer is requested to send or fax a copy of Customer's exemption certificate to: Attn: Tax Department, Intuitive Surgical, Inc. 1020 Kifer Road, Sunnyvale, CA 94086; fax number: 408-523-1390.

```
☐    Taxable
X    Exempt: Charitable (501)(c)/nonprofit
☐    Exempt: Direct Pay Permit # _____
☐    Exempt: Other _____
```

**7.** **Term.** The initial term of this Agreement will commence as of the Effective Date and will continue until the fifth (5th) anniversary of Acceptance ("Initial Term") unless earlier terminated as provided in this Agreement. Thereafter, this Agreement may be renewed for successive one (1) year terms ("Renewal Term(s)") upon mutual written agreement of the parties.

**8.** **Training.** As part of the transaction contemplated herein, Intuitive will provide training to six (6) physicians at no additional charge as deemed necessary by Customer after delivery and installation. Thereafter, training will be made available to Customer at Intuitive's then current list price for training which shall be communicated and mutually agreed by Customer in advance. The payment terms for training are net sixty (60) days from the date of Intuitive's invoice.

Highly Confidential-AEO                                                    Intuitive-01862326

9.   **Proctoring.** As of the Effective Date, the rate for Proctor's services is                              per day. The payment terms for Proctoring are net sixty (60) days from the date of Intuitive's invoice. This pricing will remain in effect during the first year of the Initial Term. Thereafter, Proctoring will be made available to Customer at Intuitive's then current list price for Proctoring.

Highly Confidential-AEO

**INTUITIVE**
**SURGICAL**

# ORDERING AND TERMS*

## ORDERING METHODS

### Purchase Orders accepted:

EDI (preferred) Global Health Exchange (GHX)      E-mail ordersupport@intusurg.com
Fax 408.523.2377      Customer Support 800-876-1310

## TERMS

**Payment Terms** Net 30 Days

**Delivery** Estimated 2-Day standard delivery. FedEx is an Intuitive Surgical preferred courier.

Standard Shipping Terms: FCA Intuitive Surgical warehouse (Incoterms 2010).

All orders are subject to inventory availability.

Advanced instrumentation will be delivered upon Customer's completion of the advanced instrument training verification.

A ███ handling charge will be applied to customer-routed shipments. A customer-routed shipment is when the customer requests that their order be shipped on their own FedEx or UPS shipping account, and not on Intuitive Surgical's FedEx account. The handling charge supports the additional costs related to order fulfillment of customer-designated carrier shipments.

**Price Policy** Pricing subject to change without notice, applicable taxes, and via freight charges may apply.

**Return Goods Policy** All returns are authorized through Intuitive Surgical Customer Service. Please call toll free at 800.876.1310 to obtain a Return Material Authorization number (RMA#). Upon issuance of the RMA#, Customer Service will send the Customer a PDF of the Prepaid RMA Return Shipping label along with an RMA notification email. The Customer must print the Prepaid RMA Return Shipping label, affix it to the package, and call for a FedEx pickup or drop off the defective return at a FedEx location. All returned items must be accompanied with a valid RMA# and are requested to be received within 14 days of issuance or the RMA could be subject to cancellation. Intuitive Surgical will prepay for the return of the defective instruments.

### Defective returns

· Upon identification of a defective instrument, please call Intuitive Surgical Customer Service within 5 days.

· Prior to returning to Intuitive Surgical, items must be cleaned and decontaminated in accordance with current local environmental safety laws and standards.

### Excess returns

· Items are required to be in the original packaging with no markings, seals intact, and to have been purchased within the last 12 months.

· Package excess returned inventory in a separate shipping container to prevent damage to original product packaging.

**Credit Policy** Intuitive Surgical will issue credit against original purchase order after full inspection is complete.

### Credit for defective returns

· Intuitive Surgical will issue credit on products based on failure analysis performed and individual warranty terms.

· For instruments, credit will be issued for the remaining lives, plus one additional life to compensate for usage at the time the issue was identified.

· Evidence of negligence, misuse and mishandling will not qualify for credit.

### Credit for excess-inventory returns

· Excess-inventory returns will be valued at the invoice price.

· Original packaging must be unmarked, undamaged and seals intact to qualify for credit.

