# EXHIBIT 3

## to

# PAUL D. BRACHMAN DECLARATION IN SUPPORT OF DEFENDANT'S TRIAL BRIEF

Intuitive
1020 Kifer Road
Sunnyvale, CA 94086
T. 408 523 2100
F. 408 523 1390
intuitive.com

November 15, 2018

**VIA CERTIFIED MAIL**

Stephanie L. Parker
Clifton Parker
Restore Robotics LLC
5156 Belmore Ct.
Suwanee, GA  30024

**Subject: Tampering with and Reprogramming *da Vinci*® Surgical System Instruments**

Dear Ms. Parker and Mr. Parker,

We write on behalf of Intuitive Surgical, Inc. ("Intuitive"), a company that develops and distributes advanced robotic-assisted surgical platforms for minimally-invasive surgery. Our core products include the *da Vinci*® Surgical System (the "System") as well as the *EndoWrist*® instruments that attach to the System.

It has come to our attention that Restore Robotics LLC ("Restore Robotics") is engaging in the unauthorized manufacturing and marketing of a medical device without proper regulatory authorization from the U.S. Food and Drug Administration ("FDA" or the "agency"). We also have concerns that the devices potentially being distributed are not being manufactured, or re-manufactured as the case may be, under a recognized quality management system applicable to medical devices. In addition, we believe that Restore Robotics has engaged in behavior that violates applicable laws and may give rise to civil liability. We write to you on behalf of Intuitive to demand that Restore Robotics immediately cease and desist from any and all improper behavior with regard to the *EndoWrist*® instruments, including but not limited to your actions described below.

**Regulatory Background**

In the United States, class II medical devices — including *da Vinci*® Systems and *EndoWrist* instruments — are subject to premarket notification clearance, compliance with the Quality System Regulation

**INTUITIVE.**

Attorneys' Eyes Only                                                                                                          Intuitive-00478439

(QSR), among other regulations promulgated by the FDA to ensure the safety and effectiveness of each medical device over its intended life. With respect to class II devices and related accessories, only those with FDA 510(k) clearance may be placed in the U.S. market. Moreover, it is FDA policy that only one company can manufacture and market a product under a single 510(k) absent a contract manufacturing or private labelling agreement between the parties. Further, any change or modification to a cleared class II medical device that could significantly affect its safety or effectiveness voids the prior 510(k) clearance as to the modified device, rendering its use unlawful without a new clearance. This includes changes to the cleared indications for use.

FDA also imposes strict requirements regarding the design, development and manufacturing of medical devices. These good manufacturing practices are codified in the Quality System Regulation, 21 C.F.R. Part 820. The QSR requires that medical device manufacturers have a quality management system in place for the design, manufacture, packaging, labelling, storage, installation, and servicing of finished medical devices intended for commercial distribution in the United States. As a key part of compliance with these requirements, device manufacturers must verify and validate both their designs and their manufacturing processes to ensure that they can consistently meet required specifications and user needs, and that such specifications are appropriate to ensure device performance and patient safety. Utilizing these process controls, manufacturers must identify the useful life of their devices, as well as service and maintenance requirements to ensure their safe and effective use. All service and maintenance must be performed per a controlled process and bring products to their FDA cleared specifications. Any changes to these specifications require extensive verification and validation subject to a comprehensive set of quality management procedures. Such changes also may require additional clearance from the FDA.

Importantly, FDA also requires certain refurbishers and service providers to register their establishments with the agency. Specifically, any entity that processes, conditions, renovates, repackages, restores, or does any other act to a finished device that significantly changes the finished device's performance or safety specifications, or intended use must register their establishment and list the devices being remanufactured at the subject facility.

Attorneys' Eyes Only

Intuitive-00478440

## Factual Background

In accordance with its quality system, Intuitive engages in rigorous testing prior to submitting its medical devices for FDA clearance. Generally, and specifically with respect to the *EndoWrist*® instruments, that includes instrument reliability/projected life testing to confirm the maximum number of safe and effective clinical uses of a product prior to disposal. Those test results are often incorporated into the FDA 510(k) clearance application. With respect to many of the *EndoWrist*® instruments, Intuitive Surgical determined – and the FDA 510(k) clearance reflects – ten surgical procedures is the maximum number of safe and effective clinical uses prior to disposal. Accordingly, Intuitive placed a memory device inside such instruments that keeps track of the usage count and inhibits the instrument from functioning after ten uses.

We recently have become aware that you are offering Intuitive customers in the United States a type of "testing and repair" service for the *EndoWrist*® instruments. We understand that you are informing our customers that, rather than discarding the instruments after ten clinical uses, they can send you the instruments "that have only 1 use left" and you will clean and "utilize [y]our proprietary and patented process to restore the available uses to its original state."

