Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

William B. Michael (*pro hac vice*)
Crystal L. Parker (*pro hac vice*)
Daniel A. Crane (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:  (628) 432-5100
Facsimile:  (628) 232-3101
Email: jhill@paulweiss.com

*Attorneys for Defendant Intuitive Surgical, Inc.*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>*Defendant*. | Case No. 3:21-cv-03496-AMO<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 4 TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OR ARGUMENT CONCERNING POST-NOVEMBER 2022 EVENTS**<br><br>Date:  November 25, 2024<br>Time:  11:00 a.m.<br>Courtroom:  10<br><br>The Honorable Araceli Martínez-Olguín |

1

## NOTICE OF MOTION AND MOTION

2     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that on November 25, 2024 at 11:00 a.m., or as soon thereafter

4    as this matter may be heard before the Honorable Araceli Martínez-Olguín, District Judge in the

5    United States District Court for the Northern District of California, at 450 Golden Gate Avenue,

6    Courtroom 10, 19th Floor, San Francisco, CA 94102, Defendant Intuitive Surgical, Inc.

7    ("Intuitive") will and hereby does move the Court for an order prohibiting Plaintiff Surgical

8    Instrument Service Company's ("SIS") witnesses and lawyers from offering any evidence or

9    argument about the post-November 10, 2022 time period, other than SIS's recently produced

10   financial records and RFA responses.

11         The relief Intuitive seeks through this Motion is authorized by the Federal Rules of Civil

12   Procedure, including but not limited to Rules 26 and 37, and by applicable case law.  This

13   Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of

14   Points and Authorities in support thereof, the accompanying Declaration of Paul D. Brachman

15   and attached exhibits, other filings in this matter, and the oral argument of counsel.

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

When Intuitive sought to take discovery of facts and events occurring after November 2022, SIS objected on various grounds, including that discovery from that period is irrelevant. The Court denied Intuitive's motion to compel such discovery, with two narrow exceptions, requiring SIS to: (1) produce updated financial records, and (2) respond to a small number of Requests for Admission ("RFAs"). *See* Minute Entry, Dkt. 261. SIS subsequently produced what was ordered by the Court. Its updated financials show that SIS continues to operate a profitable business. Its RFA responses admit that SIS took no steps to compete in the business of modifying (or what SIS calls "repairing") EndoWrists after November 2022. Having successfully resisted all other discovery as to this period, SIS's witnesses and lawyers should be precluded from offering any evidence or argument about what happened during that period outside of the limited information that SIS produced in response to the Court's order.

Any other result would contradict the most basic rules of disclosure under Federal Rule of Civil Procedure 26 and principles of fairness. A party cannot refuse to produce discovery on a matter by claiming it is irrelevant, and then surprise its opponent with undisclosed evidence on the same matter at trial. And here the prejudice to Intuitive of a contrary result would be especially severe. SIS is seeking more than ***half a billion dollars*** in damages, post-trebling, the majority of which are "lost profits" SIS claims to have incurred ***after*** November 2022. Yet SIS objected to discovery of any real-world facts or events that occurred during that period, and the Court sustained its objection with limited exceptions as noted. As a result, there is currently no evidence in the record to show that SIS was excluded from competing in any relevant market by any alleged anticompetitive conduct of Intuitive during that period. All that is in the record are *admissions* by SIS that it took no steps to compete after November 2022. Having successfully resisted all other pre-trial discovery about the post-November 2022 time period, SIS should not now be allowed to try to plug any gaps in its proof by offering evidence or argument as to that period at trial.

For these reasons, and as set forth below, Intuitive respectfully submits that the Court should preclude SIS from offering any evidence or argument about the post-November 10, 2022 time period, other than SIS's recently produced financial records and RFA responses.

1

## **RELEVANT BACKGROUND**

2
       Intuitive sought to take supplemental discovery from SIS and various third parties to update

3
the record before trial regarding marketplace facts and events since November 10, 2022.  *See* Def.'s

4
Mot. for Limited Suppl. Disc., Dkt. 243-1.  Intuitive pointed to several key events that undercut

5
SIS's claim that it was excluded from competing in that time period, including Intuitive's March

6
2023 announcement clarifying that its customers were free to purchase any FDA-cleared reset

7
EndoWrist as well as the entry and expansion of other third parties in the same market that SIS

8
alleges was "foreclosed" to competitors.  *See id.* at 3–7.  SIS opposed Intuitive's requests.  *See*

9
Pl's Br. Opposing Intuitive's Mot. to Reopen Disc., Dkt. 246.

10
       At the hearing on Intuitive's motion to compel this discovery, SIS argued that post-

11
November 2022 facts and events are irrelevant SIS to its claims.  SIS's attorney argued, for example,

12
that Intuitive's March 2023 announcement regarding FDA clearance is "irrelevant.  It really

13
doesn't add anything here."  Ex. 1 at 15:17-18.[1]  He argued as to SIS's financial condition post-

14
2022, "I don't think it's really relevant, Your Honor, because what we're talking about here is

15
what happened in the market in 2019 and 2020."  *Id.* at 18:12–14.  And as to SIS's efforts, or lack

16
thereof, to compete for X/Xi EndoWrist business, he stated:  "our position was, as taken by our

17
experts, is if SIS had had the money to reprogram the X and the Xi in 2019-2020 from ongoing

18
operations from S and Si, then it would have taken about a year to do it.  And I think that's the

19
only relevant inquiry here.  It's not whether we would have had the money to do it in 2023 or 2024.

20
***That's not our case*.**"  *Id.* at 18:16–22 (emphasis added).

21
       While Intuitive maintains that evidence showing that SIS had the opportunity to compete

22
after November 2022 and simply made a choice not to do so is highly relevant and demonstrates

23
why SIS's liability and damages claims have no merit, the Court largely declined to compel

24
discovery on these matters.  The Court required SIS to produce certain "updated financial reports"

25

26

27

28
---

[1] All references to "Ex." refer to exhibits to the Declaration of Paul D. Brachman in Support of Intuitive's Motions in Limine No. 4 to Preclude Plaintiff from Offering Evidence or Argument Concerning Post-November 2022 Events.

1  and to respond to "limited requests for admissions."  Min. Entry, Dkt. 261.  The Court otherwise

2  denied Intuitive's motion.  *See id.*

3       In its responses to the RFAs Intuitive propounded pursuant to the Court's order, SIS admits

4  that since November 2022, it has not sought FDA clearance for any service, procedure, or

5  technology for resetting or reprogramming the use counter on any EndoWrists; has not taken any

6  steps to sell, distribute, or market any EndoWrists with reset and/or reprogrammed use counters,

7  or any service for resetting or reprogramming the use counter on EndoWrists; and has not

8  developed any service, procedure, or technology for resetting or reprogramming the use counter

9  on X/Xi EndoWrists.  Ex. 2 at 3–5.  SIS's financial records show that it remains profitable and has

10 continued to grow its revenues since 2020, but do not reflect any revenues or costs related to SIS's

11 EndoWrist repair business (or attempts to enter that business).  *See* Exs. 3, 4.

12      Nevertheless, SIS continues to assert it is entitled to enormous money damages for 2023,

13 2024, and beyond.  SIS's damages expert, Richard Bero, opined as of the close of expert discovery

14 that SIS was entitled to between $63.5 million to $131.4 million in alleged "lost profits" from 2020

15 through 2025 as a result of allegedly anticompetitive conduct by Intuitive, with bulk of that amount

16 coming in the years 2023, 2024, and 2025.  *See* Ex. 5 at Schedule 1.  And just three days ago, on

17 October 25, 2024—the last business day before pre-trial filings were due in this matter—SIS

18 produced "updated schedules" for Bero's damages report that substantially ***increase*** the amount

19 of damages that SIS is seeking in ***each year*** starting with 2022, and extend SIS's claimed damages

20 through ***2026***.  *See* Ex. 6 at Schedule 1.  In total, Bero has increased his total lost profit damages

21 estimates by over ***$30 million***, to a range from $95.5 million to $169.2 million—for a total of more

22 than ***$500 million*** post-trebling.  *See id.*  SIS has provided no backup data or information

23 supporting these increased calculations.

24      Thus, to recap:  SIS took the position that everything that has happened in the real-world

25 marketplace since November 2022 is irrelevant to its claims.  SIS refused to engage in discovery

26 about the post-November 2022 period and obtained a Court order largely precluding Intuitive from

27 obtaining such discovery.  SIS has admitted it has done nothing to compete in any alleged relevant

28 market since November 2022, despite having an ongoing and profitable business.  And SIS

1  contends not only that it is entitled to hundreds of millions of dollars in "lost profits" damages
2  because it supposedly was excluded from the marketplace after November 2022, but that the
3  amount of those damages has increased by more than $30 million since discovery closed.

4  **<u>ARGUMENT</u>**

5  SIS made a **_choice_** not to voluntarily produce and to oppose Intuitive's requests to take
6  discovery from SIS and anyone else regarding the post-November 2022 time period. Intuitive
7  moved to compel such discovery and SIS objected, arguing in Court that anything that happened
8  during that period is **_irrelevant_** to its claims. *See supra* at 2. It follows as a matter of fundamental
9  fairness, as well as from the Federal Rules of Civil Procedure, that SIS therefore should be barred
10  from offering evidence or making arguments to the jury about facts and events from that time
11  period.[2]

12  In similar circumstances, courts have estopped parties from litigating issues on which they
13  successfully opposed discovery. For example, in *Cox* v. *Continental Casualty Co.*, 703 F. App'x
14  491, 495 (9th Cir. 2017), the Ninth Circuit affirmed a district court's decision estopping the
15  defendant from raising a fraud defense that would have voided an insurance contract, when the
16  defendant had earlier refused to produce coverage-related documents on the grounds that they were
17  "immaterial." Similarly, in *Walker* v. *Life Insurance Co. of the Southwest*, 2014 WL 12577139,
18  at *11–12 (C.D. Cal. Apr. 3, 2014), the court granted a motion in limine to prevent the defendant
19  from offering evidence about the import of three riders to an insurance policy, after the defendant

20

21  ───────────────
[2] Whether the basis for the Court's ruling was relevance, or whether the Court ruled based on
22  burden, cost, or the proximity to trial, does not change the outcome on this motion. If SIS wanted
to use evidence from the post-November 2022 time period, it could have and should have
23  supplemented its discovery responses at any time before now (as, for example, Intuitive did by
voluntarily producing post-November 2022 sales data last May to SIS, *see* Ex. 7 at 26:4–10.) *See*
24  Fed. R. Civ. P. 26(e)(1) ("A party who has made a disclosure under Rule 26(a)—or who has
responded to an interrogatory, request for production, or requests for admission—must supplement
25  or correct its disclosure or response: (A) in a timely manner if the party learns that in some material
respect the disclosure or response is incomplete . . . or (B) as ordered by the court."); Fed. R. Civ.
26  P. 37(c)(1) ("If a party fails to provide information . . . as required by [Rue 26(e)], the party is not
allowed to use that information . . . at trial, unless the failure was substantially justified or is
27  harmless."). The fact remains, SIS made a decision not to allow discovery of the post-November
2022 time period, and it should now be barred from offering evidence or argument about that time
28  period.

had successfully opposed a motion to compel their production on relevance grounds. The Court here similarly should find that SIS is precluded from presenting at trial any evidence regarding the post-November 2022 period, beyond the updated financial records and RFA responses it provided in response to this Court's recent order. Any other result would be tantamount to allowing SIS to reverse its prior representations to this Court.

Moreover, this is not some academic issue in this case, or a matter that should await seeing what SIS does at trial. SIS has already made clear that it intends to ask the jury for hundreds of millions of dollars in "lost profits" damages supposedly incurred after November 2022. Yet, as a result of SIS's litigation decision to oppose discovery about the post-November 2022 time period, there is no evidence in the record that ***Intuitive's*** actions prevented SIS from being able to compete during that period. SIS cannot now try to fix that failure of proof by having its witnesses testify, or its lawyers make arguments, about post-November 2022 facts and events—including arguments that SIS was foreclosed from competing during that time period. To do so, after having successfully resisted the discovery Intuitive sought to take about that time period, would be extremely prejudicial and unfair to Intuitive. Rather, the ***only*** evidence pertaining to that period that SIS should be allowed to reference at trial is what it admitted in its RFA responses and what its updated financial records show.

