Homayune A. Ghaussi (SBN 325716)
WARNER NORCROSS + JUDD LLP
2715 Woodward Avenue
Suite 300
Detroit, Michigan
hghaussi@wnj.com

*Attorneys for Non-Party – Stryker Sustainability Solutions, Inc.*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC., <br><br> Plaintiff, <br> v <br><br> INTUITIVE SURGICAL, INC., <br><br> Defendant. | Case No: 3:21-cv-03496-AMO <br> The Honorable Araceli Martínez-Olguín <br><br> **NON-PARTY STRYKER SUSTAINABILITY SOLUTIONS, INC'S STATEMENT IN SUPPORT OF MOTION TO SEAL** |

**INTRODUCTION**

Pursuant to Civil L.R. 79-5(f)(3), Stryker Sustainability Solutions, Inc. ("SSS"), a non-party to this action, has one objective in filing this statement: preserving the confidentiality of several, highly confidential indications of interest, internal memoranda providing rationale and mental impressions, financial assessments, and related documents and correspondence that contain painstaking detail and insight relating to a potential business acquisition. (Dkt. 393 (TX1732, TX1733, TX1734, TX1736, TX1738).)[1] SSS produced the highly confidential documents in an unrelated lawsuit between Defendant Intuitive Surgical, Inc. ("Intuitive") and another party, but subject to a protective order, designating the document "CONFIDENTIAL" and "ATTORNEYS'

---

[1] On review, SSS is not seeking to seal TX0923, TX1730, 1731 TX1735, or TX1737, as these documents do not raise the same concerns as the others.

EYES ONLY." Presumably, Plaintiff Surgical Instrument Service Company, Inc. obtained the documents from Intuitive through discovery in this case.

In preparation for trial, on December 30, 2024, the parties filed an Amended Joint Trial Exhibit List, which contained newly added trial exhibits, including several documents containing SSS's highly confidential business information. (Dkt. 377.) On January 4, 2025, the parties filed a Joint Administrative Motion to Consider Whether Another Party's Material Should Be Sealed, identifying SSS's highly confidential business information. (Dkt. 393.) Accordingly, SSS files the instant statement to articulate the compelling reasons for maintaining its highly confidential indications of interest, due diligence reports, and related documents and correspondence under seal for the duration of trial.

## BACKGROUND

SSS is the nation's leading provider of reprocessing and remanufacturing services for single-use medical devices. (Ex A, E. Varty Decl ¶ 4.) This generally includes inspecting, cleaning, function testing, sterilizing and packaging single-use devices so that they can be clinically and safely used again. (*Id.*)

Intuitive markets and sells minimally invasive surgical robots referred to as da Vinci robots. (Dkt. 1, Complaint ¶ 2.) The da Vinci robots utilize EndoWrists, which are the only FDA-approved surgical instruments compatible with the robots. (*Id.* at ¶ 68.) Rebotix Repair, LLC is a company that repairs/refurbishes used endo-wrist devices so that they can be re-used in conjunction with the da Vinci surgical robot rather than be disposed of as medical waste.

In 2016, SSS considered acquiring Rebotix, which would have enabled SSS to break into the EndoWrist repair market. In so doing, SSS created various confidential due diligence reports, indications of interest, internal memoranda with strategic considerations, and financial

assessments and analyses to analyze the viability of such an acquisition; these are the documents that SSS seeks to ensure remain sealed in this case. (Ex A, E. Varty Decl ¶ 5.)

On September 28, 2020, Rebotix sued Intuitive, alleging anti-trust violations. *See Rebotix Repair LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-02274-VMC-TGW (M.D. Fla.)  In the *Rebotix* case, SSS received a third-party subpoena requesting documents relating to SSS's/Stryker's contemplated acquisition of Rebotix.  In response, SSS produced hundreds of documents to Rebotix and Intuitive, including SSS's/Stryker's highly confidential due diligence reports, analyses, and correspondence relating to same.  SSS produced these documents pursuant to the *Rebotix* court's Protective Order, designating the documents "CONFIDENTIAL" and "ATTORNEYS' EYES ONLY."  (*See* Ex B, 3/10/2021 Protective Order.)  In October 2022, the *Rebotix* case settled and was later dismissed.

