1  Kenneth A. Gallo (*pro hac vice*)
   Paul D. Brachman (*pro hac vice*)
2  **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
   2001 K Street, NW
3  Washington, DC  20006-1047
   Telephone:  (202) 223-7300
4  Facsimile:  (202) 223-7420
   Email: kgallo@paulweiss.com
5  Email: pbrachman@paulweiss.com

6  William B. Michael (*pro hac vice*)
   Crystal L. Parker (*pro hac vice*)
7  Daniel A. Crane (*pro hac vice*)
   **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
8  1285 Avenue of the Americas
   New York, NY 10019-6064
9  Telephone:  (212) 373-3000
   Facsimile:  (212) 757-3990
10 Email: wmichael@paulweiss.com
   Email: cparker@paulweiss.com
11 Email: dcrane@paulweiss.com

12 Joshua Hill Jr. (SBN 250842)
   **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
13 535 Mission Street, 24th Floor
   San Francisco, CA 94105
14 Telephone:  (628) 432-5100
   Facsimile:  (628) 232-3101
15 Email: jhill@paulweiss.com

16 *Attorneys for Defendant Intuitive Surgical, Inc.*

17 [Additional counsel listed on signature page]

18              **UNITED STATES DISTRICT COURT**

19              **NORTHERN DISTRICT OF CALIFORNIA**

20                  **SAN FRANCISCO DIVISION**

21

| 22 | SURGICAL INSTRUMENT SERVICE COMPANY, INC., | Case No. 3:21-cv-03496-AMO |
|---|---|---|
| 23 | | **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW** |
| 24 | *Plaintiff*, v. | |
| 25 | INTUITIVE SURGICAL, INC., | Date:  January 21, 2025 Time:  TBD |
| 26 | | Courtroom:  10 |
| 27 | *Defendant*. | |
| 28 | | The Honorable Araceli Martínez-Olguín |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to the Court's order on the record, *see* Dkt. 423, Defendant Intuitive Surgical, Inc. ("Intuitive") hereby moves the Court, pursuant to Federal Rule of Civil Procedure 50(a), for judgment as a matter of law on all claims brought by Plaintiff Surgical Instrument Service Company, Inc. ("SIS").

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, and such arguments and authorities as may be presented at or before the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

Should the Court grant judgment as a matter of law in favor of Intuitive as to:

1. All antitrust claims asserted by SIS, because SIS has failed to prove that that contractual authorization was illusory, and thus has failed to establish an unlawful tying arrangement?

2. All of SIS's claims for damages after November 2022, because SIS neither proved Intuitive caused SIS any damages after November of 2022, nor provided any basis for quantifying damages after that date?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

SIS has failed to meet its burden of proof in several independent case-dispositive ways, and Intuitive accordingly moves on a number of grounds for the grant of judgment as a matter of law pursuant to Rule 50. However, for the sake of expediency during trial, this brief presents argument on two of the most straight-forward bases for granting immediate judgment, leaving argumentation on other grounds to a later date, if necessary.

SIS's entire case is built on the assumption that Intuitive's contracts prohibited hospitals from having EndoWrists serviced by a third party like SIS. But that is not what the contracts actually say. The contracts provide that third-party servicers must be authorized or approved by Intuitive, which is the same term that appears in SIS's own contracts. Under applicable law, where

a contract contains a third-party authorization clause, it does not violate the antitrust laws unless the possibility of obtaining such authorization is "illusory."

SIS failed entirely to prove that the possibility of obtaining authorization from Intuitive was illusory. It failed to identify a single third party that sought authorization and was denied. It admitted that Intuitive has in fact approved third parties and that it believed that Intuitive would have approved SIS too. It conceded that SIS never sought approval from Intuitive, nor even made any contact with Intuitive to determine whether approval might be possible. And it acknowledged that Intuitive specifically invited Rebotix to submit proof, in April 2019, that its processes were safe—an invitation that both Rebotix and SIS failed to take up. Some years later, Intuitive *did* approve Restore and Rebotix to modify EndoWrists under its policy. In light of this unequivocal evidence from SIS's own case, there is no basis for finding that authorization was illusory, and therefore Intuitive is entitled to judgment as a matter of law on all of SIS's antitrust claims.

