Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

William B. Michael (*pro hac vice*)
Crystal L. Parker (*pro hac vice*)
Daniel A. Crane (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:  (628) 432-5100
Facsimile:  (628) 232-3101
Email: jhill@paulweiss.com

*Attorneys for Defendant Intuitive Surgical, Inc.*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SURGICAL INSTRUMENT SERVICE COMPANY, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> INTUITIVE SURGICAL, INC., <br><br> *Defendant*. | Case No. 3:21-cv-03496-AMO <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFF SIS'S EVIDENTIARY PROFFER REGARDING INTUITIVE'S MOTION IN LIMINE #1** <br><br><br> The Honorable Araceli Martínez-Olguín |

Pursuant to the Court's orders, Dkt. 316, 327, Defendant Intuitive Surgical, Inc. ("Intuitive") respectfully submits this response to Plaintiff Surgical Instrument Service Company, Inc. ("SIS")'s Evidentiary Proffer Regarding Intuitive's Motion in Limine # 1, Dkt. 332.

## INTRODUCTION

SIS will not present at trial any testimony from any hospital to which SIS sold or attempted to sell modified EndoWrist instruments. Nor will it present any testimony from any hospital that will say it *wanted* to buy modified EndoWrists from SIS and was prevented from doing so by Intuitive's contracts or conduct. In its Motion in Limine No. 1, Intuitive moved to preclude SIS from papering over that fundamental evidentiary failure by having SIS's fact witnesses, Greg Posdal (SIS's president) and Keith Johnson (its chief salesperson), relay to the jury what they were supposedly told in out-of-court statements by hospital employees. Dkt. 289-1. Intuitive also moved to exclude hearsay statements from hospital deponents to whom SIS did *not* market its EndoWrist services (and who testified in other cases about different third parties, not SIS), as well as documents containing out-of-court hospital statements. Such statements are inadmissible hearsay that cannot be used to prove whether SIS lost sales—*i.e.*, whether any hospital did (or did not do) business with SIS or whether any hospital *would* have done business with SIS but-for Intuitive's alleged anticompetitive conduct. *Herman Schwabe, Inc.* v. *United Shoe Mach. Corp.*, 297 F.2d 906, 914 (2d Cir. 1962); *Consol. Credit Agency* v. *Equifax, Inc.*, 2005 WL 6218038, at *2 (C.D. Cal. Jan. 26, 2005).

At the November 25, 2024 Pretrial Conference, the Court indicated that out-of-court hospital statements could potentially be admissible as proof of the declarant's "state of mind" under Rule 803(3), "so long as [SIS] can lay a proper foundation that supports the state of mind exception to the hearsay rule." Brachman Decl., Ex. 1 at 46:11–12.[1] The Court then directed SIS to submit a pretrial evidentiary proffer setting forth the necessary foundation, Dkt. 316, and SIS has now attempted to do so. Dkt. 332. But SIS's filing makes clear that SIS cannot lay the

---

[1] All references to "Brachman Decl., Ex. __" refer to exhibits to the Declaration of Paul D. Brachman In Support of Defendant's Response to Plaintiff SIS's Evidentiary Proffer Regarding Intuitive's Motion In Limine #1 ("Brachman Decl.").

- 1 -
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

1  necessary foundation.  Rather than proffer admissible evidence, SIS has just submitted more

2  hearsay from its salesperson, Keith Johnson—confirming that inadmissible hearsay is all that SIS

3  has to offer.  SIS's filing fails to satisfy *any* of the specific foundational requirements for the Rule

4  803(3) exception to apply in this situation, namely: (1) independent, admissible proof of lost sales,

5  (2) proof that the statement was made by a declarant with control over the purchasing process, and

6  (3) proof that the statement was made contemporaneously with the motive to be proved and

7  without opportunity for fabrication or embellishment.  *Discover Fin. Servs.* v. *Visa U.S.A. Inc.*,

8  2008 WL 4560707, at *1 (S.D.N.Y. Oct. 9, 2008); *AngioDynamics, Inc.* v. *C.R. Bard, Inc.*, 2022

9  WL 4333555, at *3–5 (N.D.N.Y. Sept. 19, 2022); *Equifax, Inc.*, 2005 WL 6218038, at *2.

10      *First*, SIS's proffer fails to provide admissible evidence of lost sales.  The state of mind of

11  hospital declarants—specifically, their stated reasons for not doing business with SIS—could be

12  admissible under Rule 803(3) only if "there is otherwise admissible proof that business was lost."

13  *E.g.*, *Visa U.S.A. Inc.*, 2008 WL 4560707, at *1.  Consistent with that legal requirement, the Court

14  directed SIS to "make a pretrial proffer of lost sales."  Dkt. 316.  But SIS's supposed proof—the

15  testimony of Keith Johnson attached to SIS's proffer, Dkt. 332-2 ("Johnson Decl.")—contains no

16  *admissible* evidence that sales were lost, only hearsay heaped on more hearsay.  This failure is

17  especially glaring with respect to hospitals that *never* bought modified EndoWrists from SIS, but

18  that Johnson claims were prospective customers—which are most of the hospitals he discusses.