### Credit will be issued based on the following conditions

· Products that were shipped less than 12 months prior to return request.

· If the original package is intact.

· If the product is within expiration date.

Intuitive Surgical will retain all returned product.

### Warranty Warranties are applied for manufacturing defects

· Endoscope, Camera, and Simulator – 1 year warranty
· Accessories – 90 day warranty
· Instruments – see above for credit terms

Highly Confidential-AEO                                        Intuitive-01862328

INTUITIVE
SURGICAL

## ORDERING AND TERMS* (continued)

**Use of Simulator**
Customer will ensure the proper use of the Simulator consistent with the Documentation, and Customer will ensure the proper management and supervision of the Simulator. Customer will not, nor will Customer permit any third party to, modify, disassemble, reverse engineer, alter or disable the Simulator. Prohibited actions include, but are not limited to: (i) adding or subtracting any Customer or third party equipment, hardware, firmware, or software to or from the Simulator, or (2) reconfiguring any of the Intuitive equipment, hardware, firmware, or software as originally provided to Customer as part of the Simulator without Intuitive's express written permission.

**Data Use**
Customer agrees that Intuitive and its affiliates within the Intuitive Surgical group of companies (collectively, "Intuitive") may collect data relating to the use of Intuitive products ("Data"). In some instances Data may be communicated via data gathering or transmission technology to Intuitive. In other instances, Intuitive may request Customer and Customer agrees to provide Data to Intuitive. Such Data may be used for a variety of purposes, including, but not limited to: (i) providing support and preventative maintenance of Intuitive products, (2) improving Intuitive products or services, (3) ensuring compliance with applicable laws and regulations, and (4) providing a general resource for Intuitive's research and business development. Intuitive does not intend to collect protected health information (PHI) as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or analogous foreign patient privacy laws or regulations, as may be amended from time to time. In the event any Data communicated to Intuitive identifies an entity or individual, Intuitive will not share such Data with any third party without the entity's or individual's consent, unless required by law or regulatory authorities.

**Software License and Restrictions**
Software embedded within the Simulator is provided under license and is not sold to Customer. Subject to the terms and conditions of this Agreement, Intuitive grants to Customer a non-exclusive, non-transferable, fully paid, restricted use license to use the Software solely as incorporated in the Simulator in machine-executable object code form and solely in connection with the operation of the Simulator as described in the Documentation. Customer must not use, copy, modify or transfer the Software or any copy thereof, in whole or in part, except as expressly provided in this Agreement. In addition, Customer must not reverse engineer, disassemble, or attempt to derive the source code for or otherwise manipulate the Software, except that manipulation of the Software is permitted if, and then only to the extent that, the foregoing prohibition on manipulation is required to be modified by applicable law. In that case, Customer must first request, from Intuitive, the information to be sought from the Software, and Intuitive may in its discretion, provide information to Customer under good faith restrictions and impose reasonable conditions on use of the Software. The structure and organization of the Software are valuable trade secrets of Intuitive and Customer will protect the Software as Intuitive's Proprietary Information. Intuitive reserves all rights to the Software not expressly granted to Customer.

**Networking Requirements**
Purchased equipment may include a network connection in order to achieve full functionality. Customer acknowledges that when Simulator is in use, Customer is responsible for maintaining an active network connection to Intuitive Surgical Simulator infrastructure as applicable in the Simulator's network requirements, for the purposes of supporting all subscriptions services such as, latest simulation updates, OS patches, and virus updates, data backup and user account management capabilities. Customer is responsible for the security of the Simulator and the security of the internal network to which the Simulator is configured. Intuitive reserves the right to change, add, or remove functionalities or features at any time.

**Information Security**
Customer is responsible for maintaining the confidentiality of its username(s), password(s), account(s), as well as all activities that occur under that account(s) and both the physical and cyber-security of the Simulator.

Any form or condition contained in your purchase order or similar forms which is different from, inconsistent with, or in addition to these terms shall be void and of no effect unless agreed to in writing and signed by your authorized representative and an authorized representative of Intuitive Surgical.

*Ordering, terms and conditions are subject to revision.

For questions please contact Customer Service at 800.876.1310, Option 3

23

Highly Confidential-AEO

Intuitive-01862329