## Restore Robotics' Alleged Activities Violate U.S. Law

We have numerous concerns with the foregoing activities. First, it is unclear whether you or your service technicians have the requisite specifications by which to make the claim that the units are returned to their production equivalent qualification. Even assuming for argument that you have obtained these specifications, or Intuitive's service manual, any modifications that reset or extend the number of uses of the device also violates FDA requirements. This change impacts the intended use of the device, exceeds the verified and validated testing used to support the FDA clearance, and thereby constitutes a major change to the device. This change could significantly affect the safety and effectiveness of the device and therefore requires clearance of a new 510(k). To our knowledge, FDA has not granted Restore Robotics 510(k) clearance to market or distribute modified *EndoWrist*® instruments in the United States for any indication for use. Thus, it appears that Restore Robotics is manufacturing, marketing, and selling class II medical devices without FDA premarket clearance. As a result, it appears that these activities adulterate under 21 U.S.C. § 351(f)(1)(B) and/or misbrand under

Attorneys' Eyes Only                                                                                     Intuitive-00478441

21 U.S.C. § 352(o) the products you are entering into commerce, because the law requires, and you do not have, a 510(k) clearance showing that your medical device is substantially equivalent to a legally marketed predicate device. Moreover, any claims that Restore Robotics is able to market significantly modified versions of Intuitive's *EndoWrist*® instruments also violate FDA's longstanding policy that only one company can manufacture and market a medical device under a single 510(k) absent an agreement between the companies to do so.

Restore Robotics also appears to be marketing these devices without accurate establishment registration and device listing with FDA. Due to the nature and extent of the modifications of the activities apparently being performed, Restore Robotics is considered to be a "remanufacturer." FDA defines a remanufacturer as any entity that processes, conditions, renovates, repackages, restores, or does any other act to a finished device that significantly changes the finished device's performance or safety specifications, or intended use. As a remanufacturer of medical devices, regardless of whether you hold a 510(k) or not, you are required to register your manufacturing establishment with FDA and to submit a device listing to the agency. 21 U.S.C. §360; 21 C.F.R. § 807.20. Your failure to do so misbrands the remanufactured devices placed into commerce by Restore Robotics. 21 U.S.C. § 352(o).

As previously stated, it does not appear that Restore Robotics has the requisite 510(k) clearance to support the remanufacturing, marketing and sale of its services as they may pertain to *EndoWrist*® instruments. Consequently, any such Intuitive products placed into commerce by Restore Robotics are likely adulterated under 21 U.S.C. § 351(f)(1)(B) and/or misbranded under 21 U.S.C. § 352(o). The introduction or delivery for introduction into interstate commerce of adulterated and/or misbranded medical devices is a prohibited act under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 331. Those who commit prohibited acts may be subject to injunctions, civil and criminal fines and penalties under 21 U.S.C. §§ 302 and 333. The illegal devices also are subject to seizure under 21 U.S.C. § 304.

Your apparent false and misleading marketing practices and activities also may violate other U.S. federal and state laws and could expose Restore Robotics to significant financial liability. False

Attorneys' Eyes Only

Intuitive-00478442

advertising statements regarding the safety and effectiveness of the modified *EndoWrist®* instruments are likely to deceive a substantial segment of your audience with respect to material characteristics of the instruments. The deception caused by such statements — and the attendant potential risk to patient health and safety through the use of modified *EndoWrist®* instruments — threaten to injure or have already injured Intuitive's business and reputation. Such deceptive practices also cause likelihood of confusion or of misunderstanding as to the modified *EndoWrist®* instruments, including but not limited to FDA certification, affiliation with or approval by Intuitive, as well as key characteristics such as safety and effectiveness. In addition, the unauthorized use of Intuitive's marks in connection with advertisement of your "maintenance service" is likely to deceive or cause confusion about the source, affiliation, or quality and safety of the services provided and the modified *EndoWrist®* instruments. You also are liable to the extent your activities interfere with our customers' warranties.

Lastly and most critically, Restore Robotics' modification of the *EndoWrist®* instruments impacts the intended use of the device, exceeds the verified and validated testing performed by Intuitive to support the FDA 510(k) clearance, and therefore raises serious questions about the safety and effectiveness of the clinical use of such modified instruments in surgical procedures. For this reason, you could face significant financial liability from both practitioners and their patients in connection with your untested, unapproved modification of the *EndoWrist®* instruments.

### Demand

Based on the foregoing apparent violations of U.S. law, Intuitive demands that Restore Robotics immediately cease and desist from:
   a. marketing and offering a servicing process in the course of which the use counter of *EndoWrist®* instruments' memory device is manipulated and/or replaced to permit more than ten uses;
   b. contacting Intuitive's customers to offer services related to Intuitive's products; and
   c. manipulating and marketing or offering Intuitive's products without FDA clearance of the manipulated products.

Attorneys' Eyes Only

Intuitive-00478443

Please confirm your compliance with these demands no later than December 14, 2018. If you allege that you received FDA clearance for the modifications to the *EndoWrist®* instruments described herein or possess clinical proof that your service process returns the modified instruments to a "production equivalent qualification" and/or that additional use does not affect the safety or performance of the instruments, provide proof of the same no later than December 14, 2018.

We reserve all rights to take all appropriate action against you and to protect Intuitive's rights, products and reputation, including notifying the FDA of these activities for investigation and potential enforcement action against you and pursuing appropriate civil remedies.

Very truly yours,

Romain Denis
VP, EU and US Regulatory Affairs

Kara Andersen Reiter
SVP, General Counsel & CCO

Attorneys' Eyes Only

Intuitive-00478444