## **CONCLUSION**

For the foregoing reasons, the Court should preclude SIS from offering evidence or argument about the post-November 10, 2022 time period, other than SIS's recently produced financial records and RFA responses.

Defendant's Motion in Limine to Preclude SIS from Offering Post-November 2022 Evidence
3:21-cv-03496-AMO

1   Dated:  October 28, 2024                    By: /s/ *Kenneth A. Gallo*
                                                    Kenneth A. Gallo
2

3                                               Kenneth A. Gallo (*pro hac vice*)
                                                Paul D. Brachman (*pro hac vice*)
4                                               **PAUL, WEISS, RIFKIND, WHARTON &
                                                GARRISON LLP**
5                                               2001 K Street, NW
                                                Washington, DC  20006-1047
6                                               Telephone:  (202) 223-7300
                                                Facsimile:  (202) 223-7420
7                                               Email: kgallo@paulweiss.com
                                                Email: pbrachman@paulweiss.com
8

9                                               William B. Michael (*pro hac vice*)
                                                Crystal L. Parker (*pro hac vice*)
10                                              Daniel A. Crane (*pro hac vice*)
                                                **PAUL, WEISS, RIFKIND, WHARTON &
11                                              GARRISON LLP**
                                                1285 Avenue of the Americas
12                                              New York, NY 10019-6064
                                                Telephone:  (212) 373-3000
13                                              Facsimile:(212) 757-3990
                                                Email: wmichael@paulweiss.com
14                                              Email: cparker@paulweiss.com
                                                Email: dcrane@paulweiss.com
15

16                                              Joshua Hill Jr. (SBN 250842)
                                                **PAUL, WEISS, RIFKIND, WHARTON &
17                                              GARRISON LLP**
                                                535 Mission Street, 24th Floor
18                                              San Francisco, CA 94105
                                                Telephone:  (628) 432-5100
19                                              Facsimile:  (628) 232-3101
                                                Email: jhill@paulweiss.com
20

21                                              Sonya D. Winner (SBN 200348)
                                                **COVINGTON & BURLINGTON LLP** 415
22                                              Mission Street, Suite 5400
                                                San Francisco, California 94105-2533
23                                              Telephone:  (415) 591-6000 Facsimile:
                                                (415) 591-6091
24                                              Email: swinner@cov.com
25

26                                              Kathryn E. Cahoy (SBN 298777) **COVIN
                                                GTON & BURLINGTON LLP** 3000 El
27                                              Camino Real
28

---

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: kcahoy@cov.com

Andrew Lazerow (*pro hac vice*)
**COVINGTON & BURLINGTON LLP**
One City Center 850 Tenth Street NW
Washington DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: alazerow@cov.com

Allen Ruby (SBN 47109)
**ALLEN RUBY, ATTORNEY AT LAW**
15559 Union Ave. #138
Los Gatos, California 95032
Telephone: (408) 477-9690
Email: allen@allenruby.com

*Attorneys for Defendant*
*Intuitive Surgical, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Motion in Limine to Preclude SIS from Offering Post-November 2022 Evidence
3:21-cv-03496-AMO

**CERTIFICATE OF SERVICE**

On October 28, 2024, I caused a copy of Defendant's Notice of Motion and Motion in Limine No. 4 to Preclude Plaintiff from Offering Evidence or Argument Concerning Post-November 2022 Events to be electronically served via email on counsel of record for Surgical Instrument Service Company, Inc.

Dated:  October 28, 2024                              By:  */s/ Kenneth A. Gallo*
                                                                                  Kenneth A. Gallo

Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

William B. Michael (*pro hac vice*)
Crystal L. Parker (*pro hac vice*)
Daniel A. Crane (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:  (628) 432-5100
Facsimile:  (628) 232-3101
Email: jhill@paulweiss.com

*Attorneys for Defendant Intuitive Surgical, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC., <br>     *Plaintiff*, <br>    v. <br><br> INTUITIVE SURGICAL, INC., <br>     *Defendant*. | Case No. 3:21-cv-03496-AMO <br><br><br> **DECLARATION OF PAUL D. BRACHMAN IN SUPPORT OF INTUITIVE'S MOTION IN LIMINE NO. 4 TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OR ARGUMENT CONCERNING POST-NOVEMBER 2022 EVENTS** <br><br><br> The Honorable Araceli Martínez-Olguín |

I, PAUL D. BRACHMAN, declare as follows:

1.       I am an attorney licensed to practice in New York and the District of Columbia, and am admitted *pro hac vice* to practice before this Court.  I am a partner with the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"), counsel for Intuitive Surgical, Inc. ("Intuitive") in this matter.  I have personal knowledge of the facts set forth herein, and if called to testify, I could and would testify competently hereto.

2.       Attached to this declaration as **Exhibit 1** is a true and correct copy of excerpted pages of the transcript of proceedings before this Court in this matter on September 26, 2024.

3.       Attached to this declaration as **Exhibit 2** is a true and correct copy of Surgical Instrument Service Company's ("SIS") Responses to Intuitive's Second Set of Requests for Admission and Third Set of Interrogatories, dated October 16, 2024.

4.       Attached to this declaration as **Exhibit 3** is a true and correct copy of SIS's Financial Statements and Accountants' Compilation Report as of and for the years ended December 31, 2021 and 2020, which has not yet been produced with Bates numbers.

5.       Attached to this declaration as **Exhibit 4** is a true and correct copy of SIS's Financial Statements and Accountants' Compilation Report as of and for the years ended December 31, 2023 and 2022, which has not yet been produced with Bates numbers.

6.       Attached to this declaration as **Exhibit5** is a true and correct copy of excerpted pages of the Second Rebuttal Expert Report of Richard F. Bero dated March 1, 2023, which was previously filed on the docket in this matter with redactions to protect confidential material at ECF No. 229-49.

7.       Attached to this declaration as **Exhibit 6** is a true and correct copy of the updated Schedule 1.0 to the Second Rebuttal to the Expert Report of Richard F. Bero, which was served on October 25, 2024.

1

2

8.     Attached to this declaration as **Exhibit 7** is a true and correct copy of excerpted pages of the transcript of proceedings before this Court in this matter on June 7, 2024.

3

4

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

5

Dated:  October 28, 2024                    By: /s/ *Paul D. Brachman.*

6

PAUL D. BRACHMAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

**FILER'S ATTESTATION**

I, Kenneth A. Gallo, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatory identified above has concurred in this filing.

Dated:  October 28, 2024

By: /s/ *Kenneth A. Gallo*
     Kenneth A. Gallo

Kenneth A. Gallo (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
Email: kgallo@paulweiss.com

*Attorney for Defendant*
*Intuitive Surgical, Inc.*

**EXHIBIT 1**

**to**

**PAUL D. BRACHMAN DECLARATION IN SUPPORT
OF DEFENDANT'S MOTION IN LIMINE NO. 4
TO PRECLUDE PLAINTIFF FROM OFFERING
EVIDENCE OR ARGUMENT CONCERNING POST-
NOVEMBER 2022 EVENTS**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

| | | |
|---|---|---|
| **Surgical Instrument Service Company, Inc.,** | ) | No. 3:21-cv-03496-AMO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | San Francisco, California |
| | ) | September 26, 2024 |
| **Intuitive Surgical, Inc.,** | ) | 2:28 p.m. |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |


BEFORE:  THE HONORABLE ARACELI MARTINEZ-OLGUIN, JUDGE


<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>

<u>VIA HYBRID ZOOM VIDEOCONFERENCE</u>

<u>MOTION HEARING</u>

Official Court Reporter:
**Cathy J. Taylor, RMR, CRR, CRC (By Zoom Videoconference)**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                           **A P P E A R A N C E S**

2     For the Plaintiff:
          ROPES GRAY
3         By:  **Richard T. McCaulley, Esq.**
          191 North Wacker Drive, 32nd Floor
4         Chicago, Illinois  60606

5         HALEY GUILIANO, LLP
          By:  **Joshua Voight Vanhoven, Esq.**
6         111 Market Street, Suite 900
          San Jose, California  95113

7
      For the Defendant:
8         PAUL, WEISS, RIFKIND, WHARTON and GARRISON, LLP
          By:  **William Michael, Esq.**
9              **Kenneth Gallo, Esq. (Washington, DC)**
          1285 Avenue of the Americas
10        New York, New York  10019

11        COVINGTON & BURLING, LLP
          By:  **Isaac Daniel Chaput, Esq.**
12        415 Mission Street, Suite 5400
          San Francisco, California  94105

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1    clearances.

2          So we have all of those very material facts.  And I

3    think it's on that record that we're saying discovery is

4    warranted in this case.  It's not just a sort of abstract time

5    has passed and so things have happened.

6          THE COURT:  Thank you.

7          Do you want to jump in there at all, Mr. McCaulley?

8          MR. MCCAULLEY:  Yeah.  Just briefly, Your Honor.

9          You know, I think certainly Intuitive has acknowledged

10   that they knew about all these things in advance.  I want to

11   just briefly comment about their announcement to the world in

12   March of 2023 that they would not enforce their contractual

13   provisions against someone who got FDA approval.

14         I think you're -- the Honor -- Your Honor, the Court's

15   already ruled on the fact that the FDA hadn't prohibited repair

16   services and the fact that Intuitive -- you know, it reinforced

17   the need for FDA approval makes the March announcement

18   irrelevant.  It doesn't really add anything here.  We would

19   argue it's part of their anticompetitive behavior.

20         But, Your Honor, the only thing I would ask is that if

21   there is anything about the Restore case that the Court would

22   like to hear, the recently filed Restore case and how it

23   affects the case, I'm happy to answer as best I can.  Or if the

24   Court thinks it's important, we would ask for leave to file a

25   brief on that topic on Monday.

1          MR. MICHAEL:  Your Honor, if I could just respond

2     briefly to Mr. McCaulley's argument about the Intuitive

3     announcement from March of 2023.

4          This is the argument that they made in their -- their

5     opposition brief as well.  And, respectfully, I think it just

6     doesn't work.  First of all, it doesn't match up with the

7     timing of what actually happened here.  SIS has tried to argue

8     that Intuitive forced third parties down this supposed FDA path

9     by making this announcement.  But we already know from the

10    record that we have that Iconocare and Restore had made the

11    choice to seek FDA clearance for their EndoWrist

12    remanufacturing well before this.  They actually started on

13    that path in 2021 and had received the first 510(k) clearance

14    by September of 2022, well before Intuitive made that

15    announcement.  And we know why they did that, because, again,

16    we deposed Iconocare witness about this, and he testified, and

17    this is at Brachman Exhibit 15, that Iconocare, together with

18    Restore, chose to seek FDA clearance for marketing reasons

19    because, in his words, it was like a Good Housekeeping seal of

20    approval.

21         And far from engaging in any anticompetitive conduct,

22    as Mr. McCaulley suggests, what Intuitive then said was if any

23    third party has that Good Housekeeping seal of approval for its

24    products for any model of EndoWrist -- which before Iconocare

25    and Restore, no one did -- then Intuitive is not going to stand

1    in the way of hospitals using that product.  In other words,

2    Intuitive was saying:  If you go and actually prove to the FDA

3    that your reset process of what you want to do with the

4    EndoWrist devices is safe and effective, then have at it.  Go

5    compete.  Intuitive's contracts are not going to prevent that.

6            And that has nothing to do with the Court's ruling on

7    FDA clearance as a matter of law and what it says about F --

8    SIS's standing.  We're not challenging any aspect of that

9    ruling.  This doesn't have to do with FDA law and regulations.

10   This has to do with what Intuitive said as a matter of contract

11   to the market and with the -- with the opportunities that third

12   parties, including SIS, had to compete by pursuing that avenue,

13   as Restore did.

14           THE COURT:  Mr. McCaulley, let me ask you something

15   that I heard Mr. -- that I think I heard Mr. Michael say.

16   Well, I'll ask you first.

17           And then, Mr. Michael, you can correct me if I'm

18   misstating your point.