On May 10, 2021, Plaintiffs filed the instant action, alleging similar anti-trust violations against Intuitive.  Upon information and belief, Intuitive re-produced copies of SSS's nonparty subpoena response from the *Rebotix* case to the Plaintiffs in this case, including SSS's highly confidential information.  In preparation for trial, the parties in this case have indicated they wish to use SSS's highly confidential highly confidential indications of interest, internal memoranda providing rationale and mental impressions, financial assessments, and correspondence relating to same as trial exhibits.  Accordingly, they filed a Joint Administrative Motion to Consider Whether Another Party's Material Should Be Sealed, identifying Stryker's highly confidential information as potential trial exhibits to be used in open court.  (Dkt. 393.)  SSS made a similar request a few weeks ago after the parties designated a highly confidential due diligence report and summary cover email as a trial exhibit.  (Dkt. 388.) This Court granted SSS's request via an Omnibus Sealing Order, ruling that the highly confidential due diligence report constituted proprietary business

information. (Dkt. 388.) SSS now respectfully requests that the Court extend that ruling to these documents related to the due diligence report and maintain the highly confidential indications of interest, internal memoranda with strategic considerations, financial assessments and analyses, and related correspondence under seal.

## **LEGAL STANDARD**

Pursuant to Civil L.R. 79-5(c)(1), made applicable through Civil L.R. 79-5(f)(3), a non-party statement requesting sealing must include the following: "[A] specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of: (i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient."

A party seeking to seal records must provide "compelling reasons" to overcome the "strong presumption in favor of access." *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *see Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). To overcome this strong presumption, the party seeking to seal judicial records must "articulate compelling reasons supported by specific factual findings . . . that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178-79 (citations omitted).

It is in the "sound discretion of the trial court" to determine what constitutes a "compelling reason" for sealing a court document. *Ctr. for Auto Safety*, 809 F.3d at 1097 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)). Compelling reasons justifying sealing court records generally exist when such "court files might . . . become a vehicle for improper purposes" such as "releas[ing] trade secrets," *Kamakana*, 447 F.3d at 1179, or "as sources of business

information that might harm a litigant's competitive standing," *Ctr. for Auto Safety*, 809 F.3d at 1097; *see In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (sealing trade secret information about "the pricing terms, royalty rates, and guaranteed minimum payment terms" in the parties' licensing agreement).

## ARGUMENT

### A. Non-party SSS's legitimate interests provide a compelling reason that warrants sealing its highly confidential documents.

A compelling reason exists to seal non-party SSS's highly confidential due diligence documents, including indications of interest, internal memoranda with strategic considerations, financial assessments and analyses, and related correspondence under seal in full. *See Sumotext Corp. v. Zoove, Inc.*, No. 16-CV-01370-BLF, 2020 WL 836737, at *2 (N.D. Cal. Feb. 20, 2020) (finding compelling reason to grant administrative motion to seal due diligence report in full, stating "[d]ue diligence reports are commonly prepared by companies considering an acquisition and thus typically involve detailed confidential data about the target business").

In analyzing acquisitions, SSS/Stryker generates due diligence reports, indications of interest, internal memorandum with strategic considerations, and financial assessments like the documents at issue here, which relates to SSS's/Stryker's potential acquisition of Rebotix. SSS/Stryker considers such documents to be highly confidential in nature. (Ex A, E. Varty Decl ¶¶ 5-6.) This is why SSS has and continues to specifically seek to safeguard these due-diligence related documents from public disclosure.