Additionally, although SIS seeks damages up to 2026, its own CEO admitted that Intuitive did nothing after November 2022 to harm SIS's business, and it provided no evidence concerning SIS's business, market conditions, or anything else for the this period. Accordingly, SIS failed to establish either causation of injury or a non-speculative method for awarding damages after 2022. Thus, assuming that the Court does not grant Intuitive judgment as a matter of law in full on SIS's claims, the Court should at a minimum enter judgment as a matter of law to the extent that SIS seeks damages after November 2022.

## LEGAL STANDARD

Rule 50(a)(1) provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Judgment as a matter of law "is proper, even in an antitrust case, when there is no substantial evidence to support the claim." *Cal. Computer Prods., Inc.* v. *Int'l Bus. Machines Corp.*, 613 F.2d 727, 734 (9th Cir. 1979) (internal quotation marks omitted). That standard requires the nonmoving

party to "'come forward with more than a scintilla of evidence,'" and "do more than rely on conclusory, self-serving, and speculative testimony." *United Nat'l Maint., Inc.* v. *San Diego Convention Ctr. Corp., Inc.*, 2012 WL 12845620, at *2 (S.D. Cal. Sept. 5, 2012) (quoting *Tripati* v. *McKay*, 211 Fed. Appx. 552, 553 (9th Cir. 2006)), *aff'd sub nom. United Nat'l Maint., Inc.* v. *San Diego Convention Ctr., Inc.*, 766 F.3d 1002 (9th Cir. 2014).

## ARGUMENT

### I. SIS FAILED TO ESTABLISH THE FORCING ELEMENT OF A TYING CLAIM BECAUSE IT FAILED TO ESTABLISH THAT THE THIRD-PARTY AUTHORIZATION CLAUSES IN INTUITIVE'S CONTRACTS ARE ILLUSORY

#### A. Where a Contract Requires Authorization for Third-Party Service, There Is No Tie Unless the Possibility of Obtaining Such Authorization is Illusory

SIS has failed to meet its burden of establishing that Intuitive forced hospitals that wished to purchase da Vinci robots to purchase EndoWrist repair or replacement from Intuitive as well. Under the applicable case law, where a supplier's "contractual language . . . at least provides for the possibility of purchasing" a secondary product from third-party sources, courts are "reluctant to find a tying arrangement without some evidence that [the defendant] applied the contract language so restrictively as to constitute a de facto tying clause." *Top Rank, Inc.* v. *Haymon,* 2015 WL 9948936, at *10 (C.D. Cal. 2015) (citing *Photovest Corp.* v. *Fotomat Corp.*, 606 F.2d 704, 722 (7th Cir. 1979)). A clause calling for a third-party to be "authorized" by the defendant in order to supply services does not amount to a tie, unless the possibility of "authorization" is "illusory" or a "charade" because the defendant will not actually authorize third parties in good faith. *Top Rank,* 2015 WL 9948936, at *10 (third-party approval clauses do not amount to ties unless they are "manipulated" by defendant and amount to "a charade") (citations omitted); *Mozart Co.* v. *Mercedes-Benz of N. Am., Inc.*, 593 F. Supp. 1506, 1517 (N.D. Cal. 1984) (citing *United States* v. *Mercedes-Benz of N. Am., Inc.*, 517 F. Supp. 1369, 1383–84 (N.D. Cal. 1981)) (there is no forcing or coercion unless the option for third parties to become authorized is "illusory"); *see also Ford Motor* v. *GMB Universal Joints*, 1988 WL 82826, at *3 (9th Cir. 1988) ("[a]n approval mechanism must not be illusory") (unpublished disposition) (citing *Mozart*, 593 F. Supp. at 1517).

1    Case law establishes the circumstances in which a requirement that third parties be
2 authorized can, and cannot, qualify as a potential antitrust violation. Where the defendant refuses
3 to authorize any third party even though it *admits* that there are third parties that meet its quality
4 standards, an authorization clause may be shown to be illusory. *Betaseed, Inc.* v. *U and I Inc.*, 681
5 F.2d 1203, 1223–24 (9th Cir. 1982). On the other hand, where the defendant "never refused a
6 request to approve a supplier," a third-party authorization clause is not illusory and there is no tie.
7 *Id.* (citing *Ky. Fried Chicken* v. *Diversified Packaging*, 549 F.2d 368 (5th Cir. 1977)); *see also*
8 *Pullos* v. *All. Laundry Sys.*, 2009 WL 10708625, at *13 (N.D. Nev. 2009) (observing that Ninth
9 Circuit precedent "recognize[s] the important distinction between a seller coercing buyers to
10 purchase supplies from the seller itself as opposed to from approved sources" and rejecting tying
11 claim where customers were permitted to purchase from third parties that met the defendant's
12 specifications). Where the contract contains a third-party authorization clause, the plaintiff bears
13 the burden of proving that the defendant in fact applied the clause so restrictively as to constitute
14 a de facto tie. *See Photovest*, 606 F.3d at 722; *Pullos*, 2009 WL 10708625, at *13.