19  SIS proffers no admissible, non-hearsay evidence that any of these hospitals actually would have

20  bought from SIS and thus provides no basis to conclude that they represent "lost" sales or

21  opportunities.  The law is clear that SIS cannot use out-of-court statements of customer motive "as

22  evidence of the facts recited as furnishing the motives."  *Schwabe*, 297 F.2d at 914; *Equifax*, 2005

23  WL 6218038, at *2.  That means SIS cannot use the same hearsay statement that it claims shows

24  the *reason* that SIS lost business to try to establish the *fact* that SIS lost the business.  Yet that is

25  exactly what Johnson purports to do throughout his proffered testimony.

26      *Second*, SIS's proffer does not establish, as it must, that the out-of-court statements SIS

27  seeks to admit under Rule 803(3) were made by a declarant who had sufficient control over the

28

2
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

customer's purchasing decisions. *Equifax, Inc.*, 2005 WL 6218038, at *2; *AngioDynamics*, 2022 WL 4333555, at *3–5. Johnson makes only the vague, formulaic, and self-serving assertion that he spoke with individuals who he characterizes as "significantly involved" with purchasing decisions. *E.g.*, Johnson Decl. ¶ 20 at 9:11–16. SIS provides no admissible proof that these out-of-court declarants controlled the hospital's decision whether to purchase from SIS, and Johnson's testimony frequently proves just the opposite.

*Third*, SIS does not even attempt to proffer admissible evidence that any of the statements by hospital declarants that it seeks to present to the jury were made contemporaneously with the mental state to be proven and are trustworthy.

SIS acknowledges, as it must, that the admissibility of out-of-court statements "is ultimately a question of the reliability of the evidence offered." Dkt. 331-1 at 3:23. SIS's proffer flunks that basic requirement for the reasons identified above and for additional reasons as well. Many of the supposed statements of purported hospital motive contained in Johnson's proffered testimony are not contemporaneous written statements by hospital declarants, as noted, but rather consist of Johnson's own recollection and characterization of what those declarants purportedly said to him. *E.g.*, Johnson Decl. ¶ 21 at 12:21–28. Johnson, one of SIS's two witnesses at trial and SIS's chief salesperson, plainly has an interest in attributing SIS's failures to Intuitive. His recollection and characterization of what hospital declarants supposedly told him, filtered through his own viewpoint, are inherently unreliable and should be excluded even if they could otherwise meet the criteria referenced above (which they cannot). *AngioDynamics*, 2022 WL 4333555, at *4 (excluding as unreliable statements of customer motive filtered through plaintiff's witness).

Further, to the extent that Johnson's testimony does refer to specific statements of hospital declarants, it is deficient because Johnson repeatedly relies on inadmissible evidence, including evidence that this Court has already held that SIS *cannot* use at trial. For example, SIS's proffer repeatedly quotes from and relies upon emails contained in documents that SIS tried to add too late to the Trial Exhibit List and that the Court struck and excluded from trial during the pretrial conference. *See* Brachman Decl., Ex. 1 at 82:24–83:1. The stricken documents are not cited by

3
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

Bates number or by Trial Exhibit number, but Johnson quotes their substance in circumvention of the Court's order.  In addition, Johnson refers in his declaration to supposed discussions he had with hospital declarants who SIS failed to disclose when asked in written discovery to "[i]dentify all persons and/or entities You have contacted to sell or promote Your purported da Vinci and EndoWrist repair and refurbishment offering."  SIS cannot build a foundation for the admission of Rule 803(3) evidence using material that is not admissible at trial.

Because SIS has failed to proffer a sufficient evidentiary foundation for the admission of out-of-court hospital statements under Rule 803(3), the Court should grant Intuitive's Motion in Limine No. 1.

## I.    SIS'S PROFFER DOES NOT ESTABLISH LOST SALES OR LOST SALES OPPORTUNITIES THROUGH ADMISSIBLE EVIDENCE

"[T]estimony concerning the motivation of customers for ceasing to deal with a business is admissible under the 'state of mind' exception to the hearsay rule, Rule 803(3) of the Federal Rules of Evidence, ***provided that there is otherwise admissible proof that business was lost***." *Visa U.S.A. Inc.*, 2008 WL 4560707, at *1 (emphasis added); *AngioDynamics, Inc.*, 2022 WL 4333555, at *4 ("[C]ertain customer statements are admissible to prove the customer's then-existing motivation for a purchasing decision ***only if there is independent evidence of lost sales***." (emphasis added)); *Celebrity Cruises Inc.* v. *Essef Corp.*, 478 F. Supp. 2d 440, 447 (S.D.N.Y. 2007) (same).  Consistent with that legal requirement, the Court specifically instructed SIS to make a "proffer of lost sales from hospitals as part of laying the foundation for the challenged statements."  Dkt. 316.  SIS has failed to do so.

In his declaration, Johnson states that he "contacted" 25 healthcare providers to "introduce, educate about, and promote SIS's Si EndoWrist repair services."  Johnson Decl. ¶ 18 at 6:23–25; *id.* ¶ 19 at 7:27–8:4.  But SIS's proffer, and Johnson's declaration in particular, fail to establish through independent, admissible evidence that SIS lost sales or sales opportunities with any of those entities.