19           But I understand the -- the -- I understand you to

20   have said that you need this -- you need this discovery to best

21   defend yourself with regard to the damages that are sought by

22   plaintiff.  Is it just for the damages?

23           MR. MICHAEL:  It's the damages and their claim of

24   exclusion that underlies those damages.  So I think it is a

25   liability issue as well as a damages issue.

1          THE COURT:  I thought so, too, which -- so to the

2     extent that I -- I thought I heard you say it was just to

3     damage, I guess, Mr. McCaulley, I -- I had been toying with the

4     idea of asking you if damages -- if -- if your damages is

5     something you would be -- if it just goes to the damages if

6     it's something that you would be willing to limit to make

7     their -- their discovery less rel- -- seem at least moderately

8     less relevant?

9          MR. MCCAULLEY:  If it -- if the question was, will

10    we -- I mean, I don't think it's relevant.  But the financial

11    condition of SIS, we would produce updated financials if that

12    satis- -- if that was the end of the inquiry.  But I don't

13    think it's really relevant, Your Honor, because what we're

14    talking about is what happened in the market in 2019 and 2020.

15         And, as you've already ruled on on all the *Daubert*

16    motions, our position was, as taken by our experts, is if SIS

17    had had the money to reprogram the X and the Xi in 2019-2020

18    from ongoing operations from S and Si, then it would have taken

19    about a year to do it.

20         And I think that's the only relevant inquiry here.

21    It's not whether we would have had the money to do it in 2023

22    or 2024.  That's not our case.

23         MR. MICHAEL:  And, Your Honor, I -- respectfully, I

24    would suggest it is their case, and they've made it our problem

25    because they're seeking tens of millions of dollars in damages

**EXHIBIT 2**

**to**

**PAUL D. BRACHMAN DECLARATION IN SUPPORT
OF DEFENDANT'S MOTION IN LIMINE NO. 4
TO PRECLUDE PLAINTIFF FROM OFFERING
EVIDENCE OR ARGUMENT CONCERNING POST-
NOVEMBER 2022 EVENTS**

1

**MCCAULLEY LAW GROUP LLC**
JOSHUA V. VAN HOVEN, (CSB No. 262815)

2
E-Mail: josh@mccaulleylawgroup.com
3001Bishop Dr., Suite 300

3
San Ramon, California 94583
Telephone: 925.302.5941

4

RICHARD T. MCCAULLEY (*pro hac vice*)

5
E-Mail: richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601

6
Chicago, Illinois 60601
Telephone: 312.330.8105

7

*Attorneys for Plaintiff and Counter-Defendant,*

8
SURGICAL INSTRUMENT SERVICE COMPANY, INC.

9
**UNITED STATES DISTRICT COURT**

10
**NORTHERN DISTRICT OF CALIFORNIA**

11
**SAN FRANCISCO DIVISION**

12

13
SURGICAL INSTRUMENT SERVICE COMPANY, INC.

Case No. 3:21-cv-03496-AMO
Honorable Araceli Martínez-Olguín

14
*Plaintiff/Counter-Defendant,*

**PLAINTIFF SIS's RESPONSES TO**

15
v.

**DEFENDANT INTUITIVE SURGICAL, INC.'S SECOND SET OF REQUESTS**

16
INTUITIVE SURGICAL, INC.,

**FOR ADMISSION AND THIRD SET OF INTERROGATORIES**

17
*Defendant/Counterclaimant.*

18

19
PROPOUNDING PARTY:    Defendant Intuitive Surgical, Inc.

20
RESPONDING PARTY:    Plaintiff Surgical Instrument Service Co., Inc.

21
SET NUMBER:    Two of Requests for Admission

22
Three of Interrogatories

23
Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure Plaintiff Surgical

24
Instrument Service Co., Inc. ("Plaintiff" or "SIS"), by and through the undersigned counsel, hereby

25
responds to Defendant Intuitive Surgical, Inc.'s ("Defendant" or "Intuitive") Second Set of

26

27
Requests for Admission and Third Set of Interrogatories as follows:

28

1
SIS's RESPONSES TO 2ND RFA AND 3RD INTERROGATORIES
3:21-cv-03496-AMO

1

2

## **GENERAL OBJECTIONS**

3

4

Plaintiff makes the following general responses and objections ("General Objections") to

5

each definition, instruction, and request propounded in Defendant's second set of requests for

6

admission. These General Objections are hereby incorporated into each specific response. The

7

assertion of the same, similar, or additional objections or partial responses to individual requests

8

does not waive any of Plaintiff's General Objections.

9

Plaintiff reserves its right to and will supplement its responses to Defendant's second set of

10

requests for admission in accordance with Fed. R. Civ. P. 26(e) and the objections as set forth herein

11

are made without prejudice to Plaintiff's right to assert any additional or supplemental objections

12

pursuant to Fed. R. Civ. P. 26(e).

13

14

1.      Plaintiff objects to Defendant's definition of "EndoWrist Instruments" as vague and

15

ambiguous, and further on the basis that determining the scope of "Intuitive's patented 'EndoWrist'

16

technology" necessarily requires legal opinion and testimony.

17

2.      Plaintiff objects to the definitions and instructions accompanying Defendant's

18

Requests to the extent they seek to impose duties or obligations upon Plaintiff greater than required

19

by the Federal Rules of Civil Procedure and Local Rules for the Northern District of California.

20

21

3.      Plaintiff objects to each request to the extent that it seeks information that is

22

protected from disclosure by the attorney-client privilege, the attorney work product doctrine or

23

any other applicable privilege, doctrine, or discovery immunity. Plaintiff's answers do not waive

24

any attorney client privilege and Defendant may not use Plaintiff's answers to support an argument

25

or a further line of questioning regarding the legal conclusion a request calls for.

26

4.      Plaintiff objects to Defendant's requests to the extent that they are vague,

27

ambiguous, or seek to impose obligations on Plaintiff that are broader than, or inconsistent with,

28

the Federal Rules of Civil Procedure or the local rules of this Court. Unless indicated otherwise, Plaintiff shall give the terms of these requests their ordinary and plain meanings. If Defendant subsequently assert an interpretation of any request that differs from Plaintiff's understanding, Plaintiff reserves the right to amend or supplement its objections and/or responses.

5.      Plaintiff objects to Defendant's definition of "Customer" as vague and ambiguous. Plaintiff objects to "Customer" including any person who was "marketed" any "SIS services," as such definition is vague, ambiguous, and potentially covers any person who has seen marketing materials of Plaintiff, without regard to whether Plaintiff has engaged with or even knows of such person. Plaintiff further objects to Defendant's definition of "Customer" as including any person who has "inquired about" any "SIS services," as such definition is vague and ambiguous, for example, by lacking any limitation as to whether such person has made an inquiry to Plaintiff, whether Plaintiff has any knowledge of such inquiry, or whether such inquiry is made for the purpose of potentially purchasing SIS services. Plaintiff further objects to "Customers" as being vague and ambiguous in view of Plaintiff and Defendant both being in a market in which the party making a purchasing decision may range from individual surgeons or surgical centers, to hospitals, to entire hospital systems or purchasing organizations.

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST FOR ADMISSION NO. 16:**    Admit that SIS did not, after November 2022, whether alone or with a third party, seek FDA clearance for any service, procedure, or technology for resetting or reprogramming the use counter on any EndoWrist Instrument.

**Response:**

Plaintiff objects to this Request because it implies that FDA clearance is required for any service, procedure, or technology for resetting or reprogramming the use counter on any EndoWrist

Instrument. That is not the case. As the Court stated in the <u>Order Re: Cross Motions for Summary Judgment</u> (Doc. 204 p. 10):

> "[T]his query is problematic because '[t]he FDCA [(Food, Drug and Cosmetic Act)] leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the medical device provisions.' *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001). Indeed, a private action brought under the Lanham Act may not be pursued when it requires litigating an alleged underlying FDCA violation where the FDA has not itself concluded that a violation exists. *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) (affirming grant of summary judgment for defendant on Lanham Act false advertising claim where FDA had not taken a position on defendant's laser's need for Section 510(k) clearance, and claim was based on defendant allegedly misrepresenting that its laser had received FDA clearance). * * * [C]ourts have consistently precluded private actions which require establishing a violation of the FDCA. *See, e.g., Amarin Pharma, Inc. v. International Trade Commission*, 923 F.3d 959, 968 (Fed. Cir. 2019) (citing *PhotoMedex*, 601 F.3d at 924, 928) (finding that Lanham Act claim could not stand where it was "based on proving violations of the FDCA and where the FDA has not taken the position that the articles at issue do, indeed, violate the FDCA.")."

The Court ruled that "SIS has not clearly engaged in unlawful conduct and accordingly may still seek to prove that Intuitive's anticompetitive conduct caused its antitrust injury at trial." Doc. 204 p. 16.

> Subject to the foregoing objection, Admitted.

1

2

3

4

5

6

**REQUEST FOR ADMISSION NO. 17:**    Admit that SIS did not, after November 2022, whether alone or with a third party, develop any service, procedure, or technology for resetting or reprogramming the use counter on X/Xi EndoWrist Instruments.

7

**Response:**

8

9

Subject to the foregoing General Objections, Admitted.

10

**REQUEST FOR ADMISSION NO. 18:**    Admit that SIS took no steps, after November 2022,

11

whether alone or with a third party, to sell, distribute, or market any EndoWrist Instruments with

12

reset and/or reprogrammed use counters, or any service for resetting or reprogramming the use

13

counter on EndoWrist Instruments.

14

15

**Response:**

16

17

Subject to the foregoing General Objections, Admitted.

18

**REQUEST FOR ADMISSION NO. 19:**    Admit that SIS has continued, since November

19

2022, to offer its EndoWrist "recovery service" to customers.

20

21

**Response:**

22

Subject to the foregoing General Objections, Admitted.

23

24

**INTERROGATORY**

25

19.    If You answer any of Requests for Admission 16 through 19 with anything other

26

than an unqualified admission, state in detail the factual basis for Your answer.

27

28

**No Response Required**

1   Dated: October 16, 2024                  MCCAULLEY LAW GROUP LLC

2                                   By: */s/ Richard T. McCaulley*

3                                   RICHARD T. MCCAULLEY (pro hac vice)

4                                   E-Mail: richard@mccaulleylawgroup.com

5                                   180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601

6                                   Telephone: 312.330.8105

7                                   JOSHUA V. VAN HOVEN

8                                   E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300

9                                   San Ramon, California 94583
Telephone: 925.302.5941

10

11                 Attorneys for SURGICAL INSTRUMENT SERVICE COMPANY, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

3      I hereby certify that on October 16, 2024, I caused a copy of the foregoing **PLAINTIFF**

4      **SIS's RESPONSES TO DEFENDANT INTUITIVE SURGICAL, INC.'S SECOND SET OF**

5      **REQUESTS FOR ADMISSION AND THIRD SET OF INTERROGATORIES**, to be

6      electronically to be served *via* electronic mail to counsel of record:

7      **Crystal Lohmann Parker**
       Paul, Weiss, Ritkind, Wharton & Garrison LLP
8      1285 Avenue of the Americas
       New York, NY 10019
9      212-373-3000
       Email: cparker@paulweiss.com
10

11     **Joshua Hill , Jr.**
       Paul, Weiss, Ritkind, Wharton & Garrison LLP
12     535 Mission Street, 24th Floor
       San Francisco, CA 94105
13     (628) 432-5123
       Email: jhill@paulweiss.com
14

15     **Kenneth A. Gallo**
       Paul, Weiss, Ritkind, Wharton & Garrison LLP
16     2001 K Street NW
       Washington, DC 20006-104 7
17     202-223-7356
       Fax: 202-204-7356
18     Email: kgallo@paulweiss.com

19     **Paul David Brachman**
20     Paul, Weiss, Ritkind, Wharton & Garrison LLP
       2001 K St., NW
21     Washington, DC 20006
       202-223-7440
22     Email: pbrachman@paulweiss.com

23     **William Michael**
24     Paul, Weiss, Rifkind, Wharton and Garrison LLP
       1285 Avenue of the Americas
25     New York, NY 10019
       212-373-3000
26     Email: WMichael@paulweiss.com