The documents are highly confidential because they provide detailed information regarding how SSS and Stryker analyze potential acquisitions, including financial projections, estimations of average sales price and marketing expenses, estimations surrounding litigation following Stryker's acquisition, and estimations relating to the profitability of the acquisition to SSS/Stryker

5

and how much Stryker might be willing to pay. (Ex A, E. Varty Decl ¶ 7.) Indeed, the documents painstakingly detail SSS's rationale for its recommendation to Stryker, which SSS and Stryker consider to be highly confidential mental impressions relating to this particular deal. (*Id.*) The due diligence report also reveals financial assumptions used by SSS/Stryker to assess the acquisition, which applies not only to Rebotix, but any other business that Stryker targets for acquisition. (*Id.* at ¶ 8.)

Moreover, SSS's/Stryker's internal analysis relating to the acquisition of Rebotix is not the focus of this case and is of no importance to the issue at hand. Accordingly, SSS's compelling reason for preserving the confidentiality of these documents outweighs the public's need for this information. Indeed, sealing these documents will not "significantly impact 'the public interest in understanding the judicial process,'" and, thus, the balance tips in SSS's favor. *See In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 12-CV-6003, 2015 WL 8570883, at *5 (N.D. Cal. Nov. 18, 2015), *report and recommendation adopted*, No. 12-CV-6003-CRB, 2015 WL 8479543 (N.D. Cal. Dec. 10, 2015), *aff'd*, 716 F. App'x 603 (9th Cir. 2017) (finding compelling reasons to grant HP's motion to seal, recognizing "the detriment that HP would suffer in the mergers and acquisitions process if competitors had access to this sensitive corporate playbook").

### B. If this Court denies sealing, non-party SSS will be injured.

Public disclosure of SSS's/Stryker's highly confidential documents would injure SSS and Stryker by revealing the various considerations and methods Stryker uses to analyze acquisitions, which might be used by future target businesses to manipulate the process, or a competitor to undercut Stryker's future acquisitions. (Ex A, E. Varty Decl ¶ 9.) SSS's/Stryker's methods and thresholds surrounding key considerations must remain confidential to prevent competitive harm. This is, in part, why SSS considers these documents to be highly confidential and limits their

disclosure. Public disclosure of these documents would also be harmful because they contain highly detailed financial information concerning Rebotix that would be damaging if known, even several years after the fact (the financial information includes certain projections through 2025). (*Id*. at ¶ 10.) Indeed, this is private financial information of competitive value, which Rebotix's competitors might use to analyze the viability of the company. (*Id*.)

### C. A less restrictive alternative to sealing is not sufficient.

SSS has reviewed the documents and materials at issue and identified only a handful of documents that SSS requests remain sealed. To be sure, the document arguably contains a few portions that do not warrant protection, *see e.g*. STRREB00000091, ¶ 8, 10, but those portions are too insignificant to have any probative value. *See Sumotext Corp. v. Zoove, Inc*., No. 16-CV-01370-BLF, 2020 WL 836737, at *3 (N.D. Cal. Feb. 20, 2020) ("Although the Court could require Defendants to unredact certain portions of the agreement, those portions would be too insignificant to have any probative value."). Accordingly, SSS contends a less restrictive alternative does not exist, and respectfully requests that this Court permit the full due diligence report and summary cover email to remain sealed in full.

### CONCLUSION

Stryker Sustainability Solutions, Inc. respectfully requests that the Court enter an Order, in the form attached hereto as Exhibit C, to seal Docket 393-4, 393-6, 393-7, 393-8, 393-9, 393-11, and 393-13 (TX1732, TX1733, TX1734, TX1736, TX1738) for the duration of trial in this matter.

Dated: January 9, 2025

                                            *s/ Homayune A. Ghaussi*
                                            Homayune A. Ghaussi (SBN 325716)
                                            WARNER NORCROSS + JUDD LLP
                                            2715 Woodward Avenue
                                            Suite 300
                                            Detroit, Michigan
                                            hghaussi@wnj.com

*Attorneys for Non-Party – Stryker*
*Sustainability Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby state a copy of the **Non-Party Stryker Sustainability Solutions, Inc.'s Statement in Support of Motion to Seal** was served on all parties of record using this Court's CM/ECF system.


*s/ Homayune A. Ghaussi*
Homayune A. Ghaussi