### B.  The Evidence Presented in SIS's Case Demonstrates that SIS Cannot Establish that the Possibility of Contractual Authorization Was Illusory

17    The evidence presented at trial establishes that Intuitive's customer contracts require that
18 EndoWrist repair and replacement be done by either Intuitive or a third party authorized by
19 Intuitive.[1] SIS's own contracts similarly exclude warranty coverage when an EndoWrist has been
20 altered, changed, or modified by someone not authorized by SIS. TX1566-R at 32; Tr. at 544:17–
21 545:18, 630:11–14, 632:3–10.

22    Under the case law cited above, it was SIS's burden to show that the possibility of third
23 parties obtaining contractual authorization was illusory because Intuitive refused to grant
24 authorization to requesting parties in good faith. SIS failed entirely to meet this burden.

25    *First*, SIS did not show a **single instance** of a third party requesting contractual
26 authorization and Intuitive refusing. *Betaseed*, 681 F.2d at 1224 ("Of crucial importance was the

---

[1] Dr. Lamb identified Section 8 of Intuitive's Sales, License, and Service Agreement (TX0493) as the anticompetitive provision SIS is challenging. Trial Transcript (hereafter "Tr.") at 1301:1–12. Section 8 prohibits "repair, refurbishment, or reconditioning ***not approved by Intuitive***."

- 4 -
Defendant's Motion for Judgment as a Matter of Law
3:21-cv-03496-AMO

fact that KFC had never refused a request to approve a supplier." (internal quotation marks omitted)).

*Second*, the evidence unequivocally shows that Intuitive **has** approved third parties. Mr. Posdal testified that Restore and Rebotix have been approved under Intuitive's contractual policy. Tr. at 523:3–10, 550:1–5, 553:2–12. He further admitted that, based on the fact that Rebotix and Restore were authorized by Intuitive, he could "make [the] assumption" that SIS would be authorized too. Tr. at 624:12–22. There was no evidence that Intuitive made "unreasonable imposition of conditions on the request" for approval or made any "unjustified withholding of final approval." *Smith* v. *Denny's Rests., Inc.*, 62 F.R.D. 459, 461 (N.D. Cal. 1974).

*Third*, SIS itself was aware that Intuitive's contracts did not flatly prohibit all third-party servicing, but only servicing by unauthorized third parties. Tr. at 550:10–551:9. Despite being aware of the possibility of authorization, Mr. Posdal admitted that SIS never even tried to obtain a copy of Intuitive's contracts to determine their actual provisions. Tr. at 549:5–13. Mr. Posdal did, however, testify that he saw copies of Intuitive letters to customers referencing the relevant contract provisions, including the prohibition on "repair, refurbishment, or reconditioning" of an instrument (including an EndoWrist) that is "not approved by Intuitive." TX0942-R at 2; TX0943-R at 2; Tr. at 413:19–417:1 (Mr. Posdal testifying to having seen TX0942-R and TX0943-R). Mr. Posdal further admitted that SIS never even contacted Intuitive to inquire about authorization. Tr. at 488:2–5, 618:1–3; *see also* Tr. at 1344:8–12 (Dr. Lamb confirming that "SIS never asked Intuitive to become authorized or approved to offer services relating to EndoWrist instruments"). SIS's failure to take any action to seek authorization is fatal to its tying claims. *See Photovest*, 606 F.2d at 722 (rejecting tying claim because "it appears that Photovest never submitted a processor to Fotomat for approval during this time period"); *see also* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 1716e2 (2024) ("When approvals are practicable in principle, the defendant still cannot be faulted for the mere absence of numerous (or even any) such approvals. Customers or rivals may not have sought approvals, or no rival product may be good enough.").