4

Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

**A.**  **SIS Has Failed to Proffer Admissible Evidence of Lost Sales to Providence, University of Illinois, Ardent Health, University of Michigan, Duke University, Salinas Valley, Pomona Valley, UHS, SSM, Redland, Northside Health, Northeast Georgia Health, Boston Children's, Northwestern Memorial, and Yankee Alliance.**

As to 15 healthcare providers—Providence, University of Illinois, Ardent Health, University of Michigan, Duke University, Salinas Valley, Pomona Valley, UHS, SSM, Redland, Northside Health, Northeast Georgia Health, Boston Children's, Northwestern Memorial, and Yankee Alliance—Johnson testifies that he "made presentations about the SIS EndoWrist repair and reset program" and that hospital representatives "reacted positively," but that "SIS was not able to do any EndoWrist repair business with any of these hospitals or hospital systems." *Id.* ¶ 20 at 8:4–15. In other words, as to these entities, SIS never made a sale of modified EndoWrists and so SIS never lost any sales to these entities. SIS nevertheless appears to suggest that it lost the *opportunity* to sell to these 15 entities. Its proffer does not prove that fact through admissible evidence.

Johnson testifies that potential customers "that did not proceed with the SIS Endowrist repair and reset program [] said to [him] in words or substance, 'Keith, this sounds great, let us do our due diligence and we'll get back to you,'" but "thereafter, every single one, either via email or a phone call to me said in words or substance: 'Keith, Intuitive does not allow us, they will not allow us to do your program, our contracts won't allow us to do it. We're being told that this will void our warranty, we're being told this will void our service agreement. [A]s much as we want to do it, we can't take the risk of being penalized or the pressure we would get from Intuitive Surgical." *Id.* ¶ 21 at 12:21–13:3. Remarkably, Johnson does not purport to identify any individual statements of customer motive from any of these 15 would-be customers, nor does he identify any of the supposed declarants. The ***only*** supposed evidence of "motive" for these entities contained in Johnson's declaration is his blanket assertion, quoted above, that every single person he pitched to, at *every* hospital that "did not proceed with the SIS Endowrist repair and reset program," told him they would have purchased modified EndoWrists from SIS if not for Intuitive. In addition to being insufficient to establish the state of mind of any particular hospital (much less a group of

5
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

15 or more hospitals), that self-serving recollection is actually contradicted later in Johnson's own declaration, where he recounts that he pitched to Honor Health, but then "did not hear anything further from" Honor "about the repair program." *Id.* ¶ 25 at 16:16–28.

Johnson's composite account of what some unnumbered and unnamed set of hospital declarants purportedly told him is not sufficient to establish the state of mind of any speaker. In *Equifax*, for example, the court could not determine whether customer hearsay was admissible "without knowing the precise statements plaintiff seeks to have admitted," and deferred ruling on admissibility because the plaintiff "failed to identify the exact statement it intend[ed] to present." 2005 WL 6218038 at *2. Here, there is no reason for the Court to defer ruling any further: SIS has had the chance, through its proffer, to identify the exact statements it seeks to have admitted as to these 15 entities, and has failed to do so. The Court should preclude SIS from offering hearsay statements of customer motive from Providence, University of Illinois, Ardent Health, University of Michigan, Duke University, Salinas Valley, Pomona Valley, UHS, SSM, Redland, Northside Health, Northeast Georgia Health, Boston Children's, Northwestern Memorial, and Yankee Alliance on that basis alone.

Further, Johnson's testimony is not admissible evidence of a lost sales *opportunity* with any of these entities, because SIS has no admissible evidence that any of these entities would have purchased SIS's modified EndoWrists. Potential customers decline to pursue sales pitches for many reasons, and the reasons a customer gives to a salesperson for declining to buy are not always sincere. *Alarm Fin. Enterprises, LP* v. *Alarm Prot. Tech., LLC*, 743 F. App'x 786, 788 (9th Cir. 2018); *see also Schwabe*, 297 F.2d at 914 n.10 (noting that courts retain "discretion" to reject statements of customer motive "in view of the risk of insincerity in a potential customer's statement"). That is why the law requires "*independent*, *non-hearsay* evidence to" prove the "*fact*" that a sale (or sales opportunity) has been lost. *AngioDynamics, Inc.*, 2022 WL 4333555, at * 4– 5 (emphasis added); *see also Visa U.S.A. Inc.*, 2008 WL 4560707, at *1. SIS cannot establish that it lost a genuine sales opportunity without some independently admissible evidence that these entities were actually interested in purchasing SIS's modified EndoWrists but declined to do so.

6
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

And SIS has proffered no such evidence. Rather, the **only** evidence SIS has submitted purporting to show those key facts is Johnson's testimony that representatives of these hospitals told him "in words or substance" that they "want to do it," but were "told" they could not and couldn't "take the risk of being penalized or the pressure we would get from Intuitive Surgical." Johnson Decl. ¶ 21 at 12:21–13:3. That testimony is hearsay that cannot be used to prove the fact of lost opportunity.[2]