27

28

1

2

3   **Allen Ruby**
Attorney at Law
4   15559 Union Ave. #138
Los Gatos, CA 95032
408-4 77-9690
5   Email: allen@allenruby.com

6

7   **Andrew David Lazerow**
Covington & Burling LLP
One CityCenter
8   850 Tenth Street, NW
Washington, DC 20001-4956
9   202-662-5081
Email: alazerow@cov.com
10

11   **Kathryn Elizabeth Cahoy**
Covington & Burling LLP
12   3000 El Camino Real
5 Palo Alto Square, 10th Floor
13   Palo Alto, CA 94306
650-632-4700
14   Email: kcahoy@cov.com

15

16   **Sonya Diane Winner**
Covington & Burling LLP
Floor 54
17   415 Mission Street
San Francisco, CA 94105-2533
18   (415) 591-6000
Email: swinner@cov.com
19

20   Dated: October 16, 2024              */s/ Joshua Van Hoven*
21                                        Joshua Van Hoven

22

23

24

25

26

27

28

**EXHIBIT 3**

**to**

**PAUL D. BRACHMAN DECLARATION IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE NO. 4 TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE OR ARGUMENT CONCERNING POST-NOVEMBER 2022 EVENTS**



CERTIFIED PUBLIC ACCOUNTANTS
AND BUSINESS ADVISORS

Financial Statements and
Accountants' Compilation Report

**Surgical Instrument Service Co.**

**As of and for the Years Ended**
**December 31, 2021 and 2020**

TEL **630 420 1360**   FAX **630 420 1463**   184 SHUMAN BLVD, SUITE 200   NAPERVILLE, IL 60563
TEL **630 377 1106**   FAX **630 377 2294**   2560 FOXFIELD ROAD, SUITE 300   ST. CHARLES, IL 60174
WWW.DHJJ.COM

**CONTENTS**

Accountants' Compilation Report.................................................................................................................. 1

Financial Statements

    Balance Sheets................................................................................................................................... 2-3

    Statements of Earnings....................................................................................................................... 4

    Statements of Retained Earnings ....................................................................................................... 5

    Statements of Cash Flows................................................................................................................. 6-7

Supplementary Information

    Schedules of Operating Expenses....................................................................................................... 9



**CERTIFIED PUBLIC ACCOUNTANTS
AND BUSINESS ADVISORS**

**ACCOUNTANTS' COMPILATION REPORT**

Board of Directors
**Surgical Instrument Service Co.**
Glendale Heights, Illinois

Management is responsible for the accompanying financial statements of Surgical Instrument Service Co. (an S corporation), which comprise the balance sheets as of December 31, 2021 and 2020, and the related statements of earnings, retained earnings, and cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.  We have performed the compilation engagements in accordance with Statements on Standards for Accounting and Review Services promulgated by the Accounting and Review Services Committee of the AICPA.   We did not audit or review the financial statements nor were we required to perform any procedures to verify the accuracy or completeness of the information provided by management.  We do not express an opinion, a conclusion, nor provide any form of assurance on these financial statements.

Management has elected to omit substantially all the disclosures required by accounting principles generally accepted in the United States of America.  If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the Company's financial position, results of operations, and cash flows. Accordingly, the financial statements are not designed for those who are not informed about such matters.

The supplementary information contained at page 9 is presented for purposes of additional analysis and is not a required part of the basic financial statements. Such information is the responsibility of management.   The supplementary information was subject to our compilation engagements.  We have not audited or reviewed the supplementary information and do not express an opinion, a conclusion, nor provide any assurance on such information.

We are not independent with respect to Surgical Instrument Service Co.

*DHJJ LTD.*

St. Charles, Illinois
March 29, 2022

Surgical Instrument Service Co.
# BALANCE SHEETS
December 31, 2021 and 2020

ASSETS

| | 2021 | 2020 |
|---|---|---|
| **CURRENT ASSETS** | | |
| Cash | $ 431,043 | $ 1,946,252 |
| Accounts receivable, net | 1,868,720 | 1,238,399 |
| Income tax refunds | 11,139 | - |
| Employee receivables, net | 360 | 739 |
| Inventory | 625,271 | 388,367 |
| Prepaid expenses | 81,553 | 53,105 |
| Total current assets | 3,018,086 | 3,626,862 |
| **PROPERTY AND EQUIPMENT** | | |
| Automobiles and trucks | 887,127 | 640,846 |
| Furniture and fixtures | 46,233 | 21,237 |
| Leasehold improvements | 327,981 | 344,251 |
| Software | 33,560 | 42,867 |
| Machinery and equipment | 1,217,777 | 1,035,580 |
| | 2,512,678 | 2,084,781 |
| Accumulated depreciation and amortization | (1,332,438) | (1,358,267) |
| | 1,180,240 | 726,514 |
| **OTHER ASSETS** | | |
| Assets not in service | 24,000 | 76,433 |
| Security deposits | 9,209 | 3,279 |
| Due from related parties | 100,151 | 98,276 |
| | 133,360 | 177,988 |
| | $ 4,331,686 | $ 4,531,364 |

Surgical Instrument Service Co.

# BALANCE SHEETS

December 31, 2021 and 2020

**LIABILITIES AND SHAREHOLDERS' EQUITY**

|  | 2021 | 2020 |
|---|---:|---:|
| **CURRENT LIABILITIES** | | |
| Line of credit | $ 34,806 | $ 34,806 |
| Note payable - bank, current maturities | 37,148 | 41,317 |
| Accounts payable | 172,127 | 184,128 |
| Accrued expenses | 167,163 | 73,725 |
| Accrued commissions | 68,529 | 49,700 |
| Accrued wages and employee benefits | 154,634 | 114,261 |
| Accrued sales tax | 1,923 | 4,511 |
| Accrued state taxes | 4,962 | 19,039 |
| Deferred payroll taxes | 83,143 | 166,286 |
| Deferred revenue | - | 29,160 |
| Total current liabilities | 724,435 | 716,933 |
| **LONG-TERM LIABILITIES** | | |
| Note payable - bank, net of current maturities | 59,593 | 92,146 |
| Notes payable - shareholders | 152,499 | 152,499 |
| Total long-term liabilities | 212,092 | 244,645 |
| **SHAREHOLDERS' EQUITY** | | |
| Class A common stock, no par value, 10,000 shares authorized, 1,100 shares issued and outstanding | 1,000 | 1,000 |
| Class B common stock, no par value, nonvoting; 190,000 shares authorized, 20,900 shares issued and outstanding | - | - |
| Additional paid-in capital | 9,000 | 9,000 |
| Retained earnings | 3,385,159 | 3,559,786 |
|  | 3,395,159 | 3,569,786 |
|  | $ 4,331,686 | $ 4,531,364 |

Surgical Instrument Service Co.
# STATEMENTS OF EARNINGS
Years ended December 31, 2021 and 2020

| | 2021 | 2020 |
|---|---|---|
| **REVENUES** | | |
| Sales, net | $ 12,404,894 | $ 10,723,942 |
| | | |
| **COST OF REVENUES** | | |
| Purchases | 4,055,526 | 3,336,209 |
| Direct labor | 2,617,792 | 1,991,580 |
| | 6,673,318 | 5,327,789 |
| | | |
| Gross profit | 5,731,576 | 5,396,153 |
| | | |
| **OPERATING EXPENSES** | 4,819,261 | 3,634,947 |
| | | |
| Operating income | 912,315 | 1,761,206 |
| | | |
| **OTHER INCOME (EXPENSE)** | | |
| Paycheck Protection Program debt discharge | - | 548,000 |
| Other income | - | 3,157 |
| Interest income | 694 | 1,174 |
| (Loss) gain on sale of assets | (6,691) | 19,581 |
| Interest expense | (11,364) | (19,034) |
| | (17,361) | 552,878 |
| | | |
| Income before state tax | 894,954 | 2,314,084 |
| | | |
| **STATE TAX** | 8,132 | 18,808 |
| | | |
| **NET EARNINGS** | $ 886,822 | $ 2,295,276 |

Surgical Instrument Service Co.
## STATEMENTS OF RETAINED EARNINGS
Years ended December 31, 2021 and 2020

|  | 2021 | 2020 |
|---|---|---|
| **RETAINED EARNINGS, beginning of year** | $  3,559,786 | $  1,300,302 |
| Net earnings | 886,822 | 2,295,276 |
| Distributions to shareholders | (1,061,449) | (35,792) |
| **RETAINED EARNINGS, end of year** | $  3,385,159 | $  3,559,786 |

Surgical Instrument Service Co.
# STATEMENTS OF CASH FLOWS
Years ended December 31, 2021 and 2020

|  | 2021 | 2020 |
|---|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES:** |  |  |
| Net earnings | $ 886,822 | $ 2,295,276 |
| Adjustments to reconcile net earnings to net cash provided by operating activities: |  |  |
| Depreciation and amortization | 227,498 | 139,715 |
| Bad debt allowance | 10,000 | 7,500 |
| Loss (gain) on sale of assets | 6,691 | (19,581) |
| Paycheck Protection Program debt discharge | - | (548,000) |
| (Increase) decrease in: |  |  |
| Accounts receivable | (640,321) | (248,082) |
| Income tax refunds | (11,139) | - |
| Employee receivables | 379 | (739) |
| Inventory | (236,904) | (222,645) |
| Prepaid expense | (28,448) | (9,234) |
| Security deposit | (5,930) | - |
| Due from related party | (1,875) | - |
| Increase (decrease) in: |  |  |
| Accounts payable | (12,001) | 32,231 |
| Accrued expenses | 93,438 | (12,874) |
| Accrued commissions | 18,829 | 15,484 |
| Accrued wages and employee benefits | 40,373 | (68,827) |
| Accrued sales tax | (2,588) | (1,928) |
| Accrued income taxes | (14,077) | 16,899 |
| Deferred payroll tax | (83,143) | 166,286 |
| Deferred revenue | (29,160) | 29,160 |
| Net cash provided by operating activities | 218,444 | 1,570,641 |
| **CASH FLOWS FROM INVESTING ACTIVITIES:** |  |  |
| Purchases of property and equipment | (700,817) | (237,567) |
| Proceeds from sale of assets | 12,902 | 24,248 |
| Assets not in service | 52,433 | (76,433) |
| Net cash used by investing activities | (635,482) | (289,752) |
| **CASH FLOWS FROM FINANCING ACTIVITIES:** |  |  |
| Borrowings on line of credit | - | 100,000 |
| Repayments on line of credit | - | (500,000) |
| Repayment on bank note payable | (36,722) | (53,787) |
| Paycheck Protection Program funds received | - | 548,000 |
| Distributions paid to shareholders | (1,061,449) | (15,792) |
| Net cash (used) provided by financing activities | (1,098,171) | 78,421 |
| **NET (DECREASE) INCREASE IN CASH** | (1,515,209) | 1,359,310 |
| Cash, beginning of year | 1,946,252 | 586,942 |
| Cash, end of year | $ 431,043 | $ 1,946,252 |

Surgical Instrument Service Co.
## STATEMENTS OF CASH FLOWS-continued
Years ended December 31, 2021 and 2020

|  | 2021 | | 2020 | |
|---|---|---|---|---|
| **SUPPLEMENTAL CASH FLOW INFORMATION:** | | | | |
| **Cash paid for:** | | | | |
| Interest | $ | 11,364 | $ | 19,034 |
| Taxes | $ | 22,209 | $ | 2,081 |
| **Schedule of non-cash investing and financing transactions:** | | | | |
| Due from related party reclassified to distributions to shareholders | $ | - | $ | 20,000 |
| Paycheck Protection Program debt forgiveness | $ | - | $ | 548,000 |