*Finally*, the evidence established that Intuitive communicated to SIS's business partner, Rebotix Repair, that "if you allege that you or your service centers . . . possess clinical proof that your service process returns the modified instruments to a 'production equivalent qualification' and/or that additional use does not affect the safety or performance of the instruments," then such proof should be submitted to Intuitive for consideration. TX1441-R at 6. SIS presented no evidence that either Rebotix or SIS ever submitted such evidence to Intuitive. *See* Tr. at 1206:8–1207:15, 1231:16–1232:11 (Dr. Parnell admitting that SIS did not present any evidence that Rebotix ever responded to Intuitive's letter or otherwise approached Intuitive about authorization); Tr. at 1364:22–1365:4 (Dr. Lamb admitting same as to SIS). Far from showing that Intuitive flatly rejected any third-party authorization, Intuitive's letter to Rebotix establishes that Intuitive was willing to consider authorization upon a showing of clinical proof of safety, but Rebotix and SIS never followed up.

Attempting to diffuse SIS's admitted failure to take any step to secure contractual authorization, Mr. Posdal asserted that SIS never sought Intuitive's authorization because Intuitive took the position that "its instruments were dangerous after 10 uses[,] [s]o it made no sense there would be authorization for such." Tr at. 459:2–4. That argument is a total red herring, because SIS was not proposing to just re-set use counters without (allegedly) repairing and evaluating the instruments. Mr. Posdal testified that "Rebotix's flow chart for how to test, evaluate, and reset the counter for this service process" involved a comprehensive inspection, servicing, and repair of the EndoWrist: "[T]he process entails receiving the piece of equipment, inspecting it, making sure that the use count function is still available. . . . A general function, make sure that the wires are intact, that they're working properly. Electrosurgical testing to make sure that the insulation that we talked about yesterday wasn't compromised. Then installing the new chip, the Interceptor as they call it. Making sure the cables are adjusted, the tools are aligned, special fixtures and jigs to make sure those were aligned properly, that they didn't suffer any damage or malfunction during the first nine uses. And then an outgoing evaluation to ensure that all those specifications were met." Tr at 469:24–470:22. If testing revealed any defects in the equipment such as a hole that might allow electricity to leak, "that process was abandoned and the instrument was returned." Tr at 471:6–11.

SIS presented no evidence that Intuitive ever took the position that a comprehensive evaluation, servicing, and repair of the EndoWrist of this kind before resetting the use counter—which Mr. Posdal described as "thorough and thoughtful and complete," Tr. at 473:16–20—would be ineligible for contractual approval, assuming the third party had clinical proof to back up its claims. Further, as noted above, the evidence shows that Intuitive communicated to Rebotix that it **would** be willing to consider proof of safety, but Rebotix never followed up. The evidence also shows that Intuitive **in fact** approved third parties under its contract. *See* Tr. at 523:3–10, 550:1–5, 553:2–12.[2]

Dr. Lamb, SIS's liability expert, had a different excuse for why Rebotix and SIS never took up Intuitive's invitation to submit evidence that their processes were safe. Dr. Lamb testified that he would not have expected third parties to submit such information because "Intuitive isn't a regulatory body. It's not -- it's not Intuitive's decision one way or the other." Tr. at 1460:4–11. Dr. Lamb's feeble excuse is unavailing both as a matter of fact and of law. As a matter of fact, the record established that it is common practice for medical device manufacturers, including SIS itself, to include third-party authorization clauses in their contracts. *See* TX1566-R at 32; Tr. at 545:3–18, 632:3–10. SIS admitted that it was aware that Intuitive had such clauses in its contracts. Tr. at 550:10–551:9. Further, the case law cited above is clear that third-party authorization clauses are prima facie lawful and that the question is whether **approval** under those clauses is wrongly withheld. Neither Dr. Lamb nor any other SIS witness established that Intuitive wrongly withheld approval, abused it right to approve, or otherwise did anything inconsistent with good faith contractual approval.

SIS completely failed to establish that contractual authorization was illusory, and thus completely failed to establish an unlawful tying arrangement.[3]

---

[2] That evidence refutes Mr. Posdal's unsupported "opinion" that original equipment manufacturers ("OEMs") "never" authorize third parties. *See* Tr at. 458:13–15. In any event, his testimony is so "conclusory, self-serving, and speculative" as applied to Intuitive's third-party authorization clause that it could not support a jury verdict in SIS's favor. *United Nat'l Maint., Inc.*, 2012 WL 12845620, at *2.