The caselaw is crystal clear on this point: "Statements of a customer as to his reasons for not dealing with a supplier" may be admissible to show motive, when the requisite conditions are met, but such statements are never admissible as evidence of the underlying "facts recited as furnishing the motives." *Schwabe*, 297 F.2d at 914 (quotation marks omitted); *Equifax*, 2005 WL 6218038, at *2; *see also Buckeye Powder Co.* v. *E.I. Dupont de Nemours Powder Co.*, 248 U.S. 55, 65 (1918) (customer statements properly excluded when offered "not as evidence of the motives of the speakers but as evidence of the facts recited as furnishing the motives"); *Stelwagon Mfg. Co.* v. *Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1274–75 (3d Cir. 1995) (out-of-court customer statements inadmissible to prove "antitrust damages, in the form of lost sales"); *Amerisource Corp.* v. *RxUSA Int'l Inc.*, 2009 WL 235648, at *2 (E.D.N.Y. Jan. 30, 2009) (customer statements inadmissible to prove injury or damages). In *AngioDynamics*, for example, the plaintiff attempted to make a proffer of lost opportunities to convert customers to the plaintiff's product. 2022 WL 4333555, at *4. There, as here, the plaintiff's "proffer of lost sales . . . [wa]s often identical to the very hearsay statements of customer motivation" that the plaintiff sought to admit under Rule 803(3). *Id.* For instance, the plaintiff proffered out-of-court statements that a customer "was interested" in the plaintiff's product but "would not pursue a . . . trial" because of the defendant's conduct. *Id.* (quotation marks omitted). The court held that the plaintiff's proffer

---

[2] Johnson testifies that certain of these entities were members of the group purchasing organization, Vizient, and that SIS had a contract with Vizient. Johnson Decl. ¶¶ 19, 20 (Providence, University of Michigan, Duke University, SSM, Northside Health). Johnson does *not*, however, testify that membership in Vizient meant that these entities would purchase modified EndoWrists from SIS, nor could he: SIS's contract with Vizient did not obligate Vizient members to purchase any quantity of products or services from SIS. Brachman Decl., Ex. 2 (SIS107399) at -411.

7
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

was insufficient to show evidence of lost sales opportunities, because the plaintiff could not "rely on hearsay evidence to prove the fact of a lost opportunity." *Id.*  The same is true here.

Simply put, hearsay statements of a customer's *reasons* for not doing business with a supplier are not admissible to prove the *fact* of a lost business opportunity.  Yet that is exactly what SIS is attempting to do through Johnson's testimony.   The only evidence SIS has proffered as support for lost sales opportunities with Providence, University of Illinois, Ardent Health, University of Michigan, Duke University, Salinas Valley, Pomona Valley, UHS, SSM, Redland, Northside Health, Northeast Georgia Health, Boston Children's, Northwestern Memorial, and Yankee Alliance is the hearsay statement that those entities told Johnson that they "wanted to" purchase modified EndoWrists but "couldn't take the risk" because of Intuitive—the very same out-of-court statement of customer motive that SIS seeks to introduce under Rule 803(3).  Without *independently* admissible evidence of lost sales opportunities, no statement of customer motive from these entities is admissible.

> **B.  SIS Has Failed to Proffer Admissible Evidence of Lost Sales to Banner Health, Legacy Health, Marin Health, Honor Health, Methodist Hospital, Memorial Care, University Medical Center Irvine, Kaiser Permanente, Advocate Aurora, and Piedmont Healthcare.**

Johnson's declaration separately addresses SIS's efforts to sell modified EndoWrists to each of ten additional hospitals—Banner Health, Legacy Health, Marin Health, Honor Health, Methodist Hospital, Memorial Care, University Medical Center Irvine, Kaiser Permanente, Advocate Aurora, and Piedmont Healthcare.  Johnson Decl. ¶¶ 22–31.  SIS has not made a sufficient evidentiary proffer of lost sales to these entities, either.

Johnson does not testify that SIS ever sold any modified EndoWrists to Piedmont Healthcare, Irvine, Memorial Care, Methodist, or Honor Health.  As to each, he testifies only that he made a presentation and either never heard anything further, *id.* ¶ 25 at 16:22–28 (Honor Health), or was told by a hospital representative that the hospital wished to use SIS's modified EndoWrists but could not because of Intuitive, *id.* ¶ 26 at 17:9–20 (Methodist), ¶ 27 at 18:5–9 (Memorial Care), ¶ 28 at 19:2–6 (Irvine), ¶ 31 at 22:12–27 (Piedmont).  For the reasons discussed above, SIS has thus failed to provide an evidentiary proffer for lost sales as to those entities,

8
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

because SIS has produced no independently admissible evidence of any sales to these entities.  SIS

likewise has not proffered any admissible evidence of lost sales *opportunities* because the only

evidence even purporting to show that Piedmont Healthcare, Irvine, Memorial Care, Methodist, or

Honor Health *would have purchased* modified EndoWrists from SIS consists of the same hearsay

statements of customer motive that SIS seeks to admit under Rule 803(3).  As with the 15 entities

discussed above, SIS cannot use out-of-court statements of customer motive to prove the fact of a

lost sale or lost opportunity.  *See supra* Section I.A.

      SIS's proffer as to the remaining entities—Banner, Legacy, Marin, Advocate, and Kaiser—

fails for different, but related reasons.  Johnson testifies that SIS "did some EndoWrist resets for

evaluation by Banner," Johnson Decl. ¶ 22 at 14:13–14, but SIS's proffer includes no sales data

for Banner or any information indicating that Banner began and then stopped purchasing modified

EndoWrists other than the instruments provided for "evaluation."  And, as with each of the entities

discussed above, the only testimony SIS proffers to show that Banner would have purchased

modified EndoWrists are hearsay statements (an email and a phone conversation) in which Banner

purportedly told Johnson that it would not move forward because of Intuitive's contracts.  Again,

SIS cannot rely on out-of-court statements of Banner's purported state-of-mind to prove the

underlying fact that Banner elected not to purchase modified EndoWrists from SIS.  *See supra*

Section I.A.  Further, the email from Banner which Johnson purports to quote is not identified by

Trial Exhibit number or Bates number, and a search of SIS's production has identified no such

statement in any produced document.  SIS cannot make an evidentiary proffer that fails the basic

step of identifying the evidence in question, nor can it rely on documentary evidence not included

on the Trial Exhibit List.  *See AngioDynamics*, 2022 WL 4333555, at *6 ("AngioDynamics's

proffer relies on . . . ***a document which is not on any party's exhibit list***. AngioDynamics therefore

has not made a sufficient proffer of lost sales for this entity." (emphasis added)).