**SUPPLEMENTARY INFORMATION**

Surgical Instrument Service Co.
## SCHEDULES OF OPERATING EXPENSES
Years ended December 31, 2021 and 2020

| | 2021 | 2020 |
|---|---|---|
| Salaries and wages | $ 738,527 | $ 356,501 |
| Officers' salaries | 235,404 | 291,238 |
| Advertising | 57,635 | 6,602 |
| Bad debt expense | 12,164 | 20,000 |
| Bank charges and credit card fees | 5,374 | 5,717 |
| Commissions and sales salaries | 1,514,098 | 1,368,322 |
| Depreciation and amortization | 227,498 | 139,715 |
| Dues and subscriptions | 13,509 | 7,796 |
| Employee benefits | 159,636 | 153,193 |
| Promotional | 3,786 | 1,098 |
| Insurance | 109,496 | 87,102 |
| Legal and professional | 172,611 | 101,522 |
| License and permits | 746 | 2,562 |
| Meals and entertainment | 76,978 | 40,153 |
| Miscellaneous | 6,465 | 5,251 |
| Office expense and supplies | 235,833 | 162,574 |
| Outside services | 134,525 | 86,276 |
| Payroll taxes | 387,655 | 297,608 |
| Postage | 2,079 | 1,613 |
| Property taxes | 49,699 | 45,735 |
| Rent | 161,488 | 138,389 |
| Repairs and maintenance | 55,867 | 69,539 |
| Sales tax | 35 | 1,509 |
| Seminars and conferences | 46,379 | 10,400 |
| Telephone | 39,142 | 38,251 |
| Travel | 340,346 | 173,676 |
| Utilities | 32,286 | 22,605 |
| | $ 4,819,261 | $ 3,634,947 |

**EXHIBIT 4**

**to**

**PAUL D. BRACHMAN DECLARATION IN SUPPORT
OF DEFENDANT'S MOTION IN LIMINE NO. 4
TO PRECLUDE PLAINTIFF FROM OFFERING
EVIDENCE OR ARGUMENT CONCERNING POST-
NOVEMBER 2022 EVENTS**



**CERTIFIED PUBLIC ACCOUNTANTS
AND BUSINESS ADVISORS**

Financial Statements and
Accountants' Compilation Report

# Surgical Instrument Service Co.

**As of and for the Years Ended
December 31, 2023 and 2022**

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**CONTENTS**

Accountants' Compilation Report .................................................................................................................... 1

Financial Statements

    Balance Sheets ................................................................................................................................... 2-3

    Statements of Earnings ........................................................................................................................ 4

    Statements of Retained Earnings ......................................................................................................... 5

    Statements of Cash Flows ................................................................................................................. 6-7

Supplementary Information

    Schedules of Operating Expenses ......................................................................................................... 9

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



**DHJJ**

CERTIFIED PUBLIC ACCOUNTANTS
AND BUSINESS ADVISORS

**ACCOUNTANTS' COMPILATION REPORT**

Board of Directors
**Surgical Instrument Service Co.**
Glendale Heights, Illinois

Management is responsible for the accompanying financial statements of Surgical Instrument Service Co. (an S corporation), which comprise the balance sheets as of December 31, 2023 and 2022, and the related statements of earnings, retained earnings, and cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.  We have performed the compilation engagements in accordance with Statements on Standards for Accounting and Review Services promulgated by the Accounting and Review Services Committee of the AICPA.  We did not audit or review the financial statements nor were we required to perform any procedures to verify the accuracy or completeness of the information provided by management.  We do not express an opinion, a conclusion, nor provide any form of assurance on these financial statements.

Management has elected to omit substantially all the disclosures required by accounting principles generally accepted in the United States of America.  If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the Company's financial position, results of operations, and cash flows.  Accordingly, the financial statements are not designed for those who are not informed about such matters.

The supplementary information contained at page 9 is presented for purposes of additional analysis and is not a required part of the basic financial statements.  Such information is the responsibility of management.  The supplementary information was subject to our compilation engagements.  We have not audited or reviewed the supplementary information and do not express an opinion, a conclusion, nor provide any assurance on such information.

We are not independent with respect to Surgical Instrument Service Co.

DHJJ LTD.

St. Charles, Illinois
April 29, 2024

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Surgical Instrument Service Co.
# BALANCE SHEETS
December 31, 2023 and 2022

ASSETS

| | 2023 | 2022 |
|---|---|---|
| **CURRENT ASSETS** | | |
| Cash | $ 1,992,028 | $ 544,811 |
| Accounts receivable, net | 2,315,976 | 2,426,595 |
| Inventory | 1,137,851 | 900,424 |
| Prepaid expenses | 76,060 | 62,974 |
| Total current assets | 5,521,915 | 3,934,804 |
| **PROPERTY AND EQUIPMENT** | | |
| Automobiles and trucks | 1,288,700 | 1,269,405 |
| Furniture and fixtures | 89,263 | 77,199 |
| Leasehold improvements | 439,472 | 427,455 |
| Software | 33,560 | 33,560 |
| Machinery and equipment | 1,490,217 | 1,427,494 |
| | 3,341,212 | 3,235,113 |
| Accumulated depreciation and amortization | (2,020,085) | (1,645,601) |
| | 1,321,127 | 1,589,512 |
| **OTHER ASSETS** | | |
| Operating lease - right of use asset, net | 1,139,956 | 1,366,410 |
| Assets not in service | 90,210 | 90,210 |
| Security deposits | 16,009 | 16,009 |
| Due from related parties | - | 100,151 |
| | 1,246,175 | 1,572,780 |
| | $ 8,089,217 | $ 7,097,096 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Surgical Instrument Service Co.
# BALANCE SHEETS
December 31, 2023 and 2022

---

### LIABILITIES AND SHAREHOLDERS' EQUITY

|  | 2023 | 2022 |
|---|---|---|
| **CURRENT LIABILITIES** | | |
| Line of credit | $ 34,806 | $ 34,806 |
| Note payable - bank, current maturities | 99,389 | 107,910 |
| Accounts payable | 212,492 | 207,475 |
| Accrued expenses | 132,976 | 186,606 |
| Accrued commissions | 25,745 | 38,338 |
| Accrued wages and employee benefits | 281,209 | 210,358 |
| Accrued sales tax | 3,247 | 2,258 |
| Accrued state taxes | 44,825 | 7,737 |
| Operating lease liability - current portion | 207,875 | 214,840 |
| Due to shareholders | - | 43,384 |
| Total current liabilities | 1,042,564 | 1,053,712 |
| **LONG-TERM LIABILITIES** | | |
| Note payable - bank, net of current maturities | 210,235 | 310,769 |
| Notes payable - shareholders | - | 152,499 |
| Operating lease liability - noncurrent portion | 958,830 | 1,166,706 |
| Total long-term liabilities | 1,169,065 | 1,629,974 |
| **SHAREHOLDERS' EQUITY** | | |
| Class A common stock, no par value, 10,000 shares authorized, 1,100 shares issued and outstanding | 1,000 | 1,000 |
| Class B common stock, no par value, nonvoting; 190,000 shares authorized, 20,900 shares issued and outstanding | - | - |
| Additional paid-in capital | 9,000 | 9,000 |
| Retained earnings | 5,867,588 | 4,403,410 |
|  | 5,877,588 | 4,413,410 |
|  | $ 8,089,217 | $ 7,097,096 |

See accountants' report.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Surgical Instrument Service Co.
# STATEMENTS OF EARNINGS
Years ended December 31, 2023 and 2022

|  | 2023 | 2022 |
|---|---|---|
| **REVENUES** | | |
| Sales, net | $ 18,909,307 | $ 16,323,533 |
| **COST OF REVENUES** | | |
| Purchases | 5,935,958 | 5,329,114 |
| Direct labor | 3,725,463 | 3,237,120 |
|  | 9,661,421 | 8,566,234 |
| Gross profit | 9,247,886 | 7,757,299 |
| **OPERATING EXPENSES** | 7,613,878 | 6,700,003 |
| Operating income | 1,634,008 | 1,057,296 |
| **OTHER INCOME (EXPENSE)** | | |
| Interest income | 16,827 | 1,210 |
| Loss on sale of assets | - | (8,444) |
| Interest expense | (35,096) | (21,604) |
|  | (18,269) | (28,838) |
| Income before state tax | 1,615,739 | 1,028,458 |
| **STATE TAX** | 43,812 | 10,207 |
| **NET EARNINGS** | $ 1,571,927 | $ 1,018,251 |

See accountants' report.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Surgical Instrument Service Co.
## STATEMENTS OF RETAINED EARNINGS
Years ended December 31, 2023 and 2022

| | | 2023 | | 2022 |
|---|---|---|---|---|
| **RETAINED EARNINGS, beginning of year** | $ | 4,403,410 | $ | 3,385,159 |
| Net earnings | | 1,571,927 | | 1,018,251 |
| Distributions to shareholders | | (107,749) | | - |
| **RETAINED EARNINGS, end of year** | $ | 5,867,588 | $ | 4,403,410 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Surgical Instrument Service Co.
# STATEMENTS OF CASH FLOWS
Years ended December 31, 2023 and 2022

| | 2023 | 2022 |
|---|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES:** | | |
| Net earnings | $ 1,571,927 | $ 1,018,251 |
| Adjustments to reconcile net earnings to net cash | | |
| provided by operating activities: | | |
| Depreciation and amortization | 374,484 | 313,608 |
| Reduction in operating lease - right of use asset | 226,454 | 184,997 |
| Bad debt allowance | 15,000 | 10,000 |
| Loss on sale of assets | - | 8,444 |
| (Increase) decrease in: | | |
| Accounts receivable | 95,619 | (567,875) |
| Income tax refunds | - | 11,139 |
| Employee receivables | - | 360 |
| Inventory | (237,427) | (275,153) |
| Prepaid expense | (13,086) | 18,579 |
| Security deposit | - | (6,800) |
| Due from related parties | 100,151 | - |
| Increase (decrease) in: | | |
| Accounts payable | 5,017 | 35,348 |
| Accrued expenses | (53,630) | 19,443 |
| Operating lease liability | (214,841) | (169,861) |
| Accrued commissions | (12,593) | (30,191) |
| Accrued wages and employee benefits | 70,851 | 55,724 |
| Accrued sales tax | 989 | 335 |
| Accrued state taxes | 37,088 | 2,775 |
| Deferred payroll tax | - | (83,143) |
| Due to shareholders | (43,384) | 43,384 |
| Net cash provided by operating activities | 1,922,619 | 589,364 |
| | | |
| **CASH FLOWS FROM INVESTING ACTIVITIES:** | | |
| Purchases of property and equipment | (106,099) | (731,324) |
| Acquisition of assets not in service | - | (66,210) |
| Net cash used by investing activities | (106,099) | (797,534) |
| | | |
| **CASH FLOWS FROM FINANCING ACTIVITIES:** | | |
| Proceeds from bank note payable | - | 360,118 |
| Repayment on bank note payable | (109,055) | (38,180) |
| Repayment on notes payable - shareholders | (152,499) | - |
| Distributions paid to shareholders | (107,749) | - |
| Net cash provided (used) by financing activities | (369,303) | 321,938 |
| | | |
| **NET INCREASE IN CASH** | 1,447,217 | 113,768 |
| | | |
| Cash, beginning of year | 544,811 | 431,043 |
| | | |
| Cash, end of year | $ 1,992,028 | $ 544,811 |

See accountants' report.

6

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Surgical Instrument Service Co.
## STATEMENTS OF CASH FLOWS-continued
Years ended December 31, 2023 and 2022

|  | | 2023 | | 2022 |
|---|---|---|---|---|
| **SUPPLEMENTAL CASH FLOW INFORMATION:** | | | | |
| | | | | |
| **Cash paid for:** | | | | |
| Interest | $ | 32,572 | $ | 21,604 |
| Taxes | $ | 6,487 | $ | 7,432 |
| | | | | |
| **Supplemental cash flow information related to leases:** | | | | |
| Right-of-use-asset obtained in exchange for | | | | |
| incurring operating lease liability | $ | - | $ | 1,551,407 |
| Operating cash outflows for operating leases | $ | 282,283 | $ | 236,756 |

See accountants' report.