[3] SIS has incorrectly asserted that Intuitive's authorities on contractual authorization are inapplicable because they involve franchises. Two in-Circuit decisions, *Top Rank*, 2015 WL 9948936, at *10, and *Pullos*, 2009 WL 10708625, at *13, dismissed claims based on authorized

### C. SIS's Failure to Prove that the Possibility of Authorization Was Illusory Requires Judgment in Intuitive's Favor On All of SIS's Claims

SIS asserts four antitrust counts. Counts I and II are for tying and exclusive dealing under Section 1 of the Sherman Act, and Counts III and IV are for monopolization and attempted monopolization through tying and exclusive dealing under Section 2 of the Sherman Act. Compl., Dkt. 1, ¶¶ 111–121. SIS has litigated all four counts under the same theory and the same proof, *see* Tr. at 1299:20–1300:4 (Dr. Lamb describing Intuitive's hospital contracts as "the very crux of the conduct"), and thus all four counts rise or fall together. *See Eastman Kodak Co.* v. *Image Tech. Servs., Inc.*, 504 U.S. 451, 482–83 (1992) (analyzing Section 2 tying claims under same evidence that supported Section 1 tying claims); *ZF Meritor, LLC* v. *Eaton Corp.*, 696 F.3d 254, 281 (3d Cir. 2012) (applying same framework to Section 1 and 2 exclusive dealing claims); *Dream Big Media Inc.* v. *Alphabet Inc.*, 2024 WL 3416509, at *5 (N.D. Cal. July 15, 2024) (noting that where a tying and exclusive dealing claim rest on the same factual allegations, the failure of the tying claim dooms the exclusive dealing claim as well). Accordingly, SIS's total failure of proof that Intuitive's contractual third-party authorization clauses were illusory is fatal to all of its antitrust claims.

Since the Court previously granted summary judgment in Intuitive's favor on SIS's fifth count arising under the Lanham Act, Dkt. 204 at 19, judgment in Intuitive's favor on all of the antitrust counts would dispose of all of SIS's claims against Intuitive.

---

third-party clauses and did not involve a franchise. The principle that an approved source clause does not constitute a tie unless the possibility of approval is illusory is general and not limited to franchising cases. Further, in *Betaseed* the Ninth Circuit remarked that franchisors are "entitled to insist upon reasonable standards" for third parties because a franchisor's name and trademark appears on the goods sold by franchisees. 681 F.2d at 1224–25. Here, SIS proposed to break into EndoWrists, service them, and then put them back into circulation with Intuitive's name still on them and to be used as a component of Intuitive's da Vinci robots. Intuitive has an obvious interest in ensuring "reasonable standards" for products that continue to bear its name.

## II. SIS FAILED TO ESTABLISH ANY GROUND FOR AWARDING DAMAGES AFTER NOVEMBER 2022

Assuming that the Court does not enter judgment as a matter of law in full on all of SIS's antitrust claims, the Court at a minimum should enter judgment as a matter of law on those claims to the extent that they seek damages after November 2022.

SIS seeks damages up through 2026, on the theory that after SIS spent about six months investigating starting an EndoWrist repair business in 2019, it was permanently excluded from the market and can claim damages for next seven years. Tr. at 1514:20–1515:7. Of the $140.6 million in damages it claims, $109 million are for the period after 2022. Tr. at 1526:9–17. SIS's damages claim squares with neither the facts nor the law. SIS neither proved Intuitive caused SIS any damages after November of 2022, nor provided any basis for quantifying damages after that date. *See Allied Orthopedic Appliances, Inc.* v. *Tyco Healthcare Group L.P.*, 247 F.R.D. 156, 165 (C.D. Cal. 2007).

*First*, SIS provided no evidence that Intuitive did anything to cause SIS injury after 2022, and indeed conceded the opposite. Mr. Posdal admitted that Intuitive did nothing that damaged his business after November 2022: "Q. I have not heard you say that Intuitive did anything after November of '22 to harm your business. A. Correct." Tr. at 615:19–21. Similarly, Dr. Lamb admitted that he had done no analysis of the market since December 2022 and offered no opinion that Intuitive engaged in anticompetitive conduct after December 2022. Tr. at 1457:10–12, 1457:20–23.