      As to Legacy, SIS relies on Johnson's testimony that he received an email on August 13,

2019, thanking SIS for "providing the EndoWrist repair and reset program" and stating that Legacy

had "'no complaints from either surgeons or staff.'"  Johnson Decl. ¶ 23 at 15:16.  The email in

9
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

Case 3:21-cv-03496-AMO   Document 433   Filed 01/24/25   Page 11 of 21

question is not identified by Trial Exhibit number or Bates number in Johnson's declaration, but Intuitive has determined that the document was previously disclosed by SIS on November 6, 2024, as Trial Exhibit 1075. *See* Brachman Decl., Ex. 3 (SIS092369) at -369; *see also* Brachman Decl., Ex. 4 at 13 (listing SIS092369 as TX1075). There are two independent reasons why SIS cannot rely on that document to prove that sales were made or lost. First, the email is itself an out-of-court statement being offered for the truth of the matter asserted—*i.e.*, that SIS had provided reset EndoWrists to Legacy—and therefore is inadmissible hearsay. Fed. R. Evid. 801, 802. Second, the Court has *stricken* Trial Exhibit 1075 and all of the other Trial Exhibits that SIS belatedly disclosed on November 6, 2024, after the Court's deadline. *See* Brachman Decl., Ex. 1 at 82:24–83:1. SIS cannot prove lost sales through hearsay statements in documents that have been excluded from the trial record. SIS alternatively points to two documents produced by Intuitive, an internal dashboard stating that Intuitive identified the use of "remanufactured instruments" at Legacy in July or August 2019, and documenting a "[l]ast remanufactured instrument use on [October] 10th, 2019," Van Hoven Decl. Ex. 2, Dkt. 332-3, and an email chain between Intuitive and Legacy in which Legacy state on September 3, 2019, that it was going to "cease and desist" using "reprocessed parts." Van Hoven Decl. Ex. 5, Dkt. 332-6. But neither document mentions SIS, and so neither can establish that SIS lost sales at Legacy to Intuitive.

As to Marin, Johnson testifies that he personally provided "repaired and reset EndoWrists to MarinHealth" on October 7, 2019, and that SIS thereafter "pick up [*sic*] three additional orders of MarinHealth EndoWrists to be repaired and reset." Johnson Decl. ¶ 24 at 16:4–7. Yet the only evidence SIS identifies of sales purportedly *lost to Intuitive* are a pair of out-of-court statements contained in emails which are not identified by Trial Exhibit number or Bates number in Johnson's declaration. Intuitive has, however, determined that the emails in question were disclosed by SIS on November 6, 2024, as Trial Exhibit 1085, and stricken by the Court during the pretrial conference. *See* Brachman Decl., Ex. 5 (SIS092241) at -241, -242; *see also* Brachman Decl., Ex. 4 at 14 (listing SIS092241 as TX1085); Brachman Decl., Ex. 1 at 82:24–83:1. As with Legacy,

10
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

SIS cannot make a proffer of lost sales for Marin by relying on the truth of out-of-court statements in documents that the Court has barred SIS from using at trial.

SIS's proffer as to Kaiser and Aurora Advocate follows a similar pattern, and suffers from similar deficiencies.  Johnson testifies that he "arranged for a set of repaired and reset EndoWrist instruments for Dr. Mikhail to conduct a trial" at Kaiser Fontana.  Johnson Decl. ¶ 29 at 19:16–17.  But the only evidence SIS includes in its proffer purporting to show that SIS lost any sales at Kaiser Fontana to Intuitive is Johnson's testimony that he was told in an out-of-court conversation "that Kaiser could not proceed because of contractual restrictions and Kaiser's relationship with Intuitive."  Johnson Decl. ¶ 29 at 20:12–20.  As to Aurora Advocate, Johnson testifies that SIS invoiced a total of seven repaired and reset EndoWrists, but was told in an out-of-court statement "that Aurora's legal department would not give the go ahead for using the SIS repair program because of the contract with Intuitive."  Johnson Decl. ¶ 30 at 22:1–2.  In both instances, SIS is attempting to use hearsay statements purporting to state the *reasons* why Kaiser and Aurora Advocate did not purchase modified EndoWrists from SIS to prove the *fact* that such sales were lost.  It is blackletter law that statements of customer motive are not admissible for that purpose.  *See supra* Section I.A.

In sum, out-of-court statements of customer motive by declarants from Banner Health, Legacy Health, Marin Health, Honor Health, Methodist Hospital, Memorial Care, University Medical Center Irvine, Kaiser Permanente, Advocate Aurora, and Piedmont Healthcare —whether relayed through SIS witnesses or in Trial Exhibits—should be excluded, because SIS has failed to proffer admissible evidence of lost sales opportunities or lost sales with those entities.