7

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**SUPPLEMENTARY INFORMATION**

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Surgical Instrument Service Co.
## SCHEDULES OF OPERATING EXPENSES
Years ended December 31, 2023 and 2022

|  | 2023 | 2022 |
|---|---|---|
| Salaries and wages | $ 1,364,664 | $ 1,175,282 |
| Officers' salaries | 349,573 | 357,000 |
| Advertising | 11,803 | 19,773 |
| Bad debt expense | 15,000 | 9,711 |
| Bank charges and credit card fees | 12,512 | 9,549 |
| Commissions and sales salaries | 2,100,883 | 1,799,479 |
| Depreciation and amortization | 374,484 | 313,608 |
| Donations | 2,000 | - |
| Dues and subscriptions | 12,211 | 13,682 |
| Employee benefits | 225,854 | 190,650 |
| Promotional | 125 | 4,202 |
| Insurance | 175,055 | 139,196 |
| Legal and professional | 508,965 | 362,106 |
| License and permits | 420 | 351 |
| Meals and entertainment | 137,530 | 109,809 |
| Office expense and supplies | 405,389 | 399,601 |
| Outside services | 143,670 | 152,264 |
| Payroll taxes | 608,382 | 516,593 |
| Postage | 2,328 | 1,914 |
| Property taxes | 48,543 | 50,134 |
| Rent | 299,017 | 271,799 |
| Repairs and maintenance | 67,191 | 63,683 |
| Retirement plan | 30,716 | - |
| Sales tax | - | 1,870 |
| Seminars and conferences | 39,838 | 84,334 |
| Telephone | 52,588 | 54,747 |
| Travel | 536,852 | 536,301 |
| Utilities | 88,285 | 62,365 |
|  | $ 7,613,878 | $ 6,700,003 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

**EXHIBIT 5**

**to**

**PAUL D. BRACHMAN DECLARATION IN SUPPORT
OF DEFENDANT'S MOTION IN LIMINE NO. 4
TO PRECLUDE PLAINTIFF FROM OFFERING
EVIDENCE OR ARGUMENT CONCERNING POST-
NOVEMBER 2022 EVENTS**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

SURGICAL INSTRUMENT SERVICE
COMPANY, INC.,

                   Plaintiff / Counterclaim Defendant,

     v.

INTUITIVE SURGICAL, INC.,

                Defendant / Counterclaim Plaintiff.

Case No.: 3:21-cv-03496-VC

**Second Rebuttal Expert Report of Richard F. Bero, CPA, CVA**
**March 1, 2023**

*The BERO Group*

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Second Rebuttal Schedules Index

| Schedule # | Title |
|---|---|
| Second Rebuttal Schedule 1.0 | Damages Summary |
| | |
| Second Rebuttal Schedule 2.0 | Scenario 1 - Discounted Lost Profits: In-house Model |
| Second Rebuttal Schedule 2.1 | Scenario 1 - Undiscounted Lost Profits: In-house Model |
| Second Rebuttal Schedule 2.2 | Scenario 1 - Lost EndoWrist Repair Units |
| | |
| Second Rebuttal Schedule 3.0 | Scenario 1 - Discounted Lost Profits: Distributor Model |
| Second Rebuttal Schedule 3.1 | Scenario 1 - Undiscounted Lost Profits: Distributor Model |
| | |
| Second Rebuttal Schedule 4.0 | Scenario 2 - Discounted Lost Profits: In-house Model (2 Year X/Xi Delay) |
| Second Rebuttal Schedule 4.1 | Scenario 2 - Undiscounted Lost Profits: In-house Model (2 Year X/Xi Delay) |
| Second Rebuttal Schedule 4.2 | Scenario 2 - Lost EndoWrist Repair Units (2 Year X/Xi Delay) |
| Second Rebuttal Schedule 4.3 | Scenario 2 - Discounted Lost Profits: In-house Model  (1 Year X/Xi Delay) |
| Second Rebuttal Schedule 4.4 | Scenario 2 - Undiscounted Lost Profits: In-house Model  (1 Year X/Xi Delay) |
| Second Rebuttal Schedule 4.5 | Scenario 2 - Lost EndoWrist Repair Units  (1 Year X/Xi Delay) |
| | |
| Second Rebuttal Schedule 5.0 | Scenario 2 - Discounted Lost Profits: Distributor Model (2 Year X/Xi Delay) |
| Second Rebuttal Schedule 5.1 | Scenario 2 - Undiscounted Lost Profits: Distributor Model (2 Year X/Xi Delay) |
| Second Rebuttal Schedule 5.2 | Scenario 2 - Discounted Lost Profits: Distributor Model  (1 Year X/Xi Delay) |
| Second Rebuttal Schedule 5.3 | Scenario 2 - Undiscounted Lost Profits: Distributor Model  (1 Year X/Xi Delay) |
| | |
| Second Rebuttal Schedule 6.0 | Intuitive's U.S. EndoWrist Instrument Units - Actual and Forecasted: 2014 - 2025 |
| | |
| Second Rebuttal Schedule 7.0 | Estimated EndoWrist Expiration Rates: 2018 - 2021 |
| | |
| Second Rebuttal Schedule 8.0 | Potential EndoWrist Instrument Units, Net Sales Dollars and Average Selling Price by System (Using Intuitive Sales Volumes and September 2019 Vizient Amended Agreement Prices): 2018 - June 2022 |
| Second Rebuttal Schedule 8.1 | Potential EndoWrist Instrument Units, Net Sales Dollars and ASP by Product (Instrument Number) - da Vinci S/Si (Using Intuitive Sales Volumes and September 2019 Vizient Amended Agreement Prices): 2018 - June 2022 |
| Second Rebuttal Schedule 8.2 | Potential EndoWrist Instrument Units, Net Sales Dollars and ASP by Product (Instrument Number) - da Vinci X/Xi (Using Intuitive Sales Volumes and September 2019 Vizient Amended Agreement Prices): 2018 - June 2022 |
| | |
| Second Rebuttal Schedule 9.0 | SIS's Estimated EndoWrist Instrument Repair Cost:2020 - June 2022 |
| Second Rebuttal Schedule 9.1 | Intuitive's "Top 5" X/Xi EndoWrist Instrument Units:2018 - June 2022 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Second Rebuttal Schedules Index

| Schedule # | Title |
|---|---|
| Second Rebuttal Schedule 10.0 | SIS's Estimated Interceptor Chip Cost (Based on Rebotix's Sales to Restore) |
| Second Rebuttal Schedule 10.1 | Rebotix Sales to SIS: June 27, 2019 - November 21, 2019 |
| Second Rebuttal Schedule 11.0 | Potential EndoWrist Instrument Units, Costs and Costs per Unit by System (Using Intuitive Sales Volumes and Rebotix Pricing): 2018 - June 2022 |
| Second Rebuttal Schedule 11.1 | Potential EndoWrist Instrument Units, Costs and Costs per Unit  by Product (Instrument Number) - da Vinci S/Si (Using Intuitive Sales Volumes and Rebotix Pricing): 2018 - June 2022 |
| Second Rebuttal Schedule 11.2 | Potential EndoWrist Instrument Units, Costs and Costs per Unit  by Product (Instrument Number) - da Vinci X/Xi (Using Intuitive Sales Volumes and Rebotix Pricing): 2018 - June 2022 |
| Second Rebuttal Schedule 12.0 | SIS's EndoWrist Instrument Sales Prices and Costs (from Rebotix) - da Vinci S/Si |
| Second Rebuttal Schedule 12.1 | SIS's EndoWrist Instrument Sales Prices and Costs (from Rebotix) - da Vinci X/Xi |
| Second Rebuttal Schedule 12.2 | SIS's EndoWrist Instrument Sale Price vs Intuitive Sales Price - da Vinci S/Si |
| Second Rebuttal Schedule 13.0 | Intuitive's EndoWrist Instrument Units, Net Sales Dollars and Average Selling Price by System: 2014 - June 2022 |
| Second Rebuttal Schedule 13.1 | Intuitive's EndoWrist Instrument Units and Net Sales Dollars by Product (Instrument Number) - da Vinci S/Si: 2014 - June 2022 |
| Second Rebuttal Schedule 13.2 | Intuitive's EndoWrist Instrument Units and Net Sales Dollars by Product (Instrument Number) - da Vinci X/Xi:  2014 - June 2022 |
| Second Rebuttal Schedule 14.0 | SIS's EndoWrist Instrument Repair Summary |
| Second Rebuttal Schedule 15.0 | SIS's Financial Statements: 2019 - October 2021 |
| Second Rebuttal Schedule 15.1 | SIS's Detailed SGA: 2019 - October 2021 |
| Second Rebuttal Schedule 16.0 | Intuitive EndoWrist Instrument Average Selling Price, Units and Net Sales Dollars: 2020 - 2025 |
| Second Rebuttal Schedule 16.1 | Lanham Act Based on Scenario 2 - Unenforceable Contracts(2 Year X/Xi Delay): 2020 - 2025 |
| Second Rebuttal Schedule 16.2 | Lanham Act Based on Scenario 2 - Unenforceable Contracts(1 Year X/Xi Delay): 2020 - 2025 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Damages Summary
# Second Rebuttal Schedule 1.0

|  | 2020 | 2021 | 2022 | 2023 | 2024 (discounted) | 2025 (discounted) | Total |
|---|---|---|---|---|---|---|---|
| **Lost profits** | | | | | | | |
| **_Scenario 1 - Illegal Encryption_** | | | | | | | |
| [A] In-house model | $6,235,557 | $21,765,377 | $30,999,702 | $35,400,982 | $28,213,690 | $8,767,326 | $131,382,634 |
| [B] Distributor model | $5,573,947 | $19,392,500 | $27,440,979 | $31,335,614 | $24,973,286 | $7,760,334 | $116,476,660 |
| **_Scenario 2 - Unenforceable Contracts_** | | | | | | | |
| **_2 Year X/Xi delay_** | | | | | | | |
| [C] In-house model | $958,569 | $1,359,572 | $7,179,842 | $25,377,682 | $28,213,690 | $8,767,326 | $71,856,681 |
| [D] Distributor model | $837,634 | $1,179,972 | $6,357,184 | $22,463,639 | $24,973,286 | $7,760,334 | $63,572,049 |
| **_1 Year X/Xi delay_** | | | | | | | |
| [E] In-house model | $958,569 | $7,481,387 | $22,338,002 | $35,400,982 | $28,213,690 | $8,767,326 | $103,159,956 |
| [F] Distributor model | $837,634 | $6,643,796 | $19,774,204 | $31,335,614 | $24,973,286 | $7,760,334 | $91,324,868 |
| **Lanham Act** | | | | | | | |
| [G] Scenario 2 - 2 year X/Xi delay | $3,274,156 | $4,775,564 | $25,742,312 | $91,369,970 | $101,623,818 | $31,582,076 | $258,367,896 |
| [H] Scenario 2 - 1 year X/Xi delay | $3,274,156 | $26,905,717 | $80,352,656 | $127,480,940 | $101,623,818 | $31,582,076 | $371,219,363 |

**NOTES / SOURCES:**

Note:  Any minor differences are due to rounding.

[A] Per Second Rebuttal Schedule 2.0.

[B] Per Second Rebuttal Schedule 3.0.

[C] Per Second Rebuttal Schedule 4.0.

[D] Per Second Rebuttal Schedule 5.0.

[E] Per Second Rebuttal Schedule 4.3.

[F] Per Second Rebuttal Schedule 5.2.

[G] Per Second Rebuttal Schedule 16.1.

[H] Per Second Rebuttal Schedule 16.2.