While a plaintiff may continue to recover damages for a period after the defendant's anticompetitive conduct ceases if it proves that defendant's conduct "harmed a market's competitive structure," *Optronic Tech., Inc.* v. *Ningbo Sunny Elec. Co.*, 20 F.4th 466, 488 (9th Cir. 2021), SIS offered no proof that Intuitive harmed the market's structure. Dr. Lamb admitted that he did not analyze the market's structure after 2022. Tr. at 1457:13–19. Further, the evidence showed that two other companies successfully entered the EndoWrist refurbishing business after 2022 with Intuitive's authorization. Tr. at 523:3–10, 550:1–5, 553:9–12. As noted previously, Mr. Posdal testified that he assumed SIS also could have received Intuitive's authorization on the

same terms as Restore and Rebotix. Tr. at 624:12–22. Mr. Posdal also admitted that SIS could have invested in the EndoWrist repair and replacement business after 2022, but chose not to do so. Tr. at 585:12–586:4, 617:20–23. There was no evidence that Intuitive did anything to exclude SIS from the market after 2022, no evidence that anything that Intuitive did prior to 2022 kept SIS out of the market after 2022, no evidence that the market's structure was distorted so as to prevent SIS from entering after 2022, and affirmative evidence that other companies successfully entered after 2022. In short, there is no basis for holding that Intuitive did anything to harm SIS after 2022, and therefore no basis for liability after 2022.

*Second*, SIS presented no evidence whatsoever about the state of its business or the market more generally after 2022. The jury therefore has no basis to determine whether SIS's claims of post-2022 damages had any validity. An antitrust plaintiff seeking damages must present "sufficient evidence to permit a 'just and reasonable estimate of the damages,'" *Los Angeles Mem. Coliseum Comm'n* v. *Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986), but as to the post-2022 period, SIS provided no evidence whatsoever. In other words, SIS improperly asks the jury to award post-2022 damages based on mere "speculation or guesswork." *Murphy Tugboat Co.* v. *Crowley*, 658 F.2d 1256, 1263 (9th Cir. 1981) (internal quotation marks omitted). Accordingly, even if SIS had proven a continuing antitrust violation after 2022 (which it did not), it could not recover damages in the face of a complete lack of evidence after that date.

## CONCLUSION

For the foregoing reasons, Intuitive respectfully requests that the Court enter judgment as a matter of law in favor of Intuitive on all of SIS's claims, or, at a minimum, grant judgment in favor of Intuitive on all of SIS's claims for damages after November of 2022.

| | |
|---|---|
| Dated:  January 21, 2025 | By: */s/ Kenneth A. Gallo*<br>        Kenneth A. Gallo |

Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

William B. Michael (*pro hac vice*)
Crystal L. Parker (*pro hac vice*)
Daniel A. Crane (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:  (628) 432-5100
Facsimile:  (628) 232-3101
Email: jhill@paulweiss.com

Sonya D. Winner (SBN 200348)
**COVINGTON & BURLINGTON LLP**
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091
Email: swinner@cov.com

Kathryn E. Cahoy (SBN 298777)
**COVINGTON & BURLINGTON LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone:  (650) 632-4700
Facsimile:  (650) 632-4800
Email: kcahoy@cov.com

Andrew Lazerow (*pro hac vice*)
**COVINGTON & BURLINGTON LLP**
One City Center, 850 Tenth Street NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: alazerow@cov.com

Allen Ruby (SBN 47109)
**ALLEN RUBY, ATTORNEY AT LAW**
15559 Union Ave. #138
Los Gatos, California 95032
Telephone: (408) 477-9690
Email: allen@allenruby.com

Attorneys for *Defendant Intuitive Surgical, Inc.*

**CERTIFICATE OF SERVICE**

On January 21, 2025, I caused a copy of Defendant's Notice of Motion and Motion For Judgment As A Matter Of Law to be electronically filed via the Court's Electronic Case Filing System, which pursuant to the Court's order of September 29, 2008, constitutes service in this action on counsel of record for Surgical Instrument Service Company, Inc.

Dated: January 21, 2025         By:  */s/ Kenneth A. Gallo*
                                     Kenneth A. Gallo