## II.  SIS'S PROFFER DOES NOT ESTABLISH THAT OUT-OF-COURT STATEMENTS WERE MADE CONTEMPERANEOUSLY BY DECLARANTS WITH CONTROL OVER PURCHASING DECISIONS

SIS concedes that statements of customer motive are admissible under Rule 803(3) only if "made contemporaneously with the mental state to be proven" and if "the declarant's state of mind is relevant to an issue in the case."  Dkt. 332 at 2:14–17 (quoting *Equifax, Inc.*, 2005 WL 6218038 at *2).  SIS's proffer fails as to all of the entities discussed in Johnson's declaration because SIS

11
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

has not laid a foundation to meet either of these requirements. These are each independent grounds on which SIS should be prohibited from offering the hearsay statements at issue.

SIS has presented no evidence that any of the supposed statements of hospital motive were made contemporaneously with the mental state to be proven. *Equifax, Inc.*, 2005 WL 6218038, at *2. That is an independent reason why SIS has failed to lay the necessary foundation for the admissibility under Rule 803(3) of any of the statements of customer motive contained in Johnson's declaration. *AngioDynamics*, 2022 WL 4333555, at *5 (excluding out-of-court statement of customer that was "not contemporaneous with" the customer's decision to switch to the defendant's product).

SIS also has presented no evidence to establish relevance, because statements about a customer's alleged motive for doing business with (or not doing business with) a supplier are relevant only if the statement was "made by a declarant with a sufficient role in the" customer's purchasing decisions. *AngioDynamics, Inc.*, 2022 WL 4333555 at *5. SIS's proffer fails to establish through admissible evidence that the hospital representatives whose statements SIS seeks to admit at trial had sufficient control over purchasing decisions.

SIS's proffer is obviously deficient on this point with respect to Providence, University of Illinois, Ardent Health, University of Michigan, Duke University, Salinas Valley, Pomona Valley, UHS, SSM, Redland, Northside Health, Northeast Georgia Health, Boston Children's, Northwestern Memorial, and Yankee Alliance. As to those 15 entities, SIS's proffer does not even *attempt* to identify the out-of-court declarant who purportedly expressed his or her motives to SIS. Instead, as discussed above, Johnson testifies that some unnamed declarant from each of those entities made a generalized statement to the effect that "Intuitive does not allow us, they will not allow us to do your program, our contracts won't allow us to do it." Johnson Decl. ¶ 21 at 12:26–28. Without any evidence of who purportedly made such statements, SIS cannot establish that the declarant had sufficient control over the purchasing decision to make their state of mind relevant. Johnson's formulaic and repetitive testimony that he pitched to individuals who were "significantly involved" in purchasing decisions does not close the gap. Johnson Decl. ¶ 20 at

12
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

8:22, 9:7, 9:15, 9:22, 9:28, 10:8, 10:16, 10:22–23, 11:1, 11:9, 11:16, 11:22, 12:2, 12:10, 12:18. Johnson's testimony does not establish that those individuals had authority to decide whether to purchase modified EndoWrists from SIS. And, in any event, Johnson does not testify that any of the specific individuals to whom he pitched SIS's services are the same individuals who supposedly told him that Intuitive's contracts prevented the entities at issue from buying SIS's modified EndoWrists. As a result, SIS has not made a sufficient proffer to show that statements of customer motive from these entities were made by individuals with control over the purchasing process, and therefore cannot show that such statements are relevant. Any statements of customer motive from Providence, University of Illinois, Ardent Health, University of Michigan, Duke University, Salinas Valley, Pomona Valley, UHS, SSM, Redland, Northside Health, Northeast Georgia Health, Boston Children's, Northwestern Memorial, and Yankee Alliance should, therefore, be excluded.

Regarding Banner, Johnson testified that Perry Kirwan told him that Banner would not buy SIS's modified EndoWrists because of Intuitive's contracts. Johnson Decl. ¶ 22 at 14:16–19. But Johnson's own testimony shows that Kirwan was not authorized to make a decision on his own, and instead "communicated the information [Johnson] had given him about the EndoWrist repair program to the Banner Corporate Robotic Committee." *Id.* ¶ 22 at 13:15–19. Johnson concedes that members of the Robotic Committee, which it appears did not include Kirwan, were "significantly involved" with Banner's purchasing decisions. *Id.* ¶ 22 at 13:22–23 And other evidence in the trial record indicates that Kirwan was *not* in control of purchasing decisions. Johnson testifies in his declaration that Kirwan told him in January of 2020 that Banner's decision not to move forward with purchasing SIS's modified EndoWrists "was based on contractual restrictions in Banner's contract with Intuitive." *Id.* ¶ 22 at 14:17–19. Yet two months later, in March 2020, Kirwan forwarded to Johnson an internal Banner email discussing a letter received from Intuitive's counsel "reinforcing their position against reprocessing." Brachman Decl., Ex. 6 (SIS092152) at -153. In response Johnson asked Kirwan if he thought SIS's "robotic program [was] dead at Banner," to which Kirwan replied, "No I don't." *Id.* at -152. Tellingly, Kirwan went

13
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

1    on to explain that he was going to meet with a "Dr. Patel" to try to "breath [*sic*] some action back

2    into this," and conceded that SIS's modified EndoWrist service was not "going to move an inch

3    without" Dr. Patel.  *Id.*  This evidence suggests that Dr. Patel had authority over purchasing

4    decisions that Kirwan lacked, and so SIS has not laid a sufficient evidentiary foundation to show

5    that any of Kirwan's statements relating to Banner's motives are relevant.  At best, Johnson would

6    testify to what Kirwan supposedly told Johnson about what other people at Banner supposedly told

7    Kirwan.  These multiple layers of hearsay are not permitted, and any such statements should,

8    therefore, be excluded from trial.