**EXHIBIT 6**

**to**

**PAUL D. BRACHMAN DECLARATION IN SUPPORT
OF DEFENDANT'S MOTION IN LIMINE NO. 4
TO PRECLUDE PLAINTIFF FROM OFFERING
EVIDENCE OR ARGUMENT CONCERNING POST-
NOVEMBER 2022 EVENTS**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Second Rebuttal Schedules Index - Updated

| Schedule # | Title |
|---|---|
| Second Rebuttal Schedule 1.0 - Updated | Damages Summary |
| Second Rebuttal Schedule 2.0 - Updated | Scenario 1 - Discounted Lost Profits: In-house Model |
| Second Rebuttal Schedule 2.1 - Updated | Scenario 1 - Undiscounted Lost Profits: In-house Model |
| Second Rebuttal Schedule 2.2 - Updated | Scenario 1 - Lost EndoWrist Repair Units |
| Second Rebuttal Schedule 3.0 - Updated | Scenario 1 - Discounted Lost Profits: Distributor Model |
| Second Rebuttal Schedule 3.1 - Updated | Scenario 1 - Undiscounted Lost Profits: Distributor Model |
| Second Rebuttal Schedule 4.0 - Updated | Scenario 2 - Discounted Lost Profits: In-house Model (2 Year X/Xi Delay) |
| Second Rebuttal Schedule 4.1 - Updated | Scenario 2 - Undiscounted Lost Profits: In-house Model (2 Year X/Xi Delay) |
| Second Rebuttal Schedule 4.2 - Updated | Scenario 2 - Lost EndoWrist Repair Units (2 Year X/Xi Delay) |
| Second Rebuttal Schedule 4.3 - Updated | Scenario 2 - Discounted Lost Profits: In-house Model  (1 Year X/Xi Delay) |
| Second Rebuttal Schedule 4.4 - Updated | Scenario 2 - Undiscounted Lost Profits: In-house Model  (1 Year X/Xi Delay) |
| Second Rebuttal Schedule 4.5 - Updated | Scenario 2 - Lost EndoWrist Repair Units  (1 Year X/Xi Delay) |
| Second Rebuttal Schedule 5.0 - Updated | Scenario 2 - Discounted Lost Profits: Distributor Model (2 Year X/Xi Delay) |
| Second Rebuttal Schedule 5.1 - Updated | Scenario 2 - Undiscounted Lost Profits: Distributor Model (2 Year X/Xi Delay) |
| Second Rebuttal Schedule 5.2 - Updated | Scenario 2 - Discounted Lost Profits: Distributor Model  (1 Year X/Xi Delay) |
| Second Rebuttal Schedule 5.3 - Updated | Scenario 2 - Undiscounted Lost Profits: Distributor Model  (1 Year X/Xi Delay) |
| Second Rebuttal Schedule 6.0 - Updated | Intuitive's U.S. EndoWrist Instrument Units - Actual and Forecasted: 2014 - 2026 |
| Second Rebuttal Schedule 7.0 - Updated | Estimated EndoWrist Expiration Rates: 2018 - 2022 |
| Second Rebuttal Schedule 8.0 - Updated | Potential EndoWrist Instrument Units, Net Sales Dollars and Average Selling Price by System (Using Intuitive Sales Volumes and September 2019 Vizient Amended Agreement Prices): 2018 - March 2024 |
| Second Rebuttal Schedule 8.1 - Updated | Potential EndoWrist Instrument Units, Net Sales Dollars and ASP by Product (Instrument Number) - da Vinci S/Si (Using Intuitive Sales Volumes and September 2019 Vizient Amended Agreement Prices): 2018 - March 2024 |
| Second Rebuttal Schedule 8.2 - Updated | Potential EndoWrist Instrument Units, Net Sales Dollars and ASP by Product (Instrument Number) - da Vinci X/Xi (Using Intuitive Sales Volumes and September 2019 Vizient Amended Agreement Prices): 2018 - March 2024 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Second Rebuttal Schedules Index - Updated

| Schedule # | Title |
|---|---|
| Second Rebuttal Schedule 9.0 - Updated | SIS's Estimated EndoWrist Instrument Repair Cost: 2020 - March 2024 |
| Second Rebuttal Schedule 9.1 - Updated | Intuitive's "Top 5" X/Xi EndoWrist Instrument Units:2018 - March 2024 |
| Second Rebuttal Schedule 10.0 | SIS's Estimated Interceptor Chip Cost (Based on Rebotix's Sales to Restore) |
| Second Rebuttal Schedule 10.1 | Rebotix Sales to SIS: June 27, 2019 - November 21, 2019 |
| Second Rebuttal Schedule 11.0 - Updated | Potential EndoWrist Instrument Units, Costs and Costs per Unit by System (Using Intuitive Sales Volumes and Rebotix Pricing): 2018 - March 2024 |
| Second Rebuttal Schedule 11.1 - Updated | Potential EndoWrist Instrument Units, Costs and Costs per Unit  by Product (Instrument Number) - da Vinci S/Si (Using Intuitive Sales Volumes and Rebotix Pricing): 2018 - March 2024 |
| Second Rebuttal Schedule 11.2 - Updated | Potential EndoWrist Instrument Units, Costs and Costs per Unit  by Product (Instrument Number) - da Vinci X/Xi (Using Intuitive Sales Volumes and Rebotix Pricing): 2018 - March 2024 |
| Second Rebuttal Schedule 12.0 | SIS's EndoWrist Instrument Sales Prices and Costs (from Rebotix) - da Vinci S/Si |
| Second Rebuttal Schedule 12.1 - Updated | SIS's EndoWrist Instrument Sales Prices and Costs (from Rebotix) - da Vinci X/Xi |
| Second Rebuttal Schedule 12.2 - Updated | SIS's EndoWrist Instrument Sale Price vs Intuitive Sales Price - da Vinci S/Si |
| Second Rebuttal Schedule 13.0 - Updated | Intuitive's EndoWrist Instrument Units, Net Sales Dollars and Average Selling Price by System: 2014 - March 2024 |
| Second Rebuttal Schedule 13.1 - Updated | Intuitive's EndoWrist Instrument Units and Net Sales Dollars by Product (Instrument Number) - da Vinci S/Si: 2014 - March 2024 |
| Second Rebuttal Schedule 13.2 - Updated | Intuitive's EndoWrist Instrument Units and Net Sales Dollars by Product (Instrument Number) - da Vinci X/Xi:  2014 - March 2024 |
| Second Rebuttal Schedule 14.0 | SIS's EndoWrist Instrument Repair Summary |
| Second Rebuttal Schedule 15.0 | SIS's Financial Statements: 2019 - October 2021 |
| Second Rebuttal Schedule 15.1 - Updated | SIS's Detailed SGA: 2019 - October 2021 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Damages Summary
# Second Rebuttal Schedule 1.0 - Updated

| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 (discounted) | 2026 (discounted) | Total |
|---|---|---|---|---|---|---|---|---|
| **Lost profits** | | | | | | | | |
| **Scenario 1 - Illegal Encryption** | | | | | | | | |
| **[A]** In-house model | $6,235,557 | $21,765,377 | $32,616,631 | $37,137,711 | $38,057,760 | $25,690,943 | $7,918,895 | $169,422,874 |
| **[B]** Distributor model | $5,573,947 | $19,392,500 | $28,903,939 | $32,913,095 | $33,640,800 | $22,709,268 | $6,999,833 | $150,133,382 |
| | | | | | | | | |
| **Scenario 2 - Unenforceable Contracts** | | | | | | | | |
| **2 Year X/Xi delay** | | | | | | | | |
| **[C]** In-house model | $958,569 | $1,359,572 | $7,395,300 | $26,559,665 | $38,057,760 | $25,690,943 | $7,918,895 | $107,940,704 |
| **[D]** Distributor model | $837,634 | $1,179,972 | $6,549,444 | $23,537,425 | $33,640,800 | $22,709,268 | $6,999,833 | $95,454,376 |
| **1 Year X/Xi delay** | | | | | | | | |
| **[E]** In-house model | $958,569 | $7,481,387 | $23,445,641 | $37,137,711 | $38,057,760 | $25,690,943 | $7,918,895 | $140,690,906 |
| **[F]** Distributor model | $837,634 | $6,643,796 | $20,775,389 | $32,913,095 | $33,640,800 | $22,709,268 | $6,999,833 | $124,519,815 |

**NOTES / SOURCES:**

Note: Any minor differences are due to rounding.

Note: I have removed Lanham Act damages from this update as I understand Lanham Act damages are no longer at issue.

**[A]** Per Second Rebuttal Schedule 2.0 - Updated.

**[B]** Per Second Rebuttal Schedule 3.0 - Updated.

**[C]** Per Second Rebuttal Schedule 4.0 - Updated.

**[D]** Per Second Rebuttal Schedule 5.0 - Updated.

**[E]** Per Second Rebuttal Schedule 4.3 - Updated.

**[F]** Per Second Rebuttal Schedule 5.2 - Updated.

**EXHIBIT 7**

**to**

**PAUL D. BRACHMAN DECLARATION IN SUPPORT
OF DEFENDANT'S MOTION IN LIMINE NO. 4
TO PRECLUDE PLAINTIFF FROM OFFERING
EVIDENCE OR ARGUMENT CONCERNING POST-
NOVEMBER 2022 EVENTS**

```
 1                    UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF CALIFORNIA

 3    Before The Honorable Araceli Martinez-Olguin, District Judge

 4

 5   SURGICAL INSTRUMENT SERVICE    )
     COMPANY, INC.,                 )
 6                                  )
                                    )
 7            Plaintiff,            )
                                    )
     vs.                           )   No. C 21-03496-AMO
 8                                  )
     INTUITIVE SURGICAL, INC.,      )   Related Case:
 9                                  )
              Defendants.           )   No. C 21-03825-AMO
10   _____)

11                                      San Francisco, California
                                        Friday, June 7, 2024
12

13    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 2:22 - 3:06 = 44 MINUTES
14
     APPEARANCES:
15
     For Plaintiffs:
16                               McCaulley Law Group
                                 180 North Wabash Avenue
17                               Suite 601
                                 Chicago, Illinois 60601
18                          BY:  RICHARD T. MCCAULLEY, JR.,
                                   ESQ.
19
                                 Spector Roseman & Kodroff,
20                                 P.C.
                                 2001 Market Street, Suite 3420
21                               Philadelphia, Pennsylvania
                                   19103
22                          BY:  JEFFREY J. CORRIGAN, ESQ.
                                 CHRIS BATEMAN, ESQ.
23

24

25          (APPEARANCES CONTINUED ON NEXT PAGE)
```

2

1   <u>APPEARANCES</u>:   (Cont'd.)

2   For Defendants:

3                               Paul, Weiss, Rifkin, Wharton
                                  & Garrison, LLP
4                               535 Mission Street
                                24th Floor
5                               San Francisco, California
                                  94105
6                     BY:   JOSHUA HILL, JR., ESQ.

7                               Paul, Weiss, Rifkin, Wharton
                                  & Garrison, LLP
8                               2001 K Street, NW
                                Washington, D.C. 20006
9                     BY:   KENNETH A. GALLO, ESQ.

10                              Paul, Weiss, Rifkind, Wharton
                                  & Garrison, LLP
11                              1285 Avenue of the Americas
                                New York, New York 10019
12                    BY:   WILLIAM MICHAEL, ESQ.

13                              Covington & Burling, LLP
                                Floor 54
14                              415 Mission Street
                                San Francisco, California
15                                94105
                      BY:   SONYA D. WINNER, ESQ.
16

    Transcribed by:             Echo Reporting, Inc.
17                              Contracted Court Reporter/
                                Transcriber
18                              echoreporting@yahoo.com

19

20

21

22

23

24

25

1  ask my courtroom deputy to put holds there.  I will hold it
2  for you all, but it -- we can -- we can figure out whether
3  or not this is right.  What I can do is plan to do your
4  pretrial conference on November 25th at 11:00 a.m., and then
5  we can start trial on January 6, 2025, and I'll set that for
6  20 days because I got the sense that, Mr. McCaulley, your
7  estimate was 14 days, excluding a bunch of other things.
8  And I got SI -- and I got Intuitive's suggestion that it was
9  20 days, including most of those things.  So, I've -- that's
10  where I can fit in a 20-day trial.  So --
11        MR. MCCAULLEY:  Okay.
12        THE COURT:  -- I just -- before you respond to
13  everything he says and -- and try to argue to tell me to do
14  it sooner, I just -- I want you to know a 20-day trial,
15  that's where I can -- that's where I can conceivably fit it
16  in right now.  It's that or April.  So, that was -- so,
17  please, go ahead.  Please, please.  But in the end --
18        MR. MCCAULLEY:  Your Honor --
19        THE COURT:  -- I feel like -- go ahead.
20        MR. MCCAULLEY:  SIS then requests a trial on
21  January 6th.  I want to feel like I'm winning.  So, yeah.
22  And Mr. Gallo and I have had several conversations about
23  this, and there's no indication, just like with Ms. Winner
24  before, that the parties can't work together.  I will tell
25  you this, your Honor.  My client is definitely definitely a

26

short David against Goliath, and reopening discovery in a

broad way for the next eight months will bury us.  So, you

know, we want to have some certainty about the record we've

created, the record that we've relied on.  I have asked my

damages expert to prepare updated numbers, but it's simply

updating his report, not new opinions.  I expect to have it

to Mr. Gallo in the next few weeks.  He was kind enough and

his team was kind enough to send us updated numbers.  I

think anticipating the request -- he didn't even make us ask

for it -- they sent over the -- the numbers, and we would

definitely update our numbers, and we anticipate that, but

reopening discovery would be a huge blow to my client

financially, your Honor.  And we are -- you know, we're

happy to go to trial.  We're happy to -- to square off.  But

their team and the resources are -- have buried us and will

continue to bury us if we have significant discovery.