9         Regarding Legacy, Johnson does not testify that any hospital representative ever told him

10   that Legacy could not do business with SIS because of Intuitive's contracts.  Instead, the only

11   alleged statement of customer motive that Johnson describes in his testimony is an email from

12   Tammy Garrett, Legacy's Robotic Coordinator, thanking SIS for providing modified EndoWrists

13   and stating that Legacy had no complaints.  Johnson Decl. ¶ 23.  SIS never disclosed Tammy

14   Garrett in written discovery as an individual who SIS contacted to sell or promote its modified

15   EndoWrists.  Brachman Decl., Ex. 7 (TX0757) at 4–5 (identifying only Raymond Mackay and

16   Jerry Hutchison).  And, in any event Johnson does *not* testify that Garrett had authority to speak

17   for Legacy on these issues.  Further, and as discussed above, the purported statement of customer

18   motive from Garrett is contained in an email that SIS belatedly disclosed as Trial Exhibit 1075,

19   and which the Court excluded from trial during the November 25, 2024, pretrial conference.  *See*

20   *supra* 9–10.  SIS should not be permitted to present to the jury a statement of customer motive that

21   the Court has already excluded from the trial record, made by a Legacy declarant who SIS failed

22   to disclose in written discovery.  Nor should SIS be permitted to circumvent the Court's ruling

23   excluding Trial Exhibit 1075 by having one of its witnesses testify to the content of Garrett's out-

24   of-court statement at trial.

25        As to Marin, Johnson testifies that he received emails from John Ayers stating that Marin

26   would not purchase modified EndoWrists from SIS because of Intuitive.  Those statements, too,

27   are contained in emails that the Court has excluded from trial.  *See supra* 10.  SIS should not be

28

14
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

allowed to present those emails to the jury or have its witnesses testify to the substance of those emails, in contravention of the Court's order. And, in any event, Johnson's declaration also shows that Ayers was not in control of Marin's purchasing decisions, and so his statements are not relevant under Rule 803(3). Specifically, Johnson testifies that Ayers "made the decision to proceed" initially with using modified EndoWrists, but later "put a hold on any repairs with SIS" after Intuitive communicated concerns to Marin's "c-suite." Johnson Decl. ¶ 24 at 16:1–10. Evidently, then, it was Marin's c-suite executives, not Ayers, who had the authority to decide whether to do business with SIS. And Ayers' email purporting to convey a directive from Marin's c-suite is inadmissible—even if the Court had not already excluded it from trial—because it contains hearsay within hearsay for which SIS has offered no exception. Accordingly, SIS should not be permitted to present to the jury statements of customer motive from Marin.

As to Kaiser, Johnson testifies that Nestor Jarquin and Donald Cabrera told him on a Zoom call in December 2019 that Kaiser "could not proceed because of contractual restrictions and Kaiser's relationship with Intuitive." Johnson Decl. ¶ 29 at 20:17–20. But Johnson does not testify that Jarquin or Cabrera was in charge of Kaiser's decision to purchase modified EndoWrists from SIS. He testifies only that Jarquin, Cabrera, and several others, "including Juanita R. Gomez, Brenda L Paulsen, Cara K. Kruger, [and] Maria A Nario," were "in charge of the repair services provided to them by SIS" as an "established and existing customer." *Id.* ¶ 29 at 19:8–12. SIS's proffer provides no evidence that Jarquin or Cabrera (or any of the other individuals identified) had control over the decision to purchase modified EndoWrists—a new product that SIS had not previously provided to Kaiser. Because SIS's proffer does not establish that Jarquin or Cabrera was the relevant decisionmaker for Kaiser, SIS should not be permitted to present to the jury out-of-court statements of customer motive purportedly made by those individuals.

Finally, as to Advocate Aurora, Johnson testifies that he was told by Brian Mirsberger in January 2020 "that Aurora's legal department would not give the go ahead for using the SIS repair program because of the contract with Intuitive." Johnson Decl. ¶ 30 at 21:27–22:2. According to Mirsberger's own statement, Aurora's legal department—not Mirsberger—was the relevant

15
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

decisionmaker.  SIS witnesses should not be permitted to convey to the jury hearsay-within-hearsay about what Mirsberger purportedly said to Johnson in an out-of-court statement about what unnamed and unidentified members of Aurora's legal department supposedly told Mirsberger in yet some other, unidentified out-of-court statement.

## III.    JOHNSON'S TESTIMONY CONVEYING OUT-OF-COURT HOSPITAL STATEMENTS IS INHERENTLY UNRELIABLE

Even if SIS had proffered admissible evidence to meet the foundational requirements discussed above, Johnson's testimony purporting to relay statements of customer motive should be excluded as inherently unreliable.  As discussed, Johnson's declaration does not identify *any individual statements* of motive by representatives of Providence, University of Illinois, Ardent Health, University of Michigan, Duke University, Salinas Valley, Pomona Valley, UHS, SSM, Redland, Northside Health, Northeast Georgia Health, Boston Children's, Northwestern Memorial, and Yankee Alliance.  Instead, he testifies that "every single one" made substantially the same generic statement—that they would have purchased from SIS but-for Intuitive.  Johnson Decl. ¶ 21 at 12:22–28.  Intuitive has had no opportunity to cross-examine the supposed declarants, because none are identified.  Such testimony is inherently unreliable and untestable and should not be presented to the jury.  *AngioDynamics*, 2022 WL 4333555, at *4; *Amerisource*, 2009 WL235648, at *2–3 (excluding "particularly troublesome" statements "offered to prove the elements of the" claim because opposing party would have "no way of cross-examining the declarants or their sources").