I'm happy to work with Mr. Gallo.  The one thing we did

talk about was updating some testimony that was kind of

rambling from witnesses, and -- and, you know, what I was

going to propose to him is we can maybe summarize those so

we didn't have to retake them, to make it less excruciating

for the jury.  But new issues, new -- redeposing a bunch of

witnesses, there were so many depositions in this case.  It

almost broke my client the first time around.  I'm not sure

we can do it again.

1

**MCCAULLEY LAW GROUP LLC**
JOSHUA V. VAN HOVEN, (CSB No. 262815)

2
E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300

3
San Ramon, California 94583
Telephone: 925.302.5941

4

5
RICHARD T. MCCAULLEY (*pro hac vice*)
E-Mail: richard@mccaulleylawgroup.com

6
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601

7
Telephone: 312.330.8105

8
*Attorneys for Plaintiff and Counter-Defendant,*
SURGICAL INSTRUMENT SERVICE COMPANY, INC.

9

10

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

11

12

13
SURGICAL INSTRUMENT SERVICE
COMPANY, INC.

Case No. 3:21-cv-03496-AMO

14
            *Plaintiff/Counter-Defendant,*

Honorable Araceli Martínez-Olguín

15
      v.

**PLAINTIFF SIS' OPPOSITION TO INTUITIVE'S MOTION IN LIMINE #4**

16
INTUITIVE SURGICAL, INC.,

17
            *Defendant/Counterclaimant.*

18

19
      In its Motion In Limine No. 4 ("Mtn No. 4"), Defendant, Intuitive Surgical, Inc. ("Intuitive")

20
seeks an order prohibiting Plaintiff, Surgical Instrument Service Company, Inc's ("SIS"), including

21
its witnesses and lawyers, from:

22

23
      "offering any evidence or argument about the post-November 10, 2022 time period, other

24
than SIS's recently produced financial records and RFA responses." Mtn No. 4 at p. i.

25

**SIS DOES NOT OPPOSE THE RELIEF INTUITIVE SEEKS
PROVIDED CERTAIN EXCLUSIONS ARE INCLUDED
TO MODIFY THE SCOPE OF THE PROHIBITION**

26

27
      SIS does not oppose the relief sought by Intuitive provided the following exclusions and

28

1

additions are included to modify the scope of the provision to make it more even-handed and fair:

(1)     the prohibition against offering any evidence or argument about what happened after November 2022 outside of the limited information that SIS produced in response to the Court's order should also be applied to Intuitive, along with its witnesses and lawyers;

(2)     SIS's damages expert's updated Schedules appended to his expert report based upon financial data produced by the parties after the close of discovery are not subject to the prohibition against offering any evidence or argument about what the "but for" world would look like after November 2022;

(3)     SIS's damages expert is not prohibited from testifying regarding SIS's lost profits in the "but-for" world corresponding to the period after November 2022 through 2026; and

(4)     information available after November 10, 2022 which is disclosed or covered in the parties' expert reports and which the parties' had a full opportunity to explore through the subsequent expert deposition process are not subject to the prohibition against offering any evidence or argument about what happened after November 2022.

### SIS'S RESPONSE TO INTUITIVE'S PRELIMINARY STATEMENT -- RELEVANT BACKGROUND AND ARGUMENT SECTIONS

Intuitive suggests that SIS has refused to produce discovery on a matter by claiming it is irrelevant, and then plans to surprise Intuitive with undisclosed evidence on the same matter at trial. Mtn No. 4 at p. 1. That is not at all accurate. Everything that SIS will present during its case-in-chief to the jury during trial is known to Intuitive. SIS's live witness testimony and testimony of witnesses by deposition has been disclosed to Intuitive. There are no surprises in the trial exhibits SIS has on the list provided to Intuitive. SIS's expert witnesses will be testifying to the opinions that were fully disclosed in their expert reports and which Intuitive explored extensively during the period for expert deposition discovery.

Intuitive adds the gratuitous, self-serving, and erroneous assertion that "there is currently

no evidence in the record to show that SIS was excluded from competing in any relevant market by any alleged anticompetitive conduct of Intuitive during that period." Mtn No. 4 at pp. 1:20-22; 5:10-11. SIS disagrees. There is, however, no evidence in the record to show that Intuitive stopped, modified or otherwise changed its anticompetitive conduct after that conduct crushed SIS's effort to establish its refurbishment and repair service for EndoWrist instruments. Accordingly, the anticompetitive effect of the barriers to entry that Intuitive's anticompetitive conduct created, which shut down SIS business in 2019 and 2020 continued to exclude SIS from competing in the EndoWrist repair and replacement aftermarket from that time to the present.

In its "Relevant Background" section, Intuitive argues that its "March 2023 announcement clarifying that its customers were free to purchase any FDA-cleared reset EndoWrist" undercuts "SIS's claim that it was excluded from competing in that [post November 2022] time period." Mtn No. 4 at p. 2:4-8. That is simply not true.

Additionally, it appears that Intuitive wants to play by different rules regarding what post November 2022 evidence it wants to present to the jury. For example, Intuitive apparently intends to present evidence and argument to the jury to show "that SIS had the opportunity to compete after November 2022 and simply made a choice not to do so" in order to demonstrate "why SIS's liability and damages claims have no merit". Mtn No. 4 at p. 2:21-24. Yet, Intuitive asks that this Court require SIS to remain mute in the face of such evidence and refrain from telling the jury anything about what the "but-for" world would look like in the period after November 2022 through 2026. Specifically, Intuitive asks that SIS "be barred from offering evidence or making arguments to the jury about facts and events from that [post November 2022' time period." Mtn No. 4 at p. 4:9-11. Such a result would contradict the most basic principles of fairness. Accordingly, SIS requests that the Court incorporate the above-recited additional provisions in any Order the Court enters resolving this motion in limine.

Intuitive's "Argument" is essentially a rehash of the arguments it presented in its motion to reopen discovery. It is also based upon the fallacious allegation that SIS intends to use evidence from the post-November 2022 time period. Mtn No. 4 at p. 4 n.2. SIS has no such intention. SIS does however intend to present expert testimony from Mr. Bero about his various damages models that address the but-for world after November 2022 and form the basis for his lost profits damages calculations. It appears that Intuitive is attempting to use this motion as a vehicle to preclude SIS from presenting that testimony and related argument to the jury. As such, Intuitive's ploy is nothing more than a renewed attack on the admissibility of Mr. Bero's expert testimony which was rejected and put to rest by this Court's denial of Intuitive's Daubert motion.

Intuitive's postion that SIS cannot have "its witnesses testify, or its lawyers make arguments, about post-November 2022 facts and events—including arguments that SIS was foreclosed from competing during that [post November 2022] time period" is absurd and is in no way compelled by this Court's denial of Intuitive's motion to reopen discovery in this case.  Simply put, it is undisputed that Intuitive's anti-competitive conduct crushed the repair market in which SIS operates in 2019 and 2020.  Intuitive does not dispute that it has and would continue that conduct with respect to SIS's business to this day, even with its manufactured and self-serving March 2023 statement.

//

//

//

1

2

**CONCLUSION**

3

For the foregoing reasons, SIS respectfully requests that in the interest of ensuring a fair

4

and level playing field for the trial, that the Court include the proposed additional terms and

5

exclusions with any Order entered granting Intuitive's Motion in Limine No. 4.

6

7

8    Dated: November 7, 2024          McCAULLEY LAW GROUP LLC
                                      By: */s/ Joshua Van Hoven*
9                                          JOSHUA V. VAN HOVEN

10                                    E-Mail: josh@mccaulleylawgroup.com
                                      3001 Bishop Dr., Suite 300
11                                    San Ramon, California 94583
                                      Telephone: 925.302.5941
12

13                                    RICHARD T. MCCAULLEY (pro hac vice)
                                      E-Mail: richard@mccaulleylawgroup.com
14                                    180 N. Wabash Avenue, Suite 601
                                      Chicago, Illinois 60601
15                                    Telephone: 312.330.8105

16
                                      *Attorneys for* SURGICAL INSTRUMENT SERVICE COMPANY, INC.
17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on November 7, 2024, I caused a copy of the foregoing

3

**PLAINTIFF SIS's OPPOSITION TO INTUITIVE'S MOTION IN LIMINE #4**, to be

4

electronically to be served *via* electronic mail to counsel of record:

5

6

7
**Crystal Lohmann Parker**
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas

8
New York, NY 10019
212-373-3000

9
Email: cparker@paulweiss.com

10
**Joshua Hill , Jr.**
Paul, Weiss, Rifkind, Wharton & Garrison LLP

11
535 Mission Street, 24th Floor
San Francisco, CA 94105

12
(628) 432-5123
Email: jhill@paulweiss.com

13

14
**Kenneth A. Gallo**
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street NW

15
Washington, DC 20006-104 7
202-223-7356

16
Fax: 202-204-7356
Email: kgallo@paulweiss.com

17

18
**Paul David Brachman**
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K St., NW

19
Washington, DC 20006
202-223-7440

20
Email: pbrachman@paulweiss.com

21
**William Michael**
Paul, Weiss, Rifkind, Wharton and Garrison LLP

22
1285 Avenue of the Americas
New York, NY 10019

23
212-373-3000
Email: WMichael@paulweiss.com

24
**Allen Ruby**

25
Attorney at Law
15559 Union Ave. #138

26
Los Gatos, CA 95032
408-4 77-9690

27
Email: allen@allenruby.com

28

6

1

2

3    **Andrew David Lazerow**
     Covington & Burling LLP
4    One CityCenter
     850 Tenth Street, NW
5    Washington, DC 20001-4956
     202-662-5081
6    Email: alazerow@cov.com

7    **Kathryn Elizabeth Cahoy**
     Covington & Burling LLP
8    3000 El Camino Real
     5 Palo Alto Square, 10th Floor
9    Palo Alto, CA 94306
     650-632-4700
10   Email: kcahoy@cov.com

11   **Sonya Diane Winner**
     Covington & Burling LLP
12   Floor 54
     415 Mission Street
13   San Francisco, CA 94105-2533
     (415) 591-6000
14   Email: swinner@cov.com

15

16       Dated: November 7, 2024         By:    /s/ Joshua Van Hoven
                                                 JOSHUA V. VAN HOVEN
17

18

19

20

21

22

23

24

25

26

27

28

                                      7

1

## FILER'S ATTESTATION

2

   I, Kenneth A. Gallo, am the ECF User whose ID and password are being used to file this

3

document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that the signatories

4

identified above have concurred in this filing.

5

6
   Dated:  November 11, 2024                              By: /s/ *Kenneth A. Gallo*
                                                              Kenneth A. Gallo

7
                                                          Kenneth A. Gallo (*pro hac vice*)
8                                                         **PAUL, WEISS, RIFKIND, WHARTON &**
                                                          **GARRISON LLP**
9                                                         2001 K Street, NW
                                                          Washington, DC  20006-1047
10                                                        Telephone:  (202) 223-7300
                                                          Facsimile:  (202) 204-7420
11                                                        Email: kgallo@paulweiss.com
12
                                                          *Attorney for Defendant*
13                                                        *Intuitive Surgical, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28