Even as to the remaining entities discussed in Johnson's declaration, for which he does identify a specific hospital declarant, his testimony is still facially unreliable.  SIS made the strategic choice not to call any of those declarants as trial witnesses.  And SIS—and Johnson in particular, as SIS's chief salesperson—has every incentive and reason to attribute its lack of success selling modified EndoWrists to Intuitive.  It would be error to allow Johnson to take the stand in a case in which SIS seeks to collect nearly half a billion dollars in damages and tell the jury that hospital declarants repeatedly told him they did not purchase from SIS because of Intuitive—particularly where, as here, SIS has had the opportunity to provide independently

16
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

1  admissible evidence showing the reliability and admissibility of such statements, but instead

2  proffered only Johnson's self-serving recollections.  *See AngioDynamics*, 2022 WL 4333555, at

3  *4 (holding that even if the plaintiff *could* establish the fact of a lost opportunity, the statements

4  of customer motive were "not sufficiently reliable for admission under" Rule 803(3) because

5  testimony by the plaintiff's witness (a salesperson) was "self-serving").

6  ## **<u>CONCLUSION</u>**

7          For the foregoing reasons, SIS's proffer does not lay a sufficient foundation for the

8  admissibility under Rule 803(3) of any of the out-of-court statements of customer motive identified

9  in the Declaration of Keith Johnson.  SIS should not be permitted to present such statements to the

10  jury, and also should not be permitted to present any other out-of-court statements by hospital

11  declarants to the jury without first laying a sufficient foundation under Rule 803(3).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

1    Dated:  December 18, 2024            By: /s/ *Kenneth A. Gallo*
                                             Kenneth A. Gallo
2
                                         Kenneth A. Gallo (*pro hac vice*)
3                                        Paul D. Brachman (*pro hac vice*)
                                         **PAUL, WEISS, RIFKIND, WHARTON &**
4                                        **GARRISON LLP**
                                         2001 K Street, NW
5                                        Washington, DC  20006-1047
                                         Telephone:  (202) 223-7300
6                                        Facsimile:  (202) 204-7420
                                         Email: kgallo@paulweiss.com
7                                        Email: pbrachman@paulweiss.com
8
                                         William B. Michael (*pro hac vice*)
9                                        Crystal L. Parker (*pro hac vice*)
                                         Daniel A. Crane (*pro hac vice*)
10                                       **PAUL, WEISS, RIFKIND, WHARTON &**
                                         **GARRISON LLP**
11                                       1285 Avenue of the Americas
12                                       New York, NY  10019-6064
                                         Telephone:  (212) 373-3000
13                                       Facsimile:  (212) 757-3990
                                         Email: wmichael@paulweiss.com
14                                       Email: cparker@paulweiss.com
15                                       Email: dcrane@paulweiss.com
16
                                         Joshua Hill Jr. (SBN 250842)
17                                       **PAUL, WEISS, RIFKIND, WHARTON &**
                                         **GARRISON LLP**
18                                       535 Mission Street, 24th Floor
19                                       San Francisco, CA 94105
                                         Telephone:  (628) 432-5100
20                                       Facsimile:  (628) 232-3101
                                         Email: jhill@paulweiss.com
21
                                         Sonya D. Winner (SBN 200348)
22                                       **COVINGTON & BURLINGTON LLP**
23                                       415 Mission Street, Suite 5400
                                         San Francisco, California 94105-2533
24                                       Telephone:  (415) 591-6000
                                         Facsimile:  (415) 591-6091
25                                       Email: swinner@cov.com
26
                                         Kathryn E. Cahoy (SBN 298777)
27

28
                            - 18 -
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COVINGTON & BURLINGTON LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: kcahoy@cov.com

Andrew Lazerow (*pro hac vice*)
**COVINGTON & BURLINGTON LLP**
One City Center 850 Tenth Street NW
Washington DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: alazerow@cov.com

Allen Ruby (SBN 47109)
**ALLEN RUBY, ATTORNEY AT LAW**
15559 Union Ave. #138
Los Gatos, California 95032
Telephone: (408) 477-9690
Email: allen@allenruby.com

Attorneys for *Defendant*
*Intuitive Surgical, Inc.*

Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO

1

## CERTIFICATE OF SERVICE

2

On December 18, 2024, I caused a copy of Defendant's Response to Plaintiff's Proffer

3

Regarding Intuitive's Motion in Limine No. 1 to be electronically served via email on counsel of

4

record for Surgical Instrument Service Company, Inc.

5

Dated:  December 18, 2024                      By:   */s/ Kenneth A. Gallo*

6                                                        Kenneth A. Gallo

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
Defendant's Response to Plaintiff's Proffer Regarding
Motion in Limine No. 1 to Exclude Out-of-Court Hospital Statements
3:21-cv-03